# EXHIBIT F

 UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/353,772 | 01/28/2003 | Paul Szczepanek | 712-002.163 | 9183 |

| | | | | |
|---|---|---|---|---|
| 4955 | 7590 | 05/04/2005 | | |

WARE FRESSOLA VAN DER SLUYS &
ADOLPHSON, LLP
BRADFORD GREEN BUILDING 5
755 MAIN STREET, P O BOX 224
MONROE, CT  06468

| EXAMINER |
|---|
| MARTINEZ, JOSEPH P |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2873 | |

DATE MAILED: 05/04/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

FinNIST00002005

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 10/353,772 | SZCZEPANEK ET AL. |
| | Examiner | Art Unit | |
| | Joseph P. Martinez | 2873 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM
THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed
  after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any
  earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *14 January 2005*.

2a)☒ This action is **FINAL**.          2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is
closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-52* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-52* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on *28 February 2003* is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage
application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08)
    Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application (PTO-152)
6) ☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 1-04)                    **Office Action Summary**                    Part of Paper No./Mail Date 042705

FinNIST00002006

Application/Control Number: 10/353,772                                    Page 2

Art Unit: 2873

## DETAILED ACTION

### *Specification*

The lengthy specification has not been checked to the extent necessary to determine the presence of all possible minor errors. Applicant's cooperation is requested in correcting any errors of which applicant may become aware in the specification.

### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.

Claims 1-5, 10, 13, 15-17, 20-21, 23, 28, 33, 38, 43-45, 48-50 and 52 are rejected under 35 U.S.C. 102(a) as being fully anticipated by Aksyuk et al. (6204946).

Re claim 1, Aksyuk et al. teach for example in fig. 1, a reconfigurable multifunctional optical device comprising an optical arrangement (10) for receiving at least two optical input signals (col. 4, ln. 62-67 to col. 5, ln. 1-14), each optical input signal having optical bands or channels (col. 2, ln. 31-33), the optical arrangement having a free optics configuration (wherein the office interprets fig. 1 to disclose a free optics arrangement) with a light dispersion element (12) for spreading each optical input signal into respective optical bands or channels (col. 2, ln. 33-38) on a separate

FinNIST00002007

Application/Control Number: 10/353,772                                    Page 3
Art Unit: 2873

portion of a spatial light modulator that performs separate optical functions on each optical signal (col. 5, ln. 5-14).

Re claims 2-4, Aksyuk et al. further teach for example in fig. 1, wherein the separate optical functions include reflecting (col. 1, ln. 41-45) the at least one optical signal off separate non-overlapping areas on the spatial light modulator (col. 2, ln. 48-51), the separate optical functions include different optical functions (col. 3, ln. 17-20) or an optical add/drop multiplexer function (col. 1, ln. 56).

Re claim 5, Aksyuk et al. further teach for example in fig. 1, wherein the light dispersion elements include a diffraction grating (12).

Re claims 10 and 13, Aksyuk et al. further teach for example in figs. 1 and 4, at least one optical signal includes a wavelength division multiplexed (WDM) optical input signal having a plurality of wavelengths and a corresponding plurality of optical bands or channels (col. 2, ln. 31-33), each optical band or channel reflecting off a respective group of micro-mirrors of the micro-mirror device or the respective group of micro-mirrors are collectively tilted to reflect channels in the at least one optical signal (col. 5, ln. 5-10).

Re claim 15, Aksyuk et al. further teach for example in fig. 1, the optical arrangement includes one or more optical portions (18, 20, 22, 24 and 56) that provide the at least one optical signal to the spatial light modulator, and also provide reflected optical signals depending on the first optical function and the second optical function (col. 3, ln. 50-55).

Application/Control Number: 10/353,772                                          Page 4
Art Unit: 2873

Re claims 16-17 and 19, Aksyuk et al. further teach for example in fig. 3, one or more optical portions include one or more circulators or a pair of circulators, wherein the one or more circulators includes a three port circulator (1 and 2).

Re claims 20-21, Aksyuk et al. further teach for example in fig. 1, wherein the one or more optical portions include a pair of optical portions (18 and 24), including one optical portion for providing one optical signal to the spatial light modulator, and another optical portion for providing another optical signal to the spatial light modulator (col. 3, ln. 51-55), wherein the one or more optical portions includes a collimator (18), a reflective surface including a mirror (22), a dispersion element (12), a bulk lens (20), or a combination thereof.

Re claim 23, Aksyuk et al. further teach for example in fig. 1, the reflective surface includes a mirror (22).

Re claims 28 and 33, Aksyuk et al. further teach for example in fig. 1, the one or more optical portions include one or more optical PDL mitigating devices (56) for minimizing polarization dependence loss (PDL) (col. 5, ln. 37-40), wherein the one or more optical PDL mitigating devices includes a λ/4 plate (col. 5, ln. 41-44).

Re claim 38, Aksyuk et al. further teach for example in fig. 1, the reconfigurable multifunctional optical device includes an optical add/drop multiplexer configuration (col. 1, ln. 56); and the dispersion element (12) spreads at least one optical signal and an optical add signal so that each optical band or channel is reflected by one respective plurality of micro-mirrors (14) of the spatial light modulator to selectively add or drop the

FinNIST00002009

Application/Control Number: 10/353,772                                            Page 5
Art Unit: 2873

one or more optical bands or channels to and/or from the at least one optical signal (col. 3, ln. 51-55).

Re claim 43, Aksyuk et al. further teach for example in fig. 3, the reconfigurable multifunctional optical device includes an optical blocking filter receiving an optical signal having one or more optical bands or channels; and the spatial light modulator selectively deflects the one or more optical bands or channels from one respective plurality of micro-mirrors of the spatial light modulator to eliminate a selected band or channel or a specified selection of bands or channels from the optical signal provided along an optical return path (col. 3, ln. 51-55, wherein the office interprets the ability to drop signals as a means of filtering a signal).

Re claim 44, Aksyuk et al. further teach for example in fig. 1, the at least one optical signal includes two or more optical input signals (16 and 26).

Re claim 45, Aksyuk et al. further teach for example in fig. 1, the at least one optical signal includes one optical input signal, wherein one optical function is performed on the one optical input signal for providing an optical output signal, and wherein a second optical function is performed on the one optical output signal (col. 3, ln. 51-55).

Re claim 48, Aksyuk et al. further teach for example in fig. 1, the free optics configuration includes a common set of optical components (18, 20 and 24) for performing the separate optical functions on each optical signal (col. 3, ln. 51-55).

Re claim 49, Aksyuk et al. further teach for example in fig. 1, the optical arrangement disperses optical channels so they are substantially separated (col. 2, 33-38).

FinNIST00002010

Application/Control Number: 10/353,772                                    Page 6

Art Unit: 2873

Re claim 50, Aksyuk et al. further teach for example in fig. 1, the optical arrangement disperses optical channels so they are substantially overlapping (col. 2, ln. 63-67 to col. 3, ln. 1).

Re claim 52, Aksyuk et al. further teaches for example in fig. 1 and 4, the light dispersion element (12) provides two or more optical return signals (col. 2, ln. 64-67), each having modified optical bands or channels depending on the separate optical functions performed on each optical input signal (col. 5, ln. 5-14).

## Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

1.      Claims 6, 14, 18, 22, 24, 28-29 and 46-47 are rejected under 35 U.S.C. 103(a) as being unpatentable over Aksyuk et al. (6671295).

Re claim 6, Aksyuk et al. teach for example in fig. 1, the reconfigurable multifunctional optical device as disclosed above, including a diffraction grating (12) with a reflective property (col. 3, ln. 1) and a plurality of grooves (col. 5, ln. 19-21).

Application/Control Number: 10/353,772                                        Page 7
Art Unit: 2873

But, Aksyuk et al. fail to explicitly teach the diffraction grating is a blank of polished fused silica or glass, wherein the grooves either etched, ruled or suitably formed thereon.

Official Notice taken. It is well known in the art of manufacturing diffraction gratings to use a blank of polished fused silica or glass, wherein the grooves either etched, ruled or suitably formed thereon.

Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the teachings of Aksyuk et al. with a blank of polished fused silica or glass, wherein the grooves either etched, ruled or suitably formed thereon in order to provide a suitable base for receiving the grooves and provide grooves in order to separate multiple wavelength light into individual wavelengths, as is well known in the art.

Re claim 14, Aksyuk et al. further teach for example, each micro-mirror is tiltable in either a first position or a second position along an axis (col. 3, ln. 31-39).

But, Aksyuk et al. fail to explicitly teach the axis is either substantially parallel to the spectral axis of the optical signal, parallel to the spatial axis of the optical signal, or at an angle of 45 degrees in relation to the spatial axis; or the optical arrangement is arranged in relation to an optical axis and the micro-mirror surfaces when the array of micro-mirrors is in the neutral position are non-orthogonal or orthogonal in relation to the optical axis.

FinNIST00002012

Application/Control Number: 10/353,772                                                Page 8
Art Unit: 2873

However, Aksyuk et al. suggest the ability to vary the axis of the micro-mirror array (col. 3, ln. 31-39) by teaching "the micro-mirror array is designed with an appropriate micro-mirror plate pitch, tilt angle, and tilt axis".

Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the optical device of Aksyuk et al. with an axis that is either substantially parallel to the spectral axis of the optical signal, parallel to the spatial axis of the optical signal, or at an angle of 45 degrees in relation to the spatial axis or the optical arrangement is arranged in relation to an optical axis and the micro-mirror surfaces when the array of micro-mirrors is in the neutral position are non-orthogonal or orthogonal in relation to the optical axis in order to properly direct the light.

Re claim 18, Aksyuk et al. teach the reconfigurable multifunctional optical device as disclosed above.

But, Aksyuk et al. fail to explicitly teach the one or more waveguides include a pair of capillary tubes.

Official Notice taken. It is well known in the art of waveguides to use capillary tubes to protect waveguides.

Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the optical device of Aksyuk et al. to use capillary tubes in order to protect the waveguide.

FinNIST00002013

Application/Control Number: 10/353,772                                    Page 9
Art Unit: 2873

Re claims 22, 24 and 34, Aksyuk et al. teach the reconfigurable multifunctional optical device as disclosed above, including teaching a collimator lens, reflective surface and bulk lens.

But, Aksyuk et al. fail to explicitly teach the collimator includes either an aspherical lens, an achromatic lens, a doublet, a GRIN lens, a laser diode doublet, or a combination thereof; or the bulk lens is a Fourier lens; or the dispersion element has a low PDL.

However, Aksyuk et al. suggest the use of other optical elements to perform equivalent functions (col. 5, ln. 47-65).

Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to have a collimator include either an aspherical lens, an achromatic lens, a doublet, a GRIN lens, a laser diode doublet, or a combination thereof; or the bulk lens is a Fourier lens, or the dispersion element has a low PDL, as taught by Aksyuk et al. because they are known equivalents in order to effectively disperse and focus wavelengths.

Re claim 29, Aksyuk et al. further teach for example in fig. 1, an optical PDL mitigating device (56) is arranged between a grating (12) and the spatial light modulator (14).

But, Aksyuk et al. fail to explicitly teach optical PDL mitigating device is arranged between a waveguide and a grating in the optical arrangement.

FinNIST00002014

Application/Control Number: 10/353,772                                    Page 10
Art Unit: 2873

However, Aksyuk et al. suggest means of reducing polarization dependent losses by using an optical PDL mitigating device (col. 5, ln. 44-46) and further the signal is double passed (col. 5, ln. 24-28), whereby the office interprets the teachings of Aksyuk et al. to make the PDL mitigating device integral into one unit and double pass the signal.

Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to arrange the optical PDL mitigating device between a waveguide and a grating in the optical arrangement, since it has been held that constructing a formerly integral structure in various elements involves only routine skill in the art. Nerwin v. Erlichman, 168 USPQ 177, 179.

Re claims 46-47, Aksyuk et al. further teach for example in fig. 1, the reconfigurable multifunctional optical device as disclosed above, including a spatial light modulator and bulk lens.

But, Aksyuk et al. fail to explicitly teach the lens distance between the spatial light modulator and the bulk lens is greater than or less than the focal length of the bulk lens.

However, it would have been obvious to on of ordinary skill in the art at the time the invention was made to make the lens distance between the spatial light modulator and the bulk lens is greater than or less than the focal length of the bulk lens, since it has been held that rearranging parts of an invention involves only routine skill in the art. In re Japikse, 86 USPQ 70.

Application/Control Number: 10/353,772                                          Page 11

Art Unit: 2873

Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to make the lens distance between the spatial light modulator and the bulk lens is greater than or less than the focal length of the bulk lens in order to focus the signal on each micro-mirror.

2.      Claims 7-9, 11-12, 25-27 and 51 are rejected under 35 U.S.C. 103(a) as being unpatentable over Aksyuk et al. (6204946) in view of Weaver et al. (6647164).

Re claim 7, 9 and 11, Aksyuk et al. teach for example in fig. 2, the reconfigurable multifunctional optical device as disclosed above, including the spatial light modulator includes an array of micro-mirrors (32) and is programmable for reconfiguring the reconfigurable multifunctional optical device to perform the first optical function or the second optical function (col. 3, ln. 27-30); or spatial light modulator includes an array of micro-mirrors (32) having a multiplicity of micro-mirrors (32) that are separately controllable for tilting on an axis depending on a control signal (col. 3, ln. 27-30); or wherein the spatial light modulator is selectively reconfigurable by statically or dynamically modifying the electric signals to accommodate different channel spacing, the shape of the light beam, or the center wavelength of the light beam of the at least one optical signal (col. 3, ln. 27-30), including the use of a "set of electrical control signals" to control the mirror array (col. 3, ln. 46-47).

But, Aksyuk et al. fail to explicitly teach an algorithm that drives the array of micro-mirrors.

FinNIST00002016

Application/Control Number: 10/353,772                                    Page 12
Art Unit: 2873

However, within the same field of endeavor, Weaver et al. teach for example, an
algorithm that drives the array of micro-mirrors (col. 9, ln. 21-23).

Therefore, it would have been obvious to one of ordinary skill in the art at the
time the invention was made to modify the optical device of Aksyuk et al. with the
algorithm of Weaver et al. in order to quickly and efficiently reconfigure the optical
device.


Re claim 8, Aksyuk et al. further teach for example in fig. 1, the light dispersion
element (12) is oriented to spread the optical signal along a spectral axis, wherein the
spectral axis is parallel to the tilt axis of the micro-mirrors of the spatial light modulator
(col. 2, ln. 33-37, wherein the office interprets the spectral axis is parallel to the tilt axis
in order for each wavelength to reach each micro-mirror).


Re claim 12, Aksyuk et al. further teach for example, the electrical control signals
are based on the wavelength of the at least one optical signal (col. 3, ln. 27-30).


Re claim 25, Aksyuk et al. further teach for example in fig. 4, wherein the one or
more optical portions provide one optical signal, the other optical signal, or a
combination thereof as different channels having different wavelengths on the spatial
light modulator (col. 3, ln. 51-55).

FinNIST00002017

Application/Control Number: 10/353,772                                          Page 13
Art Unit: 2873

Re claim 26, Aksyuk et al. further teach for example in fig. 4, the different

channels have a desired cross-sectional geometry, including elliptical (col. 5, ln. 5-10,

wherein the office interprets a column of spots to include an elliptical cross-section).


Re claim 27, Aksyuk et al. teach the reconfigurable multifunctional optical device

as disclosed above, including spacing the optical channels (col. 5, ln. 1-10, wherein the

office interprets "two parallel rows" to be spaced apart in order to interact with columns

of micro-mirrors which are spaced apart in fig. 4).

But, Aksyuk et al. fail to explicitly teach for example, one group of optical

channels is spaced at 100 GHz and another group of optical channels is spaced at 50

GHz.

However, it would have been obvious to one of ordinary skill in the art at the time

the invention was made to space one group of optical channels at 100 GHz and another

group of optical channels at 50 GHz, since it has been held that discovering an optimum

value of a result effective variable involves only routine skill in the art. *In re Boesch*, 617

F.2d 272, 205 USPQ 215 (CCPA1980).

Therefore, it would have been obvious to one of ordinary skill in the art at the

time the invention was made to modify the optical device of Aksyuk et al. to have one

group of optical channels is spaced at 100 GHz and another group of optical channels is

spaced at 50 GHz in order to simultaneously process multiple multifrequency optical

signals.

FinNIST00002018

Application/Control Number: 10/353,772                                    Page 14
Art Unit: 2873

Re claim 51, Aksyuk et al. further teach for example, each micro-mirror is tiltable in either a first position or a second position along an axis (col. 3, ln. 31-39).

But, Aksyuk et al. fail to explicitly teach the axis is either substantially parallel to the spectral axis of the optical signal, parallel to the spatial axis of the optical signal, or at an angle of 45 degrees in relation to the spatial axis; or the optical arrangement is arranged in relation to an optical axis and the micro-mirror surfaces when the array of micro-mirrors is in the neutral position are non-orthogonal or orthogonal in relation to the optical axis.

However, Aksyuk et al. suggest the ability to vary the axis of the micro-mirror array (col. 3, ln. 31-39) by teaching "the micro-mirror array is designed with an appropriate micro-mirror plate pitch, tilt angle, and tilt axis".

Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the optical device of Aksyuk et al. with an axis that is either substantially parallel to the spectral axis of the optical signal, parallel to the spatial axis of the optical signal, or at an angle of 45 degrees in relation to the spatial axis or the optical arrangement is arranged in relation to an optical axis and the micro-mirror surfaces when the array of micro-mirrors is in the neutral position are non-orthogonal or orthogonal in relation to the optical axis in order to properly direct the light.

3.      Claims 30-32 and 35-37 are rejected under 35 U.S.C. 103(a) as being unpatentable over Aksyuk et al. (6204946) in view of McGuire, Jr. (6636654).

FinNIST00002019

Application/Control Number: 10/353,772                                          Page 15
Art Unit: 2873

Re claims 30-32, Aksyuk et al. teach for example in fig. 1, the reconfigurable

multifunctional optical device as disclosed above, including a PDL mitigating device

(56).

But, Aksyuk et al. fail to explicitly teach one or more optical PDL mitigating

devices include a pair of optical PDL mitigating devices, including a pair of PDL

mitigating devices or includes one optical PDL mitigating device having a polarization

splitter for splitting each channel into a pair of polarized light beams and a rotator for

rotating one of the polarized light beams of each optical channel or includes another

optical PDL mitigating device having a rotator for rotating one of the previously rotated

and polarized light beams of each optical channel and a polarization splitter for

combining the pair of polarized light beams of each channel.

However, within the same field of endeavor, McGuire, Jr. teaches for example in

fig. 1, the one or more optical PDL mitigating devices include a pair of optical PDL

mitigating devices, including a pair of PDL mitigating devices (108 and 112) or includes

one optical PDL mitigating device having a polarization splitter (105) for splitting each

channel into a pair of polarized light beams and a rotator (108 and 112) for rotating one

of the polarized light beams of each optical channel (col. 4, ln. 42-67) or includes

another optical PDL mitigating device having a rotator (108 and 112) for rotating one of

the previously rotated and polarized light beams of each optical channel and a

polarization splitter (105) for combining the pair of polarized light beams of each

channel (fig. 1).

FinNIST00002020

Application/Control Number: 10/353,772                                   Page 16
Art Unit: 2873

Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the teachings of Aksyuk et al. with the teachings of McGuire, Jr. in order to provide an optical switching device with low polarization dependent loss in the system.

Re claims 35-37, McGuire, Jr. further teaches for example in fig. 8, the optical arrangement includes a chisel prism having multiple faces, including include at least a front face, a rear face, a top face and a bottom face, for modifying the direction of the optical signal, wherein the optical light from the free optics arrangement passes through one or more faces of the chisel prism, reflects off one or more internal surfaces of the chisel prism, reflects off the spatial light modulator, again reflects off the one or more internal surfaces of the chisel prism, and passes back to the free optics arrangement (col. 18, ln. 65-67 to col. 19, ln. 1-16, wherein the office interprets the teachings to included multiple reflections through the demux/mux film to include multiple reflections through the attached prism as disclosed).

4.      Claims 39-42 are rejected under 35 U.S.C. 103(a) as being unpatentable over Aksyuk et al. (6204946) in view of Riza (6222954).

Re claims 39-42, Aksyuk et al. teach the reconfigurable multifunctional optical device as disclosed above, including for use in optical networks.

Application/Control Number: 10/353,772                                    Page 17
Art Unit: 2873

But, Aksyuk et al. fail to explicitly teach the reconfigurable multifunctional optical

device for use as an optical cross-connect, optical channel monitor,

interleaver/deinterleaver or chromatic dispersion compensator.

However, within the same field of endeavor, Riza teaches for example, a

reconfigurable multifunctional optical device for use as an optical cross-connect (col. 4,

ln. 3-6), optical channel monitor (col. 6, ln. 30-33), interleaver/deinterleaver (col. 1, ln.

10, wherein the office interprets attenuation and routing to teach the claimed limitations)

or chromatic dispersion compensator (col. 1, ln. 10, wherein the office interprets

attenuation and routing to teach the claimed limitations).


### *Conclusion*

Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

FinNIST00002022

Application/Control Number: 10/353,772                                         Page 18
Art Unit: 2873

the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the date of this final action.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Joseph P. Martinez whose telephone number is 571-272-2335. The examiner can normally be reached on M-F 7:00 AM to 3:30 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Georgia Y. Epps can be reached on 571-272-2328. The fax phone number for the organization where this application or proceeding is assigned is 703-872-9306.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

JPM
4-27-05

Hung Xuan Dang
Primary Examiner