CHRISTOPHER J. COX (BAR NO. 151650)
Email: chris.cox@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3029
Facsimile: (650) 802-3100

DAVID C. RADULESCU, PH.D.
(*pro hac vice*)
Email: david@radulescullp.com
TIGRAN VARDANIAN (*pro hac vice*)
Email: tigran@radulescullp.com
ROBIN M. DAVIS (*pro hac vice*)
Email: robin@radulescullp.com
RADULESCU LLP
136 Madison Avenue, 6th Floor
New York, NY 10016
Telephone: (646) 502-5950
Facsimile: (646) 502-5959

*Attorneys for Plaintiff*
*FINISAR CORPORATION*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> NISTICA INC., a Delaware corporation, <br><br> Defendant. | No. 5:13-cv-03345-BLF <br><br> **PLAINTIFF FINISAR CORPORATION'S REPLY CLAIM CONSTRUCTION BRIEF PURSUANT TO PATENT L.R. 4-5(c)** <br><br> Date:  August 8, 2014 <br> Time:  9:00 a.m. <br> Place:  San Jose Courthouse, Courtroom #3 <br> Judge:  Hon. Beth Labson Freeman |

## Table of Contents

I.   INTRODUCTION ......................................................................................................... 1

II.  THE '328 PATENT ...................................................................................................... 1

   A.   "displaceable reflectors" ...................................................................................... 1

      i.   Nistica's Proposal Relies On An Incorrect Legal Standard ........................................ 1

      ii.   Nistica's Efforts To Discredit the Arguments in Finisar's Opening Brief Fail ......................... 2

III.  THE '687 PATENT ...................................................................................................... 3

   A.   "scattered light from a dropped signal is directed onto the micromirror device to reflect away from the return path" ...................................................................................................... 3

      i.   Nistica's New Proposed Construction Would Improperly Limit The Claims ............................... 3

      ii.   Finisar's "Plain And Ordinary Meaning" Proposal Is Appropriate ................................. 5

   A.   "the spatial light modulator having a first set of micromirrors programmed to perform a first overall optical function on the first optical input signal, and having a second set of micromirrors programmed to perform a second overall optical function on the second optical signal" ...................... 5

      i.   Nistica's New Construction Proposal Writes Limitations Into The Claim That Contradict Its Clear Language ...................................................................................................... 6

      ii.   Nistica's Criticism Of Finisar's Proposed Construction Is Baseless ........................... 8

V.   THE '980 PATENT ...................................................................................................... 8

   A.   "spatial separating means for simultaneously spatially separating at least a first and a second group of light from said series of optical signals" ...................................................................... 8

      i.   Nistica's Previously Undisclosed Supporting Evidence And Arguments Are Fatally Flawed ....... 8

      ii.   Finisar's Corresponding Structure Proposal Is Accurate And Tied To The Structural Disclosures In The Patent ...................................................................................................... 10

   B.   "wavelength processing means for separately processing each of the separated wavelengths of said first and second group" ...................................................................................................... 12

      i.   Nistica Admits That Its Proposed Function Includes Superfluous Language .............................. 13

      ii.   Nistica's New Corresponding Structure Proposal Impermissibly Introduces New Issues And Lacks Specification Support ..................................................................................... 13

      iii.   Finisar's Proposed Corresponding Structure Is In Accord With Legal Requirements For Construing Means-Plus-Function Terms And True To The Patent Specification .......................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*3M Innovative Props. Co. v. Tredegar Corp.*,
   725 F.3d 1315 (Fed. Cir. 2013) ...................................................................................8

6

*Applied Signal Tech., Inc. v. Emerging Markets Comm'ns, Inc.*,
   2011 WL 500786 (N.D. Cal. Feb. 9, 2011) ........................................................ 10, 15

7

8

*Avocet Sports Tech., Amer SportsCorp.*,
   2009 WL 4907445 (N.D. Cal. Dec. 14, 2009).............................................................12

9

10

*Budde v. Harley-Davidson, Inc.*,
   250 F.3d 1369 (Fed. Cir. 2001) ................................................................................15

11

*Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*,
   206 F.3d 1440 (Fed. Cir. 2000) ................................................................................14

12

13

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012) .......................................................................... 12, 14

14

*Flo Healthcare Solutions, LLC v. Kappos*,
   697 F.3d 1367 (Fed. Cir. 2012) .................................................................................2

15

16

*HTC Corp. v. IPCom GmbH & Co.*,
   667 F.3D 1270 (Fed. Cir. 2012) ...............................................................................11

17

18

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*,
   381 F.3d 1111 (Fed. Cir. 2004) .................................................................................4

19

20

*InterDigital Commns., LLC v. Int'l Trade Comm'n*,
   690 F.3d 1318 (Fed. Cir. 2012) .................................................................................7

21

*Linear Tech. Group v. Impala Linear Corp.*,
   379 F.3d 1311 (Fed. Cir. 2004) ...............................................................................12

22

23

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) ...................................................................................2

24

25

*Mas-Hamilton Group v. LaGard, Inc.*,
   156 F.3d 1206 (Fed. Cir. 1998) ...............................................................................11

26

*Mass. Inst. of Tech. v. Abacus Software*,
   462 F.3d 1344 (Fed. Cir. 2006) ...............................................................................11

27

28

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc)...........................................................4, 6

*In re Rambus Inc.*,
    694 F.3d 42 (Fed. Cir. 2012) ...................................................................................4

*Thorner v. Sony Computer Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ...............................................................................7

*Wang Labs., Inc. v. Am. Online, Inc.*,
    197 F.3d 1377 (Fed. Cir. 1999) ...............................................................................2

**Statutes**

35 U.S.C. § 112(6)....................................................................................8, 11, 12, 13

---

## I.   INTRODUCTION

Despite the late introduction of new proposed constructions and supporting evidence for four of the five disputed claim terms,[1] Nistica's Responsive Claim Construction Brief (D.I. 100) ("Nistica's Responsive Brief" or "Nistica Br.") does not present a compelling basis in fact or law for the adoption of any of Nistica's proposed claim constructions.  Neither Nistica's timely-disclosed constructions set forth in the Joint Claim Construction Statement ("JCCS"), filed on June 4, 2014 (D.I. 98), nor the new proposed claim constructions and supporting evidence belatedly introduced in Nistica's Responsive Brief capture the appropriate scope of the disputed claim terms.  Instead, Nistica attempts to pack unsupported limitations into the disputed terms through each of its proposed claim constructions, in an effort to narrow the asserted claims and manufacture non-infringement positions.  Nistica's efforts are unavailing for the reasons described below and in Finisar's Opening Claim Construction Brief (D.I. 99) ("Finisar's Opening Brief" or "Finisar Br.").  In contrast, Finisar's proposed constructions are in accord with all of the intrinsic evidence and should be adopted by the Court.

## II.   THE '328 PATENT

### A.  "displaceable reflectors"

| Finisar's Proposed Construction: | Nistica's Proposed Construction: |
|---|---|
| moveable reflectors | reflectors of a spatial light modulator array that move substantially perpendicular to the plane of the reflective surface of the reflective element |

### i.  Nistica's Proposal Relies On An Incorrect Legal Standard

---

[1] As discussed in detail in Finisar's Motion to Strike Nistica's New Claim Construction Proposals and Supporting Evidence (D.I. 101) ("Finisar's Motion to Strike"), Nistica did not meet and confer with Finisar, or request leave of Court prior to introducing new claim construction proposals and supporting evidence in its Responsive Brief (D.I. 100).  Nistica's late introduction of new claim construction proposals and evidence contravene this District's Patent Local Rules and case schedule (D.I. 93), and has prejudiced Finisar due to Finisar's reliance on Nistica's claim construction proposals and supporting evidence identified in the JCCS when conducting claim construction discovery and preparing Finisar's Opening Brief.  Nevertheless, and without waiving its right to the relief requested in Finisar's Motion to Strike, Finisar addresses Nistica's late-disclosed claim construction proposals and arguments presented in Nistica's Responsive Brief (D.I. 100) in this Reply Brief.  For the Court's convenience, Finisar has appended a chart displaying Nistica's old and new proposed claim constructions as well as Finisar's constructions (which have remained unchanged) as Exhibit 1 to the Declaration of Robin M Davis in Support of Finisar's Reply Claim Construction Brief ("Davis Decl.").

---

1      Nistica argues that its proposed construction for "displaceable reflectors" should be

2  adopted because Nistica's proposed construction pertains to the only embodiment "described and

3  enabled" in the '328 patent.  (Nistica Br. at 4-5 (citing *Wang Labs., Inc. v. Am. Online, Inc.*, 197

4  F.3d 1377, 1381-83 (Fed. Cir. 1999).)  However, Nistica fails to appreciate that subsequent

5  Federal Circuit cases have clarified that *Wang Labs* "does not stand for the proposition that if a

6  patent specification describes only a particular embodiment, the claims must be limited to that

7  subject matter."  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 907 (Fed. Cir. 2004).

8  Consequently, Nistica's assertion that the "displaceable reflectors" of the '328 patent may only

9  move in a direction "perpendicular to the plane of the reflective surface of the reflective element"

10 because this is the "only one embodiment of reflectors in the '328 patent" is legally unsupported.

11 (Nistica Br. at 4-5.)

12              **ii.   Nistica's Efforts To Discredit the Arguments in Finisar's Opening**
                        **Brief Fail**
13

14      Much like Nistica's proposed construction itself, Nistica's attacks on Finisar's proposed

15 construction are misguided.  Nistica argues that each reference to motion of the "displaceable

16 reflectors" in the '328 patent ***other*** than the substantially perpendicular movement embraced by

17 Nistica's proposed construction has been somehow misinterpreted by Finisar (Nistica Br. at 5-7),

18 but this is not so.  (*See* Finisar Br., D.I. 99 at 4-5.)  Indeed, Nistica has not identified a single

19 passage in the '328 patent that excludes the possibility of rotational or other movement of the

20 "displaceable reflectors."  Nor has Nistica argued that rotational movement of reflectors in

21 MEMS devices were not well known to those of skill in the art.  In fact, even a cursory review of

22 the CV of Nistica's expert reveals that Dr. Ford is an author of multiple MEMS designs utilizing

23 rotatable mirrors prior to the filing of the '328 patent.  (*See* D.I. 98-3 at 22-28.)  Consequently,

24 Finisar's proposed construction, which captures the ordinary and customary meaning of this term

25 known to those of ordinary skill in the art, which includes rotational motion of "displaceable

26 reflectors," should be adopted by the Court.  *See Flo Healthcare Solutions, LLC v. Kappos*, 697

27 F.3d 1367, 1375 (Fed. Cir. 2012) ("it is not proper to import from the patent's written description

28 limitations that are not found in the claims themselves").

---

FINISAR'S REPLY CLAIM CONSTRUCTION BR.                                                           2

## III.   THE '687 PATENT

### A.   "scattered light from a dropped signal is directed onto the micromirror device to reflect away from the return path"

| Finisar's Proposed Construction: plain and ordinary meaning | Nistica's New[2] Proposed Construction: light from ~~the~~ a dropped signal that is scattered from the edges of the micro-mirrors used to block that signal is directed onto the micro-mirror~~s~~ ~~of the spatial light modulator so that the scattered light~~ ~~is~~ device to reflect~~ed~~ away from the ~~output~~ return path |
|---|---|

#### i.   Nistica's New Proposed Construction Would Improperly Limit The Claims

The dispute over this term boils down to whether "scattered light" should include all scattered light from a dropped signal, in accordance with the claim language (as Finisar asserts) or whether the term should be limited to only light scattered from the edges of the micromirrors (as Nistica argues).  Upon review of Finisar's Opening Brief and appreciating the flaws its proposed construction set forth in the JCCS for the "scattered light…" term, Nistica introduced a new proposed construction for this term that matches the disputed claim language, save for the addition of a single limitation.  (*See* Nistica Br. at 11 n. 6.)  Nistica's new proposed construction does nothing to mitigate the parties' disagreement over whether a limitation should be imported into the claims.  This Court should reject Nistica's new proposed construction because it improperly attempts to limit the '687 patent claims to a single embodiment.

In its Responsive Brief, Nistica asserts that edge scattering "is the only description of 'scattered light' in the specification."  (Nistica Br. at 9.)  However, this is inaccurate—the '687 patent specification explicitly refers to "coherent scattering."  ('687 patent at 12:62.)  Nistica even excerpts the portion of the specification discussing this "coherent scattering" on page 8 of its Responsive Brief, but does not address what light comprises the "coherent scattering." (Nistica Br. at 8.)  Moreover, the specification does not say that the scattered light *must* come from the edges of micromirrors, as Nistica's proposed construction would require.  *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004)

---

[2] Finisar has annotated each of Nistica's new proposed claim constructions to illustrate the differences between Nistica's proposal in the JCCS (D.I. 98-1) and Nistica's Responsive Brief (D.I. 100).

1  ("Even where a patent describes only a single embodiment, claims will not be read restrictively

2  unless the patentee has demonstrated a clear intention to limit the claim scope using words or

3  expressions of manifest exclusion or restriction."); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323

4  (Fed. Cir. 2005) (en banc).

5         Furthermore, Nistica's characterization of the '687 patent prosecution history is

6  misleading.  Although the applicants acknowledged that "edge or back scattering" were problems

7  in the prior art that their invention solved, they were also very clear that their invention is

8  distinguishable from the prior art because of the specific manner in which the claimed invention

9  solves the "edge or back scattering" problems—that is, by deflecting and re-reflecting bands or

10  channels to eliminate or drop the bands or channels from an optical signal.  (*See* D.I. 100-3,

11  Korrell Decl., Ex. B at 10 ("Clearly, <u>Aksyuk et al.</u>' WDM switch 010 does not have a reflecting

12  device, as claimed herein, and **does not deflect and re-reflect bands or channels to eliminate**

13  **or drop the bands or channels from an optical signal**, as claimed here.") (emphasis added); *id.*

14  at 12 (parallel distinction concerning Riza reference).)  Moreover, Nistica, through

15  unsubstantiated lawyer argument, claims in footnote 3 of its Responsive Brief that "edge

16  scattering" and "back scattering" refer to "the same issue," despite the fact that the patent

17  examiner clearly understood "edge scattering" and "back scattering" to be separate and distinct.

18  (*See* D.I. 100-4, Korrell Decl., Ex. C at 2 ("[I]n response to applicant's argument that the

19  references fail to recognize the 'back or edge scattering' ***problems***.") (emphasis added).)  Nistica

20  attempts to conflate these problems to limit the disputed term to only light "scattered from the

21  edges of the micromirrors," and improperly exclude the back scattered light that is discussed

22  concurrently in the prosecution history.  *See In re Rambus Inc.*, 694 F.3d 42, 48 (Fed. Cir. 2012)

23  (declining to limit construction of a disputed term where patentee distinguished his invention

24  over prior art on a different basis that does not support a narrower claim limitation).

25         When viewed in their proper context, it is clear that Nistica's citations to the applicants'

26  statements during prosecution do not indicate that the claims were concerned solely with "edge

27  scattering" to the exclusion of other scattered light, but expressed the applicant's position that

28  there was the no motivation to combine multiple references:

---

FINISAR'S REPLY CLAIM CONSTRUCTION BR.                                              4

> Moreover, Aksyuk et al. neither recognizes the "back or edge scattering" problem in the prior art, nor provides a hint or suggestion of a solution to the same. **In view of this**, it is respectfully submitted that **there is no motivation for one of ordinary skill in the art to look beyond that disclosed in Aksyuk et al. to solve the "back or edge scattering" problem** by trying to modify or change the overall teaching of Aksyuk et al. in the manner set forth in the reasoning on pages 3-4 of the Office Action.

Id. at 10 (emphasis added); see also id. at 12 (similar explanation for Riza).  Likewise, Nistica mischaracterizes an Advisory Action, where the examiner clearly states that it is "the features" (e.g. the deflection and re-reflection of the bands or channels to eliminate or drop the bands or channels) that were not recited in the rejected claims, not a reference to the origin of scattered light.  (See D.I. 100-4, Korrell Decl., Ex. C at FinNist00000932.)  Indeed, in the Notice of Allowance, the examiner made clear that the ensuing amendment that added the disputed term to claim 1 of the '687 patent (D.I. 100 at 10) made claim 1 allowable, because it introduced a feature not shown in the cited prior art.  (See Davis Decl., Ex. 2 (Notice of Allowance) ("Riza fails to explicitly teach light from a dropped signal is directed onto the micromirror device to reflect away from the return path.").)  Thus, while the prosecution history makes clear that "scattered light" in the claims does include light scattered off the edges of the micromirrors, nothing in the prosecution history suggests that this claim term must be limited to only that type of scattered light.

### ii.   Finisar's "Plain And Ordinary Meaning" Proposal Is Appropriate

Nistica argues that Finisar proposes an improperly broad construction for "scattered light." (Nistica Br. at 11.)  However, Finisar does not put forth a construction of "scattered light," rather it argues that the words "scattered light," as used in the context of the disputed term is readily understood by a person having skill in the art and is not limited to any specific type of scattered light by the intrinsic evidence, and any attempt by Nistica to import limitations into the language of the claims is improper.  (Finisar Br. at 7-8.)  Finisar's proposed construction for this claim term continues to be plain and ordinary meaning.

### IV.   THE '740 PATENT

A.   **"the spatial light modulator having a first set of micromirrors programmed to perform a first overall optical function on the first optical input signal, and having a second set of micromirrors programmed to perform a second overall optical function on the second optical signal"**

| Finisar's Proposed Construction: | Nistica's New[2] Proposed Construction: |
|---|---|
| plain and ordinary meaning | the spatial light modulator having a first set of micromirrors programmed to perform a first set of one or more optical function(s) on a first optical input signal as it transits the reconfigurable multifunctional optical device, and a second set of micromirrors programmed to perform a second set of one or more optical function(s) on the second optical signal as it transits the reconfigurable multifunctional optical device, ~~wherein the first set of optical function(s) and the second set of optical function(s) are different.~~ |

### i.  Nistica's New Construction Proposal Writes Limitations Into The Claim That Contradict Its Clear Language

The primary dispute over this term is whether "overall optical functions" are performed by the *spatial light modulator*, as dictated by the claim language (Finisar's proposal) or whether "overall optical functions" are performed by *the device as a whole* (Nistica's proposal).  Nistica's proposal contradicts the plain language of the claim, which is clear that the "overall optical function" is performed by the spatial light modulator ("SLM"), and not by all of the other elements in the reconfigurable multifunctional optical device.  (*See* '740 patent at cl. 1.)  Nistica does not address Finisar's argument that Nistica's proposed construction contradicts the language of the claim (Finisar Br. at 12-13)—indeed, Nistica cannot refute this argument.  This flaw in Nistica's position alone is adequate basis to reject Nistica's proposed construction.  *See Philips*, 415 F.3d at 1312 ("It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude.") (internal quotations omitted).

Nistica further suggests that Finisar has not made a "grammatically correct reading" of Nistica's proposed construction, however, Nistica's own confusion regarding the meaning of its construction belies this criticism.  (Nistica Br. at 15.)  For example, Nistica's Responsive Brief argues both that Nistica's construction "makes clear that the spatial light modulator is programmed to perform the set of one or more optical function(s)" and that "'overall optical function' should be construed as a 'set of one or more optical functions' performed on a signal 'as it transits the reconfigurable multifunctional optical device,'" which indisputably implicates other components in the optical device.  (*Id*.)  These positions are clearly in tension—either the

1   "overall optical function" is performed by the SLM or it is performed by multiple components as

2   the signal transits the whole device—and Nistica's Responsive Brief clearly indicates Nistica's

3   desire to have it both ways.  (*Id*.)  This is improper, and the Court should not adopt a construction

4   that attempts to obscure the meaning of otherwise clear claim language.  *See InterDigital*

5   *Commns., LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012) ("The plain

6   meaning of claim language ordinarily controls unless the patentee acts as his own lexicographer

7   and provides a special definition for a particular claim term or the patentee disavows the ordinary

8   scope of a claim term either in the specification or during prosecution.").

9           Furthermore, Nistica's reliance on the intrinsic record is tortured.  Nistica relies on

10  sections of the specification identifying different types of optical functions that may be

11  performed by the SLM to justify its efforts to equate Nistica's construction's "set of one or more

12  optical function(s)" as a substitute for the words "overall optical function" used in the claim.

13  (*See* Nistica Br. at 13.)  Yet, just a few paragraphs later, Nistica admits that the phrase "overall

14  optical function" does not appear in the specification.  (*See id*. at 14.)  Thus, Nistica's tenuous tie

15  between the specification citations it claims are somehow limiting and the actual language of the

16  disputed term is insignificant by Nistica's own admission.  Indeed, Nistica further admits that

17  "overall optical function" and "optical function" are different, but proceeds to rely on the

18  specification's discussion of "optical function" to support its construction of "overall optical

19  function."  (*See id*.)  Nistica's reliance on excerpts of the '740 patent's file history are similarly

20  fraught—the excerpt from an office action response cited by Nistica actually supports Finisar's

21  position that the SLM performs the "overall optical functions," not the entire device as Nistica

22  argues.  (*See id*. (citing D.I. 100-5, Korrell Decl., Ex. E at FinNIST00002077) ("different overall

23  optical functions are performed on different/separate portions of micromirror spatial

24  modulator. . .").)  Because Nistica's own citations to the intrinsic record do not support its efforts

25  to read limitations into the claim through Nistica's construction proposal, it is clear that Nistica's

26  proposal should be rejected.  *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362,

27  1365 (Fed. Cir. 2012) ("To act as its own lexicographer, a patentee must 'clearly set forth a

28  definition of the disputed claim term' other than its plain and ordinary meaning.").

### ii.  Nistica's Criticism Of Finisar's Proposed Construction Is Baseless

Finally, Nistica criticizes Finisar for not "articulating in its brief…what Finisar believes to be the plain meaning."  (Nistica Br. at 15-16.)  However, Finisar has stated its reasons for not importing Nistica's additional limitations into the construction of the disputed phrase, and otherwise, both parties agree that the words of the claim themselves are sufficient.  (*See* Finisar Br. at 11 (comparison of Nistica's proposed construction with the plain text of the disputed term, showing Nistica uses every word of the claim term in its construction and is only adding limitations).)  Because the language of the claim is clear and easily understood by a person of ordinary skill in the art, it is appropriate to be construed with its plain and ordinary meaning.  *See 3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1329 (Fed. Cir. 2013) (holding that, where a "patentee offers an ascertainable definition in the body of the claim" no construction deviating from plain and ordinary meaning is required "unless a narrower construction is required by the specification or prosecution history.").

## V.  THE '980 PATENT

### A.  "spatial separating means for simultaneously spatially separating at least a first and a second group of light from said series of optical signals"

| **Finisar's Proposed Construction**: § 112(6) | **Nistica's Proposed Construction**: [3] § 112(6) |
|---|---|
| **Function**:  simultaneously spatially separating at least a first and a second group of light from said series of optical signals | **Function**:  simultaneously spatially separating at least a first and a second group of light from said series of optical signals |
| **Corresponding Structure**:  polarization manipulation element and/or series of optical power elements as described in '980 patent at 5:4-14, and equivalents thereto, and as further described in intrinsic record listed in the Joint Claim Construction Statement (D.I. 98-1 at 5-6). | **Corresponding Structure**: Compensating birefringent wedge (CBRW). |

### i.  Nistica's Previously Undisclosed Supporting Evidence And Arguments Are Fatally Flawed

---

[3] As discussed in detail in Finisar's Motion to Strike, Nistica now relies on a wholly new legal theory to support its proposed corresponding structure for the "spatial separating means" than was disclosed in the meet and confers and Nistica's expert's declaration and testimony.  To accomplish this switch, Nistica now relies on citations to intrinsic evidence that was never disclosed to Finisar in the JCCS (D.I. 98-1) and Nistica's own expert's declaration (D.I. 98-3).

---



The parties' dispute over the corresponding structure for this term centers around whether all of the corresponding structure disclosed for the claimed function should be included (as Finisar proposes) or whether it should be limited to a single component (as Nistica argues). However, Nistica's renewed efforts to show that a CBRW is the only corresponding structure for the "spatial separating means" term fails on a close analysis of Nistica's supporting evidence.

Nistica relies on the disclosures of Figures 3 and 6 of the '980 patent to support its argument that a CBRW is the *only* structure clearly linked to the claim function for the "spatial separating means" term.  (Nistica Br. at 17-18.)  However, Nistica's annotations and analysis of these figures are misleading—it is apparent from a fair inspection of both Figures 3 and 6 that the walk-off crystals depicted as element 115 in Figure 3 and element 215 in Figure 6 ***both independently* perform the agreed-to function** of "simultaneously spatially separating at least a first and a second group of light from said series of optical signals."

Moreover, Nistica's belated citation to Figure 3 of the '980 patent is improper for multiple reasons.  First, Nistica did not disclose its intention to rely on Figure 3 to support its proposed corresponding structure for this disputed term in the JCCS (D.I. 98-1).  Second, Nistica's new reliance on Figure 3 is contradicted by the opinion of Nistica's own expert witness, Dr. Joseph Ford.  Dr. Ford opined that "the applicant limited the scope of the claims to the

embodiments depicted in Figures 6 and 7 in response to a restriction requirement by the examiner" and testified accordingly at his deposition.[4]  (*See* Ford Decl., D.I. 98-3 at ¶ 36; Davis Decl., Ex. 3 (Ford Dep. Tr.) at 114:24-116:21.)  Nistica's newfound reliance on Figure 3 was clearly invented after Nistica reviewed Finisar's Opening Brief and realized its initial position and legal argument were fatally flawed.  But the new arguments are no stronger – they neither improve the merits of Nistica's position, nor narrow the extent of the dispute between the parties.

Finisar agrees that the '980 patent specification discloses a CBRW as one of the components that may perform the agreed-to claimed function for the "spatial separating means."  However, as is apparent from Figures 3 and 6, and the rest of the '980 patent specification, there are many other components that are disclosed as performing the claimed function—specifically, polarization manipulation element and/or series of optical power elements.  *See* '980 patent at 5:4-14.  Only Finisar's proposed corresponding structure captures the full scope of structure clearly linked to this means-plus-function limitation in the '980 patent specification.  (Nistica Br. at 15-16.)  Because Nistica's proposal does not include all of the corresponding structure clearly disclosed for performing the agreed-to claimed function, Nistica's proposal must be rejected.

### ii.  Finisar's Corresponding Structure Proposal Is Accurate And Tied To The Structural Disclosures In The Patent

Nistica tries to criticize Finisar's proposed construction for being too closely tied to the '980 patent specification.[5]  (Nistica Br. 19-20.)  However, Finisar's proposal for corresponding structure comes directly from the explicit description of "spatial separating means" set forth in

---

[4] In its Responsive Brief, Nistica criticizes Finisar for addressing its prosecution history disclaimer argument set forth by Nistica during the parties' meet and confers and ***in Dr. Ford's declaration***, and improperly characterizes Finisar for prematurely considering issues of prosecution history estoppel, which Finisar's Opening Brief explained are relevant only to infringement analysis. (Nistica Br. at 18-19.)  Because Finisar had no indication that Nistica intended to abandon its previously expressed position and expert's opinion when it was drafting its Opening Brief, such arguments were proper.  Indeed, they were apparently so powerful that they forced Nistica to abandon its prosecution history disclaimer positions.

[5] Lengthy specification citations are commonly included in construction of means-plus-function claim terms where there is ample disclosure of corresponding structure in the specification. *See Applied Signal Tech., Inc. v. Emerging Markets Comm'ns, Inc.*, Case No. 09-cv-2180-SBA, 2011 WL 500786, at *19 (N.D. Cal. Feb. 9, 2011).

---

the "Summary of the Invention" that clearly links the agreed-to claimed function to the

corresponding structure proposed by Finisar—a polarization manipulation element and/or a series

of optical power elements:

> The spatial separating means preferably can include a polarisation manipulation element separating a first and second series of predetermined polarisations from predetermined ones of the ports and projecting the first series in a first angular direction and the second series in a second angular direction.  The spatial separation means preferably can also include a series of optical power elements offset from the ports separating at least a first and second series of predetermined optical signals from predetermined ones of the ports and projecting the first series in a first angular direction and the second series in a second angular direction.

('980 patent at 5:4-14.)

Moreover, Nistica's criticisms of Finisar's proposed corresponding structure for including

the word "element" in the context of a "polarization manipulation element" and "series of optical

power elements" and insinuations that Finisar's proposal tries to "hide the ball" in an effort to

capture "all possible structures" are baseless.  In an effort to cast aspersions on the use of the

word "element," Nistica cites inapposite cases—*Mass. Inst. of Tech. v. Abacus Software*, 462

F.3d 1344, 1354 (Fed. Cir. 2006) and *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1214

(Fed. Cir. 1998)—that stand for the proposition that the word "element" in *claim language* may

sometimes suggest that the claim language should be construed as a means-plus-function claim

term in accordance with 35 U.S.C. § 112(6).  These cases do *not* pertain to the identification of

*corresponding structure* for a means-plus-function claim term being construed under 35 U.S.C. §

112(6).

Moreover, the term "element" in the context of descriptions of optical devices (e.g.,

"optical element") is common and well understood.  The terms "polarization manipulation

element" and "series of optical power elements" indicate specific categories of optical elements

that can perform the agreed-to function.  The Federal Circuit has held that "[w]hether a

specification adequately sets forth structure corresponding to a claimed function is viewed from

the perspective of one skilled in the art."  *HTC Corp. v. IPCom GmbH & Co.*, 667 F.3D 1270,

1278-80 (Fed. Cir. 2012) (holding that corresponding structure was adequately disclosed where

the specification referred to a generic processor and transceiver without specifying the circuitry

1  therefor); *Linear Tech. Group v. Impala Linear Corp.*, 379 F.3d 1311, 1322 (Fed. Cir. 2004)

2  (reversing district court's determination that a "PWM circuit" was too generic to be

3  corresponding structure for a means-plus-function term).  Here, in connection with the "spatial

4  separation means," the '980 patent specification's reference to a "polarization manipulation

5  element" and "series of optical power elements" is clear to one of ordinary skill in the art—

6  indeed, the referenced corresponding structure is clearly set forth in the patent:

7
> a series of optical power elements which can include spherical microlens arrays [. . .];
> optical power elements including cylindrical lenses with a first focal length and
> cylindrical mirrors with a second focal length [ . . . ]; polarization diversity elements
> including a birefringent walk-off crystal composite λ/2 waveplates for 1550 nm light,
> compensating birefringent wedges, and/or Faraday rotators.

8

9

10  ('980 patent at 8:12-17.)  Consequently, Finisar's proposed corresponding structure is easily

11  understood by a person having ordinary skill in the art and accurately captures the full scope of

12  the corresponding structure disclosed in the '980 patent—but does not reach any further than the

13  '980 patent disclosure and equivalents thereto.  *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315,

14  1329-30 (Fed. Cir. 2012) ("the written description may disclose distinct and alternative structures

15  for performing the claimed function and that the performance of any one of which (or their

16  equivalents) would fall within the scope of the claims where nothing in the patent requires a

17  single structural embodiment corresponding to the [means at issue].") (internal quotations

18  omitted).  In contrast, Nistica continues its vexed pursuit of a non-infringement position by

19  ignoring structure clearly linked to the "spatial separating means" in the '980 patent specification

20  in its proposed corresponding structure.  Because Finisar's proposed construction is true to the

21  '980 patent disclosure and abides Federal Circuit precedent, Finisar's position should be adopted.

22  **B.  "wavelength processing means for separately processing each of the
23       separated wavelengths of said first and second group"**

24
| **Finisar's Proposed Construction**: § 112(6) | **Nistica's New[2,6] Proposed Construction**: § 112(6) |
| --- | --- |

25

26
27  ⁶ Inclusion of the words "and equivalents" is common practice where equivalents to
corresponding structure are intended to be captured in a corresponding structure.  *See Avocet Sports Tech.,
Amer Sports Corp.*, C 08-04264, 2009 WL 4907445, at *8 (N.D. Cal. Dec. 14, 2009).  Nevertheless,
Nistica does not dispute that Finisar is entitled to equivalents to the appropriate corresponding structure.
28  (Nistica Br. at 24.)

---

| | |
|---|---|
| **Function:**  separately processing each of the separated wavelengths of said first and second group [of light]<br><br>**Corresponding Structure:**  a spatial light modulator having a plurality of independently addressable pixels as described in the '980 patent at 5:26-30, and equivalents thereto, and as further described in intrinsic record listed in the Joint Claim Construction Statement (D.I. 98-1 at 1-2). | **Function**:  separately processing each of the separated wavelengths of the first and second group of light ~~from the series of optical signals~~<br><br>**Corresponding Structure**:  a liquid crystal on silicon Optical Phased Matrix Coupling device having two ~~groups of spatially separated wavelength channels~~ series of elongated cell regions |

### i.  Nistica Admits That Its Proposed Function Includes Superfluous Language

Finisar notes that Nistica has indicated its willingness to agree to the claimed function proposed by Finisar for this term.  (Nistica Br. at 22.)  Consequently, Finisar respectfully requests that the Court adopt its proposed function for this disputed term.

### ii.  Nistica's New Corresponding Structure Proposal Impermissibly Introduces New Issues And Lacks Specification Support

The parties dispute whether the corresponding structure for the "wavelength processing means" should include all of the corresponding structure set forth in the patent specification (as Finisar asserts) or be restricted to merely a subset of the corresponding structure disclosed (as Nistica argues).  Nistica introduces a brand new proposal for the corresponding structure of the "wavelength processing means" term in its Responsive Brief that was not timely disclosed in the JCCS and differs from the proposal advocated by Nistica's expert, Dr. Ford, in his declaration. (D.I. 98-1 at 1; D.I. 98-3 at 10.)  Indeed, Nistica essentially admits that it changed its proposed corresponding structure upon consideration of the strength of Finisar's arguments in Finisar's Opening Brief—but rather than focusing the issues, as Nistica asserts, this new construction wholly changes the issues through the introduction of a different, equally faulty proposed construction from Nistica.[7]

---

[7] Nistica tries to refute certain of Finisar's criticisms expressed in its Opening Brief as "untrue" or irrelevant following Nistica's wholesale change in position.  (Nistica Br. at 23.)  The only reason Nistica is able to make such attacks is because it has changed its positions—introducing a brand new proposed corresponding structure and relying on Figure 3 of the '980 patent as support for its proposed

1       Moreover, Nistica's proposed corresponding structure for the "wavelength processing

2  means" is ***not*** specifically tied to the claimed function, as Nistica contends.  Nowhere in the

3  specification passages cited by Nistica does the patent clearly indicate that a "liquid crystal on

4  silicon Optical Phased Matrix Coupling device having two groups of spatially separated

5  wavelength channels" is the "wavelength processing means" or that this is the only structure

6  capable of performing the claimed function.  (Nistica Br. at 22-23.)  Nistica's new proposal for

7  corresponding structure is apparently derived from column 18, lines 32-42 of the '980 patent

8  specification.  (*Id*. at 21, n. 9.)  This section of the specification discusses only one particular

9  embodiment of the '980 patent invention, and Nistica articulates no reason to limit the

10  corresponding structure for this term to only this particular embodiment, to the exclusion of the

11  many others included in the '980 specification, including a liquid crystal on silicon ("LCOS")

12  SLM.  *See Dealertrack, Inc. v. Huber*, 674 F.3d at 1329-30; Davis Decl., Ex. 4 (Patent Case

13  Management Judicial Guide, 2nd Ed., 2012 at p. 5-90).

14       Moreover, the doctrine of claim differentiation provides a presumption that each claim in

15  a patent has a distinct scope.  *See Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*, 206

16  F.3d 1440, 1446 (Fed. Cir. 2000) ("Under the doctrine of claim differentiation, it is presumed that

17  different words used in different claims result in a difference in meaning and scope for each of

18  the claims.").  Claim 8 of the '980 patent is dependent on claim 1 and adds the limitation that

19  "wherein the optical signals received by said wavelength processing means are in the form of

20  wavelength separated elongated bands."  ('980 patent at cl. 8.)  Here, claim differentiation

21  mitigates against incorporating Nistica's proposed corresponding structure limitation of "having

22  two series of elongated cell regions" to the extent that this addition would cause "wavelength

23  processing means" to be construed in a manner that eliminates the distinction in claim scope

24  between claim 1 and claim 8 of the '980 patent.  (*See id.* at cls. 1 & 8.)  Each of the

25  aforementioned bases indicates the impropriety of Nistica's new proposed corresponding

26  structure and, independently, provides the Court with basis to reject Nistica's new proposal.

27

28

corresponding structure for the first time.

### iii. Finisar's Proposed Corresponding Structure Is In Accord With Legal Requirements For Construing Means-Plus-Function Terms And True To The Patent Specification

Despite Nistica's suggestions to the contrary, Finisar's proposed construction for this term is true to the disclosure of corresponding structure and incorporates each of the many examples of structure set forth in the '980 patent specification.[8]  Moreover, the "Summary of the Invention" expressly states that the "wavelength processing means" has a corresponding structure as Finisar proposes at column 5, lines 26-30.  Nistica's argument that the claimed function performed by the wavelength processing means is not set forth in the sentence cited above carries no water—*there is only one* "wavelength processing means" referred to throughout the patent and it is the same "wavelength processing means" that performs the function of "separately processing each of the separated wavelengths of said first and second group [of light]."  Indeed, if one reads the sentence preceding Nistica's selected excerpt it is clear that Finisar's proposed corresponding structure is explicitly tied to the function of "separately processing":

> The wavelength processing means preferably can include a series of zones and the wavelength processing means *separately manipulates the phase front of light* striking each of the zones in order to control the output destination of wavelengths striking a particular zone.  **The wavelength processing means can comprise a spatial light modulator having a plurality of independently addressable pixels with the pixels being manipulated in a predetermined manner so as to manipulate the phase front striking a corresponding zone.**

('980 patent at 5:22-30 (emphasis added; Nistica's citation shown in bold).)  Thus, there should be no dispute that Finisar's proposed corresponding structure is clearly linked to the claimed function and, consequently, is proper under Federal Circuit precedents.  *See Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1377 (Fed. Cir. 2001) (holding that section heading entitled "Electronic Sensing" and subsequent description of four sensors in that section sufficiently linked these sensors with the "electronic sensing means" claim limitation).

---

[8] As noted above, lengthy specification citations are commonly included in construction of means-plus-function claim terms where there is ample disclosure of corresponding structure in the specification. *See Applied Signal Tech., Inc.*, 2011 WL 500786 at *19.

1    Dated:   July 3, 2014                  Respectfully Submitted,

2                                        _/s/ David C. Radulescu_____

3
David C. Radulescu, Ph.D. (*pro hac vice*)

4
david@radulescullp.com
Tigran Vardanian (*pro hac vice*)

5
tigran@radulescullp.com
Robin M. Davis (*pro hac vice*)

6
robin@radulescullp.com
RADULESCU LLP

7
136 Madison Avenue, 6th Floor
New York, NY 10016

8
Telephone: (646) 502-5950

9
Facsimile: (646) 502-5959

10
Christopher J. Cox (151650)

11
chris.cox@weil.com
WEIL GOTSHAL & MANGES LLP

12
201 Redwood Shores Parkway
Redwood Shores, CA 94065

13
Telephone: (650) 802-3029
Facsimile: (650) 802-3100

14

15
**Attorneys for Plaintiff**

16
**FINISAR CORPORATION**

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I, Lyndsey Przybylski, hereby declare:

I am over the age of eighteen years and not a party to the within action.  My business address is Radulescu LLP, 136 Madison Avenue, 6th Floor, New York, New York 10016.

On July 3, 2014, I caused the following documents, described as:

**PLAINTIFF FINISAR CORPORATION'S REPLY CLAIM CONSTRUCTION BRIEF PURSUANT TO PATENT L.R. 4-5(c)**

to be served via ECF electronic service upon all counsel of record in the above captioned matter.

I declare under penalty of perjury that the above is true and correct.  Executed on July 3, 2014, in New York, New York.

*/s/ Lyndsey Przybylski*
Lyndsey Przybylski