1   ROBERT F. KRAMER (Bar No. 181706)
    Email: robert.kramer@dentons.com
2   JENNIFER D. BENNETT (Bar No. 235196)
    Email: jennifer.bennett@dentons.com
3   RUSSELL S. TONKOVICH (Bar No. 233280)
    Email. russell.tonkovich@dentons.com
4   C. GIDEON KORRELL (Bar No. 284890)
    Email: gideon.korrell@dentons.com
5   **DENTONS US LLP**
    1530 Page Mill Road, Suite 200
6   Palo Alto, CA 94304-1125
    Telephone:  (650) 798-0300
7   Facsimile:   (650) 798-0310

8   SHAILENDRA MAHESHWARI (*Pro Hac Vice*)
    Email: shailendra.maheshwari@dentons.com
9   **DENTONS US LLP**
    1301 K Street, NW
10  Suite 600, East Tower
    Washington, D.C. 20005-3364
11  Telephone:  (202) 408-6400
    Facsimile:   (202) 408-6399

12
    JOEL N. BOCK (*Pro Hac Vice*)
13  Email: joel.bock@dentons.com
    **DENTONS US LLP**
14  1221 Avenue of the Americas
    New York, NY 10020-1089
15  Telephone:  (212) 768 6700
    Facsimile:   (212) 768 6800

16
    ***Attorneys for Defendant***
17  ***NISTICA, INC.***

18              **UNITED STATES DISTRICT COURT**
19            **NORTHERN DISTRICT OF CALIFORNIA**
                    **SAN JOSE DIVISION**
20

21  FINISAR CORP.                          Case No. 5:13-cv-03345-BLF

22              Plaintiff,                  **SECOND AMENDED ANSWER TO**
                                            **COMPLAINT AND COUNTERCLAIMS**
23              v.
                                            **DEMAND FOR JURY TRIAL**
24  NISTICA, INC.,

25              Defendant.

26

27

28

                                    1

Defendant Nistica, Inc. ("Nistica") by and through the undersigned counsel, files this Second Amended Answer and Counterclaims to Plaintiff Finisar Corporation's ("Finisar" or "Plaintiff") Complaint For Patent Infringement as follows:

**PARTIES**

1. Defendant lacks sufficient knowledge and information to admit or deny and on that basis denies each and every allegation in paragraph 1 of the Complaint.

2. Defendant admits the allegations in paragraph 2 of the Complaint.

**JURISDICTION AND VENUE**

3. Defendant admits this Court has subject matter jurisdiction over actions arising under the Patent Laws of the United States. Defendant admits that Finisar purports to state a claim for patent infringement arising under the laws of the United States, Title 35 of the United States Code. Defendant specifically denies infringing any valid claim of the asserted patents.

4. Nistica admits that personal jurisdiction and venue are proper in this district, and denies each and every remaining allegation in paragraph 4 of the Complaint.

5. Nistica admits that personal jurisdiction and venue are proper in this district, and denies each and every remaining allegation in paragraph 5 of the Complaint.

**INTRADISTRICT ASSIGNMENT**

6. Defendant denies the allegations in paragraph 6 of the Complaint.

**THE PATENTS-IN-SUIT**

7. Defendant admits that what purports to be a copy of United States Patent No. 6,956,687 ("the '687 patent") is attached to Complaint as Exhibit A. Defendant further admits that the face of what appears to be the '687 patent indicates that its title is "Optical Blocking Filter Having an Array of Micro-Mirrors," and that the issue date is October 18, 2005. Defendant denies each and every remaining allegation in paragraph 7 of the Complaint.

8. Defendant admits that what purports to be a copy of United States Patent No. 7,123,833 ("the '833 patent") is attached to Complaint as Exhibit B. Defendant further admits that the face of what appears to be the '833 patent indicates that its title is "Dynamically Reconfigurable Optical Smart Node," and that the issue date is October 17, 2006. Defendant denies each and every remaining allegation in

2

paragraph 8 of the Complaint.

9.   Defendant admits that what purports to be a copy of United States Patent No. 7,126,740 ("the '740 patent") is attached to Complaint as Exhibit C.  Defendant further admits that the face of what appears to be the '740 patent indicates that its title is "Multifunctional Optical Device Having a Spatial Light Modulator with an Array of Micro-Mirrors," and that the issue date is October 24, 2006. Defendant denies each and every remaining allegation in paragraph 9 of the Complaint.

10. Defendant admits that what purports to be a copy of United States Patent No. 6,430,328 ("the '328 patent") is attached to Complaint as Exhibit D.  Defendant further admits that the face of what appears to be the '328 patent indicates that its title is "Optical Switch," and that the issue date is August 6, 2002.  Defendant denies each and every remaining allegation in paragraph 10 of the Complaint.

11. Defendant admits that what purports to be a copy of United States Patent No. 7,092,599 ("the '599 patent") is attached to Complaint as Exhibit E.  Defendant further admits that the face of what appears to be the '599 patent indicates that its title is "Wavelength Manipulation System and Method," and that the issue date is August 15, 2006.  Defendant denies each and every remaining allegation in paragraph 11 of the Complaint.

12. Defendant admits that what purports to be a copy of United States Patent No. 7,397,980 ("the '980 patent") is attached to Complaint as Exhibit F.  Defendant further admits that the face of what appears to be the '980 patent indicates that its title is "Dual-Source Optical Wavelength Processor," and that the issue date is July 8, 2008.  Defendant denies each and every remaining allegation in paragraph 12 of the Complaint.

**FACTUAL BACKGROUND**

13. Defendant lacks sufficient knowledge and information to admit or deny and on that basis denies each and every allegation in paragraph 13 of the Complaint.

14. Defendant lacks sufficient knowledge and information to admit or deny and on that basis denies each and every allegation in paragraph 14 of the Complaint.

15. Defendant admits that it was founded in 2005 and that it is an affiliate of Fujikura, Ltd. Defendant admits that it markets certain products, including products under the name FULL FLEDGE®. Defendant denies each and every remaining allegation in paragraph 15 of the Complaint.

3

16. Defendant admits the allegations in paragraph 16 of the Complaint.

## **FIRST CLAIM**

### **(Alleged Infringement of the 6,956,687 Patent)**

17. Defendant incorporates by reference paragraphs 1-16 of the Answer as if fully set forth herein.

18. Defendant denies the allegations in paragraph 18 of the Complaint and denies that it has or continues to infringe one or more valid claims of the '687 patent.

19. Defendant denies the allegations in paragraph 19 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '687 patent.

20. Defendant denies the allegations in paragraph 20 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '687 patent.

21. Defendant denies the allegations in paragraph 21 of the Complaint, including the willfulness allegation, and denies that it has or continues to infringe one or more valid claims of the '687 patent.

22. Defendant denies the allegations in paragraph 22 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '687 patent.

23. Defendant denies the allegations in paragraph 23 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '687 patent.

## **SECOND CLAIM**

### **(Alleged Infringement of the 7,123,833 Patent)**

24. Defendant incorporates by reference paragraphs 1-23 of the Answer as if fully set forth herein.

25. Defendant denies the allegations in paragraph 25 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '833 patent.

26. Defendant denies the allegations in paragraph 26 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '833 patent.

27. Defendant denies the allegations in paragraph 27 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '833 patent.

4

28. Defendant denies the allegations in paragraph 28 of the Complaint, including the willfulness allegation, and denies that it has or continues to infringe one or more valid claims of the '833 patent.

29. Defendant denies the allegations in paragraph 29 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '833 patent.

30. Defendant denies the allegations in paragraph 30 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '833 patent.

## THIRD CLAIM

### (Alleged Infringement of the 7,126,740 Patent)

31. Defendant incorporates by reference paragraphs 1-30 of the Answer as if fully set forth herein.

32. Defendant denies the allegations in paragraph 32 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '740 patent.

33. Defendant denies the allegations in paragraph 33 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '740 patent.

34. Defendant denies the allegations in paragraph 34 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '740 patent.

35. Defendant denies the allegations in paragraph 35 of the Complaint, including the willfulness allegation, and denies that it has or continues to infringe one or more valid claims of the '740 patent.

36. Defendant denies the allegations in paragraph 36 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '740 patent.

37. Defendant denies the allegations in paragraph 37 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '740 patent.

## FOURTH CLAIM

### (Alleged Infringement of the 6,430,328 Patent)

38. Defendant incorporates by reference paragraphs 1-37 of the Answer as if fully set forth herein.

**SECOND AMENDED ANSWER AND COUNTERCLAIMS**          CASE NO. 5:13-cv-03345-BLF

39. Defendant denies the allegations in paragraph 39 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '328 patent.

40. Defendant denies the allegations in paragraph 40 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '328 patent.

41. Defendant denies the allegations in paragraph 41 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '328 patent.

42. Defendant denies the allegations in paragraph 42 of the Complaint, including the willfulness allegation, and denies that it has or continues to infringe one or more valid claims of the '328 patent.

43. Defendant denies the allegations in paragraph 43 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '328 patent.

44. Defendant denies the allegations in paragraph 44 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '328 patent.

## FIFTH CLAIM

### (Alleged Infringement of the 7,092,599 Patent)

45. Defendant incorporates by reference paragraphs 1-44 of the Answer as if fully set forth herein.

46. Defendant denies the allegations in paragraph 46 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '599 patent.

47. Defendant denies the allegations in paragraph 47 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '599 patent.

48. Defendant denies the allegations in paragraph 48 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '599 patent.

49. Defendant denies the allegations in paragraph 49 of the Complaint, including the willfulness allegation, and denies that it has or continues to infringe one or more valid claims of the '599 patent.

50. Defendant denies the allegations in paragraph 50 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '599 patent.

**SECOND AMENDED ANSWER AND COUNTERCLAIMS**          CASE NO. 5:13-cv-03345-BLF

51. Defendant denies the allegations in paragraph 51 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '599 patent.

## SIXTH CLAIM

### (Alleged Infringement of the 7,397,980 Patent)

52. Defendant incorporates by reference paragraphs 1-51 of the Answer as if fully set forth herein.

53. Defendant denies the allegations in paragraph 53 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '980 patent.

54. Defendant denies the allegations in paragraph 54 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '980 patent.

55. Defendant denies the allegations in paragraph 55 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '980 patent.

56. Defendant denies the allegations in paragraph 56 of the Complaint, including the willfulness allegation, and denies that it has or continues to infringe one or more valid claims of the '980 patent.

57. Defendant denies the allegations in paragraph 57 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '980 patent.

58. Defendant denies the allegations in paragraph 58 of the Complaint, and denies that it has or continues to infringe one or more valid claims of the '980 patent.

## PRAYER FOR RELIEF

Defendant denies that Plaintiff is entitled to the relief sought by its Prayer for Relief as set forth in paragraphs (a) through (g) of the Complaint.

## DEMAND FOR JURY TRIAL

Defendant admits that Plaintiff has demanded a trial by jury of this action.

## AFFIRMATIVE DEFENSES

In addition to the defenses set forth below, Defendant expressly reserves the right to allege additional defenses, including, without limitation, inequitable conduct and laches as they become known throughout the course of discovery.

7

## FIRST AFFIRMATIVE DEFENSE: Non-Infringement of the '328 Patent

Defendant has not made, used, offered to sell, and/or sold within the United States and/or imported into the United States any products that practice each and every element of any valid claims of the '328 Patent. The products that Plaintiff has identified as infringing one or more claims of the '328 Patent do not infringe any valid claims of this patent because they lack certain elements recited in the one or more claims of the '328 Patent. Plaintiff is not entitled to any relief against Defendant because Defendant has not directly, indirectly, contributorily, or by inducement infringed any valid claim of the '328 patent either literally or under the doctrine of equivalents.

## SECOND AFFIRMATIVE DEFENSE: Non-Infringement of the '687 Patent

Defendant has not made, used, offered to sell, and/or sold within the United States and/or imported into the United States any products that practice each and every element of any valid claims of the '687 Patent. The products that Plaintiff has identified as infringing one or more claims of the '687 Patent do not infringe any valid claims because they lack certain elements recited in the one or more claims of the '687 Patent. Plaintiff is not entitled to any relief against Defendant because Defendant has not directly, indirectly, contributorily, or by inducement infringed any valid claim of the '687 patent either literally or under the doctrine of equivalents

## THIRD AFFIRMATIVE DEFENSE: Non-Infringement of the '833 Patent

Defendant has not made, used, offered to sell, and/or sold within the United States and/or imported into the United States any products that practice each and every element of any valid claims of the '833 Patent. The products that Plaintiff has identified as infringing one or more claims of the '833 Patent do not infringe any valid claims of this patent because they lack certain elements recited in the one or more claims of the '833 Patent. Plaintiff is not entitled to any relief against Defendant because Defendant has not directly, indirectly, contributorily, or by inducement infringed any valid claim of the '833 patent either literally or under the doctrine of equivalents.

## FOURTH AFFIRMATIVE DEFENSE: Non-Infringement of the '740 Patent

Defendant has not made, used, offered to sell, and/or sold within the United States and/or imported into the United States any products that practice each and every element of any valid claims of the '740 Patent. The products that Plaintiff has identified as infringing one or more claims of the '740

Patent do not infringe any valid claims of this patent because they lack certain elements recited in the one or more claims of the '740 Patent. Plaintiff is not entitled to any relief against Defendant because Defendant has not directly, indirectly, contributorily, or by inducement infringed any valid claim of the '740 patent either literally or under the doctrine of equivalents.

### FIFTH AFFIRMATIVE DEFENSE: Non-Infringement of the '599 Patent

Defendant has not made, used, offered to sell, and/or sold within the United States and/or imported into the United States any products that practice each and every element of any valid claims of the '599 Patent. The products that Plaintiff has identified as infringing one or more claims of the '599 Patent do not infringe any valid claims because they lack certain elements recited in the one or more claims of the '599 Patent. Plaintiff is not entitled to any relief against Defendant because Defendant has not directly, indirectly, contributorily, or by inducement infringed any valid claim of the '599 patent either literally or under the doctrine of equivalents.

### SIXTH AFFIRMATIVE DEFENSE: Non-Infringement of the '980 Patent

Defendant has not made, used, offered to sell, and/or sold within the United States and/or imported into the United States any products that practice each and every element of any valid claims of the '980 Patent. The products that Plaintiff has identified as infringing one or more claims of the '980 Patent do not infringe any valid claims of this patent because they lack certain elements recited in the one or more claims of the '980 Patent. Plaintiff is not entitled to any relief against Defendant because Defendant has not directly, indirectly, contributorily, or by inducement infringed any valid and enforceable claim of the '980 patent either literally or under the doctrine of equivalents.

### SEVENTH AFFIRMATIVE DEFENSE: Invalidity of the '328 Patent

One or more claims of the '328 patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103 and 112. One or more claims of the '328 patent, *e.g.,* claim 33, on information and belief, recite nothing more than laws of nature and thus are invalid. One or more claims of the '328 patent are also invalid under 35 U.S.C. §§ 102 and/or 103. By way of example only, one of more claims are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more of U.S. Patents Nos. 6,766,081, 6,268,952, 6,097,859, 6,075,424, 6,020,986, 5,943,155,

5,506,919, 5,504,575, 4,498,730, 4,404,402, 3,299,368 and European Patent Publication No. EP 1099966 A2, and articles entitled "Fault-Tolerant Dense Multiwavelength Add-Drop Filter with a Two-Dimensional Digital Micromirror Device," by N. A. Riza et al., APPLIED OPTICS vol. 37, No. 27, at 6355-61, and "Versatile Multi-Wavelength Fiber-Optic Switch and Attenuator Structures Using Mirror Manipulations," by N. A. Riza et al., Optics Communications 169, at 233-244. One or more claims of the '328 patent are invalid under 35 U.S.C. § 112 because the '328 patent fails to satisfy the written description, enablement, and definiteness requirements. One or more of the claims fail to have written description support in the specification. Moreover, the specification does not enable one of ordinary skill in the relevant art to make and use the claimed inventions without undue experimentation. Additionally, one or more claims of the '328 patent are invalid under 35 U.S.C. § 112 because the claims do not clearly point out and distinctly claim the inventive subject matter and/or a person of ordinary skill in the relevant art would not be able to discern the meaning of the claims.

## EIGHTH AFFIRMATIVE DEFENSE: Invalidity of the '687 Patent

One or more claims of the '687 patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103 and 112. One or more claims of the '687 patent are invalid under 35 U.S.C. §§ 102 and/or 103. By way of example only, one of more claims are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more of U.S. Patent Nos. 6,766,081, 6,661,948, 6,647,164, 6,430,328, 6,636,654, 6,525,863, 6,459,484, 6,434,291, 6,263,127, 6,246,818, 6,222,954, 6,204,946, 6,160,928, 6,128,077, 6,097,859, 5,915,063, 5,774,604, 5,729,386, 5,699,462, 5,504,575, 5,166,766, 5,158,420, 5,121,239, 4,819,084, 4,799,795, 4,626,066, RE 39,397, and U.S. Patent Publication Nos. 2002-0081070 A1, 2002-0009257 A1, 2001-0046350 A1, and Foreign Patent Publication No. EP 1099966 A2 and the articles entitled "Two—axis Micromirror Scanner," by M. D. Johnson et al., SPIE vol. 3787, Jul. 1999, pps. 88-95, "Performance of a 576x576 Optical Cross Connect," by H. Laor et al., National Fiber Optic Engineers Conference, Sep. 26-30, 1999, pps. 276-281, "Liquid—crystal Phase Modulator For Unpolarized Light," by G. Love, Applied Optics, vol. 32, No. 13, May 1, 1994, pps 2222-2223, "Demonstration of a Liquid—crystal adaptive alignment tweeker for high—speed Infrared Band Fiber—Fed Free—space Systems," by N. Riza et al., Opt. Eng. 37(6), Jun.

1998, 1876-1880, "Reconfigurable Optical Wireless," by N. Riza, IEEE Lasers and Electro—Optics Society 1999 Annual Meeting, vol. 1, pp. 70-71, "Digitally Controlled Fault—Tolerant Multiwavelength Programmable Fiber—Optic Attenuator Using a Two—Dimensional Digital Micromirror Device," by N. Riza et al., 1999 Optical Society of America, "Multiwavelength Three Dimensional 2x2 Fiber—Optic Switch Structure Using Small Tilt Micro—Mirrors," by N. Riza et al., SPIE vol. 3749, pps 470-471, "Synchronous Amplitude and Time Control for an Optimum Dynamic Range Variable Photonic Delay Line," by N. Riza et al., Applied Optics, vol. 38, No. 11, Apr. 10, 1999, 2309-2318, "Robust Packaging of Photonic RF Modules Using Ultra—Thin Adaptive Optical Interconnect Devices," by N. Riza et al., SPIE vol. 3160, pps. 170-176, "Fault-Tolerant Dense Multiwavelength Add-Drop Filter with a Two-Dimensional Digital Micromirror Device," by N. A. Riza et al., APPLIED OPTICS vol. 37, No. 27, at 6355-61, "Two Dimensional Digital Micromirror Device-based 2 x 2 Fiber Optic Switch Array," by N. A. Riza et al., IEEE Lasers and Electro-Optics Society Annual Meeting, vol. 2, at 413-14, and "Versatile Multi-Wavelength Fiber-Optic Switch and Attenuator Structures Using Mirror Manipulations," by Nabeel A. Riza and Sarun Sumriddetchkajorn, Optics Communications 169, at 233-244, and "General Formula for Coupling—loss Characterization of Single—Mode Fiber Collimators by Use of Gradient—Index Rod Lenses," by S. Yuan et al., Applied Optics, vol. 38. No. 15, May 20, 1999, pp. 3214-3222.

One or more claims of the '687 patent are invalid under 35 U.S.C. § 112 because the '687 patent fails to satisfy the written description, enablement, and definiteness requirements. One or more of the claims fail to have written description support in the specification. Moreover, the specification does not enable one of ordinary skill in the relevant art to make and use the claimed inventions without undue experimentation. Additionally, one or more claims of the '687 patent are invalid under 35 U.S.C. § 112 because the claims do not clearly point out and distinctly claim the inventive subject matter and/or a person of ordinary skill in the relevant art would not be able to discern the meaning of the claims.

## NINTH AFFIRMATIVE DEFENSE: Invalidity of the '833 Patent

One or more claims of the '833 patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103 and 112. One or more claims of the '833 patent are invalid under 35 U.S.C. §§ 102 and/or 103. By way of example only, one of more claims are

11

invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more of U.S. Patent Nos. 6,483,631, 6,430,328, 6,344,910, 6,275,322, 6,263,123, 6,249,365, 6,097,859, 6,061,171, 5,923,036, 5,870,173, 5,822,222, 5,745,260, 5,312,513, 5,208,880, 4,790,566, RE39,397, and U.S. Patent Publication Nos. 2002-0081070 A1, 2002-0071627 A1, 2002-0067887 A1, 2002-0034356 A1, 2002-0034356 A1, and Foreign Patent Publication Nos. EP 1211534 A1, EP 1205781 A2, WO 0101611 A3, and the articles entitled "Low insertion loss packaged and fibre connectorised MEMS reflective optical switch," by V. Aksyuk et al., Electronics Letters, vol. 34, No. 14, at pp. 1413-1414, "A Fiber Connectorized MEMS Variable Optical Attenuator," by B. Barber et al., IEEE Photonics Technology Letters, vol. 10, No. 9, at pp. 1262-1264, "Variable Optical Attenuator And Optical Multiplexing Subsystem Integration, Control, and Application," by T. Bergman et al., National Fiber Optic Engineers. Conference, 2001 Technical Proceedings, at pp. 954-962, "A Silicon-Based Moving-Mirror Optical Switch," by M. F. Dautartas et al., Journal of Lightwave Technology, vol. 10, No. 8, at pp. 1078-1085, "Dynamic Spectral Power Equalization Using Micro-Opto-Mechanics," by J. E. Ford et al., IEEE Photonics Technology Letters, vol. 10, No. 10, at pp. 1440-1442, "Micro-opto-mechanical beam deflectors," by S. Glockner et al., Optical Engineering, at pp. 1339-1345, and "Fault-tolerant dense multiwavelength add-drop filter with a two-dimensional digital micromirror device," by N.A. Riza et al., Applied Optics, vol. 37, No. 27, at pp. 6355-6361. One or more claims of the '833 patent are invalid under 35 U.S.C. § 112 because the '687 patent fails to satisfy the written description, enablement, and definiteness requirements. One or more of the claims fail to have written description support in the specification. Moreover, the specification does not enable one of ordinary skill in the relevant art to make and use the claimed inventions without undue experimentation. Additionally, one or more claims of the '833 patent are invalid under 35 U.S.C. § 112 because the claims do not clearly point out and distinctly claim the inventive subject matter and/or a person of ordinary skill in the relevant art would not be able to discern the meaning of the claims.

### TENTH AFFIRMATIVE DEFENSE: Invalidity of the '740 Patent

One or more claims of the '740 patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103 and 112. One or more claims of the '740 patent are invalid under 35 U.S.C. §§ 102 and/or 103. By way of example only, one of more claims are

invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more of U.S. Patent Nos. 6,430,328, 6,344,910, 6,275,322, 6,263,123, 6,249,365, 6,097,859, 6,061,171, 5,923,036, 5,870,173, 5,822,222, 5,745,260, 5,312,513, 5,208,880, 4,790,566, RE39,397, and U.S. Patent Publication Nos. 2002-0081070 A1, 2002-0071627 A1, 2002-0067887 A1, 2002-0034356 A1, 2002-0034356 A1, Foreign Patent Publication Nos. EP 1211534 A1, EP 1205781 A2, WO 0101611 A3, and articles entitled "Low insertion loss packaged and fibre connectorised MEMS reflective optical switch," by V. Aksyuk et al., Electronics Letters, vol. 34, No. 14, at pp. 1413-1414, "A Fiber Connectorized MEMS Variable Optical Attenuator," by B. Barber et al., IEEE Photonics Technology Letters, vol. 10, No. 9, at pp. 1262-1264, "Variable Optical Attenuator And Optical Multiplexing Subsystem Integration, Control, and Application," by T. Bergman et al., National Fiber Optic Engineers. Conference, 2001 Technical Proceedings, at pp. 954-962, "A Silicon-Based Moving-Mirror Optical Switch," by M. F. Dautartas et al., Journal of Lightwave Technology, vol. 10, No. 8, at pp. 1078-1085, "Dynamic Spectral Power Equalization Using Micro-Opto-Mechanics," by J. E. Ford et al., IEEE Photonics Technology Letters, vol. 10, No. 10, pp. 1440-1442, "Micro-opto-mechanical beam deflectors," by S. Glockner et al., Optical Engineering, at pp. 1339-1345, "Fault-Tolerant Dense Multiwavelength Add-Drop Filter with a Two-Dimensional Digital Micromirror Device," by N. A. Riza et al., APPLIED OPTICS vol. 37, No. 27, at 6355-61, and "Versatile Multi-Wavelength Fiber-Optic Switch and Attenuator Structures Using Mirror Manipulations, by N. A. Riza et al., Optics Communications 169, at 233-244, "Two Dimensional Digital Micromirror Device based 2x2 Fiber-Optic Switch Array," by N. A. Riza et al., 11th Annual Mtg., IEEE Lasers and Electro-Optics, at pp. 413-414, "Small Tilt Micromirror Device-Based Multiwavelength Three Dimensional 2x2 Fiber-Optic Switch Structures," by N. A. Riza et al., Published in the SPIE Journal Optical Engineering circa 1999/Early 2000, at pp. 1-18, "Optical Node For Ultra-Long-Haul Backbone Networks," by L. Zhang et al., National Fiber Optics Engineers Conference, 2001 Technical Proceedings, at pp. 43-46. One or more claims of the '740 patent are invalid under 35 U.S.C. § 112 because the '740 patent fails to satisfy the written description, enablement, and definiteness requirements. One or more of the claims fail to have written description support in the specification. Moreover, the specification does not enable one of ordinary skill in the relevant art to make and use the claimed inventions without undue experimentation. Additionally, one or more claims of the '740 patent are invalid under 35 U.S.C. § 112

13

because the claims do not clearly point out and distinctly claim the inventive subject matter and/or a person of ordinary skill in the relevant art would not be able to discern the meaning of the claims.

**ELEVENTH AFFIRMATIVE DEFENSE: Invalidity of the '599 Patent**

One or more claims of the '599 patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103 and 112. One or more claims of the '599 patent are invalid under 35 U.S.C. §§ 102 and/or 103. By way of example only, one of more claims are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more of U.S. Patents Nos. 8,089,683, 8,335,033, 7,664,395, 7,145,710, 7,126,740, 7,123,833, 6,956,687, 6,917,396, 6,766,081, 6,707,959, 6,634,810, 6,556,320, 6,485,149, 6,441,959, 6,430,320, 6,097,859, RE 39,397, and U.S. Patent Publication Nos. 2003-0021526 A1, 2003-0053175 A1, 2003-0184843 A1, 2003-0174939 A1, 2003-0086150 A1, 2003-0081321 A1, 2003-0095307 A1, 2003-0090756 A1, 2003-0053175 A1, 2002-0176151 A1, 2002-0176149 A1, 2002-0081070 A1, and foreign patent publication nos. WO 2002-103447 A1 and CA 2245389 A1 and articles entitled "Fault-Tolerant Dense Multiwavelength Add-Drop Filter with a Two-Dimensional Digital Micromirror Device," by N. A. Riza et al., APPLIED OPTICS vol. 37, No. 27, at 6355-61, and "Versatile Multi-Wavelength Fiber-Optic Switch and Attenuator Structures Using Mirror Manipulations," by N. A. Riza et al., Optics Communications 169, at 233-244. One or more claims of the '599 patent are invalid under 35 U.S.C. § 112 because the specification does not enable one of ordinary skill in the relevant art to make and use the claimed invention without undue experimentation, including without limitation "spatial manipulation element." One or more of the claims of the '599 patent are invalid under 35 U.S.C. § 112 because the '599 patent fails to satisfy the written description, enablement, and definiteness requirements. One or more of the claims fail to have written description support in the specification. Moreover, the specification does not enable one of ordinary skill in the relevant art to make and use the claimed inventions without undue experimentation. Additionally, one or more claims of the '599 patent are invalid under 35 U.S.C. § 112 because the claims do not clearly point out and distinctly claim the inventive subject matter and/or a person of ordinary skill in the relevant art would not be able to discern the meaning of the claims.

///

14

### TWELFTH AFFIRMATIVE DEFENSE: Invalidity of the '980 Patent

One or more claims of the '980 patent are invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 101, 102, 103 and 112. One or more claims of the '980 patent are invalid under 35 U.S.C. §§ 102 and/or 103. By way of example only, one of more claims are invalid under 35 U.S.C. §§ 102 and/or 103 in view of one or more of U.S. Patents Nos. 8,335,033, 8,089,693, 7,664,395, 7,145,710, 7,126,740, 7,123,833, 7,092,599, 6,956,687, 6,917,396, 6,430,328, and U.S. Patent Publication Nos. 2003-0021526 A1, 2003-0053175 A1, 2002-0176151 A1, 2003-0184843 A1, 2003-0174939 A1, 2003-0086150 A1, 2003-0081321 A1, 2003-0095307 A1, 2003-0090756 A1, 2003-0053175 A1, 2002-0176151 A1, 2002-0176149 A1, 2002-0081070 A1, and articles entitled "Fault-Tolerant Dense Multiwavelength Add-Drop Filter with a Two-Dimensional Digital Micromirror Device," by N. A. Riza et al., APPLIED OPTICS vol. 37, No. 27, at 6355-61, and "Versatile Multi-Wavelength Fiber-Optic Switch and Attenuator Structures Using Mirror Manipulations, by N. A. Riza et al., Optics Communications 169, at 233-244. One or more claims of the '980 patent are invalid under 35 U.S.C. § 112 because the '980 patent fails to satisfy the written description, enablement, and definiteness requirements. One or more of the claims fail to have written description support in the specification. Moreover, the specification does not enable one of ordinary skill in the relevant art to make and use the claimed inventions without undue experimentation. Additionally, one or more claims of the '980 patent are invalid under 35 U.S.C. § 112 because the claims do not clearly point out and distinctly claim the inventive subject matter and/or a person of ordinary skill in the relevant art would not be able to discern the meaning of the claims.

### THIRTEENTH AFFIRMATIVE DEFENSE: Statutory Damages Limitation

Plaintiff has not given notice to Defendant of alleged infringement of the patents-in-suit. To the extent Plaintiff seeks damages for any alleged infringement prior to its actual giving notice of the patents-in-suit to Defendant, its claims are barred pursuant to at least 35 U.S.C. §§ 286 and/or 287 absent Plaintiff and Plaintiff's licensees having marked their products that practice the invention covered by the claims of the patents-in-suit.

///

**SECOND AMENDED ANSWER AND COUNTERCLAIMS**     CASE NO. 5:13-cv-03345-BLF

**FOURTEENTH AFFIRMATIVE DEFENSE: Failure to Mark**

On information and belief, Plaintiff has not given notice to either Defendant or the public that any article or product made, offered for sale, or sold by or on behalf of Plaintiff is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. To the extent any of Plaintiff's products or licensees' products use the subject matter of any claims of the patents-in-suit, Plaintiff's failure to mark its products and its failure to require any licensees to mark their products pursuant to 35 U.S.C. § 287 precludes Plaintiff from recovering damages pursuant to that provision.

**FIFTEENTH AFFIRMATIVE DEFENSE: Prosecution History/Claim Construction Estoppel**

Plaintiff's claims are barred in whole or in part by prosecution history estoppel and/or claim construction estoppel. During prosecution of the patents-in-suit and related patents, the applicants amended their claims and made certain representations to the Patent and Trademark Office for purposes of patentability that are material to the meaning and scope of the claims of the patents-in-suit. As a result of the proceedings before the United States Patent and Trademark Office during the prosecution of the applications that ultimately issued as the patents-in-suit and/or the applications to which the patents-in-suit claim priority, Plaintiff is estopped from asserting any construction of the claims of the patents-in-suit that is sufficiently broad to cover or include any product made, used, sold, offered for sale, or imported into the United States by Defendant, its customers, or any other third party. Further, Plaintiff is estopped from asserting infringement under the doctrine of equivalents based on the amendments to the claims and the representations to the United States Patent and Trademark Office during the prosecution of the applications that ultimately issued as the patents-in-suit and/or the applications to which the patents-in-suit claim priority.

**SIXTEENTH AFFIRMATIVE DEFENSE: Limitation on Recovery of Costs**

Defendant believes one or more claims of the patents-in-suit are invalid. On information and

belief, Plaintiff has entered no disclaimer of the invalid claims at the Patent and Trademark Office before commencement of this suit. Plaintiff is precluded from seeking recovery of its costs under 35 U.S.C. § 288.

### SEVENTEENTH AFFIRMATIVE DEFENSE: Unavailability of Injunctive Relief

To the extent that Plaintiff seeks injunctive relief for alleged infringement of the patents-in-suit, Plaintiff provides no grounds in its Complaint to support such relief. Finisar does not and cannot meet the legal requirements for an injunction. For example, the alleged injury to Plaintiff from alleged infringement of the patents-in-suit is neither immediate nor irreparable; and Plaintiff has an adequate remedy at law for any alleged injury. To the extent Defendant is found to infringe any of the patents-in-suit (which finding would be improper), no basis exists in equity for the grant of equitable relief.

Defendant specifically reserves the right to assert any and all defenses that may become known to it through information developed from investigation, discovery, at trial, or otherwise.

### EIGHTEENTH AFFIRMATIVE DEFENSE: License/Implied License

Plaintiff's claims are barred in whole or in part because Nistica has a license and/or implied license to practice the patents-in-suit. Upon information and belief, Finisar sells its optical networking products to various telecommunications and data networking communications companies (collectively "Customer or "Customers") and is thus a supplier to such Customers. Upon information and belief, Finisar has contractual agreements with one or more Customers ("Customer Agreements"). Upon information and belief, the Customer Agreements between Customer and Finisar contain one or more clauses in which Finisar agrees not to assert any claim or action for patent infringement against Customer or its respective vendors, including purchasers, suppliers, and manufacturers. Nistica is one or more of a supplier or other vendor for Customer. Upon information and belief, Finisar has covenanted not to sue Nistica for patent infringement regarding the patents-in-suit and one or more Nistica products. Upon information and belief, under the Customer Agreements, Nistica has a license and/or an implied license under Finisar's patents-in-suit to make, use, sell, offer for sale, and import its products, including the products provided to Customers.

In addition, Nistica and Finisar entered into a settlement and release agreement on or about December 28, 2009. Pursuant to such agreement, Finisar, on behalf of itself and its affiliates, released

17

Nistica from any and all claims of any nature, whether asserted or unasserted, known or unknown, anticipated or unanticipated, foreseen or unforeseen, that Finisar had against Nistica. Finisar also agreed not to initiate any litigation or action against Nistica involving any such claims. Finisar and/or Finisar's affiliates owned one or more of the patents-in-suit in this case, including without limitation, U.S. Patent Nos. 7,092,599 and 7,397,980, as of the execution of the settlement and release agreement. Under the agreement, Nistica has a license and/or an implied license to Finisar's patents-in-suit, including U.S. Patent Nos. 7,092,599 and 7,397,980, to make, use, sell, offer for sale, and import its products; and Finisar has released and covenanted not to sue Nistica under such patents.

## NINETEENTH AFFIRMATIVE DEFENSE: Patent Exhaustion

Plaintiff's claims are barred in whole or in part due to patent exhaustion. Upon information and belief, Finisar sells its products to Customers. Upon information and belief, the Customer Agreements between Customers and Finisar contain one or more clauses in which Finisar agrees not to assert any claim or action for patent infringement against Customer or its respective vendors, including purchasers, suppliers, and manufacturers. Nistica is one or more of a supplier or other vendor for Customer. Upon information and belief, under the Customer Agreements, Nistica has a license and/or an implied license under Finisar's patents-in-suit to make, use, sell, offer for sale, and import its products, including the products that Nistica has or will provide to Customers. Any sales of Nistica's products, including the products that Nistica has or will provide to Customer, would be an authorized sale thereby exhausting Finisar's rights in the patents-in-suit.

In addition, Nistica and Finisar entered into a settlement and release agreement on or about December 28, 2009. Pursuant to such agreement, Finisar, on behalf of itself and its affiliates, released Nistica from any and all claims of any nature, whether asserted or unasserted, known or unknown, anticipated or unanticipated, foreseen or unforeseen, that Finisar had against Nistica. Finisar also agreed not to initiate any litigation or action against Nistica involving any such claims. Finisar and/or Finisar's affiliates owned one or more of the patents-in-suit in this case, including without limitation, U.S. Patent Nos. 7,092,599 and 7,397,980, as of the execution of the settlement and release agreement. Under the agreement, Nistica has a license and/or an implied license to Finisar's patents-in-suit, including U.S. Patent Nos. 7,092,599 and 7,397,980, to make, use, sell, offer for sale, and import its products; and

Finisar has released and covenanted not to sue Nistica under such patents. Any sales of Nistica's products would be an authorized sale thereby exhausting Finisar's rights in the patents-in-suit.

### TWENTIETH AFFIRMATIVE DEFENSE: Estoppel

Plaintiff's claims are barred in whole or in part by the doctrine of legal estoppel. Upon information and belief, Finisar sells its products to Customers. Upon information and belief, Finisar sells its optical networking products to Customers and is thus a supplier to such Customers. Upon information and belief, Finisar has entered into one or more Customer Agreements. Upon information and belief, Finisar received valuable consideration in connection with its promises and obligations under the Customer Agreements. Upon information and belief, the Customer Agreements between Customer and Finisar contain one or more clauses in which Finisar agrees not to assert any claim or action for patent infringement against Customer or its respective vendors, including purchasers, suppliers, and manufacturers. Nistica is one or more of a supplier or other vendor for Customer. Upon information and belief, Finisar has covenanted not to sue Nistica for patent infringement regarding the patents-in-suit and one or more Nistica products. Upon information and belief, under the Customer Agreements, Nistica has a license and/or an implied license under Finisar's patents-in-suit to make, use, sell, offer for sale, and import its products, including the products that Nistica has or will provide to Customer. By asserting infringement of the patents-in-suit, especially as to those products that Nistica has or will provide to Customer, Finisar is attempting to derogate the scope of the license, implied license, and/or covenant not to sue. Finisar is thus legally estopped from asserting infringement of the patents-in-suit against Nistica's products, including with respect to the products that Nistica has or will provide to Customer.

Nistica and Finisar entered into a settlement and release agreement on or about December 28, 2009. Pursuant to such agreement, Finisar, on behalf of itself and its affiliates, released Nistica from any and all claims of any nature, whether asserted or unasserted, known or unknown, anticipated or unanticipated, foreseen or unforeseen, that Finisar had against Nistica. Finisar also agreed not to initiate any litigation or action against Nistica involving any such claims. Finisar and/or Finisar's affiliates owned one or more of the patents-in-suit in this case, including without limitation, U.S. Patent Nos. 7,092,599 and 7,397,980, as of the execution of the settlement and release agreement. Under the agreement, Nistica has a license and/or an implied license to Finisar's patents-in-suit, including U.S.

Patent Nos. 7,092,599 and 7,397,980, to make, use, sell, offer for sale, and import its products and Finisar has released and covenanted not to sue Nistica under such patents. Finisar received valuable consideration in connection with its promises and obligations under the agreement. By asserting infringement of the patents-in-suit, Finisar is attempting to derogate the scope of the license, implied license, and/or covenant not to sue. Finisar is thus legally estopped from asserting infringement of the patents-in-suit against Nistica's products.

**TWENTY-FIRST AFFIRMATIVE DEFENSE: Waiver, Release, Covenant Not to Sue**

Plaintiff's claims are barred in whole or in part by waiver, release, and a covenant not to sue. Nistica and Finisar entered into a settlement and release agreement on or about December 28, 2009. Pursuant to such agreement, Finisar, on behalf of itself and its affiliates, released Nistica from any and all claims of any nature, whether asserted or unasserted, known or unknown, anticipated or unanticipated, foreseen or unforeseen, that Finisar had against Nistica. Finisar also agreed not to initiate any litigation or action against Nistica involving any such claims. Finisar and/or Finisar's affiliates owned one or more of the patents-in-suit in this case, including without limitation, U.S. Patent Nos. 7,092,599 and 7,397,980, as of the execution of the settlement and release agreement. Under the agreement, Nistica has a license and/or an implied license to Finisar's patents-in-suit, including U.S. Patent Nos. 7,092,599 and 7,397,980, to make, use, sell, offer for sale, and import its products and Finisar has released and covenanted not to sue Nistica under such patents. Moreover, Finisar is barred in whole or in part by the terms of the agreement and has waived any cause of action, including for patent infringement, against Nistica, including those that arose on or before the date of the agreement. Finisar has waived, released, and covenanted not to sue Nistica for patent infringement relating to the patents-in-suit, including U.S. Patent Nos. 7,092,599 and 7,397,980. Similarly, Finisar has waived, released, and covenanted not to sue Nistica on any cause of action, including patent infringement, based on any actions by Nistica that occurred on or before December 28, 2009. Finisar is not entitled, among other things, to any patent damages prior to December 29, 2009, and is not entitled to an injunction based on any actions by Nistica that occurred on or before December 28, 2009.

Upon information and belief, Finisar sells its optical networking products to Customers and is thus a supplier to such Customers. Upon information and belief, Finisar has contractual agreements with

**SECOND AMENDED ANSWER AND COUNTERCLAIMS**                CASE NO. 5:13-cv-03345-BLF

one or more Customers ("Customer Agreements"). Upon information and belief, the Customer Agreements between Customers and Finisar contain one or more clauses in which Finisar agrees not to assert any claim or action for patent infringement against Customer or its respective vendors, including purchasers, suppliers, and manufacturers. Nistica is one or more of a supplier or other vendor for Customer. Under the Customer Agreements, Nistica has a license and/or an implied license under Finisar's patents-in-suit to make, use, sell, offer for sale, and import its products, including the products provided to Customers. Under the Customer Agreements, Finisar has waived, released, and covenanted not to sue Nistica for patent infringement relating to the patents-in-suit.

### TWENTY-SECOND AFFIRMATIVE DEFENSE: Unclean Hands

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands. Finisar is barred from enforcing the patents-in-suit against Nistica because Finisar acted inequitably, unfairly, or deceitfully towards Nistica. Further, Finisar's inequitable, unfair, and deceitful conduct has an immediate and necessary relation to the relief that Finisar seeks in this lawsuit. On or about February 11, 2008, Nistica and Finisar entered into a Sales and Marketing Agreement in which Finisar was the exclusive sales and marketing channel for sales of Nistica's products, including Nistica's Fledge and Full Fledge lines of products, to certain customers. As part of the Sales and Marketing Agreement, there was a non-disclosure agreement in which Finisar agreed to use confidential information received from Nistica solely for the purpose of the marketing and sale of products by Finisar to designated customers and any activity reasonably related thereto and to the performance of the parties obligations under the Agreement. Pursuant to this agreement, Finisar received confidential technical information regarding the structure and operation of Nistica's products. The Sales and Marketing Agreement was terminated in 2009. Upon information and belief, Finisar breached the non-disclosure agreement under the Sales and Marketing Agreement by, for example, improperly using technical knowledge regarding Nistica's products that it acquired under the non-disclosure agreement to purchase patents from third parties and pursue litigation against Nistica based on those acquired patents.

Finisar accuses the Nistica products that it actively marketed, offered for sale, sold, and/or imported into the United States under the Sales and Marketing Agreement of infringing one or more of the patents-in-suit, including the Fledge-3, Fledge-10, and Full Fledge lines of products. Further, Finisar

21

seeks damages and an injunction with regard to the same products that Finisar actively marketed, offered for sale, sold, and/or imported into the United States under the Sales and Marketing Agreement. Upon information and belief, Finisar seeks damages and an injunction for Nistica products that it sold and received revenue from under the Sales and Marketing Agreement.

Nistica and Finisar entered into a settlement and release agreement on or about December 28, 2009. Pursuant to such agreement, Finisar, on behalf of itself and its affiliates, released Nistica from any and all claims of any nature, whether asserted or unasserted, known or unknown, anticipated or unanticipated, foreseen or unforeseen, that Finisar had against Nistica. Finisar also agreed not to initiate any litigation or action against Nistica involving any such claims. Finisar and/or Finisar's affiliates owned one or more of the patents-in-suit in this case, including without limitation, U.S. Patent Nos. 7,092,599 and 7,397,980, as of the execution of the settlement and release agreement. Under the agreement, Nistica has a license and/or an implied license to Finisar's patents-in-suit, including U.S. Patent Nos. 7,092,599 and 7,397,980, to make, use, sell, offer for sale, and import its products and Finisar has released and covenanted not to sue Nistica under such patents. Finisar received valuable consideration in connection with its promises and obligations under the agreement. By filing the Complaint in this case and pursuing claims of patent infringement against Nistica relating to the patents-in-suit, including U.S. Patent Nos. 7,092,599 and 7,397,980, Finisar has breached the settlement agreement and release, including by pursuing claims based on actions by Nistica that took place prior to the execution of the settlement agreement and release. Further, by seeking damages and an injunction based on actions by Nistica prior to the execution of the settlement agreement and release, Finisar has breached the settlement agreement and release.

Each of the forgoing individually and collectively establish that Finisar has unclean hands and is not entitled to any relief in equity or otherwise. Each of the forgoing individually and collectively establish that Finisar's inequitable, unfair, and deceitful conduct towards Nistica relates directly to Finisar's claims in this case and the relief that Finisar seeks.

### TWENTY-THIRD AFFIRMATIVE DEFENSE: Mitigation of Damages

Plaintiff has failed to mitigate damages, if any, allegedly sustained.

///

22

### TWENTY-FOURTH AFFIRMATIVE DEFENSE: Justified Conduct

Plaintiff's claims are barred from any and all recovery because Defendant's conduct was justified as good faith acts to protect their own existing legal, contractual and/or economic interests.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE: Failure to State a Claim

The Complaint fails, in whole or in part, to state any claim upon which relief may be granted.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE: Unjust Enrichment

Plaintiff is barred from recovery in whole or in part because Plaintiff would be unjustly enriched if it is permitted to recover on the Complaint.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE: Laches

Plaintiff is barred from recovery in whole or in part by the doctrine of laches. Finisar is not entitled to recover damages for acts that occurred before it filed this lawsuit under the doctrine of laches. Finisar and/or the prior owners of the patents-in-suit, including but not limited to Engana Pty Ltd. ("Engana"), Optium Australia Pty Ltd. ("Optium Australia"), Optium Corp. ("Optium"), and Finisar Australia Pty Ltd. ("Finisar Australia"), delayed filing the lawsuit for an unreasonably long and inexcusable period of time. Further, Nistica has been or will be prejudiced in a significant way due to Finisar and/or the prior owners of the patents-in-suit's delay in filing the lawsuit.

Engana originally owned U.S. Patent Nos. 7,092,599 and 7,397,980. Engana and U.S. Patent Nos. 7,092,599 and 7,397,980 were acquired by Optium Australia on or about June 1, 2006. Upon information and belief, Optium Australia is a subsidiary of Optium. In May 2008, Finisar acquired Optium, a maker of telecom optical products, including wavelength selective switches. Engana, Optium, and Optium Australia, including employees of these companies who are now employees of Finisar, knew or should have known of the structure and functionality of Nistica's products that are accused of infringement in this lawsuit many years before this lawsuit was filed in July 2013. Engana, for example did business with Nistica as early as 2007 or before; and, in the course of such business, learned technical information about certain Nistica's products, including the Fledge and Full Fledge products that are accused of infringement in this lawsuit. In addition, Finisar and Nistica entered into a marketing agreement on or about February 11, 2008. In the course of doing business, Finisar had access to and learned significant confidential information about the structure and functionality of Nistica's products,

including the Fledge and Full Fledge products, that are accused of infringement in this lawsuit. Finisar accuses the Nistica products that it actively marketed, offered for sale, sold, and/or imported into the United States under the Sales and Marketing Agreement of infringing one or more of the patents-in-suit, including the Fledge-3, Fledge-10, and Full Fledge lines of products. Engana, Optium Australia, Optium, and Finisar knew or should have known that Nistica was allegedly infringing the patents-in-suit, including but not limited to U.S. Patent Nos. 7,092,599 and 7,397,980 , but Engana, Optium Australia, Optium, and Finisar delayed filing the lawsuit for an unreasonably long and inexcusable period of time until July 2013.

Nistica has been or will be prejudiced in a significant way due to Finisar and/or the prior owners of the patents-in-suit's delay in filing the lawsuit. Nistica has suffered economic prejudice, for example, by spending time and money developing, marketing, and selling its products, including the Fledge and Full Fledge products, during the time that Finisar knew or should have known of the alleged infringement. Nistica could have avoided such consequences if Finisar and the prior owners of the patents-in-suit had filed this lawsuit in a timely manner. Nistica has also suffered prejudice in defending its case due to, for instance, the fading of memories regarding past events that took place years ago.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE: Equitable Estoppel

Plaintiff claims are is barred in whole or in part due to the doctrine of equitable estoppel. Finisar's actions, communications, and its silence misled Nistica regarding alleged infringement of the patents-in-suit. At least as of October 30, 2007, Finisar approached Nistica to propose a sales and marketing agreement between the parties. On or about February 11, 2008, Nistica and Finisar entered into a Sales and Marketing Agreement in which Finisar was the exclusive sales and marketing channel for sales of Nistica's products, including Nistica's Fledge and Full Fledge lines of products, to certain customers. Also, in or about February 2008, Finisar invested a substantial sum in Nistica. During that timeframe, Finisar positively described Nistica and its products. For example, Finisar described its investment in Nistica as affirming Finisar's commitment to providing customers with leading edge technology. Finisar has also described Nistica's devices as innovative. In the five years that followed Finisar's proposal in October 2007, Finisar never notified or accused Nistica of infringement of any patent. Nistica relied in good faith on Finisar's statements to Nistica and to the public, its actions (*e.g.*,

investing a substantial sum in Nistica and signing the Sales and Marketing Agreement and release), and its silence (e.g., as to infringement of any patents for more than 5 years) in Nistica's decision to invest time, money, and resources in developing, marketing, and selling its products.

Further, Nistica and Finisar entered into a settlement and release agreement on or about December 28, 2009. Pursuant to such agreement, Finisar, on behalf of itself and its affiliates, released Nistica from any and all claims of any nature, whether asserted or unasserted, known or unknown, anticipated or unanticipated, foreseen or unforeseen, that Finisar had against Nistica. Finisar also agreed not to initiate any litigation or action against Nistica involving any such claims. Finisar and/or Finisar's affiliates owned one or more of the patents-in-suit in this case, including without limitation, U.S. Patent Nos. 7,092,599 and 7,397,980, as of the execution of the settlement and release agreement.

Contrary to its statements and actions (as well as its silence on infringement) from at least 2007 to 2012, Finisar now accuses the same products that it invested in, marketed, and sold, including the Fledge and Full Fledge products, of infringing the patents-in-suit. Nistica has been materially harmed by Finisar's misleading and improper conduct. For example, because Nistica relied on Finisar's statements to Nistica and to the public, its actions (*e.g.*, investing a substantial sum in Nistica and signing the Sales and Marketing Agreement and release), and its silence (e.g., as to infringement of any patents for more than 5 years), Nistica has spent considerable time, money, and resources in developing, marketing, and selling its products, including the Fledge and Full Fledge products, between 2007 and the filing of the Complaint in July 2013. Nistica could have avoided such consequences if Finisar had not misled Nistica for years prior to filing the Complaint in this case. Nistica has also suffered prejudice in defending its case due to, for instance, the fading of memories regarding past events that took place years ago.

## COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Nistica, Inc. ("Nistica" or "Counterclaim Plaintiff") for its Counterclaims against Finisar Corporation ("Finisar" or "Counterclaim Defendant") alleges as follows:

## PARTIES

1. Nistica is a corporation organized and existing under the laws of the Sate of Delaware, having its principal place of business at 745 Route 202-206, Bridgewater, New Jersey 08807.

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2.    Finisar alleges to be a corporation organized under the laws of the State of Delaware and having a principal place of business at 1308 Moffett Park Drive, Sunnyvale, CA 94089.

## JURISDICTION AND VENUE

3.    These Counterclaims arise under federal law, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. §§ 101, *et seq*.

4.    This Court has personal jurisdiction over Counterclaim Defendant because it has consented to jurisdiction in the state of California by bringing the present action and because at least some of the complained-of acts occurred in this judicial district.

5.    Venue for this counterclaim is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) and by virtue of Counterclaim Defendant's admission in the Complaint that venue is proper in this district.

6.    Counterclaim Defendant claims to be the owner of United States Patent Nos. 6,956, 687 ("the '687 patent"); 7,123,833 ("the '833 patent"); 7,126,740 ("the '740 patent"); 6,430,328 ("the '328 patent"); 7,092,599 ("the '599 patent"); and 7,397,980 ("the '980 patent") (collectively "the patents-in-suit").

## COUNT I: Declaratory Judgment of Non-Infringement of the '328 Patent

7.    Counterclaim Plaintiff incorporates the allegations in paragraphs 1 through 58 of the Answer and Affirmative Defenses above and paragraphs 1 through 6 of these Counterclaims as if fully set forth herein.

8.    An actual and justiciable controversy exists between Counterclaim Plaintiff and Counterclaim Defendant with respect to the non-infringement of the '328 patent because Counterclaim Defendant has brought this action against Counterclaim Plaintiff alleging infringement of one or more claims of the '328 patent, and Counterclaim Plaintiff denies this allegation.  Nistica has not designed, developed, marketed, sold, or offered to sell WSS products for ROADM devices nor has Nistica offered to sell certain WSS products that include LCOS technology for optical switching that practice each and every element of any valid claim of the '328 Patent.  Absent a declaration of non-infringement, Counterclaim Defendant will continue to wrongfully assert the '328 patent against Counterclaim

Plaintiff, and will thereby cause Counterclaim Plaintiff irreparable injury and damage.

9. Counterclaim Plaintiff has not infringed and does not infringe, literally or under the doctrine of equivalents, any valid claim of the '833 patent and is entitled to a declaratory judgment to that effect pursuant to 28 U.S.C. §§ 2201-2201.

**COUNT II: Declaratory Judgment of Non-Infringement of the '687 Patent**

10. Counterclaim Plaintiff incorporates the allegations in paragraphs 1 through 58 of the Answer and Affirmative Defenses above and paragraphs 1 through 9 of these Counterclaims as if fully set forth herein.

11. An actual and justiciable controversy exists between Counterclaim Plaintiff and Counterclaim Defendant with respect to the non-infringement of the '687 patent because Counterclaim Defendant has brought this action against Counterclaim Plaintiff alleging infringement of one or more claims of the '687 patent, and Counterclaim Plaintiff denies this allegation. Nistica has not designed, developed, marketed, sold, or offered to sell WSS products for ROADM devices nor has Nistica offered to sell certain WSS products that include LCOS technology for optical switching that practice each and every element of any valid claim of the '687 Patent. Absent a declaration of non-infringement, Counterclaim Defendant will continue to wrongfully assert the '687 patent against Counterclaim Plaintiff, and will thereby cause Counterclaim Plaintiff irreparable injury and damage.

12. Counterclaim Plaintiff has not infringed and does not infringe, literally or under the doctrine of equivalents, any valid claim of the '687 patent and is entitled to a declaratory judgment to that effect pursuant to 28 U.S.C. §§ 2201-2201.

**COUNT III: Declaratory Judgment of Non-Infringement of the '833 Patent**

13. Counterclaim Plaintiff incorporates the allegations in paragraphs 1 through 58 of the Answer and Affirmative Defenses above and paragraphs 1 through 12 of these Counterclaims as if fully set forth herein.

14. An actual and justiciable controversy exists between Counterclaim Plaintiff and Counterclaim Defendant with respect to the non-infringement of the '833 patent because Counterclaim Defendant has brought this action against Counterclaim Plaintiff alleging infringement of one or more claims of the '833 patent, and Counterclaim Plaintiff denies this allegation. Nistica has not designed,

developed, marketed, sold, or offered to sell WSS products for ROADM devices nor has Nistica offered to sell certain WSS products that include LCOS technology for optical switching that practice each and every element of any valid claim of the '833 Patent. Absent a declaration of non-infringement, Counterclaim Defendant will continue to wrongfully assert the '833 patent against Counterclaim Plaintiff, and will thereby cause Counterclaim Plaintiff irreparable injury and damage.

15. Counterclaim Plaintiff has not infringed and does not infringe, literally or under the doctrine of equivalents, any valid claim of the '833 patent and is entitled to a declaratory judgment to that effect pursuant to 28 U.S.C. §§ 2201-2201.

### COUNT IV: Declaratory Judgment of Non-Infringement of the '740 Patent

16. Counterclaim Plaintiff incorporates the allegations in paragraphs 1 through 58 of the Answer and Affirmative Defenses above and paragraphs 1 through 15 of these Counterclaims as if fully set forth herein.

17. An actual and justiciable controversy exists between Counterclaim Plaintiff and Counterclaim Defendant with respect to the non-infringement of the '740 patent because Counterclaim Defendant has brought this action against Counterclaim Plaintiff alleging infringement of one or more claims of the '740 patent, and Counterclaim Plaintiff denies this allegation. Nistica has not designed, developed, marketed, sold, or offered to sell WSS products for ROADM devices nor has Nistica offered to sell certain WSS products that include LCOS technology for optical switching that practice each and every element of any valid claim of the '740 Patent. Absent a declaration of non-infringement, Counterclaim Defendant will continue to wrongfully assert the '740 patent against Counterclaim Plaintiff, and will thereby cause Counterclaim Plaintiff irreparable injury and damage.

18. Counterclaim Plaintiff has not infringed and does not infringe, literally or under the doctrine of equivalents, any valid claim of the '740 patent and is entitled to a declaratory judgment to that effect pursuant to 28 U.S.C. §§ 2201-2201.

### COUNT V: Declaratory Judgment of Non-Infringement of the '599 Patent

19. Counterclaim Plaintiff incorporates the allegations in paragraphs 1 through 58 of the Answer and Affirmative Defenses above and paragraphs 1 through 18 of these Counterclaims as if fully set forth herein.

20. An actual and justiciable controversy exists between Counterclaim Plaintiff and Counterclaim Defendant with respect to the non-infringement of the '599 patent because Counterclaim Defendant has brought this action against Counterclaim Plaintiff alleging infringement of one or more claims of the '599 patent, and Counterclaim Plaintiff denies this allegation. Nistica has not designed, developed, marketed, sold, or offered to sell WSS products for ROADM devices nor has Nistica offered to sell certain WSS products that include LCOS technology for optical switching that practice each and every element of any claim of the '599 Patent. Absent a declaration of non-infringement, Counterclaim Defendant will continue to wrongfully assert the '599 patent against Counterclaim Plaintiff, and will thereby cause Counterclaim Plaintiff irreparable injury and damage.

21. Counterclaim Plaintiff has not infringed and does not infringe, literally or under the doctrine of equivalents, any valid and enforceable claim of the '599 patent and is entitled to a declaratory judgment to that effect pursuant to 28 U.S.C. §§ 2201-2201.

### COUNT VI: Declaratory Judgment of Non-Infringement of the '980 Patent

22. Counterclaim Plaintiff incorporates the allegations in paragraphs 1 through 58 of the Answer and Affirmative Defenses above and paragraphs 1 through 21 of these Counterclaims as if fully set forth herein.

23. An actual and justiciable controversy exists between Counterclaim Plaintiff and Counterclaim Defendant with respect to the non-infringement of the '980 patent because Counterclaim Defendant has brought this action against Counterclaim Plaintiff alleging infringement of one or more claims of the '980 patent, and Counterclaim Plaintiff denies this allegation. Nistica has not designed, developed, marketed, sold, or offered to sell WSS products for ROADM devices nor has Nistica offered to sell certain WSS products that include LCOS technology for optical switching that practice each and every element of any claim of the '980 Patent. Absent a declaration of non-infringement, Counterclaim Defendant will continue to wrongfully assert the '980 patent against Counterclaim Plaintiff, and will thereby cause Counterclaim Plaintiff irreparable injury and damage.

24. Counterclaim Plaintiff has not infringed and does not infringe, literally or under the doctrine of equivalents, any valid and enforceable claim of the '980 patent and is entitled to a declaratory judgment to that effect pursuant to 28 U.S.C. §§ 2201-2201.

## COUNT VII: Declaratory Judgment of Invalidity of the '328 Patent

25. Counterclaim Plaintiff incorporates the allegations in paragraphs 1 through 58 of the Answer and Affirmative Defenses above and paragraphs 1 through 24 of these Counterclaims as if fully set forth herein.

26. An actual and justiciable controversy exists between Counterclaim Plaintiff and Counterclaim Defendant with respect to the invalidity of the '328 patent because Counterclaim Defendant has brought this action against Counterclaim Plaintiff alleging infringement of one or more claims of the '328 patent, and Counterclaim Plaintiff denies this allegation. Absent a declaration of invalidity, Counterclaim Defendant will continue to wrongfully assert the '328 patent against Counterclaim Plaintiff, and will thereby cause Counterclaim Plaintiff irreparable injury and damage.

27. The '328 patent is invalid under the provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

28. One or more claims of the '328 patent, *e.g.,* claim 33, on information and belief recite nothing more than laws of nature and thus are invalid.

29. One or more claims of the '328 patent are invalid under 35 U.S.C. §§ 102 and/or 103. By way of example only, in view of one or more of U.S. Patents Nos. 6,766,081, 6,268,952, 6,097,859, 6,075,424, 6,020,986, 5,943,155, 5,506,919, 5,504,575, 4,498,730, 4,404,402, 3,299,368 and European Patent Publication No. EP 1099966 A2, and articles entitled "Fault-Tolerant Dense Multiwavelength Add-Drop Filter with a Two-Dimensional Digital Micromirror Device," by N. A. Riza et al., APPLIED OPTICS vol. 37, No. 27, at 6355-61, and "Versatile Multi-Wavelength Fiber-Optic Switch and Attenuator Structures Using Mirror Manipulations," by N. A. Riza et al., Optics Communications 169, at 233-244.

30. One or more claims of the '328 patent are invalid under 35 U.S.C. § 112 because the specification does not contain a written description of the claimed invention.

31. One or more claims of the '328 patent are invalid under 35 U.S.C. § 112 because the specification does not enable one of ordinary skill in the relevant art to make and use the claimed invention without undue experimentation.

32. One or more claims of the '328 patent are invalid under 35 U.S.C. § 112 because the

claims do not clearly point out and distinctly claim the inventive subject matter and/or a person of ordinary skill in the relevant art would not be able to discern the meaning of the claims.

33. Counterclaim Plaintiff is entitled to a declaratory judgment of invalidity of the '328 Patent pursuant to 28 U.S.C. §§ 2201-2202.

## COUNT VIII: Declaratory Judgment of Invalidity of the '687 Patent

34. Counterclaim Plaintiff incorporates the allegations in paragraphs 1 through 58 of the Answer and Affirmative Defenses above and paragraphs 1 through 33 of these Counterclaims as if fully set forth herein.

35. An actual and justiciable controversy exists between Counterclaim Plaintiff and Counterclaim Defendant with respect to the invalidity of the '687 patent because Counterclaim Defendant has brought this action against Counterclaim Plaintiff alleging infringement of one or more claims of the '687 patent, and Counterclaim Plaintiff denies this allegation. Absent a declaration of invalidity, Counterclaim Defendant will continue to wrongfully assert the '687 patent against Counterclaim Plaintiff, and will thereby cause Counterclaim Plaintiff irreparable injury and damage.

36. The '687 patent is invalid under the provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

37. One or more claims of the '687 patent are invalid under 35 U.S.C. §§ 102 and/or 103. By way of example only, in view of one or more of U.S. Patent Nos. 6,766,081, 6,661,948, 6,647,164, 6,636,654, 6,525,863, 6,459,484, 6,434,291, 6,430,328, 6,263,127, 6,246,818, 6,222,954, 6,204,946, 6,160,928, 6,128,077, 6,097,859, 5,915,063, 5,774,604, 5,729,386, 5,699,462, 5,504,575, 5,166,766, 5,158,420, 5,121,239, 4,819,084, 4,799,795, 4,626,066, RE 39,397, and U.S. Patent Publication Nos. 2002-0081070 A1, 2002-0009257 A1, 2001-0046350 A1, and Foreign Patent Publication No. EP 1099966 A2 and the articles entitled "Two—axis Micromirror Scanner," by M. D. Johnson et al., SPIE vol. 3787, Jul. 1999, pps. 88-95, "Performance of a 576x576 Optical Cross Connect," by H. Laor et al., National Fiber Optic Engineers Conference, Sep. 26-30, 1999, pps. 276-281, "Liquid—crystal Phase Modulator For Unpolarized Light," by G. Love, Applied Optics, vol. 32, No. 13, May 1, 1994, pps 2222-2223, "Demonstration of a Liquid—crystal adaptive alignment tweeker for high—speed Infrared Band Fiber—Fed Free—space Systems," by N. Riza et al., Opt. Eng. 37(6), Jun. 1998, 1876-1880,

31

"Reconfigurable Optical Wireless," by N. Riza, IEEE Lasers and Electro—Optics Society 1999 Annual Meeting, vol. 1, pp. 70-71, "Digitally Controlled Fault—Tolerant Multiwavelength Programmable Fiber—Optic Attenuator Using a Two—Dimensional Digital Micromirror Device," by N. Riza et al., 1999 Optical Society of America, "Multiwavelength Three Dimensional 2x2 Fiber—Optic Switch Structure Using Small Tilt Micro—Mirrors," by N. Riza et al., SPIE vol. 3749, pps 470-471, "Synchronous Amplitude and Time Control for an Optimum Dynamic Range Variable Photonic Delay Line," by N. Riza et al., Applied Optics, vol. 38, No. 11, Apr. 10, 1999, 2309-2318, "Robust Packaging of Photonic RF Modules Using Ultra—Thin Adaptive Optical Interconnect Devices," by N. Riza et al., SPIE vol. 3160, pps. 170-176, "Fault-Tolerant Dense Multiwavelength Add-Drop Filter with a Two-Dimensional Digital Micromirror Device," by N. A. Riza et al., APPLIED OPTICS vol. 37, No. 27, at 6355-61, "Two Dimensional Digital Micromirror Device-based 2 x 2 Fiber Optic Switch Array," by N. A. Riza et al., IEEE Lasers and Electro-Optics Society Annual Meeting, vol. 2, at 413-14, and "Versatile Multi-Wavelength Fiber-Optic Switch and Attenuator Structures Using Mirror Manipulations," by Nabeel A. Riza and Sarun Sumriddetchkajorn, Optics Communications 169, at 233-244, and "General Formula for Coupling—loss Characterization of Single—Mode Fiber Collimators by Use of Gradient—Index Rod Lenses," by S. Yuan et al., Applied Optics, vol. 38. No. 15, May 20, 1999, pp. 3214-3222.

38. One or more claims of the '687 patent are invalid under 35 U.S.C. § 112 because the specification does not contain a written description of the claimed invention.

39. One or more claims of the '687 patent are invalid under 35 U.S.C. § 112 because the specification does not enable one of ordinary skill in the relevant art to make and use the claimed invention without undue experimentation.

40. One or more claims of the '687 patent are invalid under 35 U.S.C. § 112 because the claims do not clearly point out and distinctly claim the inventive subject matter and/or a person of ordinary skill in the relevant art would not be able to discern the meaning of the claims.

41. Counterclaim Plaintiff is entitled to a declaratory judgment of invalidity of the '687 Patent pursuant to 28 U.S.C. §§ 2201-2202.

### COUNT IX: Declaratory Judgment of Invalidity of the '833 Patent

42. Counterclaim Plaintiff incorporates the allegations in paragraphs 1 through 58 of the

32

Answer and Affirmative Defenses above and paragraphs 1 through 41 of these Counterclaims as if fully set forth herein.

43. An actual and justiciable controversy exists between Counterclaim Plaintiff and Counterclaim Defendant with respect to the invalidity of the '833 patent because Counterclaim Defendant has brought this action against Counterclaim Plaintiff alleging infringement of one or more claims of the '833 patent, and Counterclaim Plaintiff denies this allegation. Absent a declaration of invalidity, Counterclaim Defendant will continue to wrongfully assert the '833 patent against Counterclaim Plaintiff, and will thereby cause Counterclaim Plaintiff irreparable injury and damage.

44. The '833 patent is invalid under the provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

45. One or more claims of the '833 patent are invalid under 35 U.S.C. §§ 102 and/or 103. By way of example only, in view of one or more of U.S. Patent Nos. 6,483,631, 6,430,328, 6,344,910, 6,275,322, 6,263,123, 6,249,365, 6,097,859, 6,061,171, 5,923,036, 5,870,173, 5,822,222, 5,745,260, 5,312,513, 5,208,880, 4,790,566, RE39,397, and U.S. Patent Publication Nos. 2002-0081070 A1, 2002-0071627 A1, 2002-0067887 A1, 2002-0034356 A1, 2002-0034356 A1, and Foreign Patent Publication Nos. EP 1211534 A1, EP 1205781 A2, WO 0101611 A3, and the articles entitled "Low insertion loss packaged and fibre connectorised MEMS reflective optical switch," by V. Aksyuk et al., Electronics Letters, vol. 34, No. 14, at pp. 1413-1414, "A Fiber Connectorized MEMS Variable Optical Attenuator," by B. Barber et al., IEEE Photonics Technology Letters, vol. 10, No. 9, at pp. 1262-1264, "Variable Optical Attenuator And Optical Multiplexing Subsystem Integration, Control, and Application," by T. Bergman et al., National Fiber Optic Engineers. Conference, 2001 Technical Proceedings, at pp. 954-962, "A Silicon-Based Moving-Mirror Optical Switch," by M. F. Dautartas et al., Journal of Lightwave Technology, vol. 10, No. 8, at pp. 1078-1085, "Dynamic Spectral Power Equalization Using Micro-Opto-Mechanics," by J. E. Ford et al., IEEE Photonics Technology Letters, vol. 10, No. 10, at pp. 1440-1442, "Micro-opto-mechanical beam deflectors," by S. Glockner et al., Optical Engineering, at pp. 1339-1345, and "Fault-tolerant dense multiwavelength add-drop filter with a two-dimensional digital micromirror device," by N.A. Riza et al., Applied Optics, vol. 37, No. 27, at pp. 6355-6361.

46. One or more claims of the '833 patent are invalid under 35 U.S.C. § 112 because the

33

specification does not contain a written description of the claimed invention.

47. One or more claims of the '833 patent are invalid under 35 U.S.C. § 112 because the specification does not enable one of ordinary skill in the relevant art to make and use the claimed invention without undue experimentation.

48. One or more claims of the '833 patent are invalid under 35 U.S.C. § 112 because the claims do not clearly point out and distinctly claim the inventive subject matter and/or a person of ordinary skill in the relevant art would not be able to discern the meaning of the claims.

49. Counterclaim Plaintiff is entitled to a declaratory judgment of invalidity of the '833 Patent pursuant to 28 U.S.C. §§ 2201-2202.

### COUNT X: Declaratory Judgment of Invalidity of the '740 Patent

50. Counterclaim Plaintiff incorporates the allegations in paragraphs 1 through 58 of the Answer and Affirmative Defenses above and paragraphs 1 through 49 of these Counterclaims as if fully set forth herein.

51. An actual and justiciable controversy exists between Counterclaim Plaintiff and Counterclaim Defendant with respect to the invalidity of the '740 patent because Counterclaim Defendant has brought this action against Counterclaim Plaintiff alleging infringement of one or more claims of the '740 patent, and Counterclaim Plaintiff denies this allegation. Absent a declaration of invalidity, Counterclaim Defendant will continue to wrongfully assert the '740 patent against Counterclaim Plaintiff, and will thereby cause Counterclaim Plaintiff irreparable injury and damage.

52. The '740 patent is invalid under the provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

53. One or more claims of the '740 patent are invalid under 35 U.S.C. §§ 102 and/or 103. By way of example only, in view of one or more of U.S. Patent Nos. 6,430,328, 6,344,910, 6,275,322, 6,263,123, 6,249,365, 6,097,859, 6,061,171, 5,923,036, 5,870,173, 5,822,222, 5,745,260, 5,312,513, 5,208,880, 4,790,566, RE39,397, and U.S. Patent Publication Nos. 2002-0081070 A1, 2002-0071627 A1, 2002-0067887 A1, 2002-0034356 A1, 2002-0034356 A1, Foreign Patent Publication Nos. EP 1211534 A1, EP 1205781 A2, WO 0101611 A3, and articles entitled "Low insertion loss packaged and fibre connectorised MEMS reflective optical switch," by V. Aksyuk et al., Electronics Letters, vol. 34, No. 14,

34

at pp. 1413-1414, "A Fiber Connectorized MEMS Variable Optical Attenuator," by B. Barber et al., IEEE Photonics Technology Letters, vol. 10, No. 9, at pp. 1262-1264, "Variable Optical Attenuator And Optical Multiplexing Subsystem Integration, Control, and Application," by T. Bergman et al., National Fiber Optic Engineers. Conference, 2001 Technical Proceedings, at pp. 954-962, "A Silicon-Based Moving-Mirror Optical Switch," by M. F. Dautartas et al., Journal of Lightwave Technology, vol. 10, No. 8, at pp. 1078-1085, "Dynamic Spectral Power Equalization Using Micro-Opto-Mechanics," by J. E. Ford et al., IEEE Photonics Technology Letters, vol. 10, No. 10, pp. 1440-1442, "Micro-opto-mechanical beam deflectors," by S. Glockner et al., Optical Engineering, at pp. 1339-1345, "Fault-Tolerant Dense Multiwavelength Add-Drop Filter with a Two-Dimensional Digital Micromirror Device," by N. A. Riza et al., APPLIED OPTICS vol. 37, No. 27, at 6355-61, and "Versatile Multi-Wavelength Fiber-Optic Switch and Attenuator Structures Using Mirror Manipulations, by N. A. Riza et al., Optics Communications 169, at 233-244, "Two Dimensional Digital Micromirror Device based 2x2 Fiber-Optic Switch Array," by N. A. Riza et al., 11th Annual Mtg., IEEE Lasers and Electro-Optics, at pp. 413-414, "Small Tilt Micromirror Device-Based Multiwavelength Three Dimensional 2x2 Fiber-Optic Switch Structures," by N. A. Riza et al., Published in the SPIE Journal Optical Engineering circa 1999/Early 2000, at pp. 1-18, "Optical Node For Ultra-Long-Haul Backbone Networks," by L. Zhang et al., National Fiber Optics Engineers Conference, 2001 Technical Proceedings, at pp. 43-46.

54.  One or more claims of the '740 patent are invalid under 35 U.S.C. § 112 because the specification does not contain a written description of the claimed invention.

55.  One or more claims of the '740 patent are invalid under 35 U.S.C. § 112 because the specification does not enable one of ordinary skill in the relevant art to make and use the claimed invention without undue experimentation.

56.  One or more claims of the '740 patent are invalid under 35 U.S.C. § 112 because the claims do not clearly point out and distinctly claim the inventive subject matter and/or a person of ordinary skill in the relevant art would not be able to discern the meaning of the claims.

57.  Counterclaim Plaintiff is entitled to a declaratory judgment of invalidity of the '740 Patent pursuant to 28 U.S.C. §§ 2201-2202.

///

SECOND AMENDED ANSWER AND COUNTERCLAIMS                          CASE NO. 5:13-cv-03345-BLF

## **COUNT XI: Declaratory Judgment of Invalidity of the '599 Patent**

58. Counterclaim Plaintiff incorporates the allegations in paragraphs 1 through 58 of the Answer and Affirmative Defenses above and paragraphs 1 through 57 of these Counterclaims as if fully set forth herein.

59. An actual and justiciable controversy exists between Counterclaim Plaintiff and Counterclaim Defendant with respect to the invalidity of the '599 patent because Counterclaim Defendant has brought this action against Counterclaim Plaintiff alleging infringement of one or more claims of the '599 patent, and Counterclaim Plaintiff denies this allegation. Absent a declaration of invalidity, Counterclaim Defendant will continue to wrongfully assert the '599 patent against Counterclaim Plaintiff, and will thereby cause Counterclaim Plaintiff irreparable injury and damage.

60. The '599 patent is invalid under the provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

61. One or more claims of the '599 patent are invalid under 35 U.S.C. §§ 102 and/or 103. By way of example only, in view of one or more of U.S. Patents Nos. 8,089,683, 8,335,033, 7,664,395, 7,145,710, 7,126,740, 7,123,833, 6,956,687, 6,917,396, 6,766,081, 6,707,959, 6,634,810, 6,556,320, 6,485,149, 6,441,959, 6,430,328, 6097859, RE39397, and U.S. Patent Publication Nos. 2003-0021526 A1, 2003-0053175 A1, 2003-0184843 A1, 2003-0174939 A1, 2003-0086150 A1, 2003-0081321 A1, 2003-0095307 A1, 2003-0090756 A1, 2003-0053175 A1, 2002-0176151 A1, 2002-0176149 A1, 2002-0081070 A1, and foreign patent publication nos. WO 2002-103447 A1 and CA 2245389 A1 and articles entitled "Fault-Tolerant Dense Multiwavelength Add-Drop Filter with a Two-Dimensional Digital Micromirror Device," by N. A. Riza et al., APPLIED OPTICS vol. 37, No. 27, at 6355-61, and "Versatile Multi-Wavelength Fiber-Optic Switch and Attenuator Structures Using Mirror Manipulations, by N. A. Riza et al., Optics Communications 169, at 233-244.

62. One or more claims of the '599 patent are invalid under 35 U.S.C. § 112 because the specification does not contain a written description of the claimed invention.

63. One or more claims of the '599 patent are invalid under 35 U.S.C. § 112 because the specification does not enable one of ordinary skill in the relevant art to make and use the claimed invention without undue experimentation.

64. One or more claims of the '599 patent are invalid under 35 U.S.C. § 112 because the claims do not clearly point out and distinctly claim the inventive subject matter and/or a person of ordinary skill in the relevant art would not be able to discern the meaning of the claims.

65. Counterclaim Plaintiff is entitled to a declaratory judgment of invalidity of the '599 Patent pursuant to 28 U.S.C. §§ 2201-2202.

## COUNT XII: Declaratory Judgment of Invalidity of the '980 Patent

66. Counterclaim Plaintiff incorporates the allegations in paragraphs 1 through 58 of the Answer and Affirmative Defenses above and paragraphs 1 through 65 of these Counterclaims as if fully set forth herein.

67. An actual and justiciable controversy exists between Counterclaim Plaintiff and Counterclaim Defendant with respect to the invalidity of the '980 patent because Counterclaim Defendant has brought this action against Counterclaim Plaintiff alleging infringement of one or more claims of the '980 patent, and Counterclaim Plaintiff denies this allegation. Absent a declaration of invalidity, Counterclaim Defendant will continue to wrongfully assert the '980 patent against Counterclaim Plaintiff, and will thereby cause Counterclaim Plaintiff irreparable injury and damage.

68. The '980 patent is invalid under the provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112.

69. One or more claims of the '980 patent are invalid under 35 U.S.C. §§ 102 and/or 103. By way of example only, in view of one or more of U.S. Patents Nos. 8,335,033, 8,089,693, 7,664,395, 7,145,710, 7,126,740, 7,123,833, 7,092,599, 6,956,687, 6,917,396, 6,430,328, and U.S. Patent Publication Nos. 2003-0021526 A1, 2003-0053175 A1, 2002-0176151 A1, 2003-0184843 A1, 2003-0174939 A1, 2003-0086150 A1, 2003-0081321 A1, 2003-0095307 A1, 2003-0090756 A1, 2003-0053175 A1, 2002-0176151 A1, 2002-0176149 A1, 2002-0081070 A1, and articles entitled "Fault-Tolerant Dense Multiwavelength Add-Drop Filter with a Two-Dimensional Digital Micromirror Device," by N. A. Riza et al., APPLIED OPTICS vol. 37, No. 27, at 6355-61, and "Versatile Multi-Wavelength Fiber-Optic Switch and Attenuator Structures Using Mirror Manipulations, by N. A. Riza et al., Optics Communications 169, at 233-244.

70. One or more claims of the '980 patent are invalid under 35 U.S.C. § 112 because the

37

specification does not contain a written description of the claimed invention.

71. One or more claims of the '980 patent are invalid under 35 U.S.C. § 112 because the specification does not enable one of ordinary skill in the relevant art to make and use the claimed invention without undue experimentation.

72. One or more claims of the '980 patent are invalid under 35 U.S.C. § 112 because the claims do not clearly point out and distinctly claim the inventive subject matter and/or a person of ordinary skill in the relevant art would not be able to discern the meaning of the claims.

73. Counterclaim Plaintiff is entitled to a declaratory judgment of invalidity of the '980 Patent pursuant to 28 U.S.C. §§ 2201-2202.

## COUNT XIII: Breach of Contract

74. Counterclaim Plaintiff incorporates the allegations in paragraphs 1 through 58 of the Answer and Affirmative Defenses above and paragraphs 1 through 73 of these Counterclaims as if fully set forth herein.

75. Upon information and belief, Finisar sells its optical networking products to various telecommunications and data networking communications companies (collectively "Customer or "Customers") and is thus a supplier to such Customers. Upon information and belief, Finisar has contractual agreements with one or more Customers ("Customer Agreements"). To date, Finisar has refused in this litigation to produce its agreements with Customers. Upon information and belief, the Customer Agreements between Customer and Finisar contain one or more clauses in which Finisar agrees not to assert any claim or action for patent infringement against Customer or its respective vendors, including purchasers, suppliers, and manufacturers. Upon information and belief, these clauses constitute a material part of the bargain for which Finisar received valuable consideration. Nistica is a supplier or other vendor for Customer(s).

76. Upon information and belief, the intent of parties was that such clauses were for the benefit of Customers and their respective vendors, including purchasers, suppliers, and manufacturers. Nistica is one or more of a purchaser, supplier, manufacturers, or other vendor for Customers. Nistica is thus an intended third party beneficiary of the Customer Agreements.

77. Upon information and belief, by filing the Complaint in this action and pursuing claims

of patent infringement against Nistica, including with regard to the products that Nistica has or will provide to Customers, Finisar has breached one or more of the Customer Agreements to which Nistica is an intended third party beneficiary.

## COUNT XIV: Breach of Contract

78. Counterclaim Plaintiff incorporates the allegations in paragraphs 1 through 58 of the Answer and Affirmative Defenses above and paragraphs 1 through 77 of these Counterclaims as if fully set forth herein.

79. Nistica and Finisar entered into a settlement and release agreement on or about December 28, 2009. Pursuant to such agreement, Finisar, on behalf of itself and its affiliates, released Nistica from any and all claims of any nature, whether asserted or unasserted, known or unknown, anticipated or unanticipated, foreseen or unforeseen, that Finisar had against Nistica. Finisar also agreed not to initiate any litigation or action against Nistica involving any such claims. Finisar and/or Finisar's affiliates owned one or more of the patents-in-suit in this case, including without limitation, U.S. Patent Nos. 7,092,599 and 7,397,980, as of the execution of the settlement and release agreement. Under the settlement and release agreement, Finisar has released and covenanted not to sue Nistica under such patents for any claims arising through the date of the execution of the agreement.

80. By filing the Complaint in this case and pursuing claims of patent infringement against Nistica relating to the patents-in-suit, including at least U.S. Patent Nos. 7,092,599 and 7,397,980, Finisar has breached the settlement agreement and release. Finisar has also breached the agreement by pursuing causes of action, such as patent infringement, based on actions by Nistica that took place prior to the execution of the settlement agreement and release. Further, by seeking damages and an injunction for patent infringement based on actions by Nistica prior to the execution of the settlement agreement and release, Finisar has breached the terms of the agreement.

## EXCEPTIONAL CASE

On information and belief, this is an exceptional case entitling Nistica to an award of its attorneys' fees incurred in connection with defending and prosecuting this action pursuant to 35 U.S.C. § 285, as a result of, *inter alia*, Plaintiff's assertion of the patents-in-suit against Nistica with the knowledge that Nistica does not infringe any valid or enforceable claim of the patents-in-suit and/or the

39

patents-in-suit are invalid and/or unenforceable.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Nistica respectfully requests the Court grant the following relief:

A. A judgment dismissing Plaintiff's Complaint in its entirety, with prejudice;

B. A judgment in favor of Counterclaim Plaintiff and against Counterclaim Defendant, denying Counterclaim Defendant all relief requested in this action;

C. A judgment declaring that Counterclaim Plaintiff has not infringed and is not infringing any valid and/or enforceable claim of the '687 patent, and that Counterclaim Plaintiff has not contributed to or induced and are not contributing to or inducing infringement of any valid and enforceable claim of the '687 patent;

D. A judgment declaring that Counterclaim Plaintiff has not infringed and is not infringing any valid and/or enforceable claim of the '833 patent, and that Counterclaim Plaintiff has not contributed to or induced and are not contributing to or inducing infringement of any valid and enforceable claim of the '833 patent;

E. A judgment declaring that Counterclaim Plaintiff has not infringed and is not infringing any valid and/or enforceable claim of the '740 patent, and that Counterclaim Plaintiff has not contributed to or induced and are not contributing to or inducing infringement of any valid and enforceable claim of the '740 patent;

F. A judgment declaring that Counterclaim Plaintiff has not infringed and is not infringing any valid and/or enforceable claim of the '328 patent, and that Counterclaim Plaintiff has not contributed to or induced and are not contributing to or inducing infringement of any valid and enforceable claim of the '328 patent;

G. A judgment declaring that Counterclaim Plaintiff has not infringed and is not infringing any valid and/or enforceable claim of the '599 patent, and that Counterclaim Plaintiff has not contributed to or induced and are not contributing to or inducing infringement of any valid and enforceable claim of the '599 patent;

H. A judgment declaring that Counterclaim Plaintiff has not infringed and is not infringing any valid and/or enforceable claim of the '980 patent, and that Counterclaim Plaintiff has not contributed

to or induced and are not contributing to or inducing infringement of any valid and enforceable claim of the '980 patent;

I. A judgment declaring that Counterclaim Plaintiff has not willfully infringed and is not willfully infringing any valid and/or enforceable claim of the '687 patent;

J. A judgment declaring that Counterclaim Plaintiff has not willfully infringed and is not willfully infringing any valid and/or enforceable claim of the '833 patent;

K. A judgment declaring that Counterclaim Plaintiff has not willfully infringed and is not willfully infringing any valid and/or enforceable claim of the '740 patent;

L. A judgment declaring that Counterclaim Plaintiff has not willfully infringed and is not willfully infringing any valid and/or enforceable claim of the '328 patent;

M. A judgment declaring that Counterclaim Plaintiff has not willfully infringed and is not willfully infringing any valid and/or enforceable claim of the '599 patent;

N. A judgment declaring that Counterclaim Plaintiff has not willfully infringed and is not willfully infringing any valid and/or enforceable claim of the '980 patent;

O. A judgment declaring that each claim of the '687 patent is invalid and/or unenforceable;

P. A judgment declaring that each claim of the '833 patent is invalid and/or unenforceable;

Q. A judgment declaring that each claim of the '740 patent is invalid and/or unenforceable;

R. A judgment declaring that each claim of the '328 patent is invalid and/or unenforceable;

S. A judgment declaring that each claim of the '599 patent is invalid and/or unenforceable;

T. A judgment declaring that each claim of the '980 patent is invalid and/or unenforceable;

U. A judgment declaring this to be an exceptional case under 35 U.S.C. § 285 and awarding Counterclaim Plaintiff its costs (including expert fees), expenses, and reasonable attorneys fees;

V. Compensatory, consequential, and punitive damages for Finisar's breach of the Customer Agreements;

W. Specific performance of the Finisar's promises and obligations under the Customer Agreements, including Finisar's agreement not to assert any claim or action for patent infringement against Nistica;

X. Compensatory, consequential, and punitive damages for Finisar's breach of the

41

Confidential Settlement Agreement and Release;

Y. Specific performance of the Finisar's promises and obligations under the Confidential Settlement Agreement and Release, including Finisar's wavier, release, and covenant not to sue under Section 7 of the Confidential Settlement Agreement and Release.

Z. Such other and further relief as the Court may deem just and proper.

Dated: December 5, 2014                    DENTONS US LLP


                                           /s/ Robert F. Kramer
                                           ROBERT F. KRAMER

                                           Attorneys for Defendant
                                           **NISTICA, INC.**

# DEMAND FOR JURY TRIAL

Defendant and Counterclaim Plaintiff Nistica, Inc. demands a trial by jury on all issues so triable in accordance with Fed. R. Civ. P. 38(b).

Dated:  December 5, 2014                    DENTONS US LLP


                                           By: */s/ Robert F. Kramer*
                                               ROBERT F. KRAMER

                                           Attorneys for Defendant
                                           **NISTICA, INC.**

**<u>CERTIFICATE OF SERVICE</u>**

I, Robert F. Kramer, hereby declare:

1.      I am an attorney licensed to practice law in the state of California. I am employed by Dentons US LLP, counsel for Defendant Nistica, Inc.

2.      On December 5, 2014, I caused to be electronically filed and served the attached document via the United States District Court's website, described as follows:

**SECOND AMENDED ANSWER TO COMPLAINT AND COUNTERCLAIMS**

on at least one member of each firm designated on the Transaction Receipt located on the Court's ECF website.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 5, 2014 at Palo Alto, CA.

_____*/s/ Robert F. Kramer*_____