

December 8, 2014

Christopher Cox

WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

David C. Radulescu
Tigran Vardanian
Robin M. Davis
RADULESCU LLP
The Empire State Building
350 Fifth Avenue, Suite 6910
New York, NY 10118

Attorneys for Plaintiff
FINISAR CORPORATION

Robert F. Kramer, Jennifer D. Bennett,
Russell Tonkovich, C. Gideon Korrell
DENTONS US LLP
1530 Page Mill Road, Suite 200
Palo Alto, CA 94304

Shailendra Maheshwari
DENTONS US LLP
300 K Street, N.W.
Suite 600, East Tower
Washington, DC 20005

Joe Bock
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020-1089

Attorneys for Defendant
NISTICA, INC.


Hon. Jacqueline Scott Corley
United States District Court
San Francisco Courthouse, Courtroom F
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Finisar Corporation v. Nistica, Inc.,* No. 5:13-cv-03345-BLF
      Letter Brief – Motion to Compel Nistica's Production of All Requested Documents in
      Compliance with the Court's Order Re: Joint Discovery Letter (Dkt. No. 93)

Dear Judge Corley,

Plaintiff Finisar Corporation ("Finisar") and Defendant Nistica, Inc. ("Nistica") jointly submit this letter brief summarizing Finisar's discovery motion based on its allegation that Nistica was obligated to produce all requested documents by May 2014 in compliance with the Court's Order Re: Joint Discovery Letter (Dkt. No. 93) (the "Order").  Specifically, the parties dispute Finisar's allegation that Nistica was obligated to search for and produce emails in response to Finisar's requests for production by the deadline for production of "all other requested documents" set in May 2014 by the Order.  The parties hereby attest that they met and conferred concerning the issues raised in this letter brief telephonically on November 13, 2014 and via correspondence.



Hon. Jacqueline Scott Corley
December 8, 2014

**STATEMENT BY FINISAR**

**Relief Requested by Finisar**:  Finisar seeks an order compelling Nistica to comply, belatedly, with the Order by producing all responsive, non-privileged emails requested by Finisar within the scope of ESI production Nistica agreed to in the May 1st Joint Case Management Statement ("JCMS") (Dkt. No. 95).  Finisar requests that Nistica be ordered to produce such emails by no later than December 23, 2014.  Further, Finisar seeks relief to alleviate the prejudice to Finisar caused by Nistica's non-compliance with the Order, including an additional opportunity to depose Dr. Thomas Strasser, Nistica's Chief Technology Officer, who Finisar deposed pursuant to both Fed. R. Civ. P. 30(b)(1) and 30(b)(6) (designated on over 40 deposition topics) on November 20 and 21, 2014, without benefit of an advance production of his responsive emails.

Nistica was obligated to produce all non-privileged documents responsive to Finisar's document requests by the May 2014 deadline set forth in the Order.  Specifically, the Court issued the Order on April 3, 2014 requiring Nistica to produce certain requested technical documents concerning the Nistica Accused Products by April 11, 2014, as part of the Court's resolution to Finisar's motion to compel Nistica's compliance to an earlier court order.  (Dkt. Nos. 60, 86, & 93).  In the same Order, the Court also set a May 21, 2014 deadline for Nistica to produce "all other requested documents."  (Dkt. No. 93).

Finisar served its First Set of Requests for Production on Nistica on October 22, 2013. (*See* Finisar Exh. A, Finisar's First Set of Requests for Production of Documents and Things (Nos. 1-72)).  The definition of "documents" requested by Finisar's RFPs clearly sought production of electronically stored information, including email.  (*See id*. at 3-4).  Additionally, shortly after the Order was entered, Nistica agreed to produce all electronically stored information ("ESI") in response to document requests in this case in the May 1st JCMS.  (Dkt. No. 95 at 7).

However, Nistica did not make any effort to search for and produce responsive, non-privileged emails by the Order's deadline for production of all then-requested documents.  Indeed, Nistica *admits* that it has not yet produced emails, rendering Nistica noncompliant with the Court's Order.  (Finisar Exh. B, October 31, 2014 Ltr from J. Bennett to R. Davis at 2).  Finisar timely complied with the Order and produced all non-privileged emails responsive to Nistica's outstanding RFPs in accordance with the Order.  Nistica's latest decision to continue to pursue a strategy of delay in this case, by failing to search for and produce any of the requested emails by the Order's deadline while continuing to sell its Accused Products to Finisar's customers, further damages Finisar's standing in the marketplace and prejudices Finisar's ability to prosecute its claims.

**History And Development Of This Dispute:**  This is not the first time Nistica has refused to provide relevant discovery in this case.  Prior to the instant dispute, Nistica filed a Motion to Strike, which was later denied (Dkt. No. 73), rather than produce information and documents relating to its Accused LCoS Products.  After denying Nistica's motion to strike and granting Finisar's motion to compel technical documents concerning the Accused LCOS Products (Dkt. No. 56), the Court issued an Order requiring Nistica to produce technical documents concerning its Accused LCOS Products by March 17, 2014.  (Dkt. No. 60).  Nistica did not meet the court-ordered March 17th production deadline, and Finisar was forced to file a motion to enforce Nistica's compliance.  (Dkt. Nos. 79 & 86).  To resolve Finisar's motion to enforce, the Court issued the Order, requiring Nistica to produce technical documents concerning the Accused Products by April 11, 2014, and both parties to complete production of "all other requested



Hon. Jacqueline Scott Corley
December 8, 2014

documents" by May 21, 2014.  (Dkt. No. 93).

On May 1, 2014, prior to the May 21, 2014 document production deadline set by the Order, the parties submitted a JCMS, informing the Court that the parties generally agreed to produce ESI. (Dkt. No. 95 at 7).  Based on that agreement and the clear language of the Order, Finisar collected and produced all requested documents by the deadline, including non-privileged emails that were responsive to Nistica's document requests.  Nistica's production in advance of the Order's deadline also included a large volume of emails (over 1,000), along with other types of documents.  Consequently, it was not immediately apparent to Finisar during its review of Nistica's voluminous document production that Nistica had produced emails only inadvertently, and that these emails were not, in fact, the result of an intentional effort to collect, review, and produce emails responsive to Finisar's RFPs.  (Finisar Exh. B at 2).

Indeed, Nistica's failure to produce all requested emails became apparent to Finisar's counsel when they began a detailed review of emails produced by Nistica in preparation for taking the deposition of Nistica's CTO, Dr. Strasser.  At that time, a thorough review of Nistica's document production made apparent that Nistica had not produced any emails dated later than 2010.

On October 28, 2014, Finisar sent Nistica a letter outlining the deficiencies in Nistica's document production.  (Finisar Exh. C, Oct. 28, 2014 Ltr from Robin M. Davis to Russell Tonkovich at 2).  In relevant part, the letter stated that Nistica had not produced any emails dated later than 2010 and indicated that Finisar believed Nistica's failure to produce emails responsive to Finisar's document requests was a violation of the Order.  On October 31, 2014, Nistica responded with a letter indicating that "emails will be handled per the model discovery order, which requires a request and identification of custodians and search terms" and stating that Nistica "[did] not understand the complaints in [Finisar's] October 28 letter regarding production of email."  (Finisar Exh. B at 2).

**<u>The Parties Tried Unsuccessfully To Find A Compromise Resolution:</u>**  During a November 6, 2014 meet and confer, Nistica confirmed for the first time that it had not collected Mr. Strasser's emails, as suggested by its October 31 correspondence.  Nistica's counsel explained that, by chance, some emails dated 2010 and earlier were produced to Finisar, but this limited production of emails was inadvertent and not the result of any actual effort to search for and produce emails responsive to Finisar's RFPs.

Additionally, during the parties' November 6 meet and confer, Nistica indicated for the first time that it believes discovery of email in this case is governed by the Advisory Council for the United States Court of Appeals for the Federal Circuit's Model E-Discovery Order for Patent Infringement Cases based on language from the Parties' Rule 26(f) Report filed on November 25, 2013 (Dkt. No. 42), even though the parties never actually negotiated, agreed to, or asked the Court to enter such an order limiting e-discovery.  (*See* Dkt. No. 42 at 5 (stating that the parties "have not yet agreed on all aspects of [a proposed model discovery] order" and would negotiate, and submit to the court, a proposed order for discovery of electrically stored information)).

Nistica is well aware that no negotiation of a discovery order has occurred, and without such a proposed order being submitted to the Court. Given the parties' superseding May 1st JCMS (Dkt. No. 95), where both parties agreed to produce all electronically stored information, Nistica has no basis to claim that the Court's April 3rd Order Re: Joint Discovery Letter (Dkt. No. 93) did not



Hon. Jacqueline Scott Corley
December 8, 2014

require the production of email, along with all other types of requested documents.

Finisar tried to compromise with Nistica to avoid motion practice regarding the instant dispute concerning production of email. In response to a request by Nistica's counsel during the November 6, 2014 meet and confer, Finisar sent Nistica a list of suggested search terms to help streamline Nistica's efforts to produce the requested documents prior to Dr. Strasser's scheduled deposition. (Finisar Exh. D, Nov. 7, 2014 Email from R. Davis to Nistica counsel with attachment).

Finisar further attempted to resolve the dispute by meeting and conferring with Nistica on November 13, 2014 regarding the parties' dispute over Nistica's failure to produce emails and concerning the JCMS due to be filed that day. The email dispute was discussed again during the conference, but the parties could not come to a resolution. The next day, Nistica sent an email complaining about Finisar's suggested search terms, namely that they were "unduly burdensome" and "overbroad." (Finisar Exh. E, Nov. 14, 2014 Email from R. Kramer to T. Vardanian).

As Finisar explained during the November 6, 2014 meet and confer, there was not enough time remaining before Dr. Strasser's deposition for the parties to negotiate search terms—thus, Finisar's list of search terms was intended as a suggestion only. Finisar trusted Nistica to use its best judgment to search for and produce all emails response to its RFPs. Nevertheless, Nistica seemed to believe Finisar's efforts to facilitate email production by sending suggested search terms created some kind of binding obligation on Nistica. To help further narrow the results of Nistica's email production, Finisar suggested Nistica provide statistical results of their email search using Finisar's search terms, including on a term-by-term basis, so that Finisar could identify which terms would be sufficient to yield an adequate email production. (Finisar Exh. F, Nov. 12, 2014 Email from Tigran Vardanian to Robert F. Kramer). But, despite Nistica's complaint that the list of search terms suggested by Finisar would result in too many email hits, Nistica did not present Finisar with term-by-term hit counts to permit Finisar to see what terms needed to be narrowed. Thus, Nistica failed to produce any of Dr. Strasser's emails before his deposition on November 20th and did not give Finisar any guidance sufficient to allow it to streamline the email production process.

Judge Freeman held a Case Management Conference on November 19, 2014. (Dkt. No. 130.) During that conference, counsel for Finisar explained that, despite Nistica's insistence that the parties' dispute over Nistica's obligation to produce emails was appropriate subject matter for the CMC, Finisar considered the dispute best suited for resolution through the standard discovery dispute process according to the Court's rules. Judge Freeman agreed. (Dkt. No. 130.)

Unfortunately, the parties remain unable to resolve their dispute regarding the propriety of production of emails since the Case Management Conference, and now request the Court's assistance. To date, Nistica has yet to search for and produce responsive emails in this case.

**Nistica's Continuing Failure to Comply with the Court's Order and Produce Emails in Response to Finisar's RFPs Unduly Prejudices Finisar:** Finisar contends that Nistica should be required to promptly produce all emails that are responsive to Finisar's RFPs and not privileged by December 23, 2014—indeed, this production of emails was required under the Order to be completed in May and Finisar timely complied with the Order's deadline.



Hon. Jacqueline Scott Corley
December 8, 2014

Nistica apparently relies on an incorrect understanding that the Order did not require production of responsive, non-privileged emails, and an assumption that email production should be limited by a model order that the parties did not negotiate. In the Rule 26(f) Report, the parties only stated that they would subsequently "negotiate an agreement governing discovery of electronically stored information" (Dkt. No. 42 at 5). The parties clarified that they are "still negotiating the details of such an agreement." (*Id*). No such agreement has been entered into and neither party has made any agreement to withhold emails. In fact, in the May 1, 2014 JCMS, the parties agreed to produce ESI generally and made no mention of refusing to produce emails. (Dkt. No. 95).

Finisar timely complied with the Court's April 3rd Order by producing responsive, non-privileged emails in May 2014. Nistica must also produce responsive emails in compliance with the Court's Order. *See Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-cv-1846-LHK, 2012 U.S. Dist. LEXIS 96302, at *13-14 (N.D. Cal. July 11, 2012) ("Rule 37(b) of the Federal Rules of Civil Procedure authorizes sanctions against a party who 'fails to obey an order to provide or permit discovery under Rule 26(f), 35, or 37(a).'").

Furthermore, Finisar was prejudiced in its ability to effectively prepare for and take Dr. Strasser's deposition by Nistica's failure to produce emails, as it was required to do by the Order. Because Dr. Strasser was designated as Nistica's 30(b)(6) witness on more than 40 deposition topics and the parties' agreed deadline to amend infringement contentions and narrow the asserted claims (December 19, 2014) was rapidly approaching, Finisar was unable to delay Dr. Strasser's deposition to resolve this document production issue. Consequently, Finisar requests that the Court permit Finisar to take up to seven (7) addition hours of combined 30(b)(6) and 30(b)(1) deposition testimony from Dr. Strasser following completion of Nistica's production of responsive, non-privileged emails.

**Finisar's Reply to Nistica's Statement:** Finisar objects to numerous mischaracterizations of the parties' discovery correspondence and conferences in Nistica's Statement (below). Nistica suggests that Finisar routinely disregards discovery obligations, even though the history of this dispute demonstrates the opposite.[1] Similarly, Nistica's insinuation that Finisar behaves differently in discovery as a defendant by comparison to the *Mears* and *Swan* cases is inapposite—the parties in both of those cases agreed to follow the Eastern District of Texas' Model Order Regarding E-Discovery in Patent Cases, which provides specific custodian and search term limits. No such agreement was ever entered in this case.

Additionally, Finisar notes that the parties have yet to meet and confer regarding the new dispute that Nistica plans to brief—consequently, Finisar has advised Nistica that it cannot commit to submitting a joint letter brief on this new, disparate dispute this week and does not believe the

---

[1] To address a few of Nistica's inappropriately-raised discovery issues, which are not ripe or before the Court at this time, Finisar notes that it agreed to produce all licenses related to the patents-in-suit and WSS technology generally—Nistica wishes for a broader scope of production, but this does not mean Finisar has refused to produce all licenses. Indeed, Nistica did not request the production of Finisar's licenses until August 2014, so its production was not due at the Order's deadline in May 2014. Additionally, for the first time in this letter brief, Nistica complains that Finisar has collected and produced emails from more individuals than it has identified in its initial disclosures. Surely, Finisar's inclusion of more employees in its document collection and production efforts shows the reasonableness of Finisar's production efforts, and does not indicate any discovery delinquency. Finisar is disappointed that Nistica would choose to first bring these complaints to the Court in its section of this letter brief rather than actually raise them in correspondence or in a meet and confer with Finisar.

P: 646-502-5950    F: 646-502-5959    W: Radulescullp.com                                                    5



adjudication of this dispute should be delayed pending the potential filing of another motion. Nistica has yet to identify any category of responsive emails that it believes is missing from Finisar's document production—Finisar will, of course, remedy deficiencies in in its production if and when they are identified.

Nistica was very aware that the parties never finished negotiating the terms of any discovery model order[2] and knew that Finisar changed the relevant provisions in the May 1, 2014 JCMS— Finisar's counsel sent Nistica's counsel a revised draft JCMS in April 2014 and an original word version of the final November 2013 JCMS so that Nistica's counsel could run a comparison and identify all changes. (*See* Finisar Exhs. G, H, I, & J, April 28, 2014 Emails between R. Davis and R. Kramer, with attachments).

Finisar does not believe that either party is obligated to produce "all emails of all of their employees relevant to all issues in the case," as Nistica asserts below. Finisar's position is that both parties were required to conduct a reasonable search for and produce all responsive, non-privileged documents, including emails, responsive to the outstanding RFPs by the May 2014 deadline set in the Order. Finisar complied with the Order, and Nistica did not.

**Conclusion:** Finisar respectfully requests that the Court enter an order (1) compelling Nistica to belatedly comply with the Order by producing all documents, specifically emails, requested by Finisar by no later than December 23, 2014; (2) permitting Finisar to take up to seven (7) additional hours of deposition testimony from Dr. Thomas Strasser after Nistica's production of email is complete; and (3) granting any further relief that the Court deems appropriate.

## STATEMENT BY NISTICA

### Finisar's Knowing Refusal To Comply With the Court's Discovery Orders

Finisar's document production in this case is woefully incomplete and it has not complied with the Court's order to produce documents by May 21, 2014. Specifically, Finisar has failed and refused to produce numerous significant documents bearing on important issues in the case. In the parties' meet and confer conferences, Finisar has taken the position that for any category of requested, non-privileged, responsive documents, if it identifies a minor aspect of the category that it disagrees with producing, it withholds and refuses to produce all documents in the entire category, even those that are admittedly relevant and must be produced, until the dispute is resolved. As a result, Nistica has produced approximately four times as many documents to Finisar than Finisar has produced to Nistica: Nistica produced approximately 191,000 documents (approximately 780,000 pages) and Finisar produced approximately 58,000 documents (approximately 434,000 pages).

Finisar has refused to produce, for example, patent license agreements that relate directly to the products at issue in this case and were requested months ago. Finisar's refusal is based on the parties' disagreement about whether it should produce *some* patent license agreements relating to products that are not precisely the same type of products that are at issue in this case. Patent

---

[2] Nistica now argues that the parties should be bound by the Northern District of California's Model Stipulated Order Re: Discovery of Electronically Stored Information for Patent Cases, even though the May 2014 JCMS referenced only the parties' interest in negotiating an agreement similar to Federal Circuit's Model E-Discovery Order for Patent Infringement Cases.



license agreements are produced in all patent cases like this one and there is no excuse for Finisar's refusal.  Finisar has taken this same approach with respect to other categories of documents that are plainly relevant.  Nistica is patiently working with Finisar to resolve these issues, but it appears that a motion may be required.

Finisar's production of email is highly suspect and plainly incomplete.  Moreover, Finisar's representation to the Court on November 14, 2014 that it "produced all emails responsive to Nistica's document requests" is also highly questionable.  (Finisar's Case Management Statement dated 11/13/14 (Doc. No. 126 at 10, line 2.)  Finisar has produced approximately 21,365 emails total in this case from all of its custodians and on all issues.  This occurred on May 28, 2014.  (Finisar's emails contain lengthy attachments, which Finisar mischaracterizes in its representation that it produced 247,000 emails.)

Finisar is seeking damages and an injunction, claiming that the patents-in-suit cover numerous *Finisar* optical switching products many of which it claims compete with Nistica's optical switching products.  Finisar's products are squarely at issue in this case, including -- how Finisar's products are designed, marketed, sold, function, operate, the market, revenue and profit and other competitors products are all issues relevant to an injunction.  The relevant time period here is many years going back to around 2005 when Nistica was formed.  Other important issues in this case focus on Finisar's acquisition of the six patents-in-suit, including the representations made about the patents.  Clearly Finisar employees participated in the negotiations and acquisition of the patents-in-suit.  Finisar claims to be the largest optical switch maker in the world and has numerous employees involved in these various topics and who have emails that are relevant. [3]

Finisar's position is that the parties were required to produce <u>all</u> emails of <u>all</u> of their employees relevant to <u>all</u> issues in the case.  Finisar made an unqualified representation to Judge Freeman recently on November 14, 2014 that it "produced all emails responsive to Nistica's document requests."  (Finisar's Case Management Statement, Doc. No. 126 at 10, line 2.)  Finisar produced in this case, however, only 21,365 emails total from all of its employees and on all issues.  On November 7, 2014, Finisar provided to Nistica suggested search terms for the email of one Nistica employee, Dr. Strasser.  As Nistica advised Finisar on November 14, 2014, Finisar's proposed search terms yielded more than 72,000 hits of Dr. Strasser's email alone, just one custodian.  (Nistica Exh. 4 [Kramer 11/14/14 email to Vardanian].) This is in comparison to Finisar's total production of 21,365 emails from all of Finisar's employees on all issues in the case.  Moreover, despite repeated requests, Finisar refused to advise Nistica what search terms Finisar used to identify the emails Finisar deemed "relevant" to assist Nistica in understanding how there could be so few emails from all of Finisar's employees.  (Nistica Exhibits 5 and 6 [Bennett letters dated December 1, 2014], Nistica Exh. 7 [Davis reply email dated December 1, 2014], and Nistica Exh. 8 [Davis reply letter dated December 3, 2014].)  Finisar advised that it searched and obtained emails from a list of Finisar employees, none of whom are identified in its FRCP 26(a) Initial Disclosures.  This also raises serious questions about why those employees are not listed in Finisar's FRCP 26(a) Initial Disclosures if Finisar deemed them worthy of

---

[3] Also curiously, Finisar's Federal Rule 26(a)(1)(A)(i) Initial Disclosures served November 13, 2013 and supplemented recently on November 26, 2014, <u>identifies only one employee</u> of plaintiff Finisar Corp. as having knowledge of any of the numerous issues in this case.  (Nistica's Exh. 2 [Finisar's Rule 26(a) Initial Disclosures dated November 13, 2013], and Nistica Exh. 3 [Finisar's Amended Rule 26(a) Initial Disclosures dated November 26, 2014].)



Hon. Jacqueline Scott Corley
December 8, 2014

searching their emails for relevant documents.  Plainly, Finisar is not in compliance with its discovery obligations in this case.

### Northern District of California Model Stipulation & Order Re: Discovery of Electronically Stored Information For Patent Litigation

Nistica is moving for an order (1) directing all discovery of email to be governed by the Northern District of California Model Stipulation & Order Re: Discovery of Electronically Stored Information For Patent Litigation and (2) compelling Finisar to produce emails in compliance with the model order.  The parties will submit a joint discovery letter during the week of December 8, 2014 on this motion, which is intertwined with the instant letter brief.

Finisar has reneged on a clear agreement the parties made at the outset of this case that the model e-discovery order for patent cases should govern the discovery of emails.  This understanding was memorialized in the parties' Initial Case Management Statement filed with the court on November 25, 2013 (Dkt. No. 42).  Finisar's hyperbole today is intended to mask its clear violation to follow the agreed procedure and its current effort to claim either that there was no agreed to procedure or that it was later (without any discussion) unilaterally changed by Finisar, unbeknownst to Nistica.

At the beginning of this case, the parties discussed discovery of emails and specifically negotiated and agreed to follow the general framework of the Federal Circuit's Model E-Discovery Order for Patent Infringement Cases.  (Nistica Exh. 9.)[4]  With respect to discovery of emails, the model e-discovery order lays out a procedure whereby first electronic data (*i.e.*, non-email) is produced.  Then, if a party would like to receive email from an opposing party, it makes a specific request by identifying the custodians from whom emails should be collected and the specific search terms to be used.  The Federal Circuit and the Northern District of California advisory committees recognize that discovery of email in patent cases is generally burdensome and often is of questionable probative value.  Accordingly, if a party requests email from more than five custodians and search terms, costs may be shifted to the requesting party that is generating the burden.

The parties' arrangement to have the model order govern discovery of email was memorialized in the parties' Initial Case Management Statement filed on November 25, 2013 (Dkt. No. 42):

> The parties have generally agreed to negotiate an agreement governing discovery of electronically stored information. The parties, however, are still negotiating the details of such an agreement. <u>The parties generally agree to follow the general framework of the Advisory Council for the United States Court of Appeals for the Federal Circuit's Model E-Discovery Order for Patent Infringement cases, but have not yet agreed on all aspects of this order, including for example the number of custodians or the number of search terms per custodian</u>.

(Nistica Exh. 10 at 5 [Dkt. No. 42]).  At the time the parties filed the Initial Case Management Statement on November 25, 2013 they had left open merely a few items regarding discovery of

---

[4] The Northern District of California has adopted a very similar model e-discovery order for patent cases as that of the Federal Circuit model order on e-discovery relating to emails.  (Nistica Exh. 1.)

P: 646-502-5950      F: 646-502-5959      W: Radulescullp.com                                                   8



Hon. Jacqueline Scott Corley
December 8, 2014

emails that they had not agreed to such as the number of custodians or the number of search terms per custodian.  After the parties memorialized their understanding about email discovery on November 25, 2013 (Dkt. No. 42), there was never any discussion about changing this procedure until November 2014.  Significantly, Finisar never told Nistica that Finisar had an understanding that different rules or procedure would apply to email discovery until October 28, 2014.  Per Judge Corley's Order on discovery (Dkt. No. 93), the parties were to substantially complete production of documents in May 2014.

Finisar and its counsel are familiar with the model order and procedure for discovery of email, which is widely used in patent infringement cases.  In fact, Finisar (represented by the same counsel who represents it in this case), agreed that this procedure governed discovery of email in Finisar's two recent patent cases in which Finisar was a defendant accused of patent infringement.  Finisar agreed in that discovery of email would be limited to 5 custodians and 10 search terms in the *Mears v. Finisar* patent infringement case in September 2013.  Likewise, Finisar agreed that discovery of email would be limited to 8 custodians and 10 search terms in the *Thomas Swan v. Finisar* patent infringement case in August 2013.  Finisar was a defendant in those cases where the focus of email discovery could potentially be burdensome on it, and thus it wanted to have rational limits on this type of questionably useful discovery.  Here, in *Finisar v. Nistica*, where Nistica is the defendant, Finisar has no interest in this procedure where it sees an opportunity to impose burden and cost on its much smaller competitor.

In preparation for a Case Management Conference in May 2014, the parties submitted a Case Management Statement (Dkt. No. 95.)  There was no discussion about changing the agreed procedure for discovery of email.  The Case Management Statement filed on May 1, 2014 (Dkt. No. 95) states: "D. Discovery of ESI.  The parties have generally agreed to produce electronically stored information in response to document requests."  Finisar never advised Nistica that this was intended to change in any way, much less completely alter the agreed upon procedure for discovery of emails, which is Finisar's position today.

Based on the parties' agreement set forth in the Initial Case Management Statement filed on November 25, 2013 (Dkt. No. 42), quoted above, Nistica has understood throughout this case, until recently when Finisar raised this issue in the course of conferring about discovery issues, that with respect to email discovery the procedure of the Federal Circuit's Model Order Regarding E-Discovery in Patent Cases governs in this case.

   Finisar makes a representation in this letter that "during the parties' November 6 meet and confer, Nistica indicated for the first time that it believes discovery of email in this case is governed by [the Federal Circuit Model E-Discovery Order]." This is incorrect. On October 28, 2014, Finisar for the very first time advised that it believed discovery of email should have been done.  This is the first time that Finisar indicated that it believed that discovery of email is not governed by the Federal Circuit Model E-Discovery Order. See Nistica Exh. 11 at 2 [Davis 10/28/14 letter]. Nistica was surprised and it promptly replied by letter dated October 31, 2014 reminding that discovery of email is governed by the Federal Circuit Model E-Discovery Order governs discovery of email and that Finisar had made no request for email yet. (Nistica Exh. 12 at 2 [Bennett letter 10/31/14].)

   In this case, Finisar failed to follow the procedure for discovery of email set out in the Federal Circuit's Model Order Regarding E-Discovery in Patent Cases, which the parties agreed



to follow at the outset of the case.  Finisar never served a request for email.  Finisar never identified from which custodians it seeks emails.  Finisar never identified search terms to be used for email discovery.  In a meet and confer on November 6, 2014, Finisar contented that there was never an arrangement to follow the Federal Circuit's Model Order Regarding E-Discovery in Patent Cases and, in the alternative, if there had been such agreement, it was cancelled by the single sentence put into the May 2014 Case Management Statement, which was never discussed by the parties.

On October 28, 2014, Finisar was preparing to take the deposition of Nistica employee Thomas Strasser and in the course of reviewing Nistica's documents Finisar raised an issue, for the first time in the case, that Nistica had not produced emails.  Nistica promptly explained that the model order procedure should be followed.  On November 7, 2014, Finisar for the first time in the case provided a list of approximately 60 search terms asking that Nistica use these terms to search Mr. Strasser's email.  Under the model order procedure for the use of "or" in search terms, Finisar's list is actually approximately 200 search terms.  Nistica used Finisar's proposed approximately 200 search terms to search Mr. Strasser's ten years of email. This large number of search terms is clearly contrary to the procedure or spirit of the Model E-Discovery Order.  On November 14, Nistica advised that using Finisar's proposed 200 search terms yields more than 72,000 hits in Mr. Strasser's emails.  Nistica "invited Finisar to revise its search terms such that they are not overbroad" and suggested that Finisar agree to shift the cost of a broader search if Finisar insisted upon having more than five search terms. (Nistica Exh. 4 [Kramer 11/14/14 email to Vardanian].)  Finisar never replied and refused to narrow its search terms.

The model order provides for the shift of costs if a party, such as Finisar, seeks to have an opposing party run more than a limited number of search terms.  The scope of Finisar's document requests is extremely broad and burdensome and the emails Finisar seeks are of questionable value in relation to the burden and cost imposed.  Finisar's infringement accusations with respect to some patents and Nistica products remains questionable, as evidenced by Finisar counsel's indication to the Court during the August 8, 2014 Markman hearing that Finisar does not know even today, more than a year after this case was filed (and technical documents were produced months ago), what optical components are in Nistica's products.  Under the circumstances, the burden Finisar seeks to impose on its smaller competitor is unreasonable.

Lastly, Finisar has taken two full days of deposition of Mr. Strasser on November 20 and 21, 2014.  Finisar has not shown any basis to take an additional day of deposition of Mr. Strasser.  Rather, Finisar knew since October 31, 2014 that the parties had a dispute about production of email, with Nistica understanding that a specific request for email with identification of custodians and search terms being the agreed upon procedure.  See Nistica Exh. 12 at 2 [Bennett letter 10/31/14].)  Nistica repeatedly invited Finisar to propose reasonable and narrowed search terms for email, including once again on November 14.  Finisar refused throughout and has never done so. (Finisar has also had for months the approximately 7,700 emails of Mr. Strasser that Nistica produced earlier in the case which had been on a hard drive that Nistica collected documents from.)  Finisar chose to go forward with Mr. Strasser's deposition on November 20-21 deposition without this issue of email production being resolved.  Finisar could have filed a motion to compel in early November and then taken Mr. Strasser's deposition after the email issue was resolved.  Finisar chose not to do so, instead hoping to use the email issue to have multiple depositions of this witness.  Finisar should now be required to wait and review any


Hon. Jacqueline Scott Corley
December 8, 2014

additional email of Mr. Strasser that is produced under the model order and then determine whether an additional deposition is necessary.  Moreover, any deposition should be limited to questions relating specifically to email produced after his deposition taken on November 20-21, 2014.

    Respectfully submitted,

| | |
|---|---|
| RADULESCU LLP | DENTONS US LLP |
| WEIL GOTSHAL & MANGES LLP | |
| By: */s/ Robin M. Davis* | By: */s/ Jennifer D. Bennett* |
| Attorneys for Plaintiff Finisar Corporation | Attorneys for Defendant Nistica, Inc. |