CHRISTOPHER J. COX (BAR NO. 151650)
Email: chris.cox@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3029
Facsimile: (650) 802-3100

DAVID C. RADULESCU (*pro hac vice*)
Email: david@radulescullp.com
TIGRAN VARDANIAN (*pro hac vice*)
Email: tigran@radulescullp.com
ROBIN M. DAVIS (*pro hac vice*)
Email: robin@radulescullp.com
RADULESCU LLP
136 Madison Avenue, 6th Floor
New York, NY 10016
Telephone: (646) 502-5950
Facsimile: (646) 502-5959

*Attorneys for Plaintiff*
*FINISAR CORPORATION*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>NISTICA INC., a Delaware corporation,<br><br>Defendant. | No. 5:13-cv-03345-BLF<br><br>**PLAINTIFF FINISAR CORPORATION'S MOTION TO DISMISS NISTICA'S 13th & 14th COUNTERCLAIMS AND STRIKE ITS 18th-28th AFFIRMATIVE DEFENSES IN NISTICA'S SECOND AMENDED ANSWER (DKT. NO. 132)**<br><br>Date:  March 19, 2015<br>Time:  9:00 a.m.<br>Place:  San Jose Courthouse, Courtroom 3<br>Judge: Hon. Beth Labson Freeman<br><br>**Confidential Information Redacted** |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION...................................................................................1

I.    INTRODUCTION.......................................................................................................2

II.   FACTUAL BACKGROUND.....................................................................................3

    A.    Nistica Added Two New Counterclaims and Eleven New Affirmative Defenses Via Its Amended Answer After Entry of the Court's Claim Construction Order...................................3

    B.    Nistica's Second Amended Answer Introduced One Counterclaim and Four Affirmative Defenses Premised on the Existence of Third Party Rights for Nistica Arising out of Unidentified "Customer Agreements".........................................................5

    C.    Nistica's Second Amended Answer Introduced Its Counterclaim and Affirmative Defenses Reliant on the 2009 Settlement Agreement.............................................7

III.  ISSUES TO BE DECIDED.......................................................................................8

IV.   ARGUMENT..............................................................................................................9

    A.    Nistica's 13th Counterclaims for Breach of Contract Brought a Third Party Beneficiary Should Be Dismissed under Rules 12(b)(1) and 12(b)(6).........................................9

      i.    Nistica's 13th Counterclaims Cannot Meet Rule 12(b)(6) Because the Basic Requirements of a Breach of Contract Claim Are Not Pled.........................................9

      ii.   Nistica Lacks Standing Pursuant to Rule 12(b)(1) to Sue as a Third Party Beneficiary Under the "Customer Agreement(s)".........................................11

    B.    Nistica's 18th-21st Affirmative Defenses Based on Unidentified "Customer Agreements" Should Be Stricken Pursuant to Rule 12(f)...........................................12

    C.    Nistica's 14th Counterclaim for Breach of Contract Should Be Dismissed for Failure to State a Claim Pursuant to Delaware Contract Law and Lack of Jurisdiction..........................15

    D.    Nistica's 18th Affirmative Defense of License/Implied License Should Be Stricken to the Extent It Is Based on the 2009 Settlement Agreement.........................................18

    E.    Nistica's 19th-21st and 27th- 28th Affirmative Defenses Should Be Stricken Due to Improper Reliance on the 2009 Settlement Agreement.........................................19

    F.    Nistica's 22nd Affirmative Defense of "Unclean Hands" Should Be Stricken.......................20

    G.    Nistica's 19th Affirmative Defense of Patent Exhaustion Should Be Stricken in Its Entirety (under both "Customer Agreements" and 2009 Settlement Agreement-based theories) for Failure to Plead a Required Element.........................................21

    H.    Nistica's 27th Affirmative Defense of Laches and 28th Affirmative Defense of Equitable Estoppel Should Be Stricken.........................................22

I. Nistica's 24th Affirmative Defense of Justified Conduct Should Be Stricken.........................23

J. Nistica's 23rd (Mitigation of Damages), 25th (Failure to State a Claim) and 26th (Unjust Enrichment) Affirmative Defenses Should Be Stricken ............................................................24

V.   CONCLUSION ...............................................................................................................24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................12, 13, 14, 15

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
672 F.3d 1335 (Fed. Cir. 2012) ....................................................................................18

*Barnes & Noble, Inc. v. LSI Corp.*,
849 F. Supp. 2d 925 (N.D. Cal. 2012)..........................................................................14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .....................................................................................12, 13, 15

*California Emergency Physicians Med. Grp. v. PacifiCare of California*,
4 Cal. Rptr. 3d 583 (Cal. Ct. App. 2003) ....................................................................12

*Catch a Wave, Inc. v. Sirius XM Radio, Inc.*,
2013 WL 1996134 (N.D. Cal. May 13, 2013) .............................................................23

*Commil USA v. Cisco Systems, Inc.*,
720 F.3d 1361 (Fed. Cir. 2013), *cert. granted in part*, 82 U.S.L.W. 3459
(2014) (No. 13-896, 2014 Term).................................................................................24

*Crow v. Erectors, Inc.*,
1988 WL 7617 (Del. Super. Jan. 21, 1988)..................................................................12

*CTF Dev., Inc. v. Penta Hospitality, LLC*,
2009 WL 3517617 (N.D.Cal. Oct. 26, 2009) ..............................................................14

*Durning v. First Boston Corp.*,
815 F.2d 1265 (9th Cir.), *cert. denied*, 484 U.S. 944, 108 S.Ct. 330, 98
L.Ed.2d 358 (1987) .....................................................................................................19

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates,*
*S.A.S.*, 269 F.3d 187 (3d Cir.2001)..............................................................................11

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) ..................................................................................21

*Elan Microelectronics Corp. v. Apple, Inc.*,
2010 WL 3069322 (N.D. Cal. Aug. 4, 2010) ..............................................................21

*Fujifilm Corp. v. Motorola Mobility LLC*,
2014 WL 2730724 (N.D. Cal. June 6, 2014) ...............................................................14

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

*Graybill v. Wells Fargo Bank, N.A.*,
  2013 WL 978245 (N.D. Cal. Mar. 12, 2013) ........................................................................10

*Hartstein v. Rembrandt IP Solutions, LLC*,
  2012 WL 3075084 (N.D. Cal. July 30, 2012) .......................................................................16

*Hoffman-La Roche, Inc. v. Promega Corp.*,
  319 F. Supp. 2d 1011 (N.D. Cal. 2004).................................................................................20

*Human Genome Sciences, Inc. v. Genentech, Inc.*,
  2011 WL 7461786 (C.D. Cal. Dec. 9, 2011).........................................................................20

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  2007 WL 4062945 (N.D. Cal. Nov. 15, 2007) ..........................................................2, 21, 24

*Iacono v. Barici*,
  2006 WL 3844208 (Del. Super. Dec. 29, 2006) ...............................................................16, 17

*Infineon Techs. AG v. Volterra Semiconductor Corp.*,
  2013 WL 1832558 (N.D. Cal. 2013) .....................................................................................23

*Integrated Global Concepts, Inc. v. j2 Global, Inc.*,
  2013 WL 3297108 (N.D. Cal. June 28, 2013) .................................................................21, 22

*Jurgens v. CBK, Ltd.*,
  80 F.3d 1566 (Fed. Cir. 1996) ...............................................................................................24

*Karo v. San Diego Symphony Orchestra Ass'n*,
  762 F.2d 819 (9th Cir.1985) ..................................................................................................11

*Levy v. State Farm Mut. Auto. Ins. Co.*,
  58 Cal. Rptr. 3d 54 (Cal. Ct. App. 2007) ..............................................................................10

*Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*,
  247 F.3d 44 (3d Cir. 2001) ....................................................................................................18

*Molnar v. 1-800-Flowers.com, Inc.*,
  2008 WL 4772125 (C.D. Cal. Sept. 29, 2008).......................................................................16

*PageMelding, Inc. v. ESPN, Inc.*,
  2012 WL 3877686 (N.D. Cal. Sept. 6, 2012).........................................................................12

*Perez v. Gordon & Wong Law Grp., P.C.*,
  2012 WL 1029425 (N.D. Cal. Mar. 26, 2012) .......................................................................13

*Powertech Tech., Inc. v. Tessera, Inc.*,
  2012 WL 1746848 (N.D. Cal. May 16, 2012) ..........................................................13, 15, 20

*Publicis Commc'n v. True N. Commc'ns Inc.*,
  132 F.3d 363 (7th Cir. 1997)..................................................................................................16

*Raines v. Switch Mfg.*,
   1997 WL 578547 (N.D. Cal. July 28, 1997) .................................................................19, 20

*Reid-Ashman Mfg, Inc. v. Swanson Semiconductor Serv., L.L.C.*,
   2007 WL 1394427 (N.D. Cal. May 10, 2007) ........................................................................23

*Schulz v. Cisco Webex, LLC*,
   2014 WL 2115168 (N.D. Cal. May 20, 2014) ...........................................................16, 19, 20

*Smith v. Capital One Fin. Corp.*,
   2012 WL 259515 (N.D. Cal. Jan. 27, 2012) ..........................................................................10

*Thereasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) ............................................................................................20

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
   840 A.2d 606 (Del. 2003)................................................................................................10, 16

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
   901 A.2d 106 (Del. 2006).......................................................................................................10

**Statutes**

35 U.S.C. § 271 ..........................................................................................................................22, 24

**Rules**

Fed. R. Civ. P. 8 ...............................................................................................................................13

Fed. R. Civ. P. 9(b)....................................................................................................................20, 21

Fed. R. Civ. P. 12 ....................................................................................................................*passim*

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 19, 2015 and 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 3 of the United States District Court for the Northern District of California, located at 280 South First Street, in San Jose, California, Plaintiff Finisar Corporation ("Finisar"), by and through its counsel, shall and hereby does move for an order (1) dismissing Defendant Nistica, Inc.'s ("Nistica") 13th and 14th Counterclaims presented in Nistica's Second Amended Answer (Dkt. No. 132) ("Second Amended Answer" or "SAA") for failure to comply with the requirements of Fed. R. Civ. P. 12(b)(1), 12(b)(3), and/or 12(b)(6), (2) striking Nistica's 18th-28th Affirmative defenses presented in Nistica's SAA for failure to comply with the requirements of Fed. R. Civ. P. 12(f), and (3) any further relief that the Court deems appropriate.

Finisar's motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Nistica's Second Amended Answer (Dkt. No. 132), the Declaration of Robin Davis and exhibits attached thereto, the complete files and records of this action, any oral argument the Court permits, and any further information that may properly be presented to the Court at or before the time this motion is deemed submitted by the Court.

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3         Over one year after the filing of Nistica's initial and First Amended Answers (Dkt. Nos.

4    20 & 35), Nistica filed its Second Amended Answer (Dkt. No. 132), which includes two new

5    counterclaims and eleven new affirmative defenses that fall seriously shy of the pleading

6    requirements set forth by the Federal Rules of Civil Procedure for both claims and affirmative

7    defenses.  Nistica's overreaching and underachieving attempt at pleading breach of contract,

8    license/implied license, patent exhaustion, waiver, unclean hands, and more—a virtual hornbook

9    full of half-baked ideas to deflect liability for patent infringement—should be rejected.

10        Nistica's new counterclaims and defenses can generally be considered as two families of

11   legal theories, each of which suffers from a common weakness that undermines the sufficiency of

12   Nistica's pleading.  The first "family" of Nistica's new counterclaims and defenses is based on

13   the existence of "Customer Agreements," which are defined by Nistica as Finisar's "contractual

14   agreements with one or more Customers,"—that is, contractual agreements between Finisar and

15   the "various telecommunications and data networking communications companies" that buy

16   Finisar's "optical networking products."  SAA at p. 38 ¶ 75.  Nistica is unable to identify

17   anywhere in its pleadings the counterparty, governing law, or contours of these "Customer

18   Agreements" but, nevertheless, asserts a breach of contract counterclaim based on its status as an

19   intended third party beneficiary of these one or more "Customer Agreements."  Furthermore,

20   Nistica conjures up express and implied license rights for itself arising from these "Customer

21   Agreements," which Nistica further alleges to provide the basis for license, patent exhaustion,

22   estoppel, and waiver affirmative defenses.  Nistica's family of defenses based on the provisions it

23   has conjured up and pled based on the "Customer Agreements" fail to meet the Federal Rules'

24   requirements for putting Finisar on notice of Nistica's claims and defenses and, furthermore, are

25   insufficient to establish Nistica's standing to sue as a third party beneficiary.

26        Nistica's second "family" of new counterclaim and affirmative defenses is based on

27   Finisar's alleged breach of the Confidential Settlement Agreement and Release, executed on or

28   about December 28, 2009, ("2009 Settlement Agreement") by Finisar and Nistica.  However,

1  Nistica failed to attach the 2009 Settlement Agreement to its Second Amended Answer and

2  misrepresents the clear terms of the parties' agreement to support its allegations.  For example,

3  Nistica asserts multiple affirmative defenses reliant on a supposed ongoing "license and/or

4  implied license" to Finisar's patents arising out of the 2009 Settlement Agreement, even though

5  the ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████

7        Nistica's first family of new counterclaims and defenses set forth baseless assumptions of

8  what might be in "Customer Agreements" and its second family relies on unsupportable

9  misinterpretations of clear contract language.  Neither family of counterclaims and defenses is

10  pled in a manner that provides fair notice of Nistica's new counterclaims and defenses, as

11  mandated by the Federal Rules of Civil Procedure.  And Nistica's additional affirmative defenses

12  exhibit further pleading defects.  Nistica's new counterclaims and defenses should be dismissed

13  or stricken pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), 12(b)(6), and 12(f), for the specific

14  reasons discussed in further detail herein.

15  **II.     FACTUAL BACKGROUND**

16        **A.     Nistica Added Two New Counterclaims and Eleven New Affirmative**
             **Defenses Via Its Amended Answer After Entry of the Court's Claim**
17           **Construction Order**

18        Finisar filed its complaint for patent infringement on July 17, 2013, asserting that

19  Nistica's wavelength selective switch ("WSS") and line card products used in optical

20  communications networks ("Nistica Accused Products") infringe six of Finisar's patents—U.S.

21  Patent Nos. 6,956,687 ("the '687 patent"); 7,123,833 ("the '833 patent"); 7,126,740 ("the '740

22  patent"); 6,430, 328 ("the '328 patent"); 7,092,599 ("the '599 patent"); and 7,397,980 ("the '980

23  patent") (collectively, "Finisar's patents-in-suit").  (Dkt. No. 1.)  Specifically, Finisar alleges that

24  Nistica's MEMS-based and LCOS-based WSS and line card products infringe certain of Finisar's

25  patents-in-suit.  (*Id.*)  Nistica filed an answer and counterclaims (Dkt. No. 20) on September 9,

26  2013 and amended its answer and counterclaims for a first time (Dkt. No. 35) on October 24,

27  2013 to rectify certain pleading deficiencies identified by Finisar in its first Motion to Dismiss

28  Counterclaims and Strike Affirmative Defenses (Dkt. No. 23).  Both Nistica's Answer (Dkt. No.

20) and its First Amended Answer (Dkt. No. 35) included 12 counterclaims alleging non-infringement and invalidity as to each of Finisar's patents-in-suit and 17 affirmative defenses, which repeated Nistica's allegations of non-infringement and invalidity while further alleging a statutory damages limitation, failure to mark, prosecution history/claim construction estoppel, limitation on recovery of costs, and unavailability of injunctive relief.

The parties have been conducting discovery on the claims and defenses set forth in Finisar's Complaint (Dkt. No. 1) and Nistica's First Amended Answer (Dkt. No. 35) since October 2013. In the summer of 2014, the parties engaged in claim construction proceedings, culminating with a claim construction hearing before the Court on August 8, 2014. (Dkt. No. 115.) On October 1, 2014, the Court issued the Order Construing Claims of U.S. Patent Nos. 6,430,328; 6,956,687; 7,126,740; 7,397,980 (Dkt. No. 123) ("Claim Construction Order").

Following issuance of the Claim Construction Order, Finisar has continued to press forward to obtain the necessary discovery on each of the Nistica Accused Products to support its infringement case through depositions, interrogatories, and document discovery. *See* Declaration of Robin M. Davis in Support of Finisar's Motion to Dismiss and Strike ("Davis Decl.") at ¶ 2. Nistica, apparently discouraged by the results of the Claim Construction Order, went back to the drawing board (and hornbook) to find new potential counterclaims and affirmative defenses that it might try to plead through its Second Amended Answer (Dkt. No. 132), which was filed with the Court on December 5, 2014—the last day that the parties were permitted to amend their pleadings without leave of Court. (Dkt. Nos. 126, 127, 130.)

In its Second Amended Answer, Nistica both amended its existing affirmative defenses and counterclaims and introduced new ones. (*See generally* Dkt. No. 132.) Nistica's new counterclaims and affirmative defenses fall broadly into two "families" of related claims and defenses discussed in further detail below—(1) a new counterclaim and affirmative defenses based on alleged rights provided to Nistica as a third party beneficiary of certain, unidentified agreements between Finisar and unspecified third party customers for the purchase of Finisar's telecommunications and data networking communications products (referred to by Nistica as the "Customer Agreements"), and (2) a new counterclaim and affirmative defenses based on alleged

1   rights provided to Nistica through a Confidential Settlement Agreement and Release, executed on

2   or about December 28, 2009, ("2009 Settlement Agreement") and Finisar's alleged breach of the

3   2009 Settlement Agreement.  As explained in detail in this Motion, the new counterclaims and

4   defenses in Nistica's Second Amended Answer fail to meet the pleading standards articulated by

5   Fed. R. Civ. P. 12(b)(6) and 12(f), and Nistica further fails to plead sufficient facts to establish its

6   standing as an intended third party beneficiary to bring its counterclaim under the "Customer

7   Agreements."

8           **B.      Nistica's Second Amended Answer Introduced One Counterclaim and Four**
            **Affirmative Defenses Premised on the Existence of Third Party Rights for**
9           **Nistica Arising out of Unidentified "Customer Agreements"**

10          Nistica's 13th Counterclaim states that, on information and belief, certain contracts exist

11  between Finisar and "one or more of [Finisar's] customers" for the sale of Finisar's "optical

12  networking products to various telecommunications and data networking companies (collectively

13  'Customer' or 'Customers')."  SAA at ¶ 75.  Without identifying any agreements by name or

14  counterparty, Nistica proceeds to allege that agreements between Finisar and these unspecified

15  Customers are "Customer Agreements" upon which Nistica brings its counterclaim for breach of

16  contract.  *See id.*  Nistica further alleges that the Customer Agreements "contain one or more

17  clauses in which Finisar agrees not to assert any claim or action for patent infringement against

18  Customer or its respective vendors, including purchasers, suppliers, and manufacturers" and that

19  "Nistica is a supplier or other vendor for Customer."  *Id.*

20          Nistica's 13th Counterclaim alleges injury due to a breach of contract by Finisar—

21  specifically that Nistica is an intended third party beneficiary of the unidentified Customer

22  Agreements that Finisar is alleged to have breached.  *See id.*  However, Nistica never identifies

23  (1) the identity of the Customer Agreements that Nistica asserts have been breached by Finisar,

24  (2) the parties to the Customer Agreements under which Nistica claims to have rights as a third

25  party beneficiary, (3) the particular contract clauses that Nistica claims evidence the "intent of the

26  parties that such clauses were for the benefit of Customers and their respective vendors, including

27  purchaers, suppliers, and manufacturers," (4) the particular contract clauses that show Nistica is

28  an intended third party beneficiary of the Customer Agreements (*id.* at ¶ 75), (5) any damage that

---

1    has occurred to Nistica as a result of Finisar's breach of some provision of the Customer

2    Agreements, or (6) what jurisdictions' contract law should govern interpretation of the Customer

3    Agreements.

4         Nistica further asserts multiple affirmative defenses that rely, at least in part, on certain

5    rights for Nistica that allegedly arise out of the Customer Agreements, without pleading any

6    further details about the Customer Agreements themselves.  For instance, Nistica's 18th

7    Affirmative Defense of "license/implied license" relies, in part, on Nistica's theory that "under

8    the Customer Agreements, Nistica has a license and/or an implied license under Finisar's patents-

9    in-suit to make, use, sell, offer for sale, and import its products, including the products provided

10   to Customers"—at no point does Nistica provide additional details about the Customer

11   agreements or the "products provided to Customers."  SAA at 17.  Similarly, Nistica's 19th

12   Affirmative Defense of "patent exhaustion" alleges that Nistica has a license and/or an implied

13   license to Finisar's patents-in-suit and that "[a]ny sales of Nistica's products, including the

14   products that Nistica has or will provide to Customer, would be an authorized sale thereby

15   exhausting Finisar's rights in the patents-in-suit."  *Id.* at 18.  Nistica likewise pleads its 20th

16   Affirmative Defense (estoppel) and 21st Affirmative Defense (waiver, release, covenant not to

17   sue) through reliance on its allegation that the Customer Agreements provide Nistica with a

18   license and/or implied license to the Finisar patents-in-suit.  *Id.* at 19-21.  At no point in its

19   Second Amended Answer does Nistica specifically identify contractual agreements between

20   Finisar and certain of its customers that allegedly give rise to the license and/or implied license

21   repeatedly-pled by Nistica.

22        Nistica apparently tries to excuse its sketchy pleading with respect to the "Customer

23   Agreements" by alleging in connection with its 13th Counterclaim for breach of contract that

24   "Finisar has refused in this litigation to produce its agreements with Customers."  SAA at p. 38 ¶

25   75.  However, in fact, Finisar has produced numerous agreements between itself and purchasers

26   of Finisar's WSS and line card products, even though Nistica issued a request for production

27   seeking production of "Customer Agreements" one day before filing its Second Amended

28   Answer.  *See* Davis Decl., ¶¶ 3 & 5, Ex. A (Nistica's Corrected Fourth Set of Requests for

1   Production to Plaintiff Finisar Corporation (Nos. 103-113), dated December 4, 2014).  And

2   Finisar further anticipates producing more such agreements once it receives approval from its

3   counterparty to disclose the requested agreements concerning WSS and line card products.  *See*

4   Davis Decl., ¶ 4.

5        C.    **Nistica's Second Amended Answer Introduced Its Counterclaim and
              Affirmative Defenses Reliant on the 2009 Settlement Agreement**

6        Nistica's Second Amended Answer also introduces a breach of contract counterclaim and

7   affirmative defenses related to the 2009 Settlement Agreement.[1]  *See* Davis Decl., ¶ 6, Ex. B

8   (2009 Settlement Agreement).  Specifically, Nistica alleges that "Finisar, on behalf of itself and

9   its affiliates, released Nistica from any and all claims of any nature, whether asserted or

10  unasserted, known or unknown, anticipated or unanticipated, foreseen or unforeseen, that Finisar

11  had against Nistica" and that "Finisar also agreed not to initiate any litigation or other action

12  against Nistica involving any such claims."  SAA at p. 39 ¶ 79.  Nistica also pleads that "Finisar

13  and/or Finisar's affiliates owned one or more of the patents-in-suit in this case, including without

14  limitation, U.S. Patent Nos. 7,092,599 and 7,397,980, as of the execution of" the 2009 Settlement

15  Agreement.  *Id*.

16       However, the portrait of the terms of the 2009 Settlement Agreement painted by Nistica's

17  Second Amended Answer stands in plain contrast to the actual terms of the 2009 Settlement

18  Agreement.  The 2009 Settlement Agreement did not arise from an intellectual property

19  dispute—in contrast, it settled a business dispute and served to formally terminate the Sales and

20  Marketing Agreement entered by the parties in February 2008 and litigation filed in Delaware

21  state court related to the breakdown of the parties' earlier business collaboration.  *See* Ex. B.  As

22  described in further detail in Section IV.D, the 2009 Settlement Agreement nowhere expressly

23  contemplated the release of patent infringement claims, the release of claims actually granted by

24

25  _____

26       [1] While Nistica does not attach the 2009 Settlement Agreement to its pleading, the
    Agreement's terms are referenced throughout the pleading and are appropriate for consideration
27  on a motion to dismiss and strike.  SAA at 17-19, 21-22, 25, and 39.  Finisar has attached the
    2009 Settlement Agreement to the Davis Declaration in support of this Motion, for the Court's
28  convenience.  *See* Ex. B.

1    the 2009 Settlement Agreement ran from ████ █████████████████████████████████

2    ████████ with no forward going rights, releases, or licenses, and pertained only to claims that

3    Finisar ████ at the time it entered the 2009 Settlement Agreement. *See* Ex. B at p. 4 § 7.

4    Consequently, the terms of the Agreement are clearly only ████████████████████████

5    █████████████████████████████████████████████████████████████████

6    █████████ Thus, Finisar's claims against Nistica with respect to the '687, '833, '740, and '328

7    patents cannot possibly be a breach of the 2009 Agreement because Finisar acquired these patents

8    years after the agreement was executed.[2]  Nor could Finisar's claims with respect to the other two

9    patents-in-suit be a breach as they are directed to Nistica's activities after the execution of the

10   2009 Settlement Agreement, that is the development, sale, offer for sale, and importation of its

11   LCOS-based WSS.

12          Nistica further introduced six affirmative defenses in its Second Amended Answer that

13   rely on Nistica's contorted reading of the 2009 Settlement Agreement as providing a license

14   and/or implied license, covenant not to sue, and other rights to Nistica that are not set forth

15   anywhere within the terms of the Agreement itself. *See* SAA at 17-22, 24-25 (18th Affirmative

16   Defense (license/implied license), 19th Affirmative Defense (patent exhaustion), 20th Affirmative

17   Defense (estoppel), 21st Affirmative Defense (waiver, release, covenant not to sue), 22nd

18   Affirmative Defense (unclean hands), and 28th Affirmative Defense (equitable estoppel)).  As

19   discussed further in Sections IV.B, IV.D-J below, these affirmative defenses fail to meet their

20   respective pleading requirements due to their contradiction with the clear terms of the 2009

21   Settlement Agreement, on which they depend, and other deficiencies.

22   **III.    ISSUES TO BE DECIDED**

23          Whether the Court should dismiss Nistica's 13th Counterclaim and strike Nistica's [-]

24   Affirmative Defenses for failure to put Finisar fairly on notice of the "Customer Agreements"

25   _____

26          [2] Nistica carefully crafts its pleading to downplay its admission that only two of the six
     Finisar patents-in-suit, specifically the '599 and '980 patents, were owned by Finisar's affiliates
27   at the time the parties entered the 2009 Settlement Agreement.  However, this admission is made
     clear throughout the Second Amended Answer, including in Nistica's 13th Counterclaim at ¶¶ 79
28   & 80.

_____

FINISAR'S MOTION TO DISMISS AND STRIKE                                          8

1   and the clauses set forth therein that allegedly establish Nistica's standing as an intended third

2   party beneficiary and provide Nistica certain enforceable rights and defenses in violation of Fed.

3   R. Civ. P. 12(b)(1), 12(b)(6), and 12(f)?

4          Whether the Court should dismiss Nistica's 14th Counterclaim lack of jurisdiction and

5   failure to state a claim upon which relief can be granted under the terms of the 2009 Settlement

6   Agreement and pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6)?

7          Whether the Court should dismiss Nistica's 18th-28th Affirmative Defenses pursuant to

8   Fed. R. Civ. P. 12(f) for failure to allege facts sufficient to put Finisar fairly on notice of Nistica's

9   affirmative defenses?

10  **IV.    ARGUMENT**

11         **A.     Nistica's 13th Counterclaims for Breach of Contract Brought a Third Party
                    Beneficiary Should Be Dismissed under Rules 12(b)(1) and 12(b)(6)**

12

13         Nistica does not and cannot plead sufficient facts to put Finisar on notice of its breach of

14  contract counterclaim that Nistica purports to bring as an intended third party beneficiary in

    satisfaction of Fed. R. Civ. P. 12(b)(6).  Nor has Nistica plead facts that establish Nistica as an
15
    intended third party beneficiary of some "Customer Agreement(s)" between Finisar and some
16
    other party with standing to sue as such pursuant to Fed. R. Civ. P. 12(b)(1).
17

                      **i.      Nistica's 13th Counterclaims Cannot Meet Rule 12(b)(6) Because the
18                             Basic Requirements of a Breach of Contract Claim Are Not Pled**

19         Nistica has not identified the "Customer Agreements" setting forth the alleged obligations

20  owed by Finisar to Nistica as an intended third party beneficiary that Nistica contends were

21  breached—Nistica does not identify any particular "Customer Agreement" by name, counterparty

22  (e.g., "Customer"), or other identifier.  Because Nistica has not pled the existence of any

23  particular agreement, it does not and cannot identify any express contract provisions that were

24  allegedly breached by Finisar, let alone that such provisions were intended to be enforceable by a

25  third party beneficiary such as Nistica.  Nor does Nistica plead that it was damaged by Finisar's

26  supposed breach of this unidentified contract provision.

27         Critically, the sketchy nature of Nistica's pleading does not inform the Court and Finisar

28  of what jurisdiction's contract laws should apply to Nistica's 13th Counterclaim.  However, under

---

FINISAR'S MOTION TO DISMISS AND STRIKE                                                              9

the laws of at least California and Delaware,[3] Nistica's failure to establish the existence of a contract, identify any contract provision that it contends was breached, or plead resultant damage to itself as a result of said breach render Nistica's 13th Counterclaim insufficient to survive a motion to dismiss as even a basic breach of contract claim.  *See Graybill v. Wells Fargo Bank, N.A.*, No. C 12-05802 LB, 2013 WL 978245, at *13 (N.D. Cal. Mar. 12, 2013) ("To state a claim for breach of contract, a plaintiff must show the following: (1) a contract existed; (2) the plaintiff performed his duties or was excused from performing his duties under the contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of that breach."); *Smith v. Capital One Fin. Corp.*, No. C 11-3425 PJH, 2012 WL 259515, at *4 (N.D. Cal. Jan. 27, 2012) ("[P]laintiff has not pled facts showing the existence of a contract, has not identified the parties to any such contract, has not alleged that she performed her duties under said contract, has not stated facts showing that Merrick Bank (or any defendant alleged to be a party to the contract) breached the contract, and has not alleged that she was damaged thereby. Accordingly, the court finds that the breach of contract cause of action must be dismissed for failure to state a claim."); *Levy v. State Farm Mut. Auto. Ins. Co.*, 58 Cal. Rptr. 3d 54, 57 (Cal. Ct. App. 2007) ("Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity."); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006) ("Wal–Mart has not identified any express contract provision that was breached.  Nor has Wal–Mart identified any implied contract term that it would have the trial court read into the contract.  Accordingly, this [breach of contract] count fails to state a claim upon which relief may be granted."); *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) ("In order to survive a motion to dismiss for failure to state a breach of contract claim, [a] plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant

---

[3] Finisar considers Delaware and California state contract laws here for exemplary purposes because Finisar is a Delaware corporation and has its principal place of business in California.  However, nothing in Nistica's pleading indicates that Delaware, California, or any other jurisdiction's laws are implicated by its 13th Counterclaim for Breach of Contract.

1    damage to the plaintiff").  Accordingly, Nistica's 13th Counterclaim should be dismissed for

2    failure to meet the pleading requirements of Fed. R. Civ. P. 12(b)(6) for breach of contract

3    claims.

4              **ii.      Nistica Lacks Standing Pursuant to Rule 12(b)(1) to Sue as a Third
                          Party Beneficiary Under the "Customer Agreement(s)"**

5

6              Nistica has not met the requirements for establishing its standing as an intended third

7    party beneficiary who may assert a breach of contract claim under a contractual agreement to

8    which Nistica is not a party.  While it is unclear which jurisdiction's law governs the

9    interpretation of the alleged agreements implicated by Nistica's 13th Counterclaim, California

10   courts require that "[a] third party qualifies as a beneficiary under a contract if the parties

11   intended to benefit the third party and the terms of the contract make that intent evident."  *Karo v.*

12   *San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821–22 (9th Cir.1985) (citing *Strauss v.*

13   *Summerhays*, 204 Cal. Rptr. 227, 233 (Cal. Ct. App. 1984)).[4]  On its face, Nistica's pleading does

14   not identify the "Customer Agreements" under which Nistica claims rights as an intended third

15   party beneficiary and, consequently, this Court is unable to evaluate whether both parties to any

16   "Customer Agreement" clearly intended their agreement to benefit Nistica or whether the terms

17   of any "Customer Agreement" make such intent evident.  Furthermore, Nistica's pleading "on

18   information and belief" that it is an intended third party beneficiary cannot suffice to create

19   standing for its 13th Counterclaim where there are no specific contracts, and therefore no contract

20   language, for the Court to evaluate—indeed, it is unclear whether California, Delaware, or some

21   other jurisdiction's law should apply to determine whether Nistica has standing to bring its 13th

22

23         [4] Similarly, Delaware law requires that a party must demonstrate the following to qualify
       as an intended third party beneficiary:

24             (a) the contracting parties must have intended that the third party beneficiary
               benefit from the contract, (b) the benefit must have been intended as a gift or in

25             satisfaction of a pre-existing obligation to that person, and (c) the intent to benefit
               the third party must be a material part of the parties' purpose in entering into the

26             contract.  Thus, if it was not the promisee's intention to confer direct benefits
               upon a third party, but rather such third party happens to benefit from the

27             performance of the promise either coincidentally or indirectly, then the third party
               will have no enforceable rights under the contract.

28   *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d
     187, 196 (3d Cir.2001) (citing *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.,* 583 A.2d
     1378, 1386 (Del.Super.1990)) (internal citations omitted).

1    Counterclaim as a third party beneficiary.  *See*, *e.g.*, *California Emergency Physicians Med. Grp.*

2    *v. PacifiCare of California*, 4 Cal. Rptr. 3d 583, 595 (Cal. Ct. App. 2003) ("Third party

3    beneficiary status is a matter of contract interpretation.  For that reason, the contract must be set

4    out in the pleadings:  A plaintiff must plead a contract which was made expressly for his benefit

5    and one in which it clearly appears that he was a beneficiary") (internal citations omitted); *Crow*

6    *v. Erectors, Inc.*, No. CIV.A. 84C-MY-124, 1988 WL 7617, at *2 (Del. Super. Jan. 21, 1988)

7    ("This Court concludes that an intent to benefit a third-party must depend on the language of the

8    contract.").  Consequently, Nistica's 13th Counterclaim should be dismissed pursuant to Fed. R.

9    Civ. P. 12(b)(1) and 12(b)(6).

10        **B.    Nistica's 18th-21[st] Affirmative Defenses Based on Unidentified "Customer Agreements" Should Be Stricken Pursuant to Rule 12(f)**

11        Nistica's 18th through 21st Affirmative Defenses, concerning License/Implied License,

12   Patent Exhaustion, Estoppel, and "Waiver, Release, Covenant Not to Sue," respectively, should

13   be stricken to the extent they are based on rights arising from alleged "Customer Agreements"

14   because Nistica's pleading of these defenses fails to satisfy the requirements of Rule 12(f).  Rule

15   12(f) provides that courts "may strike from a pleading an insufficient defense or any redundant,

16   immaterial, impertinent, or scandalous matter."  Additionally, the courts in this District have

17   generally agreed that the *Iqbal* and *Twombly* pleading standard applies to affirmative defenses.

18   *See, e.g., PageMelding, Inc. v. ESPN, Inc.*, 11-6263, 2012 WL 3877686, at *1 (N.D. Cal. Sept. 6,

19   2012).  Accordingly, affirmative defenses must specify sufficient factual allegations from which

20   reasonable inferences establishing the opposing party's liability can be drawn.  *Ashcroft v. Iqbal*,

21   556 U.S. 662, 678 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

22   While a court "must take all of the factual allegations in the complaint as true," it is "not bound to

23   accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.

24   Indeed, "a motion to strike is an appropriate tool for ensuring that parties receive fair notice, and

25   should be granted where a pleading fails to recite factual allegations that deliver such notice."

26   *Hynix Semiconductor Inc. v. Rambus Inc.*, No. CV-00-20905 RMW, 2007 WL 4062945, at *3

27   (N.D. Cal. Nov. 15, 2007).

28

---

1    In each of Nistica's 18th-21st Affirmative Defenses, Nistica pleads a theory for its defense

2 that depends, in part,[5] on the existence of certain "Customer Agreements" between Finisar and an

3 unidentified "Customer" that allegedly provides certain rights for Nistica.  SAA at 17-21.  Nistica

4 does not anywhere identify the particular "Customer Agreement(s)" and instead hypothesizes the

5 existence of such contracts and, further, assumes that certain rights and provisions are provided

6 for Nistica's benefit therein, without reference to any actual agreement.  *See id.*  A claim or

7 affirmative defense reliant on rights provided by a written contract should reference said contract

8 to meet the pleading requirements of *Twombly* and *Iqbal* by putting the opposing party on fair

9 notice of the contract that allegedly grants the implicated rights.  *See Powertech Tech., Inc. v.*

10 *Tessera, Inc.*, No. C 10-945 CW, 2012 WL 1746848, at *4-5 (N.D. Cal. May 16, 2012) (finding

11 "the heightened pleading standard set forth in *Twombly* and *Iqbal* also applies to affirmative

12 defenses" and striking affirmative defenses as insufficiently plead and failing to provide fair

13 notice where those "defenses include only conclusory allegations, without providing any

14 information about the grounds upon which the defenses rest"); *see also Iqbal*, 556 U.S. at 678

15 ("As the Court held in *Twombly*, 550 U.S. 544, the pleading standard Rule 8 announces does not

16 require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

17 unlawfully-harmed-me accusation.  *Id.*, at 555.").

18    Nistica has provided little more than an unadorned accusation by failing to identify

19 a single "Customer Agreement."  *Powertech*, 2012 WL 1746848, at *4 (acknowledging Rule 8's

20 pleading requirements for defenses in an answer parallel the requirements for pleading claims in

21 a complaint); *Perez v. Gordon & Wong Law Grp., P.C.*, No. 11-CV-03323-LHK, 2012 WL

22 1029425, at *7 (N.D. Cal. Mar. 26, 2012) ("Thus, in light of *Twombly* and *Iqbal*'s

23 reconceptualization of fair notice pleading, the Court agrees that "[a]pplying the standard for

24 heightened pleading to affirmative defenses serves a valid purpose in requiring at least some

25 valid factual basis for pleading an affirmative defense and not adding it to the case simply upon

26

27    ─────────────────

28    [5] Nistica pleads alternate theories for each of these affirmative defenses—one arising from the "Customer Agreements" and addressed here, and another arising from the 2009 Settlment Agreement, which is addressed in Section IV.D.

1   some conjecture that it may somehow apply." (quoting *Hayne v. Green Ford Sales, Inc.,* 263

2   F.R.D. 647, 650 (D.Kan.2009)); *CTF Dev., Inc. v. Penta Hospitality, LLC*, No. 09–CV–02429,

3   2009 WL 3517617, at *7–8 (N.D.Cal. Oct. 26, 2009) ("Under the *Iqbal* standard, the burden is on

4   the defendant to proffer sufficient facts and law to support an affirmative defense").  As

5   discussed in Section IV.A above, pleading the existence of an actual contract and interpretation

6   of language therein is required to make out a claim for breach of contract and evaluate the

7   existence of an intended third party beneficiary.  Consequently, these defenses dependent on

8   rights allegedly provided to Nistica by the "Customer Agreements" cannot survive in the absence

9   of citation to any actual contract provision.  Nistica has not even identified any reason to believe

10  Finisar would agree to terms for Nistica's benefit in any agreement to which Finisar is a party.

11   For example, Nistica does not claim this is an industry standard term that is easily identifiable.

12  *See*, *e.g.*, *Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 942 (N.D. Cal. 2012)

13  (citing *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011)).

14  Nistica's failure to identify the actual contract(s) supposedly granting it rights is fatal to its 18th-

15  21st Affirmative Defenses.

16          In particular, Nistica's 18th Affirmative Defense alleges that the unspecified "Customer

17  Agreements" contain unnamed "clauses in which Finisar agrees not to assert any claim or action

18  for patent infringement against Customer or its respective vendors, including purchasers,

19  suppliers, and manufacturers," that "Nistica is one or more of a supplier or other vendor for

20  Customer," and that consequently "Nistica has a license and/or an implied license under Finisar's

21  patents-in-suit to make, use, sell, offer for sale, and import its products, including the products

22  provided to Customers."  SAA at 17.  Because Nistica's allegations of the "Customer

23  Agreements" and the terms therein lack factual support, there is no basis for Nistica's legal

24  conclusions that (a) the "Customer Agreements" provide rights for vendors exist, (b) Nistica

25  qualifies as such a vendor, and (c) that the rights provided to Nistica under "Customer

26  Agreements" amount to a license or implied license to practice Finisar's asserted patents.  *Cf.*

27  *Fujifilm Corp. v. Motorola Mobility LLC*, 12-cv-03587-WHO, 2014 WL 2730724, at *5 (N.D.

28  Cal. June 6, 2014) (finding factual allegations supporting license/implied license defense

1  sufficient where defendant pled specific source of alleged license rights).

2      Nistica's 19th, 20th, and 21st Affirmative Defenses are similarly flawed because they

3  depend on the unspecified "Customer Agreements" and the unknown terms contained therein.

4  Nistica's 19th Affirmative Defense of patent exhaustion is hinged on Nistica's unsupportable

5  legal conclusion that "[a]ny sales of Nistica's products [. . .] would be an authorized sale" due to

6  Nistica's supposed "license and/or implied license" arising from unidentified terms in the

7  unspecified "Customer Agreements."  SAA at 18.  Similarly, Nistica's 20th Affirmative Defense

8  of estoppel assumes that the "Customer Agreements" granted Nistica a "license, implied license,

9  and/or covenant not to sue" that "Finisar is attempting to derogate" by bringing this lawsuit.  *Id*.

10  at 19.  And Nistica's 21st Affirmative Defense of "waiver, release, covenant not to sue" alleges

11  that "Customer Agreements" contain "one or more clauses in which Finisar agrees not to assert

12  any claim or action for patent infringement against Customer or its respective vendors," including

13  Nistica, amounting to Finisar having "waived, released, and covenanted not to sue Nistica for

14  patent infringement relating to the patents-in-suit."  *Id*. at 21.  Each of these affirmative defenses

15  assumes and depends on the presence of certain clauses in the "Customer Agreements," even

16  though Nistica is unable to identify the "Customer Agreements" themselves, the parties to the

17  "Customer Agreements," or the actual contractual clauses that supposedly give rise to the

18  defenses pled by Nistica.

19      In sum, Nistica's pleading for its 18th-21st Affirmative Defenses fails to actually identify

20  the supposed "Customer Agreements" supporting them and thereby deprive Finisar of fair notice

21  of the nature of Nistica's defenses.  *See, e.g., Powertech Tech.,* 2012 WL 1746848, at *4-5.

22  Consequently, Nistica's 18th-21st Affirmative Defenses should be dismissed pursuant to Rule

23  12(f) due to their failure to meet the pleading standards articulated by *Twombly* and *Iqbal*.

24      **C.    Nistica's 14th Counterclaim for Breach of Contract Should Be Dismissed for**
25         **Failure to State a Claim Pursuant to Delaware Contract Law and Lack of**
            **Jurisdiction**

26      As a threshold matter, this Court lacks jurisdiction to hear this case per the terms of the

27  2009 Settlement Agreement itself, which states that █████████████████████████████████

28  ██████████████████████████████████████████████

---

1   ███████  (*See* Ex. B at p. 6 § 17.) (emphasis added).[6]  This alone is enough to dismiss

2   Nistica's 14th Counterclaim.  *See Hartstein v. Rembrandt IP Solutions, LLC*, No. 12-2270 SC,

3   2012 WL 3075084, at *5 (N.D. Cal. July 30, 2012) (granting motion to dismiss because forum

4   selection clause is presumptively valid and should control); *see also Publicis Commc'n v. True N.*

5   *Commc'ns Inc.*, 132 F.3d 363, 366 (7th Cir. 1997) ("By agreeing to litigate in Delaware all

6   claims arising out of requests under § 1.1 of the pooling agreement, True North promised not to

7   assert such claims in other forums whether or not they would be 'compulsory' counterclaims, and

8   Publicis promised not to contend (in Delaware) that True North should have raised the claim

9   somewhere else."); *Molnar v. 1-800-Flowers.com, Inc.*, No. CV 08-0542 CAS JCX, 2008 WL

10   4772125, at *6 (C.D. Cal. Sept. 29, 2008) (explaining *Publicis* applies where the party's

11   counterclaim is "subject to the forum selection clause, [while] the action in which it was raised

12   was not").

13        Furthermore, Nistica's 14th Counterclaim should be dismissed under Rule 12(b)(6)

14   because Finisar has not breached any obligation set forth by the clear, unambiguous language of

15   the 2009 Settlement Agreement.  The 2009 Settlement Agreement clearly states that it is to be

16   interpreted in accordance with Delaware law.  (*See* Ex. B at p. 6 § 17.)  To effectively plead a

17   breach of contract claim under Delaware law, a claim must set forth "first, the existence of the

18   contract, whether express or implied; second, the breach of an obligation imposed by that

19   contract; and third, the resultant damage to the plaintiff."  *VLIW Tech.*, 840 A.2d 606, 612

20   (citations omitted).  "Clear and unambiguous language found in a contract is to be given its

21   ordinary and usual meaning."  *Iacono v. Barici*, Civ. A. No. 06C-02-021RFS, 2006 WL 3844208,

22

_____

23        [6] *See Schulz v. Cisco Webex, LLC*, No. 13-CV-04987-BLF, 2014 WL 2115168, at *3

24   (N.D. Cal. May 20, 2014) ("In the context of a motion to dismiss brought under Federal Rule of
     Civil Procedure 12(b)(6), the 'incorporation by reference' doctrine permits a Court to take into

25   account documents whose contents are alleged in a complaint and whose authenticity no party
     questions, but which are not physically attached to the plaintiff's pleading.") (internal citations

26   omitted).  A court may consider materials incorporated into a complaint or answer by reference
     on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *See id.* at *2 ("The Court may,

27   however, consider materials incorporated by reference into the complaint without converting the
     motion into one for summary judgment, provided the authenticity and relevance of such materials

28   are not reasonably in dispute.") (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th
     Cir. 2010); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).

_____

FINISAR'S MOTION TO DISMISS AND STRIKE                                          16

at *2 (Del. Super. Dec. 29, 2006) (citing *Lorillard Tobacco Cov. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)).

In its 14th counterclaim, Nistica alleges that Finisar breached its obligations under the 2009 Settlement Agreement by "filing the Complaint in this case and pursuing claims of patent infringement against Nistica relating to the patents-in-suit" and "by pursuing causes of action, such as patent infringement, based on actions by Nistica that took place prior to the execution of the settlement and relief." (Dkt. No. 132 at ¶ 80.) Nistica apparently alleges that Finisar breached Section 7 of the 2009 Settlement Agreement, which provides:



*See* Ex. B at p. 4 § 7 (emphasis added). It is clear from the unambiguous contract language emphasized above that Finisar never contracted to ███████████████████████████ ███████████████████████████████ Nor did Finisar agree ████████████ ██████████████████████

Because Nistica's 14th Counterclaim alleges that Finisar breached obligations that Finisar

1   did not have under the 2009 Settlement Agreement, Nistica's 14th Counterclaims should be

2   dismissed.  *First*, it is clear that each new act of infringement, whether by making, using, selling,

3   importing, or any other act of infringement represents a new cause of action.  *See Aspex Eyewear,*

4   *Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1342 (Fed. Cir. 2012) ("If the claim did not exist

5   at the time of the earlier action, it could not have been asserted in that action.").  Thus, Finisar's

6   infringement claims against Nistica's acts of infringement performed on or after December 29,

7   2009 cannot constitute an action in breach of the 2009 Settlement Agreement.  *Second*, it is

8   undisputable that Finisar's claims in this action cannot possibly be in breach of the 2009

9   Settlement Agreement.  In particular, Finisar did not even own four of the six patents-in-suit on

10  December 29, 2009 and, consequently, ███████████████████████████████████

11  ███████████████████████████████.[7]  Additionally, given that

12  Finisar's claims of infringement with respect to the other two patents-in-suit are directed to

13  Nistica's activity that necessarily occurred after the execution of the 2009 Settlement Agreement,

14  that is the relatively recent development, sales, offers for sale, and importation of Nistica's

15  LCOS-based WSS, such claims also cannot be a breach of the 2009 Settlement Agreement.

16       Because Nistica's 14th Counterclaim alleges that Finisar has breached the 2009 Settlement

17  Agreement by performing acts that clearly are not prohibited by the unambiguous language of the

18  Agreement, this counterclaim should be dismissed pursuant to Rule 12(b)(6).

19       **D.   Nistica's 18th Affirmative Defense of License/Implied License Should Be
             Stricken to the Extent It Is Based on the 2009 Settlement Agreement**

20

21       Nistica's 18th Affirmative Defense alleges that, through the 2009 Settlement Agreement,

22  Finisar "released Nistica from any and all claims of any nature, whether asserted or unasserted,

23  

24       [7] As discussed in Section IV.D above, Nistica has infringed Finisar's patents-in-suit since
    the execution of the 2009 Settlement Agreement and Finisar and its subsidiaries did not own four
    of the six patents-in-suit at the time the 2009 Settlement Agreement was executed.  Finisar could

25  not have granted Nistica a license to patents that it did not have for itself.  The 2009 Settlement
    Agreement could not apply to patent rjghts acquired by Finisar after its execution on December

26  28, 2009 because the 2009 Settlement Agreement only releases claims the entities "ever had…up
    to the date of this Agreement."  Ex. B at p. 4 § 7; *see Medtronic AVE, Inc. v. Advanced*

27  *Cardiovascular Sys., Inc.*, 247 F.3d 44, 61 (3d Cir. 2001) (noting a party could sue for
    infringement of a patent acquired one day after the execution of a settlement agreement releasing

28  claims between the contracting parties).

known or unknown, anticipated or unanticipated, foreseen or unforeseen, that Finisar had against Nistica" and further alleges that Finisar "agreed not to initiate any litigation or action against Nistica involving such claims." SAA at 17-18. However, the 2009 Settlement Agreement plainly does not contain any provisions granting Nistica a license to Finisar's intellectual property, including its patents. *See generally* Ex. B. Moreover, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████[8] Thus, Nistica's pleading of a license/implied license defense is contradicted by the plain terms of the 2009 Settlement Agreement and should be dismissed pursuant to Fed. R. Civ. P. 12(f). *See Schulz,* 2014 WL 2115168, at *3; *Raines v. Switch Mfg.*, No. C-96-2648 DLJ, 1997 WL 578547, at *3 (N.D. Cal. July 28, 1997) ("If the attached documents contradict the allegations in the complaint, a court may dismiss the claims under Rule 12(b)(6)."); *see also Durning v. First Boston Corp.,* 815 F.2d 1265 (9th Cir.), *cert. denied,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987) ("[Attached] documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim.").

### E.   Nistica's 19th-21st and 27th- 28th Affirmative Defenses Should Be Stricken Due to Improper Reliance on the 2009 Settlement Agreement

Like Nistica's 18th Defense, each of the 19th-21st and 27th-28th Affirmative Defenses pled by Nistica falls with in the family of defenses relying on a factual allegation that the 2009 Settlement Agreement provided Nistica with a forward-going right to practice all of Finisar's patents-in-suit without threat of infringement claims or litigation. However, as discussed above, this factual allegation is clearly contradicted by the terms of the 2009 Settlement Agreement itself—the 2009 Settlement Agreement ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ *See* Section IV.D; Ex. B. Because each of Nistica's 19th-21st and 27th-28th Affirmative Defenses

---

[8]   *See supra* footnote 7.

1  rely on the existence of rights that this Court should find contradict the clear terms of the 2009

2  Settlement Agreement, each of these affirmative defenses should be dismissed pursuant to Fed.

3  R. Civ. P. 12(f).  *See Schulz*, 2014 WL 2115168, at *3; *Raines*, 1997 WL 578547, at *3.

4        **F.      Nistica's 22nd Affirmative Defense of "Unclean Hands" Should Be Stricken**

5             In general, an unclean hands defense is available where "some unconscionable act of one

6  coming for relief has immediate and necessary relation to the equity that he seeks in respect of

7  the matter in litigation." *Hoffman-La Roche, Inc. v. Promega Corp.*, 319 F. Supp. 2d 1011, 1017

8  (N.D. Cal. 2004) (quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245

9  (1933)).  While the doctrine of inequitable conduct stems from the concept of "unclean hands,"

10 the Federal Circuit explicitly recognized the continued existence of an unclean hands defense

11 where a patent owner/applicant engages in "egregious misconduct."  *See Thereasense, Inc. v.*

12 *Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011).  The types of "egregious

13 misconduct" that courts have found sufficient to justify unclean hands require "at least an intent

14 to deceive." *Human Genome Sciences, Inc. v. Genentech, Inc.*, NO. 2:11-cv-6519-MRP(JEMx),

15 2011 WL 7461786, at *8 (C.D. Cal. Dec. 9, 2011).  Furthermore, to the extent the required intent

16 to deceive manifests in the form of fraud or mistake, an unclean hands affirmative defense must

17 satisfy the heightened pleading requirements of Rule 9(b).  *Powertech Tech.*, 2012 WL 1746848,

18 at *5.

19            Nistica's 22nd Affirmative Defense of "unclean hands" presents a long, winding series of

20 inaccurate allegations suggesting that a prior business relationship between Finisar and Nistica

21 memorialized in a Sales and Marketing Agreement in 2008, which ultimately concluded with the

22 parties entering the 2009 Settlement Agreement, somehow "establish[ed] that Finisar has unclean

23 hands and is not entitled to any relief in equity or otherwise."  SAA at 22.  Indeed, the bulk of

24 Nistica's allegations supposedly supporting its "unclean hands" defense mirror those set forth in

25 its affirmative defenses of license/implied license, exhaustion, waiver, and equitable estoppel.

26 *Compare* SAA at 21-22 *to* 17-21.  Thus, in addition to being redundant of Nistica's other

27 affirmative defenses, its unclean hands defense is ***devoid*** of any allegation that the actions

28 allegedly undertaken by Finisar (including entry into, marketing and sales activities pursuant to,

---

1   and termination of the Sales and Marketing Agreement and entry into and alleged breach of the

2   2009 Settlement Agreement) were performed with intent to deceive Nistica.  Nistica's pleading

3   pays lip service to the concept of "intent to deceive" with an unsupported statement that  "Finisar

4   acted inequitably, unfairly, or deceitfully towards Nistica."  SAA at 21.  Because Nistica has not

5   alleged facts to support its allegation that Finisar engaged in "inequitable, unfair, and deceitful

6   conduct" related to the equities at issue in this case with an intent to deceive, Nistica has failed to

7   plead the required elements of an unclean hands defense and its defense should be stricken.  *See*

8   *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009) ("Pleading of

9   inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from

10   which a court may reasonably infer that a specific individual ... withheld" material information

11   "with a specific intent to deceive the PTO"); *Elan Microelectronics Corp. v. Apple, Inc.*, No. C

12   09-01531 RS, 2010 WL 3069322, at *3 (N.D. Cal. Aug. 4, 2010) ("intent to deceive has been

13   pleaded solely on "information and belief." While that is generally permissible, doing so imposes

14   on Elan an obligation to 'set[ ] forth the specific facts upon which the belief is reasonably based.')

15   (citing Exergen, 575 F.3d at 1330); *Hynix Semiconductor Inc. v. Rambus Inc.*, 2007 WL

16   4062945, at *8.

17          **G.**    **Nistica's 19th Affirmative Defense of Patent Exhaustion Should Be Stricken in**

18                **Its Entirety (under both "Customer Agreements" and 2009 Settlement Agreement-based theories) for Failure to Plead a Required Element**

19         To plead an affirmative defense for patent exhaustion, a defendant must allege the

20   existence of an initial authorized sale that exhausts the asserted patent rights in the United States.

21   *Integrated Global Concepts, Inc. v. j2 Global, Inc.*, No. C-12-03434-RMW, 2013 WL 3297108,

22   at *4 (N.D. Cal. June 28, 2013) (To plead exhaustion, there must be an "allegation of a sale as

23   required for patent exhaustion.").  Nistica's 19th Affirmative Defense sets forth two alternative

24   bases for its alleged patent exhaustion defense,[9] but Nistica fails to plead the existence of an

25   authorized initial sale in the United States occurring prior to the activities by Nistica that are

26

27

28      [9] One of Nistica's theories of patent exhaustion is based on rights supposedly granted by the 2009 Settlement Agreement (*see* SAA at 18-19) and another based on rights allegedly provided to Nistica through unspecified "Customer Agreements" (*see id*. at 18).

1   alleged to constitute patent infringement in connection with either theory.  *See* SAA at 18-19.

2   Instead, Nistica simply repeats its allegations that its own sales activities are licensed under the

3   "Customer Agreement" and under the 2009 Settlement Agreement.  But, at most, Nistica's own

4   sales activity could form the basis for an affirmative defense to Finisar's allegations of induced

5   infringement and provides no defense to Finisar's claims of direct infringement under 35 U.S.C.

6   § 271(a), (c), and (f).  *See Integrated Global Concepts, Inc. v. j2 Global, Inc.*, 2013 WL 3297108,

7   at *4.  Because Nistica is unable to plead any factual basis for a required element of its patent

8   exhaustion to direct infringement under either of its factual theories supporting its 19th

9   Affirmative Defense, Nistica's patent exhaustion defense should be stricken pursuant to Fed. R.

10  Civ. P. 12(f) as to Finisar's direct infringement claims.

11      **H.      Nistica's 27th Affirmative Defense of Laches and 28th Affirmative Defense of
              Equitable Estoppel Should Be Stricken**

12          Nistica's 27th and 28th Affirmative Defenses fail to plead the required elements of a laches

13  and equitable estoppel defense, respectively.  Consequently, these defenses should be stricken

14  pursuant to Rule 12(f).

15          In particular, Nistica drafted these defenses as though they are applicable to all of

16  Nistica's accused products even though Nistica does not, and cannot, allege that its LCOS-based

17  accused WSS and line card products were marketed or sold for a length of time long enough to

18  implicate laches or equitable estoppel before this lawsuit was filed.  Indeed, Nistica pleads in

19  connection with its basis for its laches defense that Finisar or its predecessors "learned technical

20  information about certain Nistica's [sic] products, including the Fledge and Full Fledge products

21  that are accused of infringement in this lawsuit" and "had access to and learned significant

22  confidential information about the structure and functionality of Nistica's products, including the

23  Fledge and Full Fledge products, that are accused of infringement in this lawsuit."  SAA at 23-

24  24.  In connection with Nistica's equitable estoppel defense, it pleads only that Finisar was aware

25  of the Fledge and Full Fledge lines of products through Finisar and Nistica's involvement in a

26  Sales and Marketing Agreement in the 2008 timeframe.  *See* SAA at 24-25 ("On or about

27  February 11, 2008, Nistica and Finisar entered into a Sales and Marketing Agreement in which

28

---

FINISAR'S MOTION TO DISMISS AND STRIKE                                              22

1    Finisar was the exclusive sales and marketing channel for sales of Nistica's products, including

2    Nistica's Fledge and Full Fledge lines of products, to certain customers.").

3            In essence, Nistica has not pled any facts to support the conclusion that it has either an

4    equitable estoppel or laches defense that could apply to Nistica's LCOS-based WSS products.

5    Yet, Nistica purports to have pled laches and equitable estoppel defenses that cover all claims of

6    infringement in this case.  Because Nistica has not pled any facts in connection with its equitable

7    estoppel or laches affirmative defenses in its 27th and 28th Affirmative Defenses that pertain to its

8    LCOS-based WSS products accused of infringement, Nistica's 27th and 28th Affirmative

9    Defenses should be stricken as to Nistica's LCOS-based accused products and FInisar's claims of

10   infringement that pertain to them.  *See*, *e.g.*, *Catch a Wave, Inc. v. Sirius XM Radio, Inc.*, No. C

11   12-05791 WHA, 2013 WL 1996134, at *3 (N.D. Cal. May 13, 2013) (striking portion of

12   affirmative defense where it was not actually an affirmative defense, but allowing remainder of

13   affirmative defense); *Reid-Ashman Mfg, Inc. v. Swanson Semiconductor Serv., L.L.C.*, No. C-06-

14   4693 JCS, 2007 WL 1394427, at *6 (N.D. Cal. May 10, 2007) (striking affirmative defense "to

15   the extent it is based on the alleged omissions").  Here, where Nistica only alleges conclusorily

16   that each of the elements of equitable estoppel and laches are met as to all accused products, its

17   defense must be stricken as to Nistica's LCOS-based accused products for which Nistica has not

18   pled any facts to support the defense.  *See Infineon Techs. AG v. Volterra Semiconductor Corp.*,

19   No. C 11-6239 MMC, 2013 WL 1832558, at *4 (N.D. Cal. 2013) (granting motion to strike

20   equitable estoppel and laches defenses where defendant failed to allege any facts for elements of

21   the defense and solely in conclusory terms).

22       **I.    Nistica's 24th Affirmative Defense of Justified Conduct Should Be Stricken**

23           Nistica's "Justified Conduct" affirmative defense states in its entirety "Plaintiff's claims

24   are barred from any and all recovery because Defendant's conduct was justified as good faith acts

25   to protect their own existing legal, contractual and/or economic interests."  SAA at 23.  This

26   defense should be dismissed for two reasons.  First, Nistica's pleading of "justified conduct" or

27   "good faith" is not a recognized defense to direct patent infringement and, consequently, this

28   defense must be stricken as to Finisar's patent infringement claims arising under 35 U.S.C.

§ 271(a), (c), and (f).  *See, e.g., Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 n. 2 (Fed. Cir. 1996).[10]

Second, Nistica's "justified conduct" pleading is devoid of any supporting factual allegations

supporting its defense and, therefore, should be stricken entirely under Fed. R. Civ. P. 12(f) for

failure to provide Finisar with "fair notice" of this defense.  *See Hynix Semiconductor*, 2007 WL

4062845 at *8 (citing *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal.

2004)).

**J.**   **Nistica's 23rd (Mitigation of Damages), 25th (Failure to State a Claim) and 26th (Unjust Enrichment) Affirmative Defenses Should Be Stricken**

Much like Nistica's 24th affirmative defense, Nistica's 23rd, 25th, and 26th affirmative

defenses are entirely conclusory and include no factual allegations whatsoever.  Indeed, Nistica's

mitigation of damages defense is a single sentence, "Plaintiff has failed to mitigate damages, if

any, allegedly sustained."  SAA at 22.  Similarly, Nistica's 25th Affirmative Defense is one line—

"the Complaint fails, in whole or in part, to state any claim upon which relief may be granted."

SAA at 23.  And Nistica's unjust enrichment defense is only one sentence long—"Plaintiff is

barred from recovery in whole or in part because Plaintiff would be unjustly enriched if it is

permitted to recover on the Complaint."  SAA at 23.  Because none of these defenses provide

Finisar with fair notice as to Nistica's factual basis for its defenses, they should be stricken under

Fed. R. Civ. P. 12(f).  *See Hynix Semiconductor*, 2007 WL 4062845 at *8 (citing *Qarbon.com

Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004)).

**V.   CONCLUSION**

For the foregoing reasons, Finisar respectfully requests that the Court enter an order

dismissing Defendant Nistica's 13th and 14th Counterclaims presented in Nistica's Second

Amended Answer (Dkt. No. 132) for failure to comply with the requirements of Fed. R. Civ. P.

---

[10] Finisar notes that the Supreme Court has recently granted certiorari on the question of whether "a defendant's belief that a patent is invalid is a defense to induced infringement under 35 U.S.C § 271(b)."  *See Commil USA v. Cisco Systems, Inc.*, 720 F.3d 1361 (Fed. Cir. 2013), *cert. granted in part*, 82 U.S.L.W. 3459 (2014) (No. 13-896, 2014 Term).  Due to Nistica's failure to plead any facts supporting its justified conduct defense, it is unclear whether the issue pending before the Supreme Court is implicated by Nistica's pleading and, consequently, Nistica's justified conduct defense should be dismissed for failure to provide fair notice, as explained above.

1    12(b)(1) and/or 12(b)(6), (2) striking Nistica's 18th through 28th Affirmative defenses for failure

2    to comply with the requirements of Fed. R. Civ. P. 12(f), and (3) any further relief that the Court

3    deems appropriate.

4

5    Dated:   December 31, 2014                         Respectfully Submitted,

6                                                        /s/ *Robin M. Davis*
                                                        Robin M. Davis
7
                                                        David C. Radulescu, Ph.D. (*pro hac vice*)
8                                                       david@radulescullp.com
                                                        Tigran Vardanian (*pro hac vice*)
9                                                       tigran@radulescullp.com
                                                        Robin M. Davis (*pro hac vice*)
10                                                      robin@radulescullp.com
                                                        RADULESCU LLP
11                                                      The Empire State Building
                                                        350 Fifth Avenue, Suite 6910
12                                                      New York, NY 10118
                                                        Telephone: (646) 502-5950
13                                                      Facsimile: (646) 502-5959
14
                                                        Christopher J. Cox (151650)
15                                                      chris.cox@weil.com
                                                        WEIL GOTSHAL & MANGES LLP
16                                                      201 Redwood Shores Parkway
                                                        Redwood Shores, CA 94065
17                                                      Telephone: (650) 802-3029
                                                        Facsimile: (650) 802-3100
18

19

20                                                      **Attorneys for Plaintiff**
                                                        **FINISAR CORPORATION**
21

22

23

24

25

26

27

28