CHRISTOPHER J. COX (BAR NO. 151650)
Email: chris.cox@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3029
Facsimile: (650) 802-3100

DAVID C. RADULESCU, PH.D. (*pro hac vice*)
Email: david@radulescullp.com
TIGRAN VARDANIAN (*pro hac vice*)
Email: tigran@radulescullp.com
ROBIN M. DAVIS (*pro hac vice*)
Email: robin@radulescullp.com
DANIEL KESACK
Email: daniel@radulescullp.com
RADULESCU LLP
350 Fifth Avenue, Suite 6910
New York, NY 10118
Telephone: (646) 502-5950
Facsimile: (646) 502-5959

*Attorneys for Plaintiff*
*FINISAR CORPORATION*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation,<br><br>        Plaintiff,<br><br>      v.<br><br>NISTICA INC., a Delaware corporation,<br><br>        Defendant. | No. 5:13-cv-03345-BLF (JSC)<br><br>**PLAINTIFF FINISAR CORPORATION'S OPPOSITION TO DEFENDANT NISTICA, INC.'S MOTION FOR LEAVE TO FILE ITS PROPOSED THIRD AMENDED ANSWER AND COUNTERCLAIMS**<br><br>Date: March 19, 2015<br>Time: 9:00 a.m.<br>Place: San Jose Courthouse, Courtroom 3<br>Judge: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND ...............................................................................2

III.  STATEMENT OF ISSUES ..................................................................................6

IV.  LEGAL STANDARDS ........................................................................................6

   A.  Fed. R. Civ. P. 16(b) Governs After the Deadline to Amend Pleadings and Imposes a Good Cause Requirement.................................................................................6

   B.  Standard for a Motion to Amend Before the Deadline for Amending Pleadings ...............6

V.   ARGUMENT ........................................................................................................7

   A.  Nistica Lacks Good Cause to Amend its Answer for the Third Time................................7

   B.  The Remaining Collateral Factors Do Not Favor Amendment........................................10

      1.  Allowing Nistica to File Its Proposed Third Amended Answer at This Late Stage Will Seriously Prejudice Finisar.................................................................................10

      2.  Nistica's Proposed Amendments Are Futile .................................................................11

      3.  Nistica Has Not Presented Any New Facts to Support Its Newly Alleged Counterclaims and Affirmative Defenses.................................................................................13

      4.  Nistica Has Already Amended Its Answer Twice Prior to Filing This Motion ..............14

      5.  Nistica Delayed Amending Its Pleadings in Bad Faith ..................................................14

VI.  CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abaxis, Inc. v. Cepheid,*
    2011 U.S. Dist. LEXIS 137379 (N.D. Cal. Nov. 30, 2011) ...................................................6

*Aircraft Tech. Publrs. v. Avantext,*
    2009 U.S. Dist. LEXIS 57671 (N.D. Cal. June 22, 2009)....................................................10

*Alibaba.com H.K. Ltd. v. P.S. Prods.,*
    2012 U.S. Dist. LEXIS 36749 (N.D. Cal. Mar. 19, 2012) ........................................6

*Athena Feminine Technologies Inc. v. Wilkes,*
    2013 U.S. Dist. LEXIS 16249 (N.D. Cal. Feb. 6, 2013).................................................11, 12

*Bonin v. Calderon,*
    59 F.3d 815 (9th Cir. 1995), cert. denied, 516 U.S. 1051 (1996) .......................................7, 12

*CNET Networks, Inc. v. Etilize, Inc.,*
    584 F. Supp. 2d 1260 (N.D. Cal. 2008).................................................................................7

*Edwards Lifesciences LLC v. Cook Inc.,*
    2008 U.S. Dist. LEXIS 124506 (N.D. Cal. Apr. 2, 2008)...............................................*passim*

*Eminence Capital, LLC v. Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir. 2003).............................................................................................7

*Foman v. Davis,*
    371 U.S. 178 (1962)............................................................................................................7

*Griggs v. Pace American Group, Inc.,*
    170 F.3d 877 (9th Cir. 1999)..............................................................................................14

*Hynix Semiconductor Inc. v. Rambus Inc.,*
    645 F.3d 1336 (Fed. Cir. 2011) .........................................................................................15

*Johnson v. Mammoth Recreations, Inc.,*
    975 F.2d 604 (9th Cir. 1992)...............................................................................................9

*Lockman Found. v. Evangelical Alliance Mission,*
    930 F.2d 764 (9th Cir. 1991)...............................................................................................7

*Medtronic, Inc. v. AGA Med. Corp.,*
    2009 U.S. Dist. LEXIS 16122 (N.D. Cal. Feb. 18, 2009)...........................................10, 13, 14

*Osakan v. Apple Am. Group,*
    2010 U.S. Dist. LEXIS 53830 (N.D. Cal. May 3, 2010)...............................................9, 10

*Owens v. Kaiser Foundation Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001) ................................................................................................7

*Pixion, Inc. v. Citrix Sys., Inc.*,
    2012 U.S. Dist. LEXIS 53967 (N.D. Cal. April 16, 2012) ........................................6

*Qualcomm Inc. v. Broadcom Corp.*,
    548 F.3d 1004 (Fed. Cir. 2008) ..........................................................................15

*Texaco, Inc. v. Ponsoldt*,
    939 F.2d 794 (9th Cir. 1991) ........................................................................8, 13

*TV Interactive Data Corp. v. Sony Corp.*,
    2012 U.S. Dist. LEXIS 124550 (N.D. Cal. Aug. 31, 2012) ....................................8

*United States v. King Features Entm't, Inc.*,
    843 F.2d 394 (9th Cir. 1988) ........................................................................3, 11

**Rules**

Fed. R. Civ. P. 15 ....................................................................................2, 6, 7, 10

Fed. R. Civ. P. 16(b) ..........................................................................................6, 10

## I. INTRODUCTION

All of the facts relied upon by Nistica to make the amendments contained in Nistica's Proposed Third Amended Answer and Counterclaims (Dkt. No. 152-1, Ex. B) ("Proposed TAA") were known to Nistica long before the December 5, 2014 deadline to amend pleadings. Indeed, Nistica has had the 2009 Settlement Agreement, the alleged basis for its amended affirmative defenses, in its possession since its execution in December 2009. And yet, only now—after the deadline to amend has lapsed and with the end of fact discovery rapidly approaching—does Nistica seek leave to amend its pleading to add six new affirmative defenses. Specifically, Nistica's Proposed TAA pleads new theories for its 18th, 20th, 21st, 22nd, 27th, and 28th affirmative defenses[1]—license/implied license, estoppel, release waiver and covenant not to sue, unclean hands, laches, and equitable estoppel, respectively. Nistica was not diligent, nor can Nistica point to any recently discovered fact to explain why Nistica could not have asserted these amended affirmative defenses before the deadline for amending pleadings. Nistica also silently seeks to amend its responses to certain allegations in Finisar's Complaint and each of its non-infringement affirmative defenses—Nistica's Motion for Leave to Amend (the "Motion") does not discuss these amendments *at all* and, naturally, fails to explain why Nistica requests leave to make these amendments or set forth a good cause basis for their allowance.

Permitting Nistica to file its Proposed TAA at this stage in the litigation would impose severe prejudice on Finisar. Fact discovery is set to close in May 2015, claim construction is completed, and Finisar has already amended its infringement contentions and narrowed its asserted claims to a small, trial-ready group. None of Nistica's new theories of affirmative defense were known to Finisar when it narrowed its asserted claims for trial and took fact discovery from Nistica to date. The parties agreed and the Court ordered a late-in-the-case deadline to amend pleadings without leave—Nistica should not be permitted to re-do its answer and defenses for the third time when it will prejudicially impact Finisar's ability to build its case.

---

[1] For clarity, the numbering of Nistica's proposed affirmative defenses in this brief corresponds to the numbering in Nistica's Second Amended Answer.

1    Nistica also applies the incorrect standard in its Motion.  Fed. R. Civ. P. 15 does not

2    control when courts have entered a case management schedule setting for a deadline to amend

3    pleadings.  Instead, Rule 16 governs, requiring Nistica to establish "good cause" for any

4    amendments to its pleadings.  Nistica cannot meet this standard because it failed to explain—let

5    alone justify—its unreasonable delay in seeking leave at this late date. Such unexcused delay is

6    grounds alone to deny Nistica's motion. And, if this Court were to further analyze the additional

7    factors relevant to leave under Rule 15, it would find that Nistica's new theories are futile to the

8    point of raising serious questions about Nistica's motivations for advancing them.

9    Nistica rushed into pleading new counterclaims and affirmative defenses in its Second

10   Amended Answer and Counterclaims (Dkt. No. 132) ("SAA") without forming proper bases for

11   raising them.  Indeed, in light of Finisar's co-pending Motion to Dismiss and Strike (Dkt. No.

12   142), Nistica was forced to concede that it lacks basis for *both* counterclaims challenged by

13   Finisar's motion and *five* of its affirmative defenses.  In the absence of a compelling non-

14   infringement defense in this case, Nistica seeks to take advantage of the policy to "freely give

15   leave … with extreme liberality" by introducing futile defenses late in the case, after claim

16   construction, after Finisar narrowed its asserted claims for trial, and mere weeks before the end of

17   fact discovery.  Finisar thus respectfully requests that the Court deny Nistica's motion.

18   **II.    FACTUAL BACKGROUND**

19   Finisar filed its Complaint on July 13, 2013. (Dkt. No. 1).  Nistica filed its initial Answer

20   (Dkt. No. 20) on September 9, 2013 and filed its First Amended Answer (Dkt. No. 35) ("FAA")

21   on October 24, 2013 to rectify pleading deficiencies identified by Finisar in its Motion to Dismiss

22   Counterclaims and Strike Affirmative Defenses (Dkt. No. 23).

23   Nistica's Answer included 12 counterclaims alleging non-infringement and invalidity as

24   to each of Finisar's patents-in-suit and 18 affirmative defenses, (Dkt. No. 20), which repeated

25   Nistica's allegations of non-infringement and invalidity while further alleging a statutory

26   damages limitation, failure to mark, prosecution history/claim construction estoppel, limitation

27   on recovery of costs, and unavailability of injunctive relief.  (Dkt. No. 20).  In its FAA, Nistica

28   dropped its defense based on equitable doctrines (i.e., waiver, laches, implied license, equitable

1   estoppel, legal estoppel, conduct, and/or acquiescence). (*Compare* Dkt. No. 20 at 10 *to* Dkt. No.

2   35 at 15). Because Nistica dropped these defenses with full knowledge of the 2009 Settlement

3   Agreement, it intentionally relinquished its rights to enforce the defenses it now asserts. *United*

4   *States v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988) ("Waiver is the

5   intentional relinquishment of a known right with knowledge of its existence and the intent to

6   relinquish it.").

7        On December 5, 2014, the parties' agreed deadline to amend pleadings, Nistica filed its

8   Second Amended Answer and Counterclaims (Dkt No. 132) adding two new counterclaims

9   (13th-14th) for breach of contract, including an alleged breach of Finisar's obligations to Nistica

10  as a third party beneficiary of certain, unidentified "Customer Agreements," and an alleged

11  breach of the parties' Confidential Settlement Agreement and Release dated December 2009,

12  executed on or about December 28, 2009 ("the 2009 Settlement Agreement"), and several new

13  affirmative defenses (18th-28th). Nistica's new counterclaims and affirmative defenses fell

14  broadly into two "families" of related claims and defenses—(1) new counterclaims and

15  affirmative defenses based on alleged rights provided to Nistica as a third party beneficiary of

16  certain, unidentified agreements between Finisar and unspecified third party customers for the

17  purchase of Finisar's telecommunications and data networking communications products

18  (referred to by Nistica as the "Customer Agreements"), and (2) new counterclaims and

19  affirmative defenses based on alleged rights provided to Nistica by the 2009 Settlement

20  Agreement and Finisar's alleged breach of the Settlement Agreement. Notably, Nistica raised its

21  13th counterclaim and multiple affirmative defenses relying on rights for Nistica provided by the

22  "Customer Agreements," even though Nistica had never reviewed such agreements.[2] (*See* Dkt.

23  _____

24  [2] Finisar timely objected to Nistica's RFP Nos. 96 & 97 related to "customer agreements" on the
    basis of overbreadth and confidentiality obligations owed to third parties. Ex. 1 (Jan. 20, 2015

25  Ltr. from R.Davis to J.Bennett at 1). Finisar attempted to meet and confer with Nistica on
    multiple occasions regarding these concerns. *Id.* When the parties finally met, Finisar explained

26  that it would produce agreements with Cisco relating to the Finisar product lines that practice the
    technology at issue in this case. *Id.* However, Nistica demanded that Finisar must produce all

27  agreements with Cisco, even though Nistica could not explain the relevance of its request. *Id.*
    After Nistica narrowed its request, Finisar requested consent from Cisco to produce the requested

28  agreements. *Id.* at 2. Finisar produced its agreements with Cisco to Nistica on the same day that

1   No. 132 at 17-21, 38-39 (Nistica's SAA); *see also* Dkt. No. 142 at 11-13 (Finisar's Motion to

2   Dismiss and Strike)).  Nistica also brought its 14th counterclaim for breach of the 2009 Settlement

3   Agreement in its SAA, despite the clear provisions in the Agreement giving Delaware courts

4   exclusive jurisdiction to resolve all claim arising out of the Agreement.  (*See* Dkt. No. 142 at 13-

5   14).

6          On December 31, 2014, Finisar timely filed its Motion to Dismiss Nistica's 13th and 14th

7   Counterclaims and Strike its 18th-28[th] Affirmative Defenses in Nistica's Second Amended

8   Answer (Dkt No. 142) ("Motion to Dismiss and Strike")[3].

9          After considering Finisar's Motion to Dismiss and Strike and reviewing Finisar's

10  agreements with its customers, including Cisco, Nistica realized that it had no basis for asserting

11  any counterclaim or affirmative defense based on any "Customer Agreements."  (*See* Dkt. No.

12  151 at 6-7 (Nistica's Opp. to Finisar's Motion to Dismiss and Strike)).  Nistica also apparently

13  acknowledged that its 14th counterclaim based on the 2009 Settlement Agreement was fatally

14  flawed and agreed to drop it.  (*Id.* at 6).  Additionally, Nistica acceded entirely to Finisar's

15  Motion to Dismiss and Strike as to Nistica's 19th, 23rd, 24th, 25th, and 26th Affirmative Defenses,

16  which Nistica has agreed to withdraw in their entirety.  (*Id.* at 6-7).

17          On January 23, 2015, seven weeks after the December 5, 2014 deadline to amend

18  pleadings, Nistica filed the instant Motion in an effort to belatedly rectify deficiencies in the few

19  affirmative defenses introduced in its Second Amended Answer that Nistica has not already

20  agreed to drop.  In its Proposed TAA, Nistica acknowledges the severe pleading deficiencies that

21  Finisar pointed out in its Motion to Dismiss and Strike by requesting to substantially revise and

22  introduce new theories of defense for its 18th, 20th, 21st, 22nd, 27th and 28th affirmative defenses.

23  In addition to making good on its promise to drop all of its baseless counterclaims and

24  affirmative defenses that rely upon supposed Customer Agreements, (*see* Dkt. No. 151 at 6-7

25  _____

26  Cisco gave consent for Finisar to do so.  *Id.*  Consequently, allegations that Finisar delayed its
    production of its agreements with Cisco do not justify Nistica's assertion of the 13th Counterclaim
27  and multiple affirmative defenses predicated on assumptions about agreements between Finisar
    and Cisco that Nistica had never seen.  *Id.*
28  [3] Finisar's Motion to Dismiss and Strike (Dkt. No. 142) was fully briefed as of January 30, 2015.

1  (Nistica's Opp. to Finisar's Motion to Dismiss and Strike); *see also* Dkt. No. 152-1, Ex. B at 63-

2  76, 90-91 (Nistica's Proposed TAA)), Nistica also substantially revised the remaining new

3  affirmative defenses that rely upon the 2009 Settlement Agreement (Dkt. No. 152-1, Ex. B at 63-

4  76).  Also, notably and entirely unaddressed in Nistica's Motion (Dkt. No. 152), Nistica's

5  Proposed TAA would amend Nistica's responses to Finisar's complaint (Dkt. No. 152-1, Ex. B at

6  47-51) and would revise Nistica's non-infringement defenses, which were ***not*** the subject of

7  Finisar's Motion to Dismiss and Strike.  (Dkt. No. 152-1, Ex. B at 52-54, 63).

8       Nistica now advances the fanciful story that it filed its Proposed TAA in order to

9  "streamline the case and save resources."  (Dkt. No. 153 at 4).  However, Nistica's story is belied

10  by the fact that it moved for leave to file its Proposed TAA only ***after*** Finisar pointed out

11  Nistica's severe pleading deficiencies in Finisar's co-pending Motion to Dismiss and Strike (Dkt.

12  No. 142).  Furthermore, Nistica's story is implausible in light of the substantial revisions to its

13  responses and affirmative defenses—Nistica seeks to change its responses to Finisar's allegations

14  of infringement and affirmative defenses of non-infringement, but offers no argument or

15  explanation for the purpose of these amendments or why these amendments could not have been

16  made at an earlier, less prejudicial stage in the case.  Nistica also fails to explain why its newly

17  advanced theories of affirmative defenses based on facts known to Nistica for many years could

18  not have been brought earlier.  Specifically, many of Nistica's "narrowed" defenses rely on the

19  2009 Settlement Agreement, a document which has been in Nistica's possession since its

20  execution in 2009.  Similarly, Nistica pleads new allegations in its laches affirmative defense that

21  prior owners of some of Finisar's patents, CiDRA Corp. and CiDRA Corporate Services

22  (collectively, "CiDRA"), should have known about Nistica's products for "many years before

23  this lawsuit was filed."  (Dkt. No. 152-1, Ex. B. at p. 73 of 96).  Surely Nistica must have known

24  of Finisar's alleged business dealings with CiDRA for many years before this lawsuit was filed as

25  well.  As explained below, Nistica's request is dilatory, prejudicial, and futile, and therefore its

26  Motion should be denied.

27

28

## III.     STATEMENT OF ISSUES

Whether Defendant should be granted leave to file its Third Amended Answer to Finisar's Complaint.

## IV.     LEGAL STANDARDS

### A.     Fed. R. Civ. P. 16(b) Governs After the Deadline to Amend Pleadings and Imposes a Good Cause Requirement

Nistica relies entirely on the liberal standard of Federal Rule of Civil Procedure 15(a), but that is the wrong standard. The heightened "good cause" standard of Rule 16(b) governs here. Rule 15(a) "does not apply when a district court has established a deadline for amended pleadings under Rule 16(b)." *Alibaba.com H.K. Ltd. v. P.S. Prods.*, No. 10-CV-04457-WHA, 2012 U.S. Dist. LEXIS 36749, at *4 (N.D. Cal. Mar. 19, 2012) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). "Once a scheduling order has been entered, the liberal policy favoring amendments no longer applies. Subsequent amendments are not allowed without a request to first modify the scheduling order." *Id.* at *5 (citing *Johnson*, 975 F.2d at 608-09). "At that point, any modification must be based on a showing of good cause." *Id.* "The 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Abaxis, Inc. v. Cepheid*, No. 3:10-CV-00475-JCS, 2011 U.S. Dist. LEXIS 137379, at *21 (N.D. Cal. Nov. 30, 2011) (citing *Johnson*, 975 F.2d at 607-08).

### B.     Standard for a Motion to Amend Before the Deadline for Amending Pleadings

After the time for amendments as a matter of course has expired and before the Court sets a deadline via scheduling order, Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Under Rule 15(a), five factors inform a court's decision whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) whether the party has previously amended, and (5) futility of amendment. *Pixion, Inc. v. Citrix Sys., Inc.*, No. 09-CV-03496-SI, 2012 U.S. Dist. LEXIS 53967, at *6-7 (N.D. Cal. April 16, 2012) (citing *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011)). "These factors, however, are not of equal weight in that delay, by itself, is insufficient to justify denial of

1   leave to amend." *Edwards Lifesciences LLC v. Cook Inc.*, No. 03-CV-03817-JSW, 2008 U.S.

2   Dist. LEXIS 124506, at *7 (N.D. Cal. Apr. 2, 2008) (citing *DCD Programs, Ltd. v. Leighton*, 833

3   F.2d 183, 186 (9th Cir. 1986)).  The other factors used to determine the propriety of a motion for

4   leave to amend could each, independently, support a denial of leave to amend a pleading.

5   *Edwards Lifesciences*, 2008 U.S. Dist. LEXIS 124506, at *7 (citing *Lockheed Martin Corp. v.*

6   *Network Solutions, Inc.,* 194 F.3d 980, 986 (9th Cir. 1999)).

7          "Leave to amend pleadings under Federal Civil Procedure Rule 15(a) should be freely

8   given." *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, despite this liberal policy

9   permitting amendment, courts decline to grant leave to amend pleadings where there is "any

10  apparent or declared reason" for doing so.  *CNET Networks, Inc. v. Etilize, Inc.*, 584 F. Supp. 2d

11  1260, 1267 (N.D. Cal. 2008) (citing *Foman*, 371 U.S. at 182); *see also Lockman Found. v.*

12  *Evangelical Alliance Mission*, 930 F.2d 764, 772 (9th Cir. 1991).

13         Moreover, not all of the factors for consideration on a motion to amend pleadings merit

14  equal consideration—prejudice is the "touchstone of the inquiry under rule 15(a)" and "carries

15  the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.

16  2003); *see also Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.

17  2001).  Futility of amendment, by itself, can also justify the denial of a motion to amend.  *Bonin*

18  *v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995), cert. denied, 516 U.S. 1051 (1996).  A court may

19  also deny a motion to amend "where the movant presents no new facts but only new theories and

20  provided no satisfactory explanation for his failure to fully develop his contentions originally."

21  *Id*.

22  **V.    ARGUMENT**

23         **A.    Nistica Lacks Good Cause to Amend its Answer for the Third Time**

24         Nistica cannot show good cause to amend its answer for the third time, seven weeks after

25  the December 5, 2014 deadline to amend lapsed.  Worse yet, Nistica's Motion does not even

26  attempt to show good cause, ignoring the heightened "good cause" standard set forth in Rule 16

27  and applying only the standard set forth in Rule 15.  (Dkt. No. 152 at 4).  "Unlike Rule 15(a)'s

28  liberal amendment policy which focuses on the bad faith of the party seeking . . . amendment and

---

1   the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the

2   diligence of the party seeking the amendment." *TV Interactive Data Corp. v. Sony Corp.*, 2012

3   U.S. Dist. LEXIS 124550, at *6-7 (N.D. Cal. Aug. 31, 2012). To show the requisite diligence,

4   the party seeking amendment must establish both that its noncompliance with a Rule 16 deadline

5   occurred "because of the development of matters which could not have been reasonably foreseen

6   or anticipated" and that it was "diligent in seeking amendment of the Rule 16 order, once it

7   became apparent that [it] could not comply." *Id.* at *7.

8        Nistica argues that its Proposed TAA merely narrows claims and defenses brought in

9   Nistica's SAA and therefore Finisar should have been on notice of those claims and defenses

10   before the current motion was filed. However, this position has no basis in law. *See Texaco, Inc.*

11   *v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (affirming denial of leave to amend because non-

12   moving party "would have been unreasonably prejudiced by the addition of numerous new

13   claims . . . regardless of [movant's] argument that they were 'implicit' in the previously pleaded

14   claims"). Indeed, Nistica does not (and cannot) cite to any case that supports its position that it

15   may narrow its pleadings seven weeks after the deadline to amend has lapsed without showing

16   good cause.

17        Moreover, Nistica's story is belied by the fact that Nistica has changed responses and

18   affirmative defenses throughout its Proposed TAA, including requesting leave to changes to

19   responses and affirmative defenses that were ***not*** challenged by Finisar's Motion to Dismiss and

20   Strike, without even an attempt to explain why it should be permitted to do so after the deadline

21   to amend. (*See* Dkt. No. 152-1, Ex. B at 47-54, 63 (Nistica's Proposed TAA)). Nistica's Motion

22   is entirely silent with respect to these requested changes—apparently, Nistica cannot explain the

23   basis for making these amendments and, clearly, lacks good cause for doing so.

24        In Nistica's Proposed TAA, Nistica dropped many of the frivolous counterclaims and

25   affirmative defenses that were advanced in its SAA. (*See* Dkt. No. 152-1, Ex. B at 63-76, 90-92

26   (Nistica's Proposed TAA)). The few affirmative defenses added in the SAA that "remain" have

27   been rewritten and, while Nistica alleges that they have only been "[l]imited to WSS MEM

28   products" or "[l]imited to [the] 2009 Settlement Agreement" (Mot. at 5), these amended

---

1  affirmative defenses in fact present new theories of defense that were not introduced in Nistica's

2  SAA.  (*See* Dkt. No. 152-1, Ex. B at 63-76).  For example, Nistica pled in its SAA that it had a

3  laches defense applicable to all of Finisar's asserted patents based on interactions between

4  Nistica and prior owners of two of Finisar's asserted patents, specifically Optium, Optium

5  Australia, and Engana.  (Dkt. No. 132 at 23-24).  But Nistica now contends for the first time in its

6  Proposed TAA that Nistica had ***another*** pre-suit relationship with former owners of three

7  ***different*** asserted patents, specifically CiDRA, that allegedly provides a new factual basis for

8  Nistica's laches defense.  (Dkt. No. 152-1 at 21-22).  These brand new facts are implicated by

9  Nistica's affirmative defenses for the first time in its Proposed TAA, even though the legal

10  theories for Nistica's defenses facially remain the same.

11         Nistica's Motion also ignores the reality that Nistica has had the 2009 Settlement

12  Agreement in its possession since December 28, 2009—the date the Agreement was executed.

13  Nistica needed no discovery from Finisar to plead affirmative defenses based on the 2009

14  Settlement Agreement.  There is no reason that Nistica could not have pled its new theories of

15  defense based on the 2009 Settlement Agreement at the outset of this case and, consequently, no

16  reason that Nistica should have failed to include these theories of defense in its pleadings by the

17  December 2014 amendment deadline.  However, Nistica failed to properly plead any defenses

18  based on the 2009 Settlement Agreement before the amendment deadline due to its own dilatory

19  conduct.  Indeed, Nistica did not consider or request to plead its new theories of defense based on

20  the 2009 Settlement Agreement until Finisar's Motion to Dismiss and Strike highlighted the fatal

21  flaws in Nistica's defenses in the SAA.  Nistica waited until seven weeks after the deadline to

22  amend pleadings had lapsed before attempting to introduce its new theories of affirmative

23  defense based on the 2009 Settlement Agreement.  Nistica's carelessness in timely pleading its

24  answer "is not compatible with a finding of diligence and offers no reason for a grant of relief."

25  *Johnson*, 975 F.2d at 609.

26         Nistica's unjustified lack of diligence alone is fatal to its Motion. *See Osakan v. Apple*

27  *Am. Group*, No. 08-CV-4722-SBA, 2010 U.S. Dist. LEXIS 53830, at *8 (N.D. Cal. May 3, 2010)

28  ("Although the existence or degree of prejudice to the party opposing the modification might

1   supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's

2   reasons for seeking modification…. ***If that party was not diligent, the inquiry should end***.")

3   (emphasis in original) (citing *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir.

4   2002) (affirming denial of motion to modify pretrial schedule where plaintiff failed to

5   "demonstrate diligence in complying with the dates set by the district court"); *see also Aircraft*

6   *Tech. Publrs. v. Avantext*, No. 07-CV-4154, 2009 U.S. Dist. LEXIS 57671, at *4-5 (N.D. Cal.

7   June 22, 2009) (denying motion for leave to amend pleadings where the non-diligent party filed

8   for leave to amend one month after the deadline to amend had lapsed).

9         **B.**    **The Remaining Collateral Factors Do Not Favor Amendment**

10        Regardless of whether the Court finds that Nistica's unjustified delay is fatal to its

11   showing of good cause, Nistica cannot even establish that its proposed amendment is permissible

12   under the Rule 15 factors.  *Osakan*, 2010 U.S. Dist. LEXIS 53830, at *8 (citing *Johnson*, 975

13   F.2d at 609) ("Where, as here, the motion to amend is presented after the Court has entered a

14   pretrial scheduling order, the liberal rules governing motions to amend under Rule 15(a) are

15   inapplicable. . . . [However,] if the [moving party] demonstrates good cause under Rule 16(b), he

16   or she must then establish that the proposed amendment is permissible under the factors germane

17   to Rule 15.").

18         **1.**    **Allowing Nistica to File Its Proposed Third Amended Answer at This**
             **Late Stage Will Seriously Prejudice Finisar**

19

20        Nistica should not be granted leave to amend its pleadings because Finisar would be

21   significantly prejudiced by any further amendments.  Courts often deny leave to amend a

22   pleading where the amendment would be prejudicial to the opposing party.  *Medtronic, Inc. v.*

23   *AGA Med. Corp.*, No. 07-CV-0567-MMC, 2009 U.S. Dist. LEXIS 16122, at *4 (N.D. Cal. Feb.

24   18, 2009) ("[I]t is the consideration of prejudice to the opposing party that carries the greatest

25   weight.").  An opposing party is prejudiced by introduction of an amended pleading when the

26   new amendments contain "different legal theories and require proof of different fact[s]."

27   *Edwards Lifesciences LLC, v. Cook, Inc.*, No. 03-CV-03817-JSW, 2008 U.S. Dist. LEXIS

28   124506, at *11 (N.D. Cal. Apr. 2, 2008) (citing *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387

1   (9th Cir. 1990)).  Also, Finisar will be prejudiced if Nistica is permitted to reintroduce equitable

2   defenses that it previously waived and withdrew from the case at the time it filed its FAA.  *See*

3   *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988) ("Waiver is the

4   intentional relinquishment of a known right with knowledge of its existence and the intent to

5   relinquish it.").

6         This case has been pending for almost two years and fact discovery will close soon—on

7   May 30, 2015.  (*See* Dkt. No. 126 (ordered in relevant part at Dkt. No. 131)).  After several years

8   of inaction, Nistica is now seeking to substantially expand the scope of this case by introducing

9   new affirmative defenses after the deadline to amend and seven weeks before the close of fact

10  discovery.  This Court has denied leave to amend pleadings in cases where the request was

11  advanced approximately seven weeks before the close of fact discovery.  *See, e.g.*, *Athena*

12  *Feminine Technologies Inc. v. Wilkes*, No. 10-CV-4868-SBA, 2013 U.S. Dist. LEXIS 16249, at

13  *8-10 (N.D. Cal. Feb. 6, 2013) (denying leave to amend pleadings on February 6, 2013 finding

14  prejudice was too great because the deadline for fact discovery was May 14, 2013).  Moreover,

15  Nistica asserted a defense based on equitable doctrines (i.e., waiver, laches, implied license,

16  equitable estoppel, legal estoppel, conduct, and/or acquiescence) in its original Answer, and

17  previously withdrew them through its FAA—Nistica should not be permitted to belatedly

18  reintroduce defenses it waived over a year ago.  (*Compare* Dkt. No. 20 at 10 *to* Dkt. No. 35 at

19  15).

20        The timing of Nistica's request to introduce its Proposed TAA, if granted, will

21  substantially prejudice Finisar.  Nistica is seeking to exponentially expand this action shortly

22  before the discovery cutoff and introduce new theories of defense after Finisar narrowed its

23  selection of asserted claims for trial.  This amendment will prejudice Finisar, and this factor alone

24  weighs heavily against granting Nistica's motion.

25           **2.**    **Nistica's Proposed Amendments Are Futile**

26        The defenses Nistica is trying to introduce at this late stage are also futile.  "A proposed

27  amendment is futile if 'no set of facts can be proved under the amendment to the pleadings that

28  would constitute a valid and sufficient claim or defense.'"  *Edwards*, 2008 U.S. Dist. LEXIS

1   124506, at \*12 (citing *Collaboration Properties, Inc. v. Tandberg ASA*, No. 05-CV-01940-MHP,

2   2007 U.S. Dist. LEXIS 8632, at \*12 (N.D. Cal. Jan. 25, 2007)).  Moreover, this Court is not

3   required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact,

4   or unreasonable inferences."  *Athena Feminine Techs., Inc. v. Wilkes*, 2013 U.S. Dist. LEXIS

5   16249, at \*7 (N.D. Cal. Feb. 5, 2013) (citing *In re Gilead Sciences Securities Litig.*, 536 F.3d

6   1049, 1055 (9th Cir. 2008)).

7         Many of Nistica's newly pled Affirmative Defenses are based on the existence of the

8   2009 Settlement Agreement.  Neither party disputes the authenticity or relevance of the 2009

9   Settlement Agreement.  (*See* Dkt. No. 141-6 (Sealed Ex. B to Davis Declaration in Support of

10   Finisar's Motion)).  As discussed in further detail in Sections IV.D. and IV.E. of Finisar's Motion

11   to Dismiss and Strike (Dkt. No. 142), the terms of the 2009 Settlement Agreement expressly

12   limited the releases granted by Finisar to Nistica to ***claims arising before the execution*** of the

13   2009 Settlement Agreement and claims that Finisar ***had at the time of execution***.  Consequently,

14   Nistica's efforts to plead any defense based on rights extending beyond the execution date of the

15   2009 Settlement Agreement are completely without merit.  (*See* Dkt. No. 141-6 at §7).  Indeed,

16   an examination of Nistica's Proposed TAA shows that Nistica expressly relies on Section 7 of the

17   2009 Settlement Agreement for its theories of defense based on license/implied license, estoppel,

18   and "release, waiver, covenant not to sue" contending that Finisar granted a release to Nistica that

19   extended after the Agreement's effective date and beyond the patents then-owned by Finisar.

20   (Dkt. No. 152-1, Ex. B at 63-69).  Likewise, Nistica amended its unclean hands affirmative

21   defense for the purpose of incorporating its license/implied license and estoppel affirmative

22   defenses by reference.  (Dkt. No. 152-1, Ex. B at 69-71).  Because each of Nistica's proposed

23   revisions to the 18th, 20th, 21st, and 22nd Affirmative Defenses relies on the existence of rights and

24   releases from the 2009 Settlement Agreement perpetuating beyond the execution date of that

25   Agreement, they are all futile.  Nistica's motion should be denied based on this factor, alone.  *See*

26   *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself,

27   justify the denial of a motion for leave to amend").

28

### 3. Nistica Has Not Presented Any New Facts to Support Its Newly Alleged Counterclaims and Affirmative Defenses

Nistica does not even try to explain what new facts have compelled it to seek this new amendment at this juncture in the case, which also weighs in favor of denying Nistica's motion. *See Edwards Lifesciences LLC, v. Cook, Inc.*, No. 03-CV-03817-JSW, 2008 U.S. Dist. LEXIS 124506, at *8 (N.D. Cal. Apr. 2, 2008) (citing *Acri v. International Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986)) ("Courts do not look favorably upon the assertion of new legal theories, when the factual basis of those legal theories was known to the party for a significant amount of time prior to filing a motion for leave to amend."); *see Medtronic,* 2009 U.S. Dist. LEXIS 16122, at *4-5 ("Although ordinarily a party opposing amendment bears the burden of demonstrating that leave to amend is improper, where a considerable period of time has passed between the filing of the party's initial pleading and a motion for leave to amend, the burden is on the moving party to show some valid reason for his neglect and delay.") (quotations omitted); *see also Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991) ("Undue delay is a valid reason for denying leave to amend.").

The *Medtronic* case is particularly instructive here—in *Medtronic*, the defendant, AGA, filed its initial answer and counterclaims approximately two years prior to filing its motion for leave to amend. AGA argued that it only received discovery relevant to its proposed claims a few months before moving to amend its pleadings, but it did not state when it first sought such discovery, nor did it adequately explain why the documents in its possession early on in the case were not sufficient to put it on notice of the need to investigate newly introduced claims earlier. *See Medtronic,* 2009 U.S. Dist. LEXIS 16122, at *5. The Court thus found that AGA failed to adequately justify its delay in seeking leave to amend. *See id.*

In this case, Nistica had the Settlement Agreement in its possession since it was executed on December 2009, over five years ago, and allegedly engaged in business with CiDRA for many years before this lawsuit was filed. (Dkt. No. 152-1, Ex. B at 73). Nistica does not point to any newly discovery facts in its Motion that it contends have justified its delay. Nistica also offers no

explanation as to why it could not have pled its amended responses to Finisar's complaint and amended non-infringement affirmative defenses sooner. Nistica thus unduly delayed its attempt to amend its pleadings.

### 4. Nistica Has Already Amended Its Answer Twice Prior to Filing This Motion

This is the third time that Nistica is attempting to amend its answer. Nistica filed its First Amended Answer (Dkt. No. 35) on Oct. 24, 2013 to rectify pleading deficiencies identified by Finisar in its Motion to Dismiss Counterclaims and Strike Affirmative Defenses (Dkt. No. 23). Over one year later, Nistica filed its SAA (Dkt. No. 132), which included two new counterclaims and eleven new affirmative defenses that fell seriously shy of the pleading requirements set forth by the Federal Rules of Civil Procedure. Finisar filed its Motion to Dismiss and Strike Nistica's newly introduced counterclaims and defenses (Dkt. No. 142), and as a result, Nistica agreed to drop both of its new counterclaims and five of its eleven new affirmative defenses. Nistica's Proposed TAA now attempts to change the theories underlying the remaining six of its new affirmative defenses and make amendments to Nistica's responses to Finisar's Complaint and Nistica's non-infringement defenses that were ***not*** the subject of Finisar's Motion to Dismiss and Strike. Nistica's routine disregard of the pleading standards set forth in the Federal Rules of Civil Procedure weighs against granting Nistica's motion. *See, e.g.*, *Medtronic,* 2009 U.S. Dist. LEXIS 16122, at *7 (denying defendant's second motion to for leave to amend its answer in part because the court had previously allowed defendant to file an amended answer).

### 5. Nistica Delayed Amending Its Pleadings in Bad Faith

Bad faith in filing a motion for leave to amend exists when the addition of new legal theories are baseless and presented for the purpose of prolonging the litigation. *See Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 881 (9th Cir. 1999). As explained above, Nistica ignores that it has had the 2009 Settlement Agreement in its possession since December 28, 2009—the date the Agreement was executed. No additional discovery was needed to plead affirmative defenses based on this agreement. There is no reason that Nistica could not have pled its new theories of defense at the outset of this case and, consequently, no reason that Nistica

1  should have failed to include these theories of defense in its pleadings by the December 2014

2  amendment deadline.

3          Moreover, Nistica's decision to amend its pleadings at this late juncture is even more

4  puzzling considering that it pled the same equitable defenses in its initial Answer and

5  subsequently dropped them in its FAA.  (Dkt. No. 20; Dkt. No. 35).  At this point in the case,

6  Finisar was led to believe, through Nistica's actions, that it had waived the defenses it now

7  attempts to revive.  A waiver may be implied based on conduct so inconsistent with the intent to

8  enforce a right as to induce a reasonable belief that such right has been relinquished.  *Hynix*

9  *Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011) cert. denied, 132 S. Ct.

10  1540 (U.S. 2012); *see also Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir.

11  2008).  Nistica, with full knowledge of the 2009 Settlement Agreement, intentionally dropped its

12  equitable affirmative defenses in its FAA, over 2 years ago.  (Dkt. No. 35).  Nistica chose to re-

13  plead its baseless equitable affirmative defenses mere weeks before the close of fact discovery

14  and after *Markman* hearings have been completed merely to prolong this case.  This behavior is

15  plainly evidence of Nistica's bad faith and supports denial of its motion.

16  **VI.      CONCLUSION**

17          For the aforementioned reasons, Finisar respectfully requests that Nistica's Motion for

18  Leave to File Its Third Amended Answer and Counterclaims be denied.

19

20  Dated:   February 6, 2015                    Respectfully submitted,

21                                               /s/ *Robin M. Davis*

22                                               David C. Radulescu (*pro hac vice*)
                                                 david@radulescullp.com
23                                               Tigran Vardanian (*pro hac vice*)
                                                 tigran@radulescullp.com
24                                               Robin M. Davis (*pro hac vice*)
25                                               robin@radulescullp.com
                                                 Daniel Kesack (*pro hac vice*)
26                                               daniel@radulescullp.com
                                                 RADULESCU LLP
27                                               350 Fifth Avenue, Suite 6910
                                                 New York, NY 10118
28                                               Telephone: (646) 502-5950

Facsimile: (646) 502-5959

Christopher J. Cox (151650)
chris.cox@weil.com
WEIL GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3029
Facsimile: (650) 802-3100


**Attorneys for Plaintiff**
**FINISAR CORPORATION**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Robin M. Davis, hereby declare:

I am employed in the City and County of New York, New York in the office of an attorney admitted pro hac vice in the above captioned action. I am over the age of eighteen years and not a party to the within action. My business address is Radulescu LLP, 350 Fifth Avenue, Suite 6910, New York, New York 10118.

On February 6, 2015, I caused the following document, described as:

**PLAINTIFF FINISAR CORPORATION'S OPPOSITION TO DEFENDANT NISTICA, INC.'S MOTION FOR LEAVE TO FILE ITS THIRD AMENDED ANSWER AND COUNTERCLAIMS**

to be served via CM/ECF, upon all counsel of record registered to receive electronic filing, as indicated on the Court's website.

I declare under penalty of perjury that the above is true and correct. Executed on February 6, 2015, in New York, New York.

*/s/ Robin M. Davis*
Robin M. Davis