ROBERT F. KRAMER (Bar No. 181706)
Email: robert.kramer@dentons.com
RUSSELL TONKOVICH (Bar No. 233280)
Email: russell.tonkovich@dentons.com
C. GIDEON KORRELL (Bar No. 284890)
Email: gideon.korrell@dentons.com
DENTONS US LLP
1530 Page Mill Road, Suite 200
Palo Alto, CA 94304-1125
Telephone: (650) 798-0300
Facsimile: (650) 798-0310

SHAILENDRA MAHESHWARI (*Pro Hac Vice*)
Email: shailendra.maheshwari@dentons.com
DENTONS US LLP
1301 K Street, NW
Suite 600, East Tower
Washington, D.C. 20005-3364
Telephone: (202) 408-6400
Facsimile: (202) 408-6399

JOEL N. BOCK (*Pro Hac Vice*)
Email: joel.bock@dentons.com
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768 6700
Facsimile: (212) 768 6800

Attorneys for Defendant
NISTICA, INC.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation,<br><br>        Plaintiff,<br><br>   vs.<br><br>NISTICA, INC., a Delaware corporation,<br><br>        Defendant. | Case No. 5:13-cv-03345-BLF (JSC)<br><br>**DEFENDANT NISTICA, INC.'S OPPOSITION TO PLAINTIFF FINISAR CORPORATION'S MOTION TO STRIKE PORTIONS OF NISTICA'S AMENDED PRELIMINARY INVALIDITY CONTENTIONS**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>Date: March 26, 2015<br>Time: 9:00 a.m.<br>Place: San Francisco Courthouse, Crt. F<br>Judge: Hon. Jacqueline Scott Corley |

# TABLE OF CONTENTS

I.      Introduction ...................................................................................................1

II.     Statement of Facts ........................................................................................5

        A.      The Parties' Agreement and the Court's Order Limiting the Number of
                Asserted Claims and Prior Art References.................................................5

        B.      Nistica's Preliminary Invalidity Contentions............................................6

        C.      Nistica Never Waived Its Indefiniteness Defenses ...................................6

        D.      The Claim Construction Order Changed the Scope of the Asserted Claims ...........7

        E.      The Parties' Agreement and the Court's Order Allowing Both Parties to
                Amend Their Contentions Without Restriction ........................................7

        F.      Finisar's Amended Infringement Contentions Assert New Allegations of
                Infringement and Change Finisar's Infringement Theories .......................8

        G.      Nistica's Amended Invalidity Contentions Contain Only 20 Prior Art
                References Total With No More Than 6 Prior Art References Per Asserted
                Patent Per the Parties' Agreement and The Court's Order, And Only 6 New
                Prior Art References...............................................................................9

        H.      Finisar Made No Attempt to Meet and Confer Prior to Filing Its Motion..............10

III.    Argument .....................................................................................................11

        A.      Finisar's Motion Should Be Denied Because It Violated Judge Corley's
                Standing Order .....................................................................................11

        B.      Finisar's Argument That Nistica's Amended Invalidity Contentions
                Contain Too Many References Is Baseless...............................................12

        C.      Finisar's Argument That New References Should Be Stricken Lacks Merit
                and Should Be Rejected .......................................................................15

        1.      Finisar's Argument To Strike New Claims Is Contrary to Orders 60 and
                130, the Parties' Agreements, and the Patent Local Rules .....................15

        2.      Nistica Timely Produced References .....................................................17

        3.      Finisar's Requested Relief is Unfair and Prejudicial to Nistica.............17

        4.      Nistica Has Good Cause to Amend its Invalidity Contentions ...............18

        D.      Finisar's Argument Nistica Waived Indefiniteness Defenses is Baseless .............23

        E.      Finisar's Requested Relief Is Prejudicial And Improper .........................25

VI.     CONCLUSION ..........................................................................................25

NISTICA'S OPP. TO MOTION TO STRIKE          CASE NO. 5:13-CV-03345-BLF (JSC)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atmel Corp. v. Authentec, Inc.*,
    Case No. C06-2138, 2008 WL 276392 (N.D. Cal. Jan. 31, 2008) ...........................................19

*J & J Sports Productions, Inc. v. Jernegen*,
    Case No. C11-02095, 2013 WL 450382 (N.D. Cal. Feb. 5, 2013.)....................................11, 12

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S.Ct. 2120 (2014) ...................................................................................................7, 23, 24

*Verinata Health, Inc. et al. v. Ariosa Diagnostics, Inc.*,
    Case No. C12-05501, 2014 WL 1648175 (N.D. Cal. April 23, 2014) ..................19, 20, 23, 24

**Statutes**

35 U.S.C. § 112 ...................................................................................................................................24

**Other Authorities**

L.R. 3-1 ..........................................................................................................................................8, 16

L.R. 3-1, 3-3 ........................................................................................................................................24

L.R. 3-3 ..........................................................................................................................................8, 16

L.R. 3-6 ..................................................................................................................................... *passim*

Order 60 ................................................................................................................................... *passim*

Order 130 ................................................................................................................................. *passim*

# I. INTRODUCTION

Finisar's Motion to Strike Nistica's Invalidity Contentions is full of false rhetoric amounting to a bad faith effort by Finisar to renege on an agreement of the parties. In November 2014, the parties had agreed that Finisar could freely amend its infringement contentions and Nistica could freely amend its invalidity contentions. Finisar never proposed any restrictions on the parties' ability to amend and never asked the Court to impose any restrictions on Nistica's ability to amend its contentions. This agreement was adopted by the Court in a scheduling order (Dkt. 130) ("Order 130") dated November 19, 2014, in which the Court set dates for each party to amend their contentions without setting any limitations on the substantive amendments that could be made. Rather, the only limitation imposed by the Court in Order 130 was that Finisar was limited to 16 asserted claims with no more than 5 claims per patent; and Nistica was limited to 20 asserted prior art references with no more than 6 references per patent. Now, Finisar takes the position that, while it can amend its contentions to include new infringement theories for every patent, Nistica cannot make any substantive amendments, such as adding a new prior art reference. Such a double standard violates the parties' agreement, Order 130 allowing the parties to freely amend their contentions, and fundamental notions of fairness and equity.

In its Motion, Finisar noticeably fails to tell the Court about how it took full advantage of the parties' agreement and dramatically change its infringement contentions, such that the text and images in its infringement charts are nearly 100% different as compared to its prior contentions. In fact, Finisar vastly expanded its infringement contentions by (1) changing its infringement theories for all asserted patents, (2) asserting completely new allegations of infringement, and (3) asserting completely new allegations that its products practice the asserted claims. In response to the substantial changes that Finisar made to its infringement contentions, Nistica added one new reference for each of four of the patents-in-suit and two new references for the patent-in-suit with the most asserted claims (wherein one of the two references is only part of a single obviousness combination). These are minimal additions in response to Finisar's global changes in its contentions. Now, after taking full advantage of the parties' agreement, Finisar's attempt to impose a one-sided restriction that Nistica cannot use any prior art references not

- 1 -

contained in its May 14, 2014, Preliminary Infringement Contentions would essentially deprive Nistica of any real benefit of the parties agreement and is contrary to Order 130, which specifically permits Nistica to amend its invalidity contentions without any limitations on the types of amendments.

Finisar makes three specific arguments in its brief, which all fail on the merits. ***First***, Finisar argues that Nistica has asserted more than 20 total references and more than 6 references for some of the patents in violation of Order (Dkt. 60) ("Order 60"). This is a complete falsehood based entirely on Finisar's attempt to deceive the Court by double counting references as individual references and as combinations. Finisar does ***not***, and cannot, dispute that Nistica asserts exactly 20 prior art documents and no more than 6 pieces of prior art per patent. (Dkt. 155 (Motion) at 10.) Indeed, Nistica's Identification of Prior Art clearly shows this. (Kramer Decl., Ex. 16.) Finisar's entire argument is based on a self-serving and dishonest representation that the parties agreed that each obviousness combination of references would count as a single "prior art reference" for purposes of the limits on asserted references. However, this self-serving, counterintuitive definition is not found in any correspondence, in the parties' Stipulation (Dkt. 59) to limit asserted prior art references, or in any Court Order including, Order 60. It is simply not credible that the parties agreed to such a material limitation and failed to ever put it in writing or ever tell the Court about it. Rather, Finisar conjured up this argument in January 2015, after Nistica served its amended contentions, to create an issue to go to the Court.

***Second***, Finisar argues that Nistica cannot add any new prior art references that were not charted in Nistica's Preliminary Invalidity Contentions. Again, there is not a single correspondence or Court Order proposing any such limitation on Nistica. Finisar never raised this limitation to Nistica when the parties were negotiating their agreement to allow each other to amend their respective contentions and never raised it to the Court in its Case Management Statement (Dkt. 126). In its brief, Finisar relies on Order 60, but ignores the part of that order that specifically allows for Nistica to use new prior art references. (Dkt. 60) ("if Nistica identifies additional prior art after it makes this representation, it does not waive the right to produce and use it in the litigation in the same way as it would absent this agreement.") Further, Order 130,

which sets the schedule for amending contentions, does not restrict Nistica's ability to amend its contentions in any way. Finisar's position is again contrary to the Court's Orders in this case. This is again a disingenuous attempt by Finisar to manufacture a dispute to take to the Court. *Third*, Finisar argues Nistica waived all indefiniteness defenses, which is demonstrably false.

Finisar's bad faith gamesmanship is shown by how it brazenly, on December 18, 2014, the day before Finisar was to serve its amended infringement contentions, raised for the first time its belief that there was some unspoken restriction that Nistica could not rely on any prior art references other than those in its Preliminary Invalidity Contentions. Nistica was surprised and recognized this as more of Finisar's gamesmanship. Why didn't Finisar raise this issue (and the other supposed restrictions) earlier and put them into the parties' Stipulation (Dkt. 59) that was incorporated into Order 60? Finisar is very experienced counsel who litigate patent infringement cases repeatedly in this district and are fully familiar with the patent local rules and grounds for amending infringement and invalidity contentions. Plainly, Finisar did not want any such restrictions imposed on its ability to amend its weak infringement contentions to assert new and different theories of infringement. Finisar's counsel confirm in writing everything else in the case that is in their interest to confirm in writing. Here, after completely changing its contentions, Finisar suddenly claims that there were various unspoken restrictions, all of which applied only to Nistica and none to Finisar. This is just not credible. If Finisar wanted to impose such restrictions, it should have raised it with the Court. It did not, and Order 130 imposes no such restrictions on Nistica's ability to amend its contentions.

Unfortunately, this is not the first time Finisar has gone down this path demonstrating its willingness to say and do anything to avoid focusing on the actual merits of its weak case. Finisar's motion is another improper post-hoc attempt to rewrite an agreement made by the parties in what has been a regular pattern of behavior by Finisar throughout the case. As the Court will recall, most recently Finisar required the Court to consider and deny Finisar's motion to compel production of email (Dkt. 134.) Finisar reneged on the parties' agreement made at the outset of the case that the district's model e-discovery order would govern production of email. Although the parties put this into the scheduling discovery order at the outset of the case, Finisar

came to the Court more than a year later with a motion pretending and arguing that somehow, although never discussed by the parties, they either did not make this arrangement or completely abandoned this arrangement without any discussion. The Court denied Finisar's motion to compel, ordering instead that the model e-discovery order would govern discovery of email as the parties had agreed earlier in the case. Finisar's current motion dressed in another thick cloud of false accusations is equally meritless.

Cutting past Finisar's thick cloud of hand waving and false rhetoric, it is plain that none of the onerous and prejudicial supposed restrictions on how Nistica could amend its invalidity contentions were ever discussed or agreed to. The parties never agreed, as Finisar apparently contentds, that Finisar would have a free unfettered hand to radically rewrite its infringement contentions, but that there would be numerous onerous restrictions on what Nistica, and only Nistica, could and could not include in its invalidity contentions. It is clear that Finisar never proposed, and the parties never agreed to, the various self-serving, newly created restrictions that Finisar now claims should be grafted on to the agreement that was actually made.

Finisar's bad faith is shown by the very process by which Finisar went about making this motion thereby violating the Court's requirement to meet and confer and then falsely accusing Nistica of refusing to meet and confer. Finisar's representation to the Court that "Nistica refused to have a meaningful meet and confer with Finisar on this motion" is demonstrably false. (Dkt. 155 at 12) What actually occurred is that, on January 21, 2015, Finisar sent a letter to Nistica raising a few, but not all of its complaints with Nistica's Amended Invalidity Contentions. Finisar's letter states that Finisar "intends to address only facial issues concerning Nistica's Amended Contentions; Finisar will write at a later time regarding substantive deficiencies regarding Nistica's Amended Contentions, if any are discovered upon further review." (Dkt. 155, Ex. 20.) Nistica's lead counsel replied on January 26, 2015, stating "As you indicated, we await whatever you plan to send as a follow up and we'll address all issues you are raising at one time," rather than piecemeal. Finisar never responded to Nistica's email or contacted Nistica again on this issue. Finisar never advised Nistica that its January 21 letter represented all of Finisar's issues and never even requested a meet and confer with Nistica. Rather, on February 5, 2015,

NISTICA'S OPP. TO MOTION TO STRIKE          CASE NO. 5:13-CV-03345-BLF (JSC)

Finisar obstinately filed this Motion with no attempt to meet and confer beforehand and no communication replying to Nistica's January 26 email inviting discussion. Finisar then falsely represented to this Court in the Motion that "Nistica refused to have a meaningful meet and confer with Finisar on this motion." (Dkt. 155 at 12.)

Accordingly, the Court should deny Finisar's motion and enforce the parties' agreements and Order 130, which allows Nistica to amend its invalidity contentions without any restrictions. Alternatively, in light of the substantial changes that Finisar made in its Amended Infringement Contentions and the Markman Order, Nistica should be granted leave to do so.

## II.      STATEMENT OF FACTS

### A.      The Parties' Agreement and the Court's Order Limiting the Number of Asserted Claims and Prior Art References

The parties filed a Stipulation on February 10, 2014, reflecting the parties' agreement to limit the number of asserted claims and prior art references. (Dkt. 59.) The Stipulation states that, after the Claim Construction Order, Finisar would limit its asserted claims to 16 total claims with no more than 5 claims per patent and Nistica would limit its asserted prior art references to 20 total references with no more than 6 references per patent. (Dkt. 59 at 3-4.) The parties never agreed to any special definition of "prior art reference" that would allow for combinations of multiple references to be counted as single prior art references. Accordingly, the concept of each combination of references counting as a single prior art reference is not found in any correspondence, in the parties' Stipulation (Dkt. 59), or in any Order from the Court.

The Court adopted the Stipulation as Order 60 on February 10, 2014. Order 60 states that, "[d]uring this post-claim construction narrowing, the parties agree that Finisar will limit the asserted claims to 16 total, with no more than 5 claims from each asserted patent, and Nistica will limit the asserted prior art references to 20 in total, with no more than 6 prior art references for each asserted patent." (Dkt. 60 at 3-4.) There is no language in Order 60 stating that a combination of prior art references will count as a single "prior art reference."

Consistent with its plain meaning, the parties have consistently interpreted "prior art reference" under Order 60 to mean a single patent or publication. For example, Order 60 requires

NISTICA'S OPP. TO MOTION TO STRIKE      CASE NO. 5:13-CV-03345-BLF (JSC)

Nistica to provide a Disclosure of Prior Art References that lists "all presently known prior art references that it asserts invalidate any of the patents-in-suit with an identification of which references are allegedly relevant to each patent." (Dkt. 60 at 2.) Each prior art reference listed in Nistica's Disclosure of Prior Art References and its First Amended Disclosure of Prior Art References is a single patent or publication. (Kramer Decl., Exs. 1, 2.) These same references were used in obviousness combinations in Nistica's Preliminary Invalidity Contentions. Finisar never objected that the obviousness combinations in Nistica's Preliminary Invalidity Contentions were not disclosed as "references" in Nistica's Disclosure of Prior Art References or First Amended Disclosure of Prior Art References. Furthermore, both the Stipulation and Order 60 contemplate that Nistica **can** add new prior art references to its invalidity contentions. Specifically, Order 60 states:

> Nistica produces all presently known prior art references that it asserts invalidate any of the patents-in-suit with an identification of which references are allegedly relevant to each patent, with the representation that Nistica's invalidity contentions will be limited to such references (if Nistica later identifies additional prior art that was not already provided to Finisar, Nistica will immediately produce it, and *if Nistica identifies additional prior art after it makes this representation, it does not waive the right to produce and use it in the litigation in the same way as it would absent this agreement*)

(Dkt. 60 at 2.) Finisar noticeably does not address this language of Order 60 in its Motion.

### B.      Nistica's Preliminary Invalidity Contentions

Nistica's Preliminary Invalidity Contentions, which were served on May 14, 2014, included 56 invalidity charts showing anticipation and obviousness of 50 asserted claims. While Nistica was allowed to use up to 60 prior art references, Nistica only asserted 29 references. Throughout its contentions, Nistica uses "reference" in accordance with its ordinary meaning (i.e., a single patent or publication). For example, the Preliminary Invalidity Contentions discuss combinations of "references," which would not make sense if each combination was a "reference." (Kramer Decl., Ex. 3 at 8 ("Nistica also reserves the right to rely on any identified piece of prior art individually… or in *combination with other references* identified herein.").

### C.      Nistica Never Waived Its Indefiniteness Defenses

In its Preliminary Invalidity Contentions, Nistica stated that several of the asserted claims

were indefinite. Finisar proposed that the parties construe all of the terms that Nistica alleged were indefinite during the *Markman* process; but Nistica repeatedly rejected Finisar's proposal. (Bock Decl., at ¶¶ 5-12.) Prior to the Supreme Court's decision in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120 (2014), which changed the legal standard for indefiniteness, Nistica stated that it did not plan to assert indefiniteness with respect to specific claim limitations. (Dkt. 155, Exs. 17, 18) Nistica never waived its right to raise indefiniteness defenses in general and did not waive its right to raise indefiniteness under the *Nautilus* standard. (Bock Decl., at ¶¶ 16-18; Maheshwari Decl., at ¶¶ 5-6.)

**D.     The Claim Construction Order Changed the Scope of the Asserted Claims**

In the Claim Construction Order (Dkt. 123), which issued on October 1, 2014, the parties briefed various claim construction issues; and the Court's ruling reflects a claim construction that is not what Nistica assumed to be the scope of the patent claims when it served Invalidity Contentions, which were served earlier in the case before the Claim Construction Order issued. For example, the Court did not adopt certain of Nistica's proposed constructions for the '740 and '980 patents (Dkt. 123 at 14, 18, 22); and the '599 patent is closely related to the '980 patent having the same inventor and covering similar technologies.

**E.     The Parties' Agreement and the Court's Order Allowing Both Parties to Amend Their Contentions Without Restriction**

On October 21, 2014, Finisar sent an email to Nistica requesting a meet and confer to discuss Finisar's intention to amend its Preliminary Infringement Contentions. (Kramer Decl., Ex. 4.) The parties subsequently reached an agreement wherein each party could amend its contentions without any restrictions. (*Id.*, at Exs. 5, 7.) At no time during the parties negotiations did Finisar ever mention any limits on Nistica's ability to amend its invalidity contentions. (Kramer Decl., ¶¶ 14-19.) The parties' Case Management Statements, which were filed on November 13, 2014, did not place any restrictions on the parties' ability to amend their respective contentions. (Dkt. 126, 127.) Similarly, Finisar never asked the Court at the Case Management Hearing on November 19, 2014, to limit Nistica's ability to amend its invalidity contentions to add new references. After the hearing, Judge Freeman issued Order 130 adopting the parties

agreed upon dates for the "Plaintiff deadline to amend Patent L.R. 3-1 disclosures" and the "Defendant deadline to amend Patent L.R. 3-3 disclosures." (Dkt. 130.) Order 130 also does not contain any restrictions on the types of amendments that either party could make to its contentions. *Id.* On December 18, 2014, just one day before Finisar served its Amended Infringement Contentions, Finisar's counsel told Nistica for the first time that Nistica is not allowed to amend its invalidity contentions to add any new prior art references. (Kramer Decl., Ex. 9.). In response, Nistica informed Finisar's counsel that its position is in violation of the parties' agreement. (*Id*. at Ex. 10.) Nistica attempted to work cooperatively to resolve these issues, even offering to provide Finisar with additional time to review the prior art before selecting claims. (Id. at Ex. 11.) However, Finisar rejected any proposed compromise and threatened a motion to strike. (Id. at Ex. 12.)

> **F.     Finisar's Amended Infringement Contentions Assert New Allegations of Infringement and Change Finisar's Infringement Theories**

Finisar's Amended Infringement Contentions, which were served on December 19, 2014, differ significantly from its prior infringement contentions. ***First***, in its Amended Infringement Contentions, Finisar changed its infringement theories for every single patent-in-suit. Over 90% of the substantive text of the nearly 1200 pages of infringement charts are new and not found in prior contentions, which demonstrate the vast extent of the changes that Finisar made to its infringement theories. (Kramer Decl., Exs. 21-27.).[1] Specific examples of Finisar's changes in its infringement theories are discussed below in Section C4.

***Second***, Finisar alleges new infringement allegations that do not appear in previous contentions. For example, for the first time in its Amended Infringement Contentions, Finisar accuses Nistica's products with MEMS micromirrors of infringing claim 26 of U.S. Patent No.

---

[1] The redlines compare the infringement charts in the Amended Infringement Contentions with the infringement charts for the previous version of each asserted claims of the patents-in-suit. The text and images in blue were added in the Amended Infringement Contentions, and the text and images in red were deleted from the Amended Infringement Contentions. Green highlighted denotes that the text or images were moved to a different location within the charts.

7,123,833 ("'833 patent").[2]  (*Id.*, at Ex. 20 at Ex. B Part I at 70-77.)  Finisar's prior contentions never alleged that the MEMS micromirror products infringed claim 26.  (*Id.*, Ex. 17 at Exhibit B.)

**Third**, Finisar adds new allegations in its Amended Infringement Contentions that its own products practice the asserted claims.  For example, ████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████ These significant changes with respect to whether Finisar's own products practice the asserted claims reveals how significantly Finisar has changed its interpretation of the asserted claims for infringement.

**G.  Nistica's Amended Invalidity Contentions Contain Only 20 Prior Art References Total With No More Than 6 Prior Art References Per Asserted Patent Per the Parties' Agreement and The Court's Order, And Only 6 New Prior Art References**

Contrary to Finisar's misrepresentation in this motion, Nistica's Amended Invalidity Contentions and Identification of Prior Art served on January 19, 2015 cite to and rely upon 20 prior art references total.  (*Id.*, Ex. 16 at 1-2, Ex. 3 at 3-17.)  Further, consistent with the parties' agreement and the Court's Order, Nistica's Amended Invalidity Contentions cite to and rely upon no more than 6 prior art references for each patent.  (*Id.*)  Contrary to Finisar's misrepresentation in its Motion, Nistica's Amended Invalidity Contentions, which cite to only 20 prior art

---

[2] Previously, Finisar had only alleged that the liquid crystal products practice claim 26 of the '833 patent.  Ex. 19.

references, rely on 14 prior art references that were contained in Nistica's Preliminary Invalidity Contentions, and only 6 prior art references that Nistica learned of after it served its original invalidity contentions. Thus, Finisar's representations to the Court in the motion that "Nistica asserted 40 prior art references - twice the total number permitted" and Finisar's representation that "thirteen of Nistica's asserted prior art references in its Amended Invalidity Contentions were not timely disclosed to Finisar in Nistica's Invalidity Contentions" are flatly false statements. (Dkt. 155 at 10.) Finisar is misleadingly creative with its math by, for instance, counting combinations as additional references thereby double counting individual references.

### H.    Finisar Made No Attempt to Meet and Confer Prior to Filing Its Motion

After Nistica served its Amended Invalidity Contentions on January 19, 2015, Finisar sent a letter on January 21, 2015, in which it raised for the first time its allegations that (1) a combination of references counts as a single reference under Order 60 and (2) Nistica waived its indefiniteness defenses. (Dkt. 155, Ex. 20 at 1-2.) Finisar also alleged in its letter that Order 60 forbids the addition of new references. (*Id*.) Even though this letter was the first communication after Nistica served its Amended Invalidity Contentions, Finisar concludes its letter by declaring that "it appears the parties are at an impasse." (*Id*. at 1.) Such a statement reveals that Finisar never intended to engage in good faith in a meet and confer with Nistica.

The January 21, 2015, letter began by stating that "This letter intends to addresses only facial issues concerning Nistica's Amended Contentions; Finisar will write at a later time regarding substantive deficiencies regarding Nistica's Amended Contentions." (*Id*.) Nistica replied to this letter stating "As you indicated, we await whatever you plan to send as a follow up and we'll address all issues you are raising at one time." (Kramer Decl., Ex. 14.) Nistica believed that addressing all of the issues at one time would allow for a meaningful meet and confer. Finisar never responded to Nistica's correspondence and ***never*** even requested a meet and confer regarding Nistica's Amended Invalidity Contentions.[3] Then, after making no attempt to

---

[3] The last discussion between the parties about prior art was on December 18, 2014, before Finisar served its Amended Infringement Contentions and before Nistica served its Amended Invalidity Contentions.

NISTICA'S OPP. TO MOTION TO STRIKE          CASE NO. 5:13-CV-03345-BLF (JSC)

meet and confer or prepare a joint statement, Finisar filed its motion on February 5, 2015.

## III.   ARGUMENT

### A.   Finisar's Motion Should Be Denied Because It Violated Judge Corley's Standing Order

As an initial matter, Finisar has blatantly violated several requirements of Judge Corley's Standing Order ("Standing Order").  *First*, Finisar never made any attempt to meet and confer in person or by telephone with Nistica as required by the Standing Order, which states:

> The **counsel for each party shall meet and confer in person**, **or**, if counsel are located outside the Bay Area, **by telephone**, to attempt to resolve their dispute informally.  **A mere exchange of letters, emails, telephone calls or facsimile transmissions does not satisfy the meet and confer requirement**.

(*Id*. at ¶ 18, Ex. 15 at 3.)  Between service of Nistica's Amended Invalidity Contentions and the filing of this motion, there was **never** an in person or telephonic meet and confer regarding the contentions.  (*Id*. at ¶ 18.)  In fact, Finisar **never** even requested a meet and confer about Nistica's contentions before filing its motion.[4]  (*Id*.)  Finisar's letter does "not satisfy the meet and confer requirement" under the Standing Order.  (*Id*., Ex. 15 at 3.)

*Second*, Finisar never attempted to have lead counsel meet and confer to resolve any disputes as required by the Standing Order, which reads as follows:

> If the parties are unable to resolve their dispute informally after a good faith effort, including **meet and confer efforts conducted by lead counsel**, they shall prepare **a joint statement of not more than eight pages** (12-point or greater font) stating the nature and status of the dispute and attesting to their good faith meet and confer efforts.

*Id*. (emphasis added).  **Third**, Finisar never sent Nistica a draft of a joint statement or made any attempt to discuss a joint statement with Nistica as required by the Standing Order.  (*Id*. at ¶ 18.)  As a result, Nistica was completely surprised when Finisar filed its Motion to Strike rather than following the procedure in the Standing Order.

"There is simply no excuse for Plaintiff's failure to comply with the meet and confer requirement set forth in this Court's Standing Orders."  *J & J Sports Productions, Inc. v.*

---

[4] The December 18, 2014 meet and confer, which occurred more than a month before Nistica served its amended contentions, is insufficient to comply with the Standing Order as most of the issues in the motion were raised for the first time in the January 21, 2015 letter.  Thus, a meet and confer between January 21 and February 5 was required to comply with the Standing Order.

*Jernegen*, Case No. C11-02095, 2013 WL 450382 at *1 (N.D. Cal. Feb. 5, 2013.)  The fact that Finisar never even requested a meet and confer or prepared a joint statement is indicative of its lack of good faith in resolving discovery disputes.  For this reason, Finisar's Motion should be denied.  *Id*.

**B.      Finisar's Argument That Nistica's Amended Invalidity Contentions Contain Too Many References Is Baseless**

Finisar argues that Nistica's Amended Invalidity Contentions contain more total references and more references per patent than is permitted by Order 60.  (Dkt. 155 at 13-17.) Finisar's argument is completely baseless and should be rejected for the following reasons.  ***First***, it cannot reasonably be disputed that Nistica complied fully with Orders 60 and 130, which limit Nistica to 20 prior art references with no more than 6 references per patent.  (Dkt. 60, Dkt. 130.) As Nistica's Identification of Prior Art and its Amended Invalidity Contentions show, Nistica has only asserted 20 individual prior art references and between 2 and 6 references per patent. (Kramer Decl., ¶¶ 26-29, Ex. 16 at 1-2, Ex. 3 at 3-17).  Even Finisar admits that Nistica has only asserted 20 prior art "documents."  (Dkt. 155 at 10.)  Finisar's argument is entirely based on double counting individual references alone and in combinations, which is contrary to the language of Orders 60 and 130, which limit the number of references not the number of references ***and*** combinations.

***Second***, the parties have consistently interpreted "reference" to mean a single prior art document (i.e., a single patent or publication).  For instance, under Order 60, Nistica was required to provide a Disclosure of Prior Art References, which lists "all presently known prior art references that it asserts invalidate any of the patents-in-suit with an identification of which references are allegedly relevant to each patent."  In Nistica's Disclosure of Prior Art References and its First Amended Disclosure of Prior Art References, each "reference" listed is a single patent or publication.  (Kramer Decl., Exs. 1, 2.)  These same references were used alone and in combination in Nistica's Preliminary Invalidity Contentions.  (*Id*., at Ex. 3.)  Finisar never raised any objection that these disclosures of prior art references had to include obviousness combinations.  (Kramer Decl., ¶¶ 8-9.)  Finisar also never objected that the obviousness

NISTICA'S OPP. TO MOTION TO STRIKE          CASE NO. 5:13-CV-03345-BLF (JSC)

combinations in our Preliminary Invalidity Contentions were not disclosed as prior art references in Nistica's Disclosure of Prior Art References or its First Amended Disclosure of Prior Art References. (*Id.*) From the parties' actions, it is clear that both parties understood that "prior art reference" as used in Order 60 meant a single patent or publication.

*Third*, the parties never agreed that each combination of references would count as a single "reference" under Order 60. Finisar's allegation that each obviousness combination counts as a single reference under Order 60 was first raised in its January 21, 2015 letter in an attempt to fabricate deficiencies in Nistica's Amended Invalidity Contentions. (Dkt. 155, Ex. 20 at 1.) In its Motion, Finisar shockingly asserts that "[t]he parties clearly understood at the time they submitted the Order [Dkt 59] that, when counting prior art references, each obviousness combination counts as a single, separate prior art reference." (Dkt. 155 at 13-17.) It is truly surprising that Finisar would make this assertion given that it is completely untrue. There is not a single email, letter, or other correspondence that exists between the parties stating any agreement that each obviousness combination counts as a single "prior art reference." Furthermore, neither the Stipulation nor Order 60 state that each obviousness combination counts as a single reference. (Dkt 59, 60.) It is simply not credible that, if the parties had agreed that each obviousness combination would count as a single reference, such a material term to the parties' agreement would not have appeared in any correspondence, in the Stipulation, or in Orders 60 and 130. The fact is that the parties ***never*** agreed that each obviousness combination of references counts as a single prior art reference. Finisar simply made up this falsehood to bolster its Motion.

Finisar also misleadingly points to a chart in Nistica's Preliminary Invalidity Contentions. (Dkt. 155 at 10-11) A quick look at the document makes it clear that the purpose of this chart is to identify which references are in each individual invalidity chart (i.e., prior art in charts A1-F7) and ***not*** to count the number of asserted prior art references. (Kramer Decl., Ex. 3 at 3-7.) Finisar argues that, because a column is entitled "Prior Art Reference" and not "Prior Art References," each combination of references must count as a single reference. (Dkt. 155 at 7-8.) Such an assertion based on a typo (i.e., singular versus plural) is unreasonable and contrary to how "reference" is used throughout the remainder of the Preliminary Invalidity Contentions. (Kramer

Decl., Ex. 3 at 8 ("Nistica also reserves the right to rely on any identified piece of prior art individually… or in ***combination with other references*** identified herein."))  The discussion of a prior art reference "in combination with other references" only make senses if "reference" refers to a single patent or publication.  Therefore, the term "prior art reference" in Orders 60 and 130 has its plain and ordinary meaning of a single patent or publication.  Under the plain meaning, it is undisputed that Nistica has only asserted 20 prior art references with no more than 6 references per patent as required by Orders 60 and 130.  (Dkt. 155 at 10; Kramer Decl., Ex. 16).

**Fourth**, Finisar's reliance on the Eastern District of Texas Model Order is improper since the Court did ***not*** adopt the Eastern District of Texas Model Order.[5]

**Fifth**, Finisar's argument that 20 prior art documents could result in more than hundreds of trillions of obviousness combinations is nonsensical.  Finisar is essentially arguing that the Federal Circuit's Model Order is per se unreasonable as it allows the assertion of 20 prior art references and does not count combinations of references as a single reference.  (Dkt. 155, Ex. 4.) Finisar's math is plainly wrong.  With 20 references, each of the 6 patents will average about 3-4 references.  Because the order does not matter (i.e., the combination of A and B is the same as the combination of B and A), 3 prior art documents will give you a maximum of 3 possible two-reference combinations and a maximum of 1 possible three-reference combination.[6]  Similarly, 4 references would give a maximum of 6 possible two-reference combinations and 4 possible three-reference combinations.[7]  Even 6 prior art documents would only result in a maximum of 15 possible two-reference combinations and 20 possible three-reference combinations.

As a practical matter, however, it is highly unlikely that a party can even assert all possible combinations as only certain references can be combined based on their disclosures.

---

[5] The Federal Circuit's Model Order does not count combinations as individual references.  (Dkt. 155 at Ex. 4.)  Moreover, it counts references by the same inventor(s) as a single prior art reference.  (*Id*. at 7, n.2.)  Under the Federal Circuit's Model Order, Nistica only asserts 17 prior art references in its Amended Invalidity Contentions.

[6] If you have references A, B, and C, the two-reference combinations are A-B, A-C, and B-C. The three-reference combination is A-B-C.

[7] If you have references A, B, C, and D, the two-reference combinations are A-B, A-C, A-D, B-C, B-D, and C-D.  The three-reference combinations include A-B-C, A-B-D, A-C-D, B-C-D.

Therefore, the number of obviousness combinations is usually much lower than the number of possible combinations. Indeed, this is true of Nistica's Amended Invalidity Contentions, in which Nistica asserts between 1 and 5 two-reference obviousness combinations per asserted patent. Therefore, while Finisar makes an absurd theoretical argument for why 20 asserted prior art documents (as allowed by the Federal Circuit's Model Order) is unreasonable, it ignores the actual facts. Finisar cannot claim that Nistica's assertion of 20 prior art documents and between 1 and 5 two-reference obviousness combinations per patent is unreasonable.

*Sixth*, Finisar's Amended Infringement Contentions consist of nearly 1200 pages of infringement charts alleging infringement of over 70 different products. In response, Nistica is forced to have multiple prior art grounds of invalidity to cover Finisar's numerous, vague, and inconsistent interpretations of the claim elements across over 70 accused products. Further, Finisar's attempt to compare the assertion of 20 prior art references for 16 claims to the situation where Finisar was asserting 141 different claims is disingenuous and should be rejected as the two situations are strikingly different in magnitude.

## C. Finisar's Argument That New References Should Be Stricken Lacks Merit and Should Be Rejected

### 1. Finisar's Argument To Strike New Claims Is Contrary to Orders 60 and 130, the Parties' Agreements, and the Patent Local Rules

Finisar's argument that Nistica should not be allowed to rely on any new references not in its Preliminary Invalidity Contentions is baseless and should be rejected. *First*, Finisar's argument is contrary to the explicit language of Order 60. Finisar's argument, which focuses on the "further narrowing" language, misleads the Court as to what Order 60 actually states. The "narrowing" discussed in Order 60 only limits the number of references. (Dkt. 60 at 4 ("Nistica will limit the asserted prior art references to 20 in total, with no more than 6 prior art references for each asserted patent.").) Order 60 does not place any limitations on what references can be used. Finisar's argument that Nistica can never use any new references under any circumstances is contrary to the explicit language of Order 60, which explicitly states that Nistica may use ***new*** prior art references if it would otherwise be able to do so. Specifically, Order 60 states:

Nistica produces all presently known prior art references that it asserts invalidate

- 15 -

any of the patents-in-suit with an identification of which references are allegedly relevant to each patent, with the representation that Nistica's [April 4, 2014] invalidity contentions will be limited to such references (if Nistica later identifies additional prior art that was not already provided to Finisar, Nistica will immediately produce it, and *if Nistica identifies additional prior art after it makes this representation, it does not waive the right to produce and use it in the litigation in the same way as it would absent this agreement*)

(Dkt. 60 at 2.) (emphasis added). Thus, Order 60 explicitly contemplates allowing Nistica to use new prior art references in its amended invalidity contentions, for instance, under Patent L.R. 3-6, pursuant to an agreement between the parties to supplement contentions (i.e., Dkt. 126, 127), or pursuant to a Court Order (i.e., Order 130) allowing Nistica to amend its invalidity contentions.

***Second***, Finisar's argument that Nistica cannot add any new prior art references to its amended contentions is contrary to the parties' agreement and Order 130. Nistica and Finisar agreed to allow each other to amend their respective contentions without any restrictions on the types of amendments that the parties could make. (Kramer Decl., ¶¶ 14-19.) Finisar never suggested any restrictions on Nistica's ability to amend its invalidity contentions during the negotiations of the parties' agreement. (*Id*.) This is not surprising given the dramatic changes in Finisar's Amended Infringement Contentions. Each of the parties' Case Management Statements requested that the Court set a date for the "Plaintiff deadline to amend Patent L.R. 3-1 disclosures" and the "Defendant deadline to amend Patent L.R. 3-3 disclosures" without placing any restrictions on what amendment could be made. (Dkt. 126, 127). At the Case Management Hearing on November 19, 2014, Finisar never asked the Court to limit Nistica's ability to amend its invalidity contentions to add new prior art references. This is likely because Finisar did not want any limitations to be placed on its infringement contentions. Judge Freeman then issued Order 130 adopting the parties agreed-upon dates for the "Plaintiff deadline to amend Patent L.R. 3-1 disclosures" and the "Defendant deadline to amend Patent L.R. 3-3 disclosures." (Dkt. 130.)

Because Order 130 controls and provides for "Defendant deadline to amend Patent L.R. 3-3 disclosures" without placing any restrictions on the types of amendments that Nistica could make, Finisar's argument that Nistica cannot add new prior art references should be rejected as it is directly contrary to Order 130. (*Id*.) Understanding that its motion seeks to essentially

- 16 -

overrule Order 130, Finisar suspiciously avoids discussing this Order and the parties' agreement regarding amending contentions in the Argument section of its brief.

**Third**, Finisar's argument that Order 60 forbids Nistica from ever amending its invalidity contentions to add new art not already in its Preliminary Invalidity Contentions would deny Nistica its rights under Patent L.R. 3-6, which allows amendments to a party's contentions to include new prior art for good cause.[8] There is nothing in Order 60 stating that Nistica waived its rights under Patent L.R. 3-6. (Dkt. 60.) As discussed above, Nistica explicitly reserved its rights in Order 60 to amend its contentions to add new art. (*Id*. at 2.)

### 2.     Nistica Timely Produced References

Finisar argues that Nistica did not timely disclose the six new references because they were produced after its Preliminary Invalidity Contentions. (Dkt. 155 at 17-18.) This argument is contrary to the language of Order 60, which states "***if Nistica identifies additional prior art*** after it makes this representation, ***it does not waive the right to produce and use it in the litigation*** in the same way as it would absent this agreement." (Dkt. 60 at 2.) (emphasis added). Further, Finisar's allegation that it was surprised to find new prior art produced in December 2014 is disingenuous. Nistica has made several productions of prior art both before and after it served its Preliminary Invalidity Contentions. Further, after the parties' agreement to allow the amendment of invalidity contentions, it is not credible that Finisar was surprised that Nistica would amend its contentions to contain a few new prior art references, particularly in light of the vast changes that Finisar made to its infringement contentions as discussed below in Section C4.

### 3.     Finisar's Requested Relief is Unfair and Prejudicial to Nistica

Finisar's requested relief to strike the six new prior art references in Nistica's Amended Invalidity Contentions is particularly unfair and prejudicial to Nistica. Per Finisar's request, the parties agreed to allow each other to amend their contentions without any restrictions. (Kramer Decl., ¶¶ 13-19.) Then Judge Freeman issued Order 130 authorizing both parties to amend their

---

[8] Order 130 waived the requirements to show good cause to amend contentions as is evidenced by the fact that neither side filed motions with the Court for leave to amend.

NISTICA'S OPP. TO MOTION TO STRIKE          CASE NO. 5:13-CV-03345-BLF (JSC)

contentions without any restrictions. (Dkt. 130.) Now, after making vast changes to its

infringement contentions, Finisar seeks to prevent Nistica from making any meaningful changes

to its contentions. That is fundamentally unfair. Finiar's position does not make sense. Common

sense dictates that Nistica never would have agreed to a one-sided agreement that allows Finisar

to freely amend its contentions, but prevents Nistica from making any meaningful amendments.

Moreover, any prejudice to Finisar is minimal since Nistica offered Finisar more time to

review the prior art before selecting asserted claims and serving their Amended Infringement

Contentions. (Kramer Decl., Ex. 11). Finisar refused the offer and instead insisted that it would

bring a motion to strike. (*Id.*, Ex. 12.) If Finisar believed that there was prejudice, it would have

taken the additional time to review the art before selecting asserted claims.

On the other hand, if Finisar is allowed to strike Nistica's six newly added references, the

prejudice to Nistica would be severe. In its Amended Infringement Contentions, Finisar vastly

expands its infringement contentions by (1) changing its infringement theories on all asserted

patents, (2) asserting completely new allegations of infringement (e.g., asserting claim 26 of the

'833 patent against Nistica devices having MEMS micromirrors), and (3) asserting completely

new allegations that its products practice new asserted claims and even new patents. Now, after

vastly changing and expanding their infringement contentions, Finisar is arguing that Nistica

cannot, in response, assert any new prior art references. Such a double standard was never

contemplated by the parties' agreement or Order 130 as such a result is highly unfair and

prejudicial to Nistica. In fact, Nistica suffers far more prejudice from Finisar's vast changes to its

infringement contentions than Finisar suffers from a few new references that were added in

response to Finisar's amended contentions and the Court's Markman Order.

### 4. Nistica Has Good Cause to Amend its Invalidity Contentions

Even though Order 130 waived the requirements to show good cause to amend

contentions (as demonstrated by the fact that neither side filed motions with the Court for leave to

amend), Nistica has good cause under Patent L.R. 3-6 to amend its invalidity contentions to add

new references based on the parties' agreement, the Court's Claim Construction Order, and

- 18 -

Finisar's vast changes to its Amended Infringement Contentions. The parties' agreement to amend their respective contentions as reflected in their Case Management Statements (Dkt. 126, 127) and Order 130 provide good cause for Nistica to amend its invalidity contentions to add new prior art references. *See Atmel Corp. v. Authentec, Inc.*, Case No. C06-2138, 2008 WL 276392 at *3 (N.D. Cal. Jan. 31, 2008) (holding that the parties' stipulation to allow amending of infringement contentions meets the good cause requirement under the Patent Local Rules).

A claim construction order construing a claim differently from what a party has proposed is also good cause for amending invalidity contentions. *See* Patent L.R. 3-6. In this case, the Claim Construction Order significantly broadened the scope of the asserted claims of the '740 patent from what Nistica understood the scope to be when it prepared its Preliminary Invalidity Contentions. Specifically, in its claim construction briefing, Nistica proposed the phrase "the spatial light modulator having a first set of micromirrors programmed to perform a first overall optical function on the first optical input signal, and having a second set of micromirrors programmed to perform a second overall optical function on the second optical input signal," which appears in the only independent claim of the patent, be construed as "the spatial light modulator having a first set of micromirrors programmed to perform a first set of one or more optical function(s) on a first optical input signal as it transits the reconfigurable multifunctional optical device, and a second set of micromirrors programmed to perform a second set of one or more optical function(s) on the second optical signal as it transits the reconfigurable multifunctional optical device." (Dkt. 100 at 13.) In the Claim Construction Order, the Court rejected Nistica's proposed construction and adopted Finisar's proposed construction of "plain and ordinary meaning." (Dkt. 123 at 14.) Since the scope of the '740 patent claims is significantly broader under the Court's construction than under Nistica's proposed construction, Nistica has good cause to amend its invalidity contentions to add new prior art references.

Furthermore, "[i]t is generally permissible for a party to amend its invalidity contentions in response to the patentee amending its infringement contentions." *Verinata Health, Inc. et al. v. Ariosa Diagnostics, Inc.*, Case No. C12-05501, 2014 WL 1648175 at *2 (N.D. Cal. April 23, 2014). In *Verinata*, the plaintiff amended its infringement contentions to contain new doctrine of

- 19 -

equivalents allegations.  The plaintiff opposed the defendant's motion to amend its invalidity

contentions on the basis that the "amendment of the invalidity contentions is unnecessary because

its doctrine of equivalents positions rely on the exact same features of [defendant's] products as

its initial literal infringement positions."  *Id*.  The Court rejected the plaintiff's argument and

found good cause to amend invalidity contentions under Patent L.R. 3-6 stating as follows:

> However, it is irrelevant that the contentions rely of the same features in the
> accused products.  ***Even if the contentions relate to the same features, the scope
> of the contentions related to those features has changed.  Therefore, good cause
> exists for [defendant] to amend its invalidity contentions in response to this
> expanded scope***.  Accordingly, the Court concludes that [defendant] has shown
> good cause to amend its invalidity contentions.

*Id*. (emphasis added)  Thus, any change in scope of the infringement contentions provides good

cause to amend invalidity contentions.  *See id*.

Unlike the minor amendments that the plaintiff made in *Verinata*, Finisar has

significantly changed and expanded the scope of its infringement theories in its Amended

Infringement Contentions thereby providing good cause for Nistica's amendments to its invalidity

contentions.  *Id*.  Specifically, Finisar made three types of changes in its Amended Infringement

Contentions.  First, Finisar made major changes to its infringement theories for every patent-in-

suit, which is evident from the redlines of its infringement charts showing that the amended

contentions are almost 100% different than the previous contentions.  (Kramer Decl., Exs. 21-27.)

While we cannot list all of the changes, the following provides a few specific examples.  For the

'833 patent, Finisar changed its infringement theories for several claim elements.  For element

1(a), Finisar's amended contentions accuse numerous new hardware and software configurations

not present in its prior contentions thereby broadening the asserted scope of the claims.  (*Id*., Exs.

22, 23.)  For element 1(b), Finisar is accusing an entirely different element in its amended

contentions of being the "coupler" in the MEMS line card products.  ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████  Finisar has also changed its

NISTICA'S OPP. TO MOTION TO STRIKE          CASE NO. 5:13-CV-03345-BLF (JSC)

infringement theories for other elements of claim 1 as well as claims 18 and 26. (*See Id.*, Exs. 22, 23.) Due to Finisar's changes in its infringement theories, ███████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████

For the '740 patent, Finisar has significantly altered its infringement theories. For limitation 1(f), which states "and being programmable to perform separate optical functions on each of the first and second optical signals; the spatial light modulator having a first set of micromirrors programmed to perform a first overall optical function on the first optical input signal, and having a second set of micromirrors programmed to perform a second overall optical function on the second optical input signal, wherein the first overall optical function and second overall optical function are different," ███████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████

For the '687 patent, Finisar asserts in its amended contentions that ███████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ This allegation expands the scope of the only asserted claim, claim 32. Further, with regard to claim 32, Finisar changes its theories by pointing to source code and documents demonstrating that it is taking an unreasonably broad view of "by changing a switching algorithm" and "switching algorithm is based on the wavelength of the optical signal and the one or more optical bands or channels being eliminated." (*Id.*, Ex. 20 at 120-211.)

With regard to claim 14 of the '599 patent, which requires an "aspect ratio of approximately 35:1," ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ In the amended contentions, Finisar has completely abandoned that infringement accusation and now alleges that ██████████████████████████████████████████████████████████████ ████████████████████████████████████ This is a significant change in both the type

- 21 -

of signal and the dimensions of the signal being accused of infringement.  This shift in

infringement theory now allows ███████████████████████████████████████████

██████████████████████████████████████████████████████████

Finisar similarly changed its theories with respect to the '328 patent.  For example, for

element 34(c), which states "in which the phase of no part of the wave is changed more than one

wavelength of light," Finisar added ██████████████████████████████████████

which is absent from its prior contentions.  (*Id.*, Ex. 20 at Ex. D at 11-13, Ex. 17 at Ex. D at 18-

21.)  Under this new infringement theory, ████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████

**Second**, Finisar adds completely new allegations of infringement that do not appear in

previous contentions.  For example, in its Amended Infringement Contentions, Finisar accuses

Nistica's products with MEMS micromirrors of infringing claim 26 of the '833 patent.  (*Id.*, Ex.

20 at Ex. B Part I at 70-77.)  Finisar's previous contentions ***never*** alleged infringement of claim

26 by the MEMS micromirror products.  (*Id.*, Ex. 17.)  This further expands Finisar's

infringement contentions.

**Third**, as further evidence of the changes in its interpretation of the asserted claims,

Finisar adds numerous, new allegations in its Amended Infringement Contentions that its

products practice the asserted claims.  For example, ████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ (*Id.*, Ex. 20 at 7; Ex.

17 at 5.)  These significant changes with respect to whether Finisar's own products practice the

asserted claims reveals how significantly Finisar has changed its infringement theories.

In response to Finisar's substantial changes to its infringement theories in its Amended

Infringement Contentions, Nistica added one new reference for each of the '328 patent, '687

patent, '599 patent, and '833 patent.  Due to both the Claim Construction Order and changes in

Finisar's infringement contentions, Nistica added two new references for the '740 patent, which

has the most asserted claims, wherein one of the two references is only part of a single

obviousness combination.  These are minimal additions to respond to the substantial changes in

Finisar's Amended Infringement Contentions.  (*See id.*, Exs. 21-27.)  Therefore, given Finisar's

massive changes in its infringement contentions, Nistica has good cause to make the amendments

that it did in its Amended Invalidity Contentions.  *Verinata*, 2014 WL 1648175 at *2.

Finisar's motion should be denied.  However, based on the good cause shown above, the

Court should grant Nistica leave to amend its invalidity contentions if the Court is inclined to

grant Finisar's motion.

### D.     Finisar's Argument Nistica Waived Indefiniteness Defenses is Baseless

Finisar's argument that Nistica waived all of its indefiniteness defenses should be rejected

by the Court for the following reasons.  ***First***, Nistica never stated that it waived all indefiniteness

defenses in this case.  (Bock Decl., at ¶¶ 4-18; Maheshwari Decl., at ¶¶ 5-6.)  All of the emails

that Finisar cites are from May 2014, prior to the Supreme Court's decision in *Nautilus, Inc. v.*

*Biosig Instruments, Inc.*, 134 S.Ct. 2120 (2014), which changed the standard for indefiniteness.

While Nistica stated that it would not pursue indefiniteness of specific terms, Nistica never

waived its rights to assert indefiniteness under the *Nautilus* standard.

***Second***, the Supreme Court's decision in *Nautilus* substantively changed the legal

standard for indefiniteness.  Given the changes in scope as to how Finisar is applying the claims

in its Amended Infringement Contentions, Nistica has good cause for including indefiniteness in its Amended Invalidity Contentions. *Verinata*, 2014 WL 1648175 at *2 (holding that defendant had good cause to add defenses under 35 U.S.C. § 112 based on plaintiff's amended infringement contentions which changed the asserted scope of the claims).

**Third**, Finisar will not suffer any undue prejudice if Nistica is allowed to pursue claims of indefiniteness. As reflected in Order 130, the parties agreed that Nistica could amend its invalidity contentions. Both parties understood that new theories could be asserted in the amended contentions. Indeed, Finisar greatly changed and expanded its infringement case in its amended contentions. Nistica responded to Finisar's infringement contentions by alleging indefiniteness under the new legal standard articulated in the Supreme Court's decision in *Nautilus*, which issued months after Nistica's Preliminary Invalidity Contentions. Nistica's assertions of indefiniteness are based on Finisar's new application of the asserted claims against the accused products and its own products.

Finisar complains that Nistica should not be able to assert indefiniteness after their selection of asserted claims.[9] (Dkt. 155 at 19-20.) However, Finisar agreed in its proposed scheduling order to allow Nistica to amend its invalidity contentions **after** Finisar served its amended infringement contentions. (Dkt. 126.) Thus, Finisar agreed to receive all bases of invalidity after it made its selection of asserted claims in its Amended Infringement Contentions. Because indefiniteness is a legal determination based only on the claim language and intrinsic evidence, Finisar could have evaluated the risk of indefiniteness before selecting claims to assert.

Moreover, the alleged prejudice is no different than what is allowed under the Patent Local Rules. The Patent Local Rules require that plaintiff serve its infringement contentions prior to a defendant asserting its invalidity contentions. *See* Patent L.R. 3-1, 3-3. Thus, the Patent Local Rules specifically require plaintiff to choose their asserted claims prior to receiving invalidity contentions from the defendant. Any alleged prejudice to Finisar is no different than

---

[9] Because the parties were limited in the number of terms for construction and 34 of the 50 pending claims would be dropped, Nistica told Finisar that it did not agree to have the Court construe all terms that may be indefinite as there were more important terms to be construed. (Kramer Decl., Ex. 28, Ex. 29.)

NISTICA'S OPP. TO MOTION TO STRIKE          CASE NO. 5:13-CV-03345-BLF (JSC)

what every plaintiff faces under the Patent Local Rules.

      **E.**     **Finisar's Requested Relief Is Prejudicial And Improper**

While Nistica believes that Finisar's motion is baseless and should be denied in its entirety by the Court, the relief sought is severely prejudicial and not sought to reasonably address the alleged issue of having too many references. Finisar argues that, if the Court grants Finisar's motion to strike all new references, then the Court should strike reference numbers 7, 8, 15, 16, 17, 24, and 25 from Ex. 11, which is a document that Finisar created for purposes of its motion. (Dkt. 155 at 20.) Finisar further argues that, if the Court grants Finisar's motion to strike with regard to more than 6 references per patent, it should strike references 2, 8, 11, 12, 17, 18, 20, 22, 31, 34, 36, 29, and 40 in Ex. 11. *Id*. Finisar also alleges that 37 and 38 from Ex. 11 should be eliminated if the motion is granted. *Id*. However, if the issue is that Nistica exceeded "20 references," it is unfair and prejudicial for Finisar to be able to cherry-pick which references Nistica can and cannot use, especially since the numbers come from an exhibit that Finisar created for its motion. This would be analogous to letting Nistica choose which claims Finisar can assert for infringement. Rather, Nistica should be able to select which prior art it chooses to assert to comply with any order limiting the number of references.

Finisar then requests that, if the Court does not grant the relief discussed above, the Court should strike references 21-40 from Finisar's Ex. 11. This would strike ***all*** references for the '328, '599, and '980 patents in addition to striking all obviousness combinations for the '687 patent. It is completely unreasonable for Finisar to request such prejudicial relief. Again, Finisar should not be able to cherry-pick which references Nistica can and cannot use.

The combination of the Finisar's refusal to meet and confer, its blatant violations of the Standing Order, and its seeking of incredible prejudicial relief not crafted to address the alleged injury, makes it clear that Finisar seeks to improperly use motion practice to disadvantage Nistica rather than properly litigating the case on the merits.

**VI.**    **CONCLUSION**

For the aforementioned reasons, the Court should deny Finisar's Motion to Strike, or alternatively, grant Nistica leave to amend its invalidity contentions.

Dated:   February 19, 2014                    Respectfully submitted,

DENTONS US LLP

By:   _*Robert F. Kramer*_
           Robert F. Kramer

Attorneys for Defendant
NISTICA, INC.

1    <u>**CERTIFICATE OF SERVICE**</u>

2        I, Robert F. Kramer, hereby declare:

3        1.      I am an attorney licensed to practice law in the state of California.  I am employed
by Dentons US LLP, counsel for Defendant Nistica, Inc.

4
        2.      On February 19, 2015, I caused to be electronically filed and served the attached
5    document via the United States District Court's website, described as follows:

6        **DEFENDANT NISTICA, INC.'S  OPPOSITION TO PLAINTIFF FINISAR
         CORPORATION'S MOTION TO STRIKE  PORTIONS OF NISTICA'S
7        AMENDED PRELIMINARY INVALIDITY CONTENTIONS**

8    on at least one member of each firm designated on the Transaction Receipt located on the Court's
ECF website.

9
         I declare under penalty of perjury under the laws of the State of California that the
10   foregoing is true and correct.

11       Executed on February 19, 2015 at Palo Alto, CA.

12
                                             _____*/s/ Robert F. Kramer*_____
13                                                   Robert F. Kramer

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28