UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINISAR CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>NISTICA, INC.,<br><br>                    Defendant. | Case No.  13-cv-03345-BLF   (JSC)<br><br>**ORDER RE:  DISCOVERY DISPUTE**<br><br>Re: Dkt. Nos. 216, , 217 |

Plaintiff Finisar Corporation ("Finisar") brings this patent infringement lawsuit against its competitor, Defendant Nistica, Inc. ("Nistica"), alleging infringement of six of Finisar's patents directed at devices and components used in optical communications networks.  This matter has been referred to the undersigned magistrate judge for the purposes of discovery.  (Dkt. No. 58.)  Now pending before the Court is the parties' joint letter brief regarding Nistica's request to take the deposition of Finisar's CEO, Eitan Gertel.  (Dkt. No. 217.)  Also pending is the parties' joint administrative motion to file under seal portions of their joint letter brief and documents submitted in support thereof.  (Dkt. No. 216.)  Having considered the parties' filings, the Court finds that this matter is suitable for disposition without oral argument, *see* Civ. L.R. 7-1(b), and GRANTS Nistica's request for an order compelling the deposition of Mr. Gertel subject to the limitations described below.  In addition, the Court GRANTS in part and DENIES in part the administrative motion to file under seal.

**DISCUSSION**

**A.       The Gertel Deposition**

Nistica seeks an order compelling the deposition of Finisar's CEO, Eitan Gertel.  Gertel was formerly the CEO of Optium Corporation ("Optium").  Two of the patents-in-suit—the '599

United States District Court
Northern District of California

1  Patent and the '980 Patent—were acquired by Finisar through assignment when Finisar merged

2  with Optium.  (*See* Dkt. No. 217 at 3.)  Both parties agree that Gertel is a high level official

3  whose testimony invokes the "apex" deposition doctrine.

4      1.   *Legal Standard*

5      Federal Rule of Civil Procedure 26(c)(1) provides that "[t]he court may, for good cause,

6  issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue

7  burden or expense," including by prohibiting a deposition or limiting its scope.  Fed. R. Civ. P.

8  26(c)(1)(A), (B).  "For good cause to exist, the party seeking protection bears the burden of

9  showing specific prejudice or harm will result if no protective order is granted."  *In re Transpac.*

10 *Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB, 2014 WL 939287, at *1 (N.D. Cal.

11 Mar. 6, 2014) (citation omitted).  "Absent extraordinary circumstances, it is very unusual for a

12 court to prohibit the taking of a deposition."  *Groupion, LLC v. Groupon, Inc.*, No. 11-0870 MEJ,

13 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012) (citation omitted).  As a result, a "party seeking

14 to prevent a deposition carries a heavy burden to show why discovery should be denied."  *Apple*

15 *Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (citations omitted); *see also*

16 *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("[A] strong showing is required

17 before a party will be denied entirely the right to take a deposition."); *Affinity Labs of Tex. v.*

18 *Apple, Inc.*, No. C 09-4436 CW (JL), 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011) (same).

19     However, "[w]hen a party seeks the deposition of a high-level executive (a so-called 'apex'

20 deposition), courts have 'observed that such discovery creates a tremendous potential for abuse or

21 harassment.'"  *Apple, Inc.*, 282 F.R.D. at 262 (citing *Celerity, Inc. v. Ultra Clean Holding, Inc.*,

22 No. C 05-4374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007)).  Still, "[w]hen a

23 witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO

24 is subject to deposition."  *Id.* (citation omitted); *see, e.g.*, *In re Google Litig.*, No. C 08-03172

25 RMW (PSG), 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011) (allowing deposition of CEO but

26 not corporate president); *Apple, Inc.*, 282 F.R.D. at 265 (allowing limited deposition of several

27 corporate executives with strict time and subject matter limits but denying deposition of corporate

28 president).  "In determining whether to allow an apex deposition, courts consider (1) whether the

2

United States District Court
Northern District of California

deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *In re Google Litig.*, 2011 WL 4985279, at *2 (citations omitted).

With respect to the first consideration, the party seeking to take the deposition need not prove conclusively that the deponent certainly has unique non-repetitive information; rather, "where a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed." *Grateful Dead Prods. v. Sagan*, No. C 06-7727 (JW) PVT, 2007 WL 2155693, at *1 n.5 (N.D. Cal. 2007) (emphasis in original); *see also Powertech Techs., Inc. v. Tessera*, No. C 11-6121 CW, 2013 WL 3884254, at *1 (N.D. Cal. July 26, 2013) (noting that the party seeking the deposition "was not required to prove that [the deponent] certainly has [relevant] information"). As for the second consideration—less intrusive discovery methods—these may include interrogatories. *Groupion,, LLC*, 2012 WL 359669, at *2. Formal "exhaustion" of other requirements is not "an absolute requirement; instead, exhaustion of other discovery methods is an important, but not dispositive, consideration for a court to take into account in deciding how to exercise its discretion." *Hunt v. Continental Cas. Co.*, No. 13-cv-05966-HSG, 2015 WL 1518067, at *2 (N.D. Cal. Apr. 3, 2015).

Even when the apex doctrine is at issue, however, "the burden remains on the party" seeking to avoid the deposition. *See Hunt*, 2015 WL 1518067, at *1 n.1 (disagreeing with defendant's argument that it was the plaintiff's burden to establish good cause for an order compelling an apex deposition, as "cases in this district make clear that the burden remains on the party seeking a protective order when the 'apex doctrine' is asserted as a basis for limiting discovery" (citations omitted)); *see also Transpacific*, 2014 WL 939287, at *1 (noting there is "no binding Ninth Circuit or Supreme Court precedent requiring th[e] result that the burden be shifted to the party seeking discovery by deposition of a high level business executive" (citation omitted)); *Powertech Techs., Inc.*, 2013 WL 3884254, at *1 (explaining that "[t]he apex deposition principle is not an automatic bar that the party propounding the discovery must overcome by a showing of good cause" (citation omitted)). A claimed lack of knowledge, by itself, or the fact that the apex witness has a busy schedule, are both insufficient bases to foreclose

United States District Court
Northern District of California

otherwise proper discovery.  *Groupion, LLC*, 2012 WL 359699, at \*2.

        2.     *Application*

Based on the parties' submissions, Finisar has not met its burden of showing that extraordinary circumstances are present here which warrant an order precluding Mr. Gertel's deposition altogether.

First, Plaintiff has proffered sufficient basis for concluding that Mr. Gertel may have unique first-hand knowledge regarding the facts at issue in this case.  Nistica contends that Mr. Gertel may provide first-hand testimony of Finisar's valuation of the '599 and '980 Patents acquired from Optium, since he was the CEO of Optium at the time of the merger.  Finisar identifies several of its high-level executives who were asked about these patents' value at their depositions and another whose upcoming deposition has been noticed on this exact topic.  (*See* Dkt. No. 217 at 6-7.)  The Court's own review of sealed deposition testimony reflects that Nistica inquired whether certain witnesses had knowledge of the valuation of these patents, but no witness to date was able to provide a substantive answer.  A number of the witnesses testified that they did not have first-hand knowledge of Finisar's valuation of Optium's patents (*see, e.g.*, Ex. M, L, N, O, P, Q, R, W), or that they were not involved in the merger or its valuation process at all (*see, e.g.*, Ex. S).  One witness identified another individual who was involved in the merger, but it appears that that individual has not yet been deposed.  (*See* Ex. N (suggesting that Jerry Rawls may have information about the valuation of Optium's patents).)  Thus, the Court's own read on the depositions taken to date indicates that Mr. Gertel may well have unique, non-repetitive information to offer about how Finisar valued the '599 and '980 Patents when it acquired Optium.

Nistica next contends that Mr. Gertel's deposition is required so he can testify to conversations he had with Nistica employees when Optium considered acquiring Nistica, during which Nistica employees "likely disclosed confidential information to Optium regarding Nistica's products, including some of the accused products[.]"  (Dkt. No. 217 at 3.)  Several Finisar employees were asked about their familiarity with Nistica products, but this was largely in the context of trade shows and presentations, not acquisition discussions.  (*See, e.g.*, Ex R, U, V.)  Thus, no Finisar employee to date has been able to testify to the contents of such conversations.

United States District Court
Northern District of California

1   Notably, Nistica does not argue that such information was actually disclosed or proffer a

2   declaration from any of its own employees averring as much.  Still, the possibility that Mr. Gertel

3   has such knowledge is enough, as Nistica is under no obligation to prove that the evidence exists.

4   *See  Grateful Dead Prods.*, 2007 WL 2155693, at *1 n.5; *Powertech Techs., Inc.*, 2013 WL

5   3884254, at *1.  Because no other Finisar witness has testified about this topic to date, Nistica has

6   shown that Mr. Gertel may have unique, firsthand non-repetitive information.

7         Third, Nistica broadly argues that Mr. Gertel has unique, firsthand knowledge about

8   "affirmative defenses including estoppel, laches, unclean hands, and equitable estoppel."  Nistica

9   does not assert what facts Mr. Gertel may have that underlie these defenses, so the Court does not

10  consider these vague assertions.

11        Finally, Nistica contends that Mr. Gertel's deposition is required so he can testify as to his

12  personal opinion about and motives regarding competition with Nistica based on an email that, in

13  Nistica's view, indicates Mr. Gerter's particular interest in competing with the company that may

14  also shed light on why Finisar chose to file the instant action.  (*See* Dkt. No. 217 at 3-4 & Ex. Y.)

15  Tellingly, Mr. Gerter neither sent nor received the email on which Nistica relies.  (*See id.*)

16  However, to the extent that it describes Mr. Gerter's position, it is relevant to whether Mr. Gerter

17  had a particular desire to bring suit against Nistica aside from the desire to remain competitive in

18  the field of wavelength selective switches and linecards.  While executive statements that reflect a

19  desire to remain competitive in a particular market do not necessarily require deposition, *see*

20  *Apple, Inc.*, 282 F.R.D. at 265-66, a personal motivation is different.  While the Court's review of

21  the deposition transcript excerpts indicates that a number of witnesses testified about Finisar's

22  decision to initiate this action, Nistica is entitled to inquire whether Mr. Gerter has a particular,

23  personal motivation for bringing suit and, if so, what that is.

24        In short, this is not a case in which a high-level executive has little or no knowledge of the

25  issues in the case.  To the contrary, Nistica has made a plausible showing that Mr. Gertel may

26  have first-hand knowledge of relevant matters as a percipient witness.  And while, as Finisar

27  points out, Nistica did not propound interrogatories requesting, for example, all valuations of

28  Optium's patents and Finisar's reasons for filing this lawsuit, it certainly sought answers to those

questions during the numerous other depositions.  As there is no strict requirement that a party exhaust every type of discovery request before seeking to compel a deposition, Nistica's efforts to date do not defeat its request at this time.  *See Hunt*, 2015 WL 1518067, at *2.

Indeed, aside from its argument that other witnesses have already testified to the requested topics—which the Court has already rejected—Finisar's sole basis for objecting to the deposition is that Mr. Gerter has a busy schedule and therefore Nistica must only be seeking his deposition to unduly burden and harass Finisar.  (*See* Dkt. No. 17 at 8.)  Mr. Gerter's busy schedule may make it difficult to arrange a time for his deposition, but it is not grounds to foreclose it.  *See Groupion, LLC*, 2012 WL 359699, at *2.  And given that other witnesses have not testified to the topics requested, the Court cannot conclude that Nistica's sole motive in seeking to depose Mr. Gerter is to harass Finisar.  Finisar therefore has not met its burden of showing an entitlement to the extraordinary remedy of precluding the requested deposition.

For these reasons, the Court GRANTS Plaintiff's request for an order compelling the deposition of Mr. Gerter.  However, the Court ORDERS that Mr. Gerter's deposition shall be limited to two hours, which is sufficient time for Nistica to cover the distinct issues identified in the joint letter brief—*i.e.*, valuation of the '599 and '980 Patents when Finisar acquired Optium; what information, if any, Mr. Gerter learned about Nistica's patents when Optium considered acquiring Nistica; and any personal motivation—aside from pure business competition—for bringing suit against Nistica.  *See Hunt*, 2015 WL 1518067, at *3 (limiting chairman and CEO's deposition to 3 hours); *In re Transpac.*, 2014 WL 9239287, at *6 (limiting airline executive's deposition to 2 hours); *Apple, Inc.*, 282 F.R.D. at 259 (limiting deposition of corporate executive to 2 hours).

**B.      Administrative Motion to File Under Seal**

There is a presumption of public access to judicial records and documents.  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  "It is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public.  Federal Rule of Civil Procedure 26(c) "authorizes a district court to override this presumption where 'good cause' is shown."  *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir.

United States District Court
Northern District of California

1999).  Sealing is appropriate only where the requesting party "establishes that the document, or portions thereof is privileged or protectable as a trade secret or otherwise entitled to protection under the law."  N.D. Cal. Civ. L.R. 79-5(a).  A party may meet this burden by showing that the information sought to be withheld creates a risk of significant competitive injury and particularized harm.  *See Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2006).  A party may also meet this burden by establishing that information contains trade secrets that create a risk of significant competitive injury and particularized harm, *see Apple, Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161-62 (9th Cir. 2011) (citation omitted), or where disclosure of the information would violate a party's legitimate privacy interest that similarly lead to such risk, *see, e.g.*, *Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, No. C08-2581 JF (HRL), 2010 WL 3221859, at *5 (N.D. Cal. Aug. 13, 2010).  Whatever the grounds, a party must "narrowly tailor" its request to sealable material only.  N.D. Cal. Civ. L.R. 79-5(a).

Here, the parties seek to file under seal 17 exhibits submitted in connection with their joint letter brief, along with portions of the declaration of Jennifer D. Bennett ("Bennett Declaration"). (Dkt. No. 216-18.)

The parties did not file any portion of the Bennett Declaration under seal, nor did they indicate which paragraphs of the declaration they contend contain confidential information discussed in certain exhibits.  (*See* Dkt. No. 217-14; Dkt. No. 216 at 4.)  The request to seal any portion of the Bennett Declaration fails to comply with Civil Local Rule 79-5(c), which requires the parties to identify with particularity the portions of a document it wishes to redact.  The Court therefore denies the request to seal portions of the Bennett Declaration.  Likewise, the proposed redaction in the second paragraph of page 4 of the parties' letter brief cites the Bennett Declaration.  (*See* Dkt. No. 216-4 at 4.)  As the parties filed the underlying declaration on the public docket, there is no good cause for this redaction, and the request is therefore denied.

The parties also seek to seal Exhibits L through W, excerpts from the deposition transcripts of various Finisar employees and contractors.  In support of its motion to seal, and in compliance with the Local Rules, the parties submit the Declaration of Daniel Kesack.  (Dkt. No. 216-1.)  The transcripts were all designated Highly Confidential—Attorneys' Eyes Only pursuant to the parties'

United States District Court
Northern District of California

Stipulated Protective Order because they contain testimony related to confidential, trade secret, and proprietary information related to Finisar's products and business practices.  (*See* Dkt.  No.  216-1 ¶ 2.)  As these transcript pages exclusively reflect Finisar's confidential product and business information which is not intended for public disclosure, they are properly sealed in their entirety.

The parties next seek to seal Exhibit X to the Bennett Declaration, which is the declaration of Mr. Gertel.  (Dkt. No. 216-17.)  Mr. Kesack avers that the Gertel Declaration "includes confidential business information about Mr. Gertel."  (Dkt. No. 216-1 ¶ 3.)  This is not enough to justify sealing the document in its entirety.  The parties do not identify what the confidential business information is, how its disclosure would harm Finisar, or whether narrowly-tailored redactions would suffice to protect Mr. Gertel and Finisar's interests.  And such confidentiality is not self-evident from a review of the declaration.  Accordingly, the request to seal the Gertel Declaration is denied.  Likewise, the proposed redaction to page 8 of the parties' joint letter brief, which cites the Gertel Declaration, is denied.

The parties also seek to seal Exhibit Y to the Bennett Declaration.  Exhibit Y is a one-line email discussing Finisar's business practices.  (Dkt. No. 216-21.)  Finisar designated the document Highly Confidential—Attorneys' Eyes Only pursuant to the parties' Stipulated Protective Order on the grounds that it contains confidential and proprietary information related to Finisar's business practices.  (*See* Dkt. No. 216-1 ¶ 4.)  The Court disagrees.  While courts regularly find good cause to seal information that discloses business strategy with respect to particular products, pricing, or customers, Exhibit Y is nothing of the sort.  Further, the parties have not explained how Finisar would be harmed, as opposed to embarrassed, if the email were released.  The request is therefore denied.  Because the only remaining portions of the letter brief that the parties wish to seal reference Exhibit Y, the request to file these requested redactions are denied as well.

The parties seek to seal Exhibits J and K to the Bennett Declaration.  These exhibits are agreements with third parties, originally marked as confidential, that Finisar produced as Highly Confidential—Attorneys' Eyes Only in this action.  (*See* Dkt. Nos. 216-19, 216-20.)  The contracts themselves contain confidentiality clauses, along with lists of the parties' obligations and

terms of payment.  Courts regularly find that litigants may file under seal contracts with third parties that contain proprietary and confidential business information.  *Stout v. Hartford Life & Acc. Ins. Co.*, No. CV 11-6186 CW, at *2 (N.D. Cal. Dec. 4, 2012) (citation omitted); *see also Power Tech., Inc.*, 2013 WL 3884254.  So it is here.  The parties may therefore file Exhibits J and K under seal.

## CONCLUSION

For the reasons discussed above, the Court GRANTS Plaintiff's request for an order compelling the deposition of Eitan Gerter, but limits the deposition to two hours and the topics discussed above.  In addition, the Court GRANTS IN PART and DENIES IN PART the parties' administrative motion to file under seal as set forth above.  The parties shall file on the public docket unredacted versions of the documents on which sealing has been denied by **July 8, 2015**.

This Order disposes of Docket Nos. 216 and 217.

**IT IS SO ORDERED.**

Dated: June 29, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

9