

July 6, 2015

Christopher Cox
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

David C. Radulescu
Tigran Vardanian
Etai Lahav
Robin M. Davis
Daniel Kesack
RADULESCU LLP
The Empire State Building
350 Fifth Avenue, Suite 6910
New York, NY 10118

Attorneys for Plaintiff
FINISAR CORPORATION

Robert F. Kramer, Jennifer D. Bennett,
Russell Tonkovich, C. Gideon Korrell
DENTONS US LLP
1530 Page Mill Road, Suite 200
Palo Alto, CA 94304

Shailendra Maheshwari
DENTONS US LLP
300 K Street, N.W.
Suite 600, East Tower
Washington, DC 20005

Joel Bock
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020-1089

Attorneys for Defendant
NISTICA, INC.

Hon. Jacqueline Scott Corley
United States District Court
San Francisco Courthouse, Courtroom F
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Finisar Corporation v. Nistica, Inc.,* No. 5:13-cv-03345-BLF
      Letter Brief – Motion for Order to Compel Nistica to Install Software Tools for Viewing
      and Searching Produced Source Code

Dear Judge Corley,

Plaintiff Finisar Corporation ("Finisar") and Defendant Nistica, Inc. ("Nistica") jointly submit this letter brief summarizing their dispute regarding Finiar's motion to compel Nistica to: install software tools, including Cygwin and the Compare plug-in for Notepad++ ("Requested Tools"), on the source code computer. The parties hereby attest that they met and conferred concerning the issues raised in this letter brief telephonically on July 3.

## STATEMENT BY FINISAR

**Relief Requested by Finisar**

Finisar seeks an order compelling Nistica to make available on Nistica's source code computer two specific software tools: "Cygwin," and the "Compare" plug-in for "Notepad++," which are critical for efficiently viewing and searching the produced source code in the time remaining before expert reports. The deadline for opening expert reports is just a few short weeks away—July 27—and every day without these tools is prejudicial to Finisar's ability to



timely complete its source code analysis and prepare its opening reports.

**History and Development of This Dispute**

In advance of Finisar's first inspection of source code produced by Nistica in this case, Finisar requested the installation of Cygwin and Notepad++ on the source code computer.  *See* Ex. 1 (12/11/14 email from R. Davis to R. Tonkovich).  Nistica responded on Friday, December 12, agreeing to install Notepad++ and stating that, "the computer will not have Cygwin installed *by Monday morning*," implying only a scheduling issue.  *See* Ex. 2 (12/12/14 email from R. Tonkovich to R. Davis) (emphasis added).  Nistica did not raise any substantive objection to installing Cygwin, yet Nistica never installed Cygwin on the source code computer.

Finisar first requested the deposition of James da Silva, Nistica's software engineer, in March 2015.  Ex. 3 (3/24/15 email from R. Davis to R. Kramer).  Mr. da Silva's deposition was eventually scheduled for May 15 (he was also designated as Nistica's 30(b)(6) witness on source code topics), but late in the afternoon on May 13, counsel for Nistica informed counsel for Finisar that dozens of new source code directories and hundreds of new source code files had been added to the source code computer, causing the deposition to be rescheduled.  Ex. 4 (4/15/15 email from J. Bennett to Finisar); Ex. 5 (5/3/15 email from J. Bennett to Finisar); Ex. 6 (5/14/15 email from C. Korrell to Finisar).  Nistica then produced even more source code on May 28.  Ex. 7 (5/28/15 email from R. Tonkovich to E. Lahav).  The deposition of Mr. da Silva and Nistica's 30(b)(6) deposition on source code topics finally went forward on June 25.  Ex. 8 (da Silva Rough Dep. Tr. at 2).  Mr. da Silva testified that he used the software tools that "come[] with Cygwin" to "write or review code."  *Id.* (da Silva Rough Dep. Tr. at 56:11-21).

Armed with the information gained during Mr. da Silva's delayed deposition, Finisar is now in position to complete its source code analysis, including analyzing any differences between and among the tens of versions of Nistica's source code produced.  To aid in that analysis, on Monday June 29, Finisar requested access to the source code computer for Wednesday July 1 and Thursday July 2, and asked that the two Requested Tools for viewing and searching the source code be installed.  Ex. 9 (6/29/15 email from E. Lahav to Counsel for Nistica); Ex. 10 (6/29/15 email from E. Lahav to Counsel for Nistica).  The Requested Tools are necessary for a source code viewer to quickly search through the produced code to identify duplicates, saving days of painstaking and costly manual comparisons.  In particular, Cygwin contains utilities like "grep" and "find" that would enable Finisar's consultant to view and compare directory trees, identify duplicate files.  Ex. 11 (GNU Grep, http://gnu.org/software/grep (last visited Jul. 2, 2015)); Ex. 12, (Findutils, http://gnu.org/software/findutils (last visited Jul. 2, 2015)); Ex. 13 (Cygwin, http://cygwin.com (last visited Jul. 2, 2015)).  The Compare plug-in for Notepad++ would allow Finisar's consultant to graphically view and compare the contents of individual files.  Ex. 14 (Notepad++ Compare plugin, http://sourceforge.net/projects/npp-compare (last visited Jul. 2, 2015)).

At first, Nistica unreasonably refused to accommodate Finisar's source code inspection at all, arguing that Finisar was not entitled to review the source code past the close of fact discovery.  Ex. 15 (6/29/15 email from G. Korrell to E. Lahav).  Nistica eventually backed down and allowed the inspection to proceed, but was silent about the Requested Tools.  Ex. 16 (6/30/15 email from G. Korrell to E. Lahav).  During Finisar's inspection on July 1, it was clear that Nistica had not installed the Requested Tools and Finisar asked that they be installed during a lunch break.  Ex. 17 (7/1/15 email from E. Lahav to G. Korrell).  In response, Nistica stated for the first time that it refuses to install the Requested Tools.  Ex. 18 (7/1/15 email from R. Tonkovich to E. Lahav).  Nistica noted that "Cygwin is for compiling and interpreting the code," which is prohibited by the Protective Order, but Nistica did not provide any reason for refusing to install the Compare plug-in for Notepad++.  *Id.;* Dkt. No. 140, at 8.  In response, Finisar noted



that that the default installation of Cygwin, which Finisar requests, does not include a compiler of any sort. Ex. 19 (7/1/15 email from E. Lahav to R. Tonkovich).  Finisar reiterated that Nistica's objections were unfounded and requested a meet and confer.  *Id.*

**Argument**

Nistica has no valid objection to the installation of the Requested Tools.  The only objection raised by Nistica is that the Requested Tools contain compilers.  But that is not so.  As noted above, the default installation of Cygwin does not include a compiler, although other versions may include a compiler.  Finisar does not seek installation of a version with a compiler. The Compare plugin for Notepad++ is not a complier either.  Instead, Nistica's objections—along with Nistica's failed attempt to refuse the source code inspection altogether—appear to be part of a strategy to impede Finisar's ability to complete its source code analysis in view of the late deposition of Nistica's software engineer and the impending deadline for serving opening expert reports. Every day that passes without these tools works a prejudice to Finisar.  At the time of this submission, Finisar has already been prejudiced for the better part of a week.  There are only three weeks left until opening expert reports. Thus, this motion presents a true case of "justice delayed is justice denied."

The Requested Tools are the kinds of basic, common source code analysis tools contemplated by the Protective Order (Dkt. No. 140) ("PO").  The PO requires the Producing Party to "install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business." Dkt. No. 140, at 8.  It further provides that "Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching source code be installed on the Confidential Source Code Computer, and ***the Producing Party may not unreasonably refuse such requests.***" *Id.* (emphasis added).  As described above, the Requested Tools are commercially available software tools used for viewing and searching source code.  This should begin and end the inquiry.  Even more, Nistica's own software engineer testified that he uses the tools within Cygwin for just this purpose.  Ex. 8 (da Silva Rough Dep. Tr. at 56:11-21).  So at least Cygwin is additionally a tool "presently used in the ordinary course of the Producing Party's business."  Dkt. No. 140, at 8.

There is supporting precedent for Finisar directly on point for Cygwin, in particular, and comparison software, in general.  In *Apple Inc. v. Samsung Elec's Co.*, the parties agreed to a similar provision in their protective order, later adopted by third-party Google, which provided that "the Producing Party shall install tools that are sufficient for viewing and searching the code produced … [and] the Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer."  *See Apple Inc. v. Samsung Elec's Co.*, No. 12-cv-00630-LHK, Dkt. No. 80, at 2 (N.D. Cal. May 4, 2012) (order adopting protective order in *Apple Inc. v. Samsung Elec's Co.*, No. 11-cv-01846-LHK, Dkt. No. 687, at 15 (N.D. Cal. Jan. 30, 2012)).  After third-party Google refused to install Cygwin and comparison software for Apple's source code inspections, the Court granted Apple's motion to compel Google to "load Cygwin and software with the ability to compare the relevant source code versions." *Apple Inc. v. Samsung Elec's Co.*, No. 12-cv-00630-LHK, Dkt. No. 164, at 7-8 (N.D. Cal. May 4, 2012).  The facts here closely mirror the facts in *Apple*.  Both cases have similar provisions in their respective protective orders and, in both cases, the plaintiffs made a reasonable request for the installation of Cygwin and comparison software on the source code computer.  Thus, the Court should grant Finisar's request.

**Finisar's Reply**



Hon. Jacqueline Scott Corley
July 6, 2015

Nistica's statement confirms Finisar's motion should be granted. Finisar merely seeks the installation of common source code inspection tools that would alleviate days of work and substantial cost to Finisar while providing no risk to the security of Nistica's source code. Nistica's opposition centers around what are, at best, hyper-technical readings of the Protective Order, and at-worst, intentional mis-readings of its provisions. Critically, Nistica misinterprets Section 6(c) of the PO which provides:

> The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business. ***The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching source code be installed on the Confidential Source Code Computer, and the Producing Party may not unreasonably refuse such requests.*** The Receiving Party shall not at any time use any compilers, interpreters or simulators in connection with the Producing Party's Source Code.

Dkt. No. 140, at 8 (emphasis added). Nistica quotes only the first sentence out of context, which requires Nistica (as Producing Party) to produce tools "sufficient for viewing and searching the code." But Nistica completely ignores the second sentence which—over and above Nistica's initial obligation—allows Finisar (as Receiving Party) to request *additional* tools to those required to be provided by Nistica "for viewing and searching the code" and further provides that Nistica may not "unreasonably refuse such requests," as Nistica has done here.

Nistica's additional arguments regarding Cygwin—principally that it contains prohibited "interpreters"—are misleading and without merit.[1] First, there is no prohibition on the installation of interpreters; only their use. Dkt. No. 140, at 8. Finisar is prohibited under the PO from using source code interpreters and it will abide by that restriction regardless of what is installed on the source code machine. Second, Cygwin contains a list of interpreters, none of which need to be installed, and Finisar has not requested the installation of any of them. Declaration of Dr. Benjamin F. Goldberg ("Goldberg Decl."), at ¶¶ 4, 6. Thus, Finisar does not seek the installation of any interpreter. Third, bash.exe, which is included in Cygwin, but is not listed by Cygwin as an interpreter (despite Nistica's claim to the contrary), is not an interpreter within the meaning of the PO. Goldberg Decl., at ¶¶ 7-8. Indeed, if it were considered an interpreter under the PO, then other software already installed on the source code computer should be considered interpreters as well. Goldberg Decl., at ¶ 9. Fourth, the *Apple v. Samsung* protective order similarly prohibited the use of "interpreters" but the court nevertheless ordered the installation of Cygwin. No. 11-cv-01846-LHK, Dkt. Nos. 687, at 16, 164, at 8.[2]

---

[1] Nistica makes reference to a December 2014 telephonic meet and confer regarding the installation of Cygwin that no one on Finisar's counsel's team recalls, nor can anyone—apparently on either side—locate any written record of such a call. In any event, Nistica's alleged refusal to install Cygwin in December is irrelevant to the current dispute.

[2] Nistica takes issue with Finisar's characterization of the *Apple v. Samsung* discovery dispute. Nistica's complaint is off base. As part of the record on its motions to compel, *inter alia*, source code from Google, Apple brought to the court's attention Google's refusal to install Cygwin and other comparison tools. No. 11-cv-01846-LHK, Dkt. No. 155-1 at 3 ("despite Apple's repeated requests . . . almost none of the requested software has been installed on the source code computer. This includes Cygwin and software to compare and run a diff or redline between files."); *see also id.* at 4 ("Apple now files this Administrative Motion to supplement the record



Nistica's additional arguments regarding the Compare plug-in for Notepad++ are similarly without merit. The parties agree that the Compare plug-in generates comparisons of different source code files. The Court can appreciate then the amount of time and effort the use of this tool will save. Nistica's main objection rests on the fact that the PO prevents copying the code. However, the Compare plug-in for Notepad++ does not copy or duplicate code—it instead compares two source code files and shows the difference between two files so that they can be readily ascertained. Goldberg Decl., at ¶ 10. Nistica's argument that the resulting comparison "do[es] not represent any source code kept by Nistica" is irrelevant. *See infra* page 7. The PO does not prohibit the comparison of source code files. In addition, when such comparisons are generated for analysis, it does not—as Nistica suggests—somehow change the production of source code on the two source code computers so that the productions are no longer identical.

Finally, to the extent that the Court finds that these Requested Tools are in fact prohibited by the PO as written—which they are clearly not—it should nevertheless grant Finisar's relief because it has shown good cause for the modification of the PO—it would save Finisar much time and effort at little cost to Nistica without risking the security of Nistica's source code.

For the foregoing reasons, Finisar respectfully requests that the Court enter an order (1) compelling Nistica to immediately make available a source code computer with Requested Tools—Cygwin and the Compare plug-in for Notepad++—installed;[3] (2) resetting the deadline for Finisar's opening expert reports by the number of days from July 1 through the date that Nistica makes available the source code computer with the Requested Tools; and (3) granting any further relief that the Court deems appropriate.

## STATEMENT BY NISTICA

The parties negotiated and presented an agreed Protective Order to the Court, which was entered in this case. Dkt. 138. The Protective Order contains provisions that dispose of Finisar's motion as explained below. Also, Finisar has had the source code computer since 2014 and its attorneys and expert witness have spent more than 75 hours using it. They have not complained until now. Their demand is contrary to the terms of the Protective Order and intended to simply increase expense and burden on Nistica.

**1. Cygwin**

---

and bring this incident to the Court's attention, as the time constraints imposed by the schedule for Apple's Motion for a Preliminary Injunction necessitate the need for prompt intervention should the Court agree that Google's response to Apple's subpoena has been deficient."). Certainly, the court treated this request for "prompt intervention" as part of Apple's motion to compel, since Apple's requested relief was granted the next day. *Id.*, Dkt. No. 164 at 8.

[3] Finisar requests that such an order require Nistica to install the tools within one day of the Court's Order. On the July 3 meet and confer, Nistica claimed that it would take up to three days to install the tools because the computer would have to be shipped back and forth from Dentons to Nistica. But Nistica's facility in New Jersey is only an hour drive from Dentons' New York office where the inspections take place. So even if the computer does in fact need to be taken back to Nistica's facility (why it must do so is not entirely clear, since all Nistica has to do is share certain passwords with its counsel in order to allow the installation), the installation can be accomplished in a single day. Any further delay would continue the prejudice to Finisar.



Hon. Jacqueline Scott Corley
July 6, 2015

First, in Section 6(c), the Protective Order states that tools "*sufficient for viewing and searching* the code produced" must be provided.  Dkt. 138 at 8 (emphasis added).  Nistica has installed Notepad++ for this purpose.  There is no dispute whatsoever that Finisar can view and search the source code that has been produced with Notepad++, which is already on the source code computer.   Finisar does not dispute that this tool is on the computer and used for viewing and searching the source code files.

Second, Finisar represents that Nistica agreed in December 2014 to install Cygwin on the source code computer.  This is incorrect.  Finisar requested that Cygwin be installed in December 2014, but Nistica never agreed to do so.  Following the December 12, 2014, email that Finisar references, which states "the computer will not have Cygwin installed by Monday morning," the parties had a meet and confer in which Nistica told Finisar that it objected to installing Cygwin because it contained interpreters, compilers, and simulators because such programs are forbidden by the Protective Order, which states "The Receiving Party shall not at any time use any compilers, interpreters or simulators in connection with the Producing Party's Source Code."  Dkt. 138 at 8.  Finisar accepted this response in December 2014 and did not raise the issue again until June 29, 2015, after the close of fact discovery.  Finisar and its expert have used the source code computer since then for many months on more than 12 occasions for more than 75 hours. Surely Finisar would have raised the issue earlier if it really needed these programs and if Nistica had actually agreed to provide it.[4]

Third, Section 6(c) of the Protective Order provides that "***The Receiving Party shall not** at any time use any* compilers, *interpreters* or simulators in connection with the Producing Party's Source Code."  Dkt. 138 at 8.The parties heavily negotiated the specific terms Protective Order, especially with regard to source code.  Finisar  agreed to the terms of the Protective Order.  Today, Finisar requests that Nistica put the default version of Cygwin on the source code computer.  However, the default version of *Cygwin contains interpreters*, such as bash.exe and gawk.exe.  See Declaration of James Da Silva dated July 6, 2015 submitted herewith at ¶ 5. Thus, Finisar's request to have Cygwin installed on the source code computer is in direct violation of the explicit terms of the Protective Order.  Finisar did not seek Cygwin since it raised the issue in December 2014 and then dropped it.  Nothing has changed since then.  Its motion today is simply to increase Nistica's cost of defending the case by diverting Nistica's software team from their work to focus on changing the composition of the source code computer. It is also to cause Nistica to incur the cost of opposing motions that lack merit.

Fourth, Finisar misrepresents the decision in the *Apple Inc. v. Samsung Elec. Co.* case that

---

[4] The Court will recall Finisar's pattern of representations about alleged "agreements" the parties have made. This one is yet another such as where Finisar told the Court in its motion to strike Nistica's invalidity contentions that the parties agreed that each combination of prior art references would count as an additional reference towards the total 20 references Nistica could use to invalidate the fifteen asserted claims of the six patents in suit. As the Court learned at the hearing and determined in its Order, Finisar had never proposed this counterintuitive counting method to Nistica. The parties had never even discussed, orally or in writing, using this method. Finisar had seen in a Texas district court model order that one could count prior art references this way. On that basis alone and nothing else, Finisar represented to this Court in motion papers and attorney declaration that the parties had "agreed."



it cites in its brief.[5]  The motions being decided in that decision related to Apple's motion to compel documents and source code from a third party (Google), Apple's motion to compel documents from Samsung, and Apple's motion to compel interrogatory responses.  Ex. A, Dkt. 96; Ex. B, Dkt. 99, Ex. C, Dkt. 135.  Unlike Finisar's representation, none of these are motions to compel Cygwin on a source code computer.  In fact, none of the motions request or even mention Cygwin.  Rather, there is a single sentence in the decision on these motions that mention Cygwin.  That case is not analogous to this one where Finisar seeks to install a program that is expressly forbidden by the Protective Order in this case.  Dkt. 138 at 8.

For the aforementioned reasons, Finisar's motion should be denied.

      **2.**    **Compare Plug-In for Notepad++**

Finisar seeks to have Nistica install the compare plug-in program for Notepad++ on to the source code computer.  Section 6(c) of the Protective Order requires that Nistica make available on the computer software "***sufficient for viewing and searching*** the code produced." Dkt. 138 at 8.  There is no dispute that Nistica has already provided software, such as Notepad++, that allows Finisar to view and search source code.

The compare plug-in, however, is not for viewing and searching the source code.  However, the compare plug-in is not for viewing and searching source code.  Rather, the compare plug-in for Notepad++ allows for the creation of new electronic files containing comparisons of different source code files.  Such new source code files do not reflect how the source code is kept or how it was produced by Nistica.  The creation of these new electronic files containing source code was never contemplated in the Protective Order.  In fact, such new electronic files containing source code violate the Protective Order, which forbids the making of such electronic copies and duplications of source code.  Dkt. 138 at 9 ("No person, including any attorney representing the Receiving Party or any consultant or expert, shall copy, e-mail, transmit, upload, download, print, photograph or otherwise duplicate any portion of the designated Source Code except as expressly permitted by the terms of this Protective Order.").  Such new electronic files do not represent any source code kept by Nistica in the ordinary course of business.

Further, Finisar has requested and Nistica agreed to provide two identical source code computers -- one in Palo Alto and one in New York-- both containing Nistica's source code.  The Protective Order contemplates that both source code computers would contain the same production of source code.  That would be impossible with the compare plug-in tool installed as it will generate new electronic files on only one of the source code computers.  This is why the parties specifically negotiated and agreed that the ***only tools*** on the source code computer would be those sufficient ***for viewing and searching*** the source code.  Dkt. 138 at 8.  There is no dispute that Finisar currently has the ability to view and search source code on the source code

---

[5] Finisar's pattern of taking broad liberties with its characterization of case law is now well documented by the Court in this case. *See*, e.g., the Court's Order explaining that Finisar at best misunderstands and at worst misrepresents the primary case it relied upon in a recent motion. (Order Granting Fujikura Ltd.'s Motion Quash and Denying Finisar's Motion to Compel dated May 15, 2015, at page 11.)



Hon. Jacqueline Scott Corley
July 6, 2015

computer. Finisar is now attempting to rewrite the Protective Order that it agreed to in this case.

Given the sensitivity of the information contained in the source code and the fact that Finisar's request for the compare plug-in tool is contrary to the Protective Order, Finisar's motion should be denied.

Respectfully submitted,

| | |
|---|---|
| RADULESCU LLP | DENTONS US LLP |
| WEIL GOTSHAL & MANGES LLP | |
| | |
| By: */s/ David C. Radulescu* | By: */s/ Robert F. Kramer* |
| Attorneys for Plaintiff Finisar Corporation | Attorneys for Defendant Nistica, Inc. |