

July 6, 2015

| | |
|---|---|
| Christopher Cox<br>WEIL, GOTSHAL & MANGES LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065 | Robert F. Kramer, Jennifer D. Bennett,<br>Russell Tonkovich, C. Gideon Korrell<br>DENTONS US LLP<br>1530 Page Mill Road, Suite 200<br>Palo Alto, CA 94304 |
| David C. Radulescu<br>Tigran Vardanian<br>Etai Lahav<br>Robin M. Davis<br>Daniel Kesack<br>RADULESCU LLP<br>The Empire State Building<br>350 Fifth Avenue, Suite 6910<br>New York, NY 10118 | Shailendra Maheshwari<br>DENTONS US LLP<br>300 K Street, N.W.<br>Suite 600, East Tower<br>Washington, DC 20005<br><br>Joel Bock<br>DENTONS US LLP<br>1221 Avenue of the Americas<br>New York, NY 10020-1089 |
| Attorneys for Plaintiff<br>FINISAR CORPORATION | Attorneys for Defendant<br>NISTICA, INC. |

Hon. Jacqueline Scott Corley
United States District Court
San Francisco Courthouse, Courtroom F
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Finisar Corporation v. Nistica, Inc.,* No. 5:13-cv-03345-BLF
<u>Letter Brief – Motion for Order to Compel 30(b)(6) Testimony from Nistica and Production of Certain Related Documents</u>

Dear Judge Corley,

Plaintiff Finisar Corporation ("Finisar") and Defendant Nistica, Inc. ("Nistica") jointly submit this letter brief summarizing their dispute regarding whether Nistica should be compelled to: (1) provide a knowledgeable witness to provide testimony on topics 34, 36, and 58 from Finisar's First Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) ("First Notice") and (2) produce forecast reports responsive to Request for Production No. 46 ("RFP No. 46"). The parties hereby attest that they met and conferred concerning the issues raised in this letter brief telephonically on June 18, 19, 22, and July 3.

**STATEMENT BY FINISAR**

**Relief Requested by Finisar**

      Finisar seeks an order compelling Nistica to provide (1) a knowledgeable witness to testify regarding topics 34, 36, and 58 from Finisar's First Notice (together, the "topics-at-issue"), and (2) forecast report documents responsive to RFP No. 46.



Hon. Jacqueline Scott Corley<br/>July 6, 2015

**History and Development of This Dispute**

Finisar served its First Notice on June 19, 2014.  The deposition topics in Finisar's First Notice included: "Nistica's communications with third parties regarding the Finisar patents-in-suit" (topic 34); "Nistica's communications with third parties regarding Finisar's claims of infringement of the Finisar patents-in-suit" (topic 36); and "[Nistica's] expected, projected, or anticipated future sales revenue, costs, and profits from the Nistica Accused Products and Downstream Products" (topic 58). Finisar Ex. A.  Finisar's RFP No. 46 requested: "All market analyses, forecasts, business plans, projections, written reports or presentations relating to the past, present and future sales or profitability of the Nistica Accused Devices." Finisar Ex. D.  Nistica agreed to designate one or more witnesses to provide relevant, non-privileged testimony for each of these topics and agreed to produce documents in response to RFP No. 46.  *See* Finisar Ex. B; C.

On May 11, 2015, Nistica designated its CEO, Ashish Vengsarkar, to testify on all of the topics-at-issue and the parties agreed that his 30(b)(6) deposition would occur on June 4, 2015.  *See* Finisar Ex. E. However, on June 1, Nistica unilaterally cancelled Mr. Vengsarkar's 30(b)(6) deposition, forcing Finisar's counsel to cancel travel plans less than three days before the scheduled deposition.  *See id.*  In an effort to accommodate Nistica's witness' schedule, Finisar agreed to proceed with a deposition on the topics-at -issue on June 9 instead.  On June 4, 2015, Nistica designated Joanne Bisconti, Nistica's VP of Finance, as the witness who would testify on the topics-at-issue.  *See* Finisar Ex. F.

Ms. Bisconti was unprepared to testify regarding the topics-at-issue.  *See* Finisar Ex. G.  For instance, Ms. Bisconti was unprepared to testify regarding Topic 34:

> Q:  Did NTT/NEL communicate to Nistica any results of the IP evaluation that it had conducted in that time frame, end of 2012, beginning of 2013?
> A:  [. . .]. No, I'm not aware.
> Q:  So you have no personal knowledge, right?
> A:  That is correct. [. . .].
> Q:  So beyond your personal knowledge, do you have any knowledge on behalf of the company, sitting here as a corporate witness, with respect to Topic 34, with respect to has been communicated between Nistica and NTT, concerning a IP litigation in the time frame of this document at the end of 2012, beginning of 2013? [. . .].
> A:  No, I do not.

Finisar Ex. J (6/9/15 Dep. Tr. of J. Bisconti) at 112:23-115:25.  *See also id.* at 16:17-23; 19:2-16; 106:5-21; 108:13-109:6; 110:4-14; 112:4-16; 113:11-20; 114:11-20; 162:20-164:17; 197:14-23.

She was further unprepared to testify regarding Topic 36:

> Q:  So if we go through each of the customers, would you be able to tell me, you know, the number of communications and the content that Nistica had with each of these customers with respect to the lawsuit?
> A:  No, I would not.

*Id.* at 37:20-25; *see also* 34:20- 35:13; 36:16-25; 56:11- 57:6.



Ms. Bisconti was likewise unprepared to testify regarding Topic 58, in part because the necessary forecast reports, responsive to RFP No. 46, were not produced to Finisar in advance of the deposition:

> Q:  In your own files, would you have all of the reports that you prepared, all of the forecast reports that you have prepared?
> A:  Yes. I would have the reports that finance has prepared in general, and previous reports I would be able to locate. [. . .].
> Q:  [. . .] And you agree with me that the projected reports that you've mentioned would be encompassed by this topic, right? [. . .].
> A:  That would be correct.

*Id.* at 181:24-183:11.

> Q:  Does Nistica anticipate to receive any royalty pursuant to 3.3A in the future? [. . .].
> A:  I would say my -- my sales forecast going into the future do not -- I do not necessarily have the detail right now that would tell me whether 3.A income is -- is one of those items, so I am -- I am -- I am not aware.

*Id.* at 176:18-177:3; *see also* 178:4-14.

During her deposition, Ms. Bisconti identified Mr. Vengsarkar, the original designee for the topics-at-issue, and Thomas Strasser, Nistica's CTO, as persons with knowledge on the topics-at-issue.  *See id.* at 23:11-25; 109:7-28; 165:19-166:8; 198:10-25; 180:2-7; 192:4-19; 207:21-208:13; 211:13-25.  It was apparent that Ms. Bisconti did not take reasonable steps to prepare for the topics-at-issue, as demonstrated by her failure to review relevant correspondence (*see id.* at 216:15-217:3) or speak to knowledgeable co-workers (*see id.* at 32:9-13).

On June 18, 19 and 22, counsel for both parties met and conferred about Ms. Bisconti's deficient preparation for testimony regarding topics-at-issue.  Nistica's attorneys agreed to provide another 30(b)(6) witness to testify regarding the topics-at-issue and, on June 23, 2015, Nistica offered a "follow-up" designee for deposition on June 26—the last day of fact discovery.  Finisar Ex. H.  Instead of designating individuals Ms. Bisconti identified as having knowledge on these topics (*i.e.*, Ashish Vengsarkar and Thomas Strasser), Nistica presented its VP of Sales & Marketing, Dario Falquier, as its "follow-up" designee.  *Id.*

Unfortunately, Mr. Falquier, like Ms. Bisconti, had little or no personal knowledge of the topics-at-issue (*see* Finisar Ex. I).  Indeed, Mr. Falquier was just as ill-prepared and unknowledgeable on these topics as Ms. Bisconti was—he could discuss the topics only at a high level, and lacked details regarding the substance of relevant conversations or documents.  For instance, Mr. Falquier could not answer questions regarding Topic 34:

> Q:  So sitting here today, you don't know whether Dr. Vengsarkar discussed, for example, the '599 patent with Fujikura after the December 10, 2012 meeting?
> A:  I don't know about that particular patent discussed.

Finisar Ex. K (6/26/15 Rough Dep. Tr. of D. Falquier) at 60:14-19.

Mr. Falquier also could not answer questions regarding discussions of the lawsuit with Nistica's customers, as called for by Topic 36:

> Q:   So what specifically did Cisco ask you about the lawsuit during that



Hon. Jacqueline Scott Corley
July 6, 2015

> meeting that happened early this year? [. . .].
> A:   I don't recall their exact questions.

*Id.* at 77:19-78:13.

And, Mr. Falquier likewise could not testify regarding Topic 58:

> Q:  My question, I guess, what I'm wondering about is, whether the
> financial forecasts that go to AFL have the Japanese commentary; such as,
> for example, on this page?
> A:  I honestly don't know.
> Q:  You don't know.  Do financial forecasts that go to Nistica's auditors
> have Japanese commentary?
> A:  I don't know.

*Id.* at 114:10-20; *see also* 90:16-91:12.

As did Ms. Bisconti before him, Mr. Falquier identified Mr. Vengsarkar and Mr. Strasser as persons with knowledge on the topics-at-issue.[1]  *See id.* at 20:23-21:16; 21:18-22:23; 27:20-28:5; 30:22-31:16; 35:9-12; 39:19-40:2; 47:4-9; 54:1-3; 57:21-58:1; 60:24-61:3; 64:24-65:3; 82:12-20; 129:10-25. Mr. Falquier was not prepared to address the topics-at-issue, as demonstrated by his failure to adequately discuss the topics with the people he testified were knowledgeable on the topics-at-issue (*see id.* at 28:6-12; 32:7-21).

### Nistica Failed To Produce A Prepared Witness To Testify About The Topics-At-Issue And Relevant Documents

Nistica *twice* failed to produce a prepared witness to testify regarding the topics-at-issue. Under Fed. R. Civ. P. 30(b)(6), "[t]he persons designated *must* testify about information known or reasonably available *to the organization*."  Fed. R. Civ. P. 30(b)(6) (emphasis added).  Thus, Nistica has an affirmative duty to produce a corporate representative able to answer questions within the scope of the topics with information "known or reasonably available to the organization."  *Postx Corp. v. Secure Data Motion, Inc.*, No. C 02-04483 SI, 2005 WL 767593, at *1 (N.D. Cal. Apr. 1, 2005) *citing Detoy v. City and County of San Francisco,* 196 F.R.D. 362, 366-67 (N.D.Cal.2000); *see Bowoto v. ChevronTexaco Corp.,* No. C 99-02506 SI, 2006 WL 294799, at *1 (N.D. Cal. Feb. 7, 2006) *recons. sub nom. Bowoto v. Chevron Corp.,* No. C 99-02506 SI, 2006 WL 2455740 (N.D. Cal. Aug. 22, 2006) ("The corporation has a duty to educate its witnesses so they are prepared to fully answer the questions posed at the deposition.").  When a party does not meet this obligation, courts in this District have compelled a party to produce a witness able to answer questions related to the 30(b)(6) topics.  *See Postx Corp. v. Secure Data Motion, Inc.*, No. C 02-04483 SI, 2005 WL 767593, at *1 (N.D. Cal. Apr. 1, 2005); *RLI Ins. Co. v. Commercial Money Ctr., Inc.*, No. CIV.02CV192BTM(AJB), 2002 WL 32081854, at *3 (S.D. Cal. Aug. 16, 2002).

As illustrated by the citations to their deposition transcripts above, both Ms. Bisconti and Mr. Falquier were not prepared to testify regarding the topics-at-issue because they lacked personal knowledge on these topics and failed to take appropriate steps to educate themselves in

---

[1] Mr. Falquier also identified Joanne Bisconti as having knowledge relevant to topic 58.  *See* Finisar Ex. K (6/26/15 Rough Dep. Tr. of D. Falquier) at 113:2- 116:12.  However, the forecast documents sought here were not produced.



Hon. Jacqueline Scott Corley
July 6, 2015

advance of their depositions.  *See* excerpts cited *supra* Finisar Ex. J; L.  Indeed, both Ms. Bisconti and Mr. Falquier indicated that Nistica's CEO, Ashish Vengsarkar, or CTO, Thomas Strasser, would be knowledgeable regarding the topics-at-issue—but Nistica failed to present them to testify.  If Mr. Vengsarkar had testified regarding the topics-at-issue, in accordance with Nistica's initial designation on June 4, 2015, it is likely this motion could have been avoided.

**The 30(b)(6) Testimony Finisar Seeks Is Important, In Nistica's Possession, And Otherwise Unavailable To Finisar**

The topics-at-issue call for information that is directly relevant to the claims in this case.  Topics 34 and 36 seek information highly relevant to Finisar's claim that Nistica's infringement of each asserted patent has been willful.  *See* Dkt. No. 1 (Complaint) at 5-10.  Topic 58 from Finisar's First Notice also seeks testimony concerning financial forecasts, which are highly relevant to determining the proper reasonable royalty rate to compensate for Nistica's infringement pursuant 35 U.S.C § 284.  As evidenced by Ms. Bisconti's testimony, Nistica has also failed to produce crucial documents relating to this topic and responsive to RFP No. 46, even though the requested documents are in her possession.  *See* Finisar Ex. J at 181:24-183:11.

The deposition testimony on the topics-at-issue from Ms. Bisconti and Mr. Falquier make clear that Nistica possesses information related to the topics-at-issue.  However, due to Nistica's failure to designate, prepare, and present a knowledgeable witness to testify about the topics-at-issue, Finisar has been blocked from taking the necessary discovery on these matters.   Indeed, Finisar has not only been deprived of relevant, discoverable information directly related to the claims in this case, but spent many hours preparing for and deposing unprepared Rule 30(b)(6) witnesses, thereby incurring unnecessary fees and costs, that the Court may, in its discretion, order Nistica to reimburse to Finisar.  *Avago Tech., Inc., et al., v. IPTronics Inc., et al.,* No. 10-cv-02863-EJD (N.D. Cal. 2015) (sanctioning the plaintiff for presenting an unprepared 30(b)(6) witness for deposition) *citing JSR Micro, Inc. v. QBE Ins. Corp.,* No. 09-cv-03044-PJH (EDL), 2010 LEXIS 56000 (N.D. Cal. 2010) (granting plaintiff's motion for sanctions for presenting an unprepared witness).

**Finisar's Reply**  Nistica makes much of the parties' agreement to provide certain supplemental 30(b)(6) deposition witnesses, including accusing Finisar of violating that agreement by filing this motion.  However, Nistica misstates the nature of both the parties' agreement and the request in this motion.  Nistica agreed to designate a follow-up witness on the topics-at-issue because Ms. Bisconti's testimony was deficient—a fact amply demonstrated by Finisar's citations above—and in exchange for Finisar providing further 30(b)(6) testimony on certain topics that are unrelated to this motion.  Finisar meaningfully limited the scope of the topics on which it agreed to provide supplemental 30(b)(6) testimony, but Nistica did not. (*See* Nistica Ex. 2.)

For topics 34 and 36, Nistica agreed to provide a second 30(b)(6) witness to provide more testimony on the following subjects:
> communications with NTT/NEL (and Fujikura, if any) about the '599 patent and relating to the presentation referencing the '599 and to testify about communications with certain third parties about the lawsuit. With the understanding that no witness can testify about all Nistica communications with third parties about the lawsuit, Nistica is willing to designate someone to testify generally about the substance of communications with certain customers, including, whether or not Nistica has communicated with customers about settlement of the lawsuit.



Hon. Jacqueline Scott Corley
July 6, 2015

Nistica Ex. 3 at 1.  Nistica's agreement provided a direct, if not perfect, overlap with the scope of testimony sought by Finisar regarding topics 34 and 36—these topics sought and Nistica agreed to provide testimony regarding Nistica's communications with third parties (e.g., customers and NTT/NEL) regarding the patents-in-suit and this lawsuit.  (*Compare* Finisar Ex. A *to* Nistica Ex. 3).  The Bennett Declaration indicates that certain communications were highlighted as important (i.e., what "Finisar actually cared about") during a meet and confer between the parties, but there was no agreement to limit Mr. Falquier's deposition to only those examples.  *See* Bennett Decl. at ¶¶2-3.  Even the Bennett Declaration does not state that such an agreement was entered during meet and confers.  *See id*.  Thus, rather than ignore the parties' agreement, Finisar moves to enforce it because Mr. Falquier was unprepared to testify on topics 34 and 36.

Nistica also mischaracterizes the parties' agreement as to topic 58.  As the emails attached by both Finisar and Nistica illustrate, the parties' agreement provided that Nistica would produce all forecast reports as maintained by Ms. Bisconti and a witness prepared to testify about all of them.  (*See* Exs. H & 2.)  Nistica did not produce all forecast reports as requested and still has not confirmed that they have been or will be produced.  (*See* Finisar Ex. L.)  Instead, late the night before the Falquier deposition, Nistica unilaterally tried to confine Finisar to supplemental testimony on topic 58 relating only to three recently produced forecasts.  (*See* Finisar Ex. 2.)  Finisar never agreed to this limitation and moves to compel the full scope of topic 58.

Nistica cannot rely on other 30(b)(1) witness's testimony to remediate its failure to properly prepare its witnesses.  Ultimately, rather than seeking to subvert the parties' agreement to provide additional testimony on certain 30(b)(6) topics, Finisar's motion seeks to actually receive the testimony Nistica agreed to provide.

**Conclusion** For the foregoing reasons, Finisar respectfully requests that the Court enter an order (1) compelling Nistica to produce a 30(b)(6) witness to testify regarding topics 34, 36, and 58 from Finisar's First Notice by July 17; (2) compelling Nistica to produce the forecast reports responsive to RFP No. 46 and in Ms. Bisconti's possession by July 10; (3) awarding Finisar the costs and attorney fees associated with this Letter Brief and the depositions of two unprepared witnesses; (4) and granting any further relief that the Court deems appropriate.

## STATEMENT BY NISTICA

**Nistica's Reply**

Nistica is extremely disappointed by Finisar's Letter Brief. Once again Finisar made an agreement with Nistica, and because Finisar is apparently dissatisfied with the agreement it made (and actually proposed to Nistica), Finisar burdens this Court and inappropriately moves to compel Nistica.[2] Strangely Finisar's motion is devoid of any mention of the parties' agreement. Because Nistica provided testimony in accord with the parties' agreement, Finisar's motion should be denied.

**The Parties Made An Agreement About a Limited Scope of Follow-Up Testimony on Certain 30(b)(6) Topics**

The parties made an agreement on the eve of the close of fact discovery to resolve certain disputes over topics from both parties' Rule 30(b)(6) deposition notices where the parties contended the designated witnesses were not adequately prepared. Specifically, Nistica requested additional testimony from Finisar on topics 23, 34, 54 and 55 from its Second Rule 30(b)(6)

---

[2] As just one example, Finisar made an agreement to follow the ND Cal Model ESI Order for e-mail production and later reneged on the parties' agreement. (D.I. 134).



Notice, and Finisar requested additional testimony on topics 34, 36 and 58 from its First Notice. Given the looming fact discovery deadline and the number of depositions that were on calendar, the parties agreed witnesses would be offered for a limited period of time (no more than 3 hours), on limited areas within the original topics.  Nistica Exs. 1-3. For example, Finisar offered David Psaila "*limited* to topic 34 as it relates to Finisar's *current capacity* to manufacture WSS, *and contingent on Nistica's offering its 30(b)(6) witness(es) per our discussion on Friday*"[3] and Finisar offered Simon Poole "*limited* to topics 23, 54 and 55 as they relate to *awards* and *public recognition* of Finisar's patented inventions, *and contingent on Nistica's offering its 30(b)(6) witness(es) per our discussion on Friday*."[4]  Nistica Ex. 1 (emphasis added.)

In exchange for this limited Finisar testimony, Nistica similarly offered *limited* testimony on topics 34, 36 and 58.  Specifically, with respect to topics 34 and 36, Nistica agreed to provide Dario Falquier, "*limited* deposition (no more than 3 hours) to testify regarding *communications with NTT/NEL (and Fujikura, if any) about the '599 patent* and relating to the presentation referencing the '599 and to testify about communications with certain third parties about the lawsuit. *With the understanding that no witness can testify about all Nistica communications with third parties about the lawsuit*, Nistica is willing to designate someone *to testify generally* about the substance of communications with certain customers, including, whether or not *Nistica has communicated with customers about settlement of the lawsuit*."  Nistica Ex. 2 (emphasis added).  With respect to topic 58, Nistica agreed to provide Dario Falquier only on the three forecasts which were recently produced (given they were recently created), "[a]s I told you during our call this week all forecasts were already produces long ago and only a few (3) very recent forecasts had not been produced. As I said, those were produced this week. I will let you know the bates numbers as soon as I know them but they were produced as natives and a search for forecast or P&L should hit on the forecast. *Dario will be prepared to testify about the recent 3 forecasts produced this week.*"  Nistica Ex. 3 (emphasis added).

Given the parties' express agreement, and given Dario Falquier provided detailed testimony on June 26, 2015 regarding topics 34, 36 and 58 per the parties' agreement, Finisar's motion should be denied. Moreover, if any party is entitled to a recovery of costs and attorneys fees associated with the filing of this Letter Brief, given the parties' express agreement, and Finisar's complete dismissal of the parties' agreement, the costs and attorney fees associated with replying to this Letter Brief should be awarded to Nistica.

**Nistica Provided Prepared Witnesses on Nistica's Corporate Knowledge Regarding Topics 34, 36 and 58**

Contrary to Finisar's accusations and citations above to selected sound bytes from the depositions, Nistica has now provided *two prepared witnesses* on Finisar's topics 34, 36 and 58. Nistica first offered Joanne Bisconti on June 9 to provide "a reasonable scope of testimony" on these topics.  Nistica Ex. 5. Later, per the parties' agreement to avoid motion practice by both parties on their respective topics, Dario Falquier provided testimony on June 26 regarding the limited areas within these topics which Finisar actually cared about, and the limited areas the

---

[3] Topic 34 was not limited to "current" capacity but as part of the parties' agreement Finisar offered a second witness to testify only on "current" capacity.  Nistica Ex. 4.

[4] Topics 23, 54 and 55 were not limited to "awards" but were related to reaction by the industry (Topic 23), secondary considerations of non-obviousness (Topic 54) and the nexus between any secondary considerations and the asserted claims (Topic 55), but per the parties' agreement Finisar agreed to make Dr. Poole available to testify only about "awards". Nistica Ex. 4.



parties expressly agreed. *See* Nistica Exs. 2 and 3. Now, directly at odds with the parties' written agreement, Finisar appears to be compelling testimony on the entirety of these topics.

### A.   Topics 34 and 36 Are Overly Broad as Originally Written and Per the Parties' Agreement Dario Falquier Provided Adequate Testimony

With respect to topics 34 and 36, Nistica provided the testimony of Dario Falquier on the limited scope agreed to by the parties during an extensive meet and confer process. Any cite to Ms. Bisconti's testimony on these topics is moot given the parties' agreement. In any event, with respect to Ms. Bisconti's testimony, the issue was not with Ms. Bisconti's preparation. Ms. Bisconti spent considerable time speaking with relevant people at Nistica and with counsel to prepare to provide testimony for these topics on a topic-by-topic basis.  *See e.g.,* Finisar Ex. J, 11:9-15:8; 21:9-23:10; 32:20-33:8; 67:14-68:5. However, given the broad scope of the topics, and the fact very few documents were actually put in front of Ms. Bisconti during the entire deposition, no witness can be expected from memory to testify about every communication a company has had, and the number of communications, with any third party on certain subjects, especially without putting relevant communications in front of them. Finisar essentially asked Ms. Bisconti to recite communications from memory without providing any documents.  Finisar Ex. J, 21:9-23:10; 24:7-19; 25:24-27:25; 30:16-31:10; 33:2-8; 38:1-17; 43:23-44:4; 45:1-51:14; 62:7-14. This Court has already held that a topic almost identical to these topics was improper as too broad and denied a motion to compel testimony on this ground.  *See Jackson Family Wines, Inc. et al. v. Diageo North America, et al.*, 2013 WL 3989446 at *1-2 (N.D. Cal.) (denying Plaintiff's request for 30(b)(6) depositions on topics seeking testimony regarding "[a]ny communications between You and any third party concerning Plaintiff, the LA CREMA mark, or Plaintiffs' LA CREMA wine products."). Ms. Bisconti was able to answer, from memory, most general Finisar's questions relating to communications with third parties. *See* Finisar Ex. J, 21:9-23:10; 24:7-19; 25:24-27:25; 30:16-31:10; 33:2-8; 38:1-17; 43:21-44:4; 44:13-51:14; 62:7-14. No single Nistica witness could have provided testimony as to the number of communications and the content of each communication anyone at Nistica ever had with all its customers.

Moreover, Finisar took the personal depositions of many Nistica employees and asked many of them in their personal capacity about specific communications they had with third parties regarding the lawsuit (and could have asked every witness it deposed in their personal capacity about any communications he/she had). For example, Finisar took the deposition of Nistica CEO Mr. Vengsarkar on March 6, 2015 and asked him about communications with a third party about the lawsuit and could have asked him about all communications he had with any third party about the lawsuit or the patents-in-suit.  *See e.g.,* Nistica Ex. 6 at 267:22-270:7. Finisar also had three days with Nistica's CTO, Dr. Strasser, who Finisar also contends in its motion to have knowledge on these topics. Finisar also asked Dr. Strasser about communications he had with certain third parties, including, both shareholders and customers.  Dr. Strasser provided extensive testimony on his communications with customers.  *See e.g.,* Ex. 8 at 886:3-893:22; 896:11-898:17; 909:14-917:4.  Dr. Strasser also testified about his limited communications with shareholders. Nistica Ex. 7 at 617:17-618:1.

Despite Ms. Bisconti's testimony, the personal testimony from a number of Nistica witnesses, and the improper scope of the topics, in an effort to reach a deal with Finisar on certain 30(b)(6) testimony that Nistica wanted from Finisar, Nistica designated Dario Falquier to testify "regarding ***communications with NTT/NEL (and Fujikura, if any) about the '599 patent*** and relating to the presentation referencing the '599 and to testify about communications with certain third parties about the lawsuit.  ***With the understanding that no witness can testify about all Nistica communications with third parties about the lawsuit***, Nistica is willing to designate



someone to testify generally about the substance of communications with certain customers, including, whether or not *Nistica has communicated with customers about settlement of the lawsuit*." Nistica Ex. 2. Surprisingly, Finisar's motion makes no mention of the parties' deal, nor does Finisar even allege that Mr. Falquier was not prepared to testify about the limited scope he was actually designated to testify about according to the parties' deal. It is as if the agreement was never made, and Finisar is now reneging on the deal by asking for a witness on these topics.

Given the difficulty in preparing any witness on all communications with third parties regarding the topics, during a meet and confer between Finisar and Nistica counsel on June 19, in an effort to reach a compromise Nistica's counsel asked Finisar's counsel to specify what communications within topics 34 and 36 Finisar actually cared about. Bennett Decl.,¶ 2. *See Jackson Family Wines, Inc.,* 2013 WL 3989446 at *1-2 (suggesting Plaintiff should have narrowed the their request during the parties' meet-and-confer efforts). With respect to Topic 34, Finisar's counsel represented it wanted a witness to testify about the communications, and specifically about a presentation, that NTT/NEL gave Nistica regarding the '599 patent. *Id*. In accord with this reasonable scope, Nistica agreed to make Dario Falquier available. Nistica Ex. 2. Mr. Falquier was prepared and did provide testimony on the presentation and communications Nistica had with NTT/NEL regarding the '599 patent. Finisar Ex. K, 25:6-27:16; 28:13-30:21; 32:23-35:4. Significantly, Dr. Strasser also provided significant testimony on this topic for a related topic.[5]

With respect to Topic 36 (seeking all Nistica communications with third parties about the lawsuit), after explaining to Finisar's counsel during the meet and confer that no witness could testify specifically about every communication anyone at the company has ever had with any third party about the lawsuit, Nistica's counsel asked Finisar's counsel which communications Finisar actually cared about. Bennett Decl., ¶3. Finisar represented it cared only about communications that Mr. Falquier, Mr. Strasser, Mr. Wagener or Mr. Vengsarkar had with certain customers, and specifically any conversations about whether the current litigation had settled. *Id*. With this narrower scope articulated, Nistica agreed to make Mr. Falquier available on this narrower area, "*[w]ith the understanding that no witness can testify about all Nistica communications with third parties about the lawsuit*, Nistica is willing to designate someone to testify generally about the substance of communications with certain customers, including, whether or not *Nistica has communicated with customers about settlement of the lawsuit*." Nistica Ex. 2 (emphasis added). Strangely, Finisar insults Nistica for designating Mr. Falquier to testify on these topics, however it was Finisar's counsel who requested the witness to be prepared on communications Mr. Falquier had with customers (not surprising given he is the VP of Marketing & Sales)[6]. Despite this understanding, and despite the fact Mr. Falquier was

---

[5] Finisar had a related Rule 30(b)(6) deposition topic in its second notice, topic 6, seeking "[a]ll due diligence concerning intellectual property performed by Nistica at the request of or on behalf of Fujikura, NEL, INCJ or other third parties in connection with each respective company's acquisition of or investment in Nistica." Nistica Ex. 9. Nistica offered Dr. Strasser on due diligence performed by Nistica in connection with the '599 patent. Dr. Strasser provided extensive testimony on due diligence in connection with the '599 patent, which included communications with NTT/NEL about the '599 patent. *See* Nistica Ex. 8, at 670:16-672:16; 814:12-822:6; 830:7-831:13.

[6] Finisar also criticizes Nistica for designating Ms. Bisconti on these topics, but Ms. Bisconti does have personal knowledge on these topics. Ms. Bisconti was involved in communications with suppliers about the lawsuit. Finisar Ex. J, 25:24-26:24; 177:4-179:20.



adequately prepared and provided testimony about these communications, including, the alleged "settlement" communications, Finisar filed the present motion.  Finisar Ex. K, 68:13-69:6; 70:24-80:11; 82:21-87:21. Significantly, Finisar's only complaint is that Falquier could not answer one question about *specific* questions asked by a single customer during one of many meetings.  Finisar Ex. K, at 77:19-78:13. Accordingly, Finisar's motion to compel testimony on this topic should be denied.

### B. Per the Parties' Agreement, Dario Falquier was Prepared to Testify About the Three Recently Produced Forecasts

With respect to topic 58 (Your expected, projected, or anticipated future sales revenue, costs, and profits from the Nistica Accused Products and Downstream Products), Ms. Bisconti, the VP of Finance, was more than prepared to testify about any financial forecast that Nistica had produced in this case as of her June 9 deposition, but Finisar counsel did not show or ask Ms. Bisconti a single question on a produced forecast.  During Ms. Bisconti's deposition, it was mentioned that a recent forecast had been created in 2015 making projections to 2018.  Finisar Ex. J, 177:6-11. On June 22, after Ms. Bisconti's deposition, Nistica produced three recently created forecasts, including the one referred to in Ms. Bisconti's deposition. Bennett Decl., ¶ 4.  Because Finisar had all other forecasts in its possession at the time of Ms. Bisconti's deposition, and Finisar chose not to ask Ms. Bisconti any questions relating to any of the already produced forecasts, in an effort to resolve the issue, Nistica agreed to make Mr. Falquier available to testify only about the three newly produced recent forecasts.  Nistica Ex. 3 (***Dario will be prepared to testify about the recent 3 forecasts produced this week.***")  Mr. Falquier was prepared to testify about the three forecasts.  Finisar Ex. K, at 116:13-124:3.

Significantly, Finisar does not complain that Mr. Falquier was not prepared to testify about the *substance* of the three forecasts Nistica produced after Ms. Bisconti's deposition, but instead complains about minimal Japanese commentary found on two of the forecasts. These two forecasts have a very small number of Japanese characters on them because they are made for Fujikura, a Japanese company, which is consistent with Ms. Bisconti's testimony. Finisar Ex. J, at 179:14-20. The very minimal Japanese found on the forecasts is inconsequential to the substance (i.e., the actual numbers) included in the forecasts, and in no means affected Mr. Falquier's ability to testify about the substance of the forecasts. In fact, Mr. Falquier was able to answer any substantive questions asked.  *See e.g.,* Ex. K at 116:13-124:3.


Respectfully submitted,

| | |
|---|---|
| RADULESCU LLP | DENTONS US LLP |
| WEIL GOTSHAL & MANGES LLP | |
| By: */s/ David C. Radulescu* | By: */s/ Jennifer Bennett* |
| Attorneys for Plaintiff Finisar Corporation | Attorneys for Defendant Nistica, Inc. |