1  CHRISTOPHER J. COX (BAR NO. 151650)
   Email: chris.cox@weil.com
2  WEIL, GOTSHAL & MANGES LLP
   201 Redwood Shores Parkway
3  Redwood Shores, CA 94065
   Telephone: (650) 802-3029
4  Facsimile: (650) 802-3100

5
   DAVID C. RADULESCU, PH.D. (*pro hac vice*)
6  Email: david@radulescullp.com
   TIGRAN VARDANIAN (*pro hac vice*)
7  Email: tigran@radulescullp.com
   ETAI LAHAV (*pro hac vice*)
8  Email: etai@radulescullp.com
   ROBIN M. DAVIS (*pro hac vice*)
9  Email: robin@radulescullp.com
   DANIEL KESACK (*pro hac vice*)
10 Email: daniel@radulescullp.com
   RADULESCU LLP
11 The Empire State Building
   350 Fifth Avenue, Suite 6910
12 Telephone: (646) 502-5950
   Facsimile: (646) 502-5959
13

14
   *Attorneys for Plaintiff*
15 *FINISAR CORPORATION*

16

17                    **UNITED STATES DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
18                          **SAN JOSE DIVISION**

19

20 FINISAR CORPORATION, a Delaware          No. 5:13-cv-03345-BLF
   corporation,
21                                          **PLAINTIFF FINISAR CORPORATION'S**
                Plaintiff,                  **SECOND MOTION FOR LEAVE TO**
22                                          **AMEND ITS INFRINGEMENT**
          v.                                **CONTENTIONS**
23
   NISTICA INC., a Delaware corporation,    **REDACTED PUBLIC VERSION OF**
24                                          **DOCUMENT SUBJECT TO FINISAR'S**
                Defendant.                  **MOTION TO SEAL**
25
                                            Date: September 3, 2015
26                                          Time: 9:00 a.m.
                                            Place: San Francisco Courthouse
27                                                  Courtroom F
                                            Judge: Hon. Jacqueline Scott Corley
28

---

1

2

**TABLE OF CONTENTS**

3

4

I.    INTRODUCTION ................................................................................................. 2

II.   FACTUAL BACKGROUND ............................................................................... 3

      A.   Finisar's Proposed Amendments ............................................................... 4

      B.   Finisar Diligently Sought Information About Nistica's Products............... 5

            i.     Hilbert ............................................................................................. 6

            ii.    NA000720 ........................................................................................ 7

            iii.   NA000750 ........................................................................................ 7

            iv.    Bolgheri Linecard (NA001012; NA000772) ................................... 8

            v.     Kepler LCoS Linecard (NA001011) ................................................ 9

      C.   '833 Contentions .................................................................................... 10

            i.     Finisar's Source Code Related Amendments ................................ 11

            ii.    Finisar's Processor and Electronics Amendments ........................ 14

      D.   Finisar's Willfulness Amendments ......................................................... 15

III.  LEGAL STANDARD ........................................................................................ 16

IV.   ARGUMENT ..................................................................................................... 17

      A.   Finisar Diligently Sought the Relevant Discovery.................................. 17

            i.     Finisar Diligently Pursued the Facts About the Newly-Added Product Numbers. 17

            ii.    Finisar Diligently Pursued the Facts Relevant to the '833 Patent—the Electrical, Electronic, and Software Aspects of Nistica's Linecards............................................. 19

            iii.   Finisar Diligently Pursued the Facts Relevant to its Willfulness Allegations ........ 21

      B.   Finisar Diligently Moved to Amend Its Contentions.............................. 21

      C.   Nistica Will Not Be Prejudiced by Finisar's Proposed Amendments to Its Infringement Contentions ............................................................................................. 22

            i.     Nistica Will Not Suffer Undue Prejudice from the Addition of New Product

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Numbers..............................................................................................................22

ii.   Nistica Will Not Suffer Undue Prejudice from the Addition of Facts Relevant to

the '833 Patent.....................................................................................................24

iii.  Nistica Will Not Suffer Undue Prejudice from the Addition of Facts Relevant to

Finisar's Willfulness Allegations ......................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
  U.S. Dist. LEXIS 163739 (N.D. Cal. Nov. 15, 2012) ...........................................17, 18, 20, 25

*Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*,
  2007 WL 716131 (N.D. Cal. Mar. 2, 2007) ...........................................................................17

*DCG Sys. v. Checkpoint Techs., LLC*,
  2012 WL 1309161 (N.D. Cal. Apr. 16, 2012)..........................................................................16

*Fitness Anywhere LLC v. Woss Enterprises LLC*,
  2015 U.S. Dist. LEXIS 707709 (N.D. Cal. June 1, 2015).......................................................17

*LG Elecs. Inc. v. Q–Lity Computer Inc.*,
  211 F.R.D. 360 (N.D. Cal. 2002) ............................................................................................17

*Nalco Co. v. Turner Designs, Inc.*,
  2014 U.S. Dist. LEXIS 110979 (N.D. Cal. August 11, 2014) ...........................................19, 20

*Positive Techs., Inc. v. Sony Elecs., Inc.*,
  2013 WL 322556 (N.D. Cal. Jan. 28, 2013) ............................................................................16

*ProconGPS, Inc. v. Skypatrol, LLC*,
  2013 WL 1788049 (N.D. Cal, Apr. 26, 2013)..........................................................................20

*Radware Ltd. v. F5 Networks, Inc.*,
  2014 U.S. Dist. LEXIS 103215 (N.D. Cal. Jul. 18, 2014) ......................................................21

**Rules**

Patent L.R. 3-6.................................................................................................................................2, 7

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Thursday, September 3, 2015 at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom F of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, in San Francisco, California, Plaintiff Finisar Corporation ("Finisar"), by and through its counsel, shall and hereby does move for an order granting leave to amend its Infringement Contentions.[1]

Finisar's motion is based upon this Notice, the attached Memorandum of Points and Authorities, and the Declaration of Etai Lahav[2] and exhibits attached thereto, the complete files and records of this action, any oral argument the Court permits, and any further information that may be properly presented to the Court.

## I.    INTRODUCTION

Finisar requests leave to amend its Infringement Contentions[3] to include contentions based on new, non-public evidence recently obtained from Nistica, Inc. ("Nistica"). Pursuant to Patent L.R. 3-6, there is good cause for Finisar to amend its Infringement Contentions to include citations to this evidence because it is new, because Finisar has been diligent in its discovery efforts, and because Nistica will not suffer any undue prejudice.

Finisar has been diligently seeking discovery of both technical information and information about the identity of accused products.  As this case progressed, it became apparent that Finisar was not in possession of all of the relevant discovery about Nistica's products.  Nistica's production of information came out piecemeal, forcing Finisar to engage in a letter a

---

[1] In addition, if the Court grants Finisar's Motion in relevant part, it hereby renews its motion to compel technical documents and information that the Court denied without prejudice to renewal in the event Finisar is able to demonstrate good cause to amend its contentions.  Dkt. No. 244 at 17.
[2] Unless otherwise indicated, referenced to "Ex." in this motion identify numbered exhibits to the Declaration of Etai Lahav.
[3] The proposed Amended Infringement Contentions can be found in Exs. 1-3.  Redlines comparing the proposed Amended Infringement Contentions to Finisar's earlier Infringement Contentions, including Finisar's December 2013 Infringement Contentions, Finisar's February 2014 Supplemental Infringement Contentions (allowed by the Court's Order at Dkt. No. 60) and Finisar's May 7 Second Supplemental Infringement Contentions (allowed by the Court's Order at Dkt. No. 93) can be found in Exs. 4-6.

1    writing campaign in order to obtain discovery that was requested near the onset of this case.

2          Finisar's proposed amendments do not assert new patent claims.  And, more importantly,

3    Finisar does not change its infringement theories; instead it merely supplements them with newly

4    discovered technical information that was not previously made available by the Nistica and

5    corrects some information in view of recent disclosures.

6    **II.      FACTUAL BACKGROUND**

7          Finisar filed its Complaint for patent infringement on July 17, 2013, asserting that

8    Nistica's wavelength selective switch ("WSS") and line card products used in optical

9    communications networks ("Nistica Accused Optical Devices") infringe six of Finisar's

10   patents—U.S. Patent Nos. 6,956,687 ("the '687 patent"); 7,123,833 ("the '833 patent");

11   7,126,740 ("the '740 patent"); 6,430, 328 ("the '328 patent"); 7,092,599 ("the '599 patent"); and

12   7,397,980 ("the '980 patent") (collectively, "Finisar's patents-in-suit").  Dkt. No. 1.  Specifically,

13   Finisar alleges in its Complaint that Nistica's MEMS-based and LCOS-based WSS and line card

14   products infringe certain of Finisar's patents-in-suit.  *Id*. at 15-16.

15         Finisar served its Disclosure of Asserted Claims and Infringement Contentions on

16   December 23, 2013 (Finisar's "Preliminary Infringement Contentions").  On February 10, 2014,

17   Finisar served its Supplemental Infringement Contentions including additional third party

18   confidential materials about Nistica's LCoS products that Finisar did not previously have consent

19   to use in its Preliminary Infringement Contentions.  After the issuance of the claim construction

20   order, the parties agreed to a schedule for amending contentions.  Ex. 8.  Pursuant to that

21   agreement, Finisar served its Amended Preliminary Infringement Contentions on December 18,

22   2014 ("December Contentions"), and Nistica served its Amended Preliminary Invalidity

23   Contentions on January 19, 2015 ("January Contentions").  During the hearing on Finisar's

24   Motion to Strike Portions of Nistica's Amended Preliminary Invalidity Contentions held on

25   March 26, 2015, the Court informed the parties that they would both have to file motions seeking

26   leave to serve their December and January Contentions, respectively.  Dkt. No. 171.

27   Consequently, on April 9, 2015, both parties brought motions seeking leave to serve their

28   respective contentions.  Dkt Nos. 183; 185.  On April 29, 2015, Finisar's motion was granted,

1 │ and Nistica's motion was granted in part. Dkt. No. 204.

2 │       Since Finisar prepared its last amended contentions in December (i.e., during the last

3 │ seven months of discovery), Nistica produced 823,459 pages of documents consisting of more

4 │ than half of its document production. Exs. 9, 10. Beginning on April 28, 2015, the parties

5 │ embarked on an intense deposition schedule that entailed the taking of 37 depositions in just 44

6 │ business days. Ex. 11. Fact discovery closed on June 26, 2015. Since that time—and mostly in

7 │ view of the late deposition of Nistica's Senior Software Engineer which occurred on June 25, ***one***

8 │ ***day before the close of fact discovery***—Finisar has been re-analyzing Nistica's source code and

9 │ collecting the evidence to support its current amended contentions. As the Court no doubt

10 │ recalls, this effort entailed a motion to compel installation of source code comparison tools on the

11 │ source code computer. Dkt. No. 138. In addition, Finisar has been analyzing all of the new

12 │ discovery that was provided in the latter two months of the fact discovery period to collect all of

13 │ the new product information in preparation for these amended contentions.

14 │       Finisar disclosed its proposed Second Amended Contentions to Nistica on July 20, 2015,

15 │ after providing notice to the Court and Nistica during the July 9 Telephonic Discovery Hearing

16 │ that Finisar would be amending its contentions in view of the information provided toward the

17 │ end of fact discovery. Dkt. No. 232. In response to Nistica's request, the two amended claim

18 │ charts for the '833 patent were modified on July 23 to provide more detail on the source code.

19 │ The parties conferred telephonically on July 23 and Nistica indicated it would oppose all

20 │ proposed amendments except for the dropping of claims and products. The parties further

21 │ conferred by email on July 27 regarding the proposed addition of the ███████ product(s).

22 │       Expert discovery is due to close on September 24, 2015; and trial is currently set for

23 │ February 8, 2016.[4]

24 │      **A.**    **Finisar's Proposed Amendments**

25 │       Finisar seeks to amend four categories of its previous served contentions: (1) Add six

26 │

27 │ [4] Judge Freeman has indicated that the trial date is likely to be moved to March 28, 2016. Ex. 13
28 │ (Jun. 11, 2015 Hearing Tr. 3:9-13; 12:8-11).

1   products that Finisar only recently became aware of, or for which only recently received technical

2   documentation: ███████████████████████████████████████; (2)

3   Update the '833 infringement charts to reflect newly developed products numbers ██████████

4   ████████████ and newly-disclosed electrical, electronic, and source code evidence (including

5   testimony) that was only provided in the last days of discovery; (3) Update Finisar's willfulness

6   contentions to reflect new information provided in various depositions that were given at the end

7   of discovery; and (4) Streamline the contentions by dropping several accused products and

8   asserted claims.[5]

9           **B.**     **Finisar Diligently Sought Information About Nistica's Products**

10           The accused products are not publicly available.  The only source of meaningful product

11   information is through discovery provided by Nistica in this case.  Lacking the ability to discover

12   new product numbers through public means, Finisar diligently used whatever discovery tools it

13   had at its disposal to uncover new Nistica product numbers and diligently sought the technical

14   details of those products to determine whether they infringe Finisar's patents.

15           As a result of its efforts Finisar has learned the following information about Nistica's

16   products. ████████████████████████████████████████

17   █████████████████████████████████████

18   ██████████████████████████████████████████

19   ██████████████████████████████████████████

20   ██████████████████████████████████████

21   ████████████████████████████████████████

22   ██████████████████████████████████████████

23   ██████████████████████████████████████████

24   █████████████████████████████████████,

25

26   [5] Finisar proposes dropping five claims including claims 39 and 41 of the '740 patent, claim 26 of
the '833 patent, claim 10 of the '980 patent, claim 34 of the '328 patent (thus dropping the '328

27   patent in its entirety), and proposes dropping the following Accused Products: ████████,

28   ████████████████. Nistica does not oppose these amendments.

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████ In its December Contentions, Finisar accused, in

4 relevant part, the ████████████████ products of infringing the '599 and '980 patents, and

5 the ████████████████ of infringing the '833 patent. Ex. 79.

6      Finisar's initial discovery requests—served in October 2013—included Interrogatory No.

7 1, which sought in part to, "Identify each Nistica Accused Device[6] . . . [including] each internal

8 code name, development name, model name or number, project name, or other name or number

9 that was used to refer to each Nistica Accused Device . . . ." *See* Ex. 16 at 7. Finisar additionally

10 requested technical information regarding the Nistica products in several requests for production

11 to Nistica in October 2013 as well. *See* Dkt. No. 56 at 1.

12      Since before serving its December Contentions, Finisar has repeatedly written letters to

13 Nistica seeking compliance with these discovery requests, specifically requesting production of

14 important technical documents, including Nistica Product Specifications (NSPs) and Bills of

15 Materials (BOMs). Exs. 17-32 (Letters and emails dated Oct. 28, 2014, Nov. 26, 2014, Dec. 2,

16 2014, Jan. 26, 2015, Jan. 30, 2015, Feb. 19, 2015, Feb. 23, 2015, Mar. 23, 2015, Mar. 23, 2015,

17 Apr. 2, 2015, May 4, 2015, May 13, 2015, May 22, 2015, Jun. 17, 2015, Jun. 19, 2015, and Jun.

18 23, 2015).

19           i.    ████████

20      Finisar first learned about the ████████ product(s) during the May 6, 2015, deposition of

21 Nistica's Vice President of Sales and Marketing, Dario Falquier. Ex. 33 at 64:21-65:8; 82:3-84:7

22 (Falquier Dep. Tr.). After the deposition, when Finisar asked for documents regarding the

23 ████████ product(s), Nistica's counsel responded on June 22 that the ████t program was "████

24 ████████████████████████████████████████████████████,

25

26       [6] "Nistica Accused Device" included devices that incorporate an array of MEMS-based

27 mirrors for optical switching and devices that include liquid crystal-based technology for optical switching. Ex. 16 at 2-3.

28

1      ████████████████████████████████████████████.” Ex. 34

2      However, Falquier testified that █████ was a █████” WSS and Nistica's Senior Software

3      Engineer, James da Silva testified that █████ is part of Nistica's █████ family of products

4      (█████████ Ex. 33 at 83:11-13 (5/6/15 Falquier Dep. Tr.); Ex. 35 at 39:22-40:1

5      (6/25/15 Da Silva Dep. Tr.). To date, Nistica has not produced any written documentation on the

6      █████ product(s), but as of June 25, 2015, Finisar knew that it was a ████████

7      ████████ which infringes the patents-in-suit.

8                  **ii.** ████████

9          Finisar first learned about ████████ as it was reviewing Nistica's February 24, 2015,

10      document production in preparation for the March 11, 2015, deposition of Nistica's CIO, Dr.

11      Jefferson Wagener. Ex. 25 at 2. During the Wagener deposition there was some brief discussion

12      of part number ████████ Ex. 36 at 101:3-20 (Wagener Dep. Tr.). At the end of the deposition,

13      Finisar's counsel requested documents about this product, as it appeared that it might infringe

14      one or more of Finisar's patents. *Id.* at 246:20-7. Finisar then followed up on this request in a

15      letter following the deposition. Ex. 24. Counsel for Nistica responded on April 1, 2015,

16      explaining that ████████████████,” and that "***Nistica will now produce***

17      the NSP for █████ and will supplement its interrogatory responses as necessary." Ex. 69

18      (emphasis added). Finisar waited patiently for Nistica to live up to its commitment to produce

19      the documents before going forward and seeking to add this product to the contentions, but

20      Nistica's production never took place. On July 6, 2015 Nistica's counsel represented that,

21      "Nistica has conducted a reasonable search and produced all NSPs and BOMs for these other

22      product numbers to the extent that such documents exist." Ex. 37. It was only at that time that it

23      became clear that Nistica had no intention of producing the documents for the ████████,

24      despite the fact that documents must exist for it ████████████████.

25      *See* Ex. 72 at rows 4-6, 43, 99-102.

26                   **iii.** ████████

27          Similar to ████████, Finisar first learned about ████████ as it was reviewing Nistica's

28      February 16 and 24, 2015, document productions in preparation for the Wagener deposition. Ex.

1   25 at 2.  Finisar requested technical documents about ▮▮▮▮▮ (among many other part

2   numbers) on March 23.  *Id.*  Despite Finisar following up a number of times on technical

3   document production, Nistica did not produce any.  *See e.g.,* Exs. 30, 32. Eventually, Nistica

4   represented that no such documents exist, only to turn around and produce a BOM for ▮▮▮▮▮

5   on June 22, 2105.  Ex. 34 at 1; Exs. 38, 39.  That BOM indicated that the ▮▮▮▮▮

6   ▮▮▮▮▮ LCoS WSS, providing basis for including it as an infringing product.

7               **iv.**   ▮▮▮▮▮▮▮▮▮▮ )

8         The existence of the ▮▮▮▮▮ first came to light during the depositions of the

9   parties' Vice Presidents of Sales and Marketing.  On April 29, 2015, Finisar's Executive Vice

10  President of Sales and Marketing, Todd Swanson testified that ▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮.[7]  Ex. 40 at 142:17-24 (4/29/15 Swanson Dep. Tr.)

12  ▮▮▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮  Swanson testified that he understood that

17  Nistica was "moving forward" with the ▮▮▮▮▮.  *Id.* at 145:15-146:5.  But, of course,

18  being Finisar's witness, Mr. Swanson did not know what Nistica's product number for this

19  product was or Nistica's proprietary technical details about the product.

20        On Monday May 4, Finisar's counsel requested documents related to the ▮▮▮▮▮

21  in advance of the May 6 deposition of Nistica's Vice President of Sales and Marketing, Dario

22  Falquier.  Ex. 27.  The documents were ***not*** produced before the deposition, but Falquier

23  confirmed that Nistica was indeed ▮▮▮▮▮.  Ex. 33 at 69:18-70:2;

24  146:20-148:12 (5/6/15 Falquier Dep. Tr.).  During the deposition, Finisar's counsel reiterated the

25  ───────────────

26  [7] ▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮

28

1    request production of the relevant ▊▊▊ documents. *Id.* at 148:13-149:8.  Finisar's counsel

2    followed up on the request again on May 13, Ex. 28, only to be told by Nistica's counsel that

3    Nistica was, "looking into whether any technical documentation exists for the ▊▊▊

4    Nistica products" but that "this project is in its very early stages . . . so it is likely that none exist

5    at this point."  Ex. 75.

6          The next day, Finisar followed up on the ▊▊▊ with Nistica's Vice President

7    of Engineering, Ronen Simovitch. Ex. 15 at 106:15-107:6.  Simovitch identified the product

8    numbers for the ▊▊▊

9    ▊▊▊. *Id.* at 107:7-14; 121:7-122:1.  Moreover, Simovitch confirmed

10   the existence of BOMs for both the ▊▊▊ and the ▊▊▊. *Id.* at 108:8-19; 122:2-9.

11   Finisar's counsel once again requested production of these documents during the deposition and

12   then followed up by email. *Id.* at 108:20-109:3, 122:10-12; Ex. 29.

13         An NSP was finally produced for the ▊▊▊ on May 21, 2015, but no BOM has ever

14   been produced. Exs. 41, 42.  More troubling is the fact that despite Simovitch's testimony, and

15   much like the ▊▊▊, Nistica's counsel represented on June 22, 2015, that there were no

16   existing "finalized documents" relating to the ▊▊▊ and that Nistica would "produce the

17   corresponding technical documentation if and when they become finalized," only to produce the

18   ▊▊▊ BOM on the very same day. Ex. 34 at 3; Exs. 43, 39.  No NSP has been produced for

19   the ▊▊▊.

20               **v.**   ▊▊▊

21         Nistica designs and makes ▊▊▊

22   ▊▊▊. Ex. 81 at 546:25-547:6, 549:20-550:6 (11/21/14 Strasser Dep. Tr.).

23   Nistica has assigned the codename "▊▊" to the ▊▊▊. Ex. 15 at 118:16-120:3, 225:8-

24   9 (Simovitch Dep. Tr.).  In November 2014, Tom Strasser, Nistica's Chief Technology Officer,

25   testified that the ▊▊▊ has many phases and that one of the potential *future* phases is

26   ▊▊▊, but that ▊▊ had chosen to focus initially

27   on ▊▊▊. Ex. 81 at 552:6-19, 560:9-561:5 (11/21/14 Strasser

28   Dep. Tr.).

1    Finisar first learned of the ████████ product number during its review of Nistica's

2    February 16 and 24 productions ahead of the deposition of Jefferson Wagener. Ex. 25 at 1-2.

3    However, Finisar was in the dark about its technical details, and certainly did not know at the

4    time that it was the part number for the ████████████ that Dr. Strasser had testified in

5    November ██████████████████.

6         Thus, Finisar wrote to Nistica requesting the relevant technical documents. *Id.* But no

7    documents were produced in response to that request. Indeed, as late as June 22, 2015, Nistica

8    characterized the ████████████████████████

9    ████████████████████████████████████████████████

10   ██████████████. Ex. 34 at 3. Finisar did not come to learn that the ████████ product

11   number was associated with ████████████ linecard until the Falquier deposition in May. Ex.

12   33 at 81:11-21 (5/6/15 D. Falquier Dep. Tr.). Nistica first produced source code for the

13   ████████████ on May 28, 2015, and eventually produced a BOM for it on June 22, 2015.

14   Ex. 49; Exs. 44, 39.

15   **C.    '833 Contentions**

16        Finisar's December Contentions asserted the '833 patent against the following products:

17   ████████████████████████████████████████

18   ████████████. Ex. 79. Finisar's proposed Second Amended Contentions would result

19   in deleting three products that are no longer accused: ████████████████████,

20   and adding the ████████████████████████,

21   ████████. Ex. 4. Finisar's 833 contentions are divided into two charts: ████████████

22   ████████████████████████████. Exs. 2, 3. In the

23   December Contentions, ████████████████████████,

24   ████████████████████████████████████████████

25   ██████████████████████. Exs. 82, 83. That mistake was

26   uncovered as Finisar was preparing the proposed Second Amended Contentions that are the

27

28

1    subject of this motion.  Lahav Decl. ¶¶ 3-4.  The proposed Second Amended Contentions correct

2    that mistake and place ▮▮▮▮▮▮▮ in the correct chart.  Exs. 5, 6.[8]

3          Asserted claims 1 and 18 (which depends from claim 2) of the '833 patent are the primary

4    claims asserted in this case that have significant limitations covering a computer processor and

5    electrical signals.  For example, claim 1 requires, "continuous, real time, autonomous feedback

6    and correction with closed and/or open loop control," and "a processor for processing a channel

7    monitor signal . . . and providing the feedback processor signal to the equalization filter." Ex. 46.

8    Claim 18 requires "an input/output user interface for receiving input signals from a user and

9    providing user input interface signals to the processor, and or receiving user output signals from

10   the processor and providing user output interface signals to the user," and "an input user interface

11   for receiving inputs from an outside user for dynamically changing the configuration of the smart

12   node." Ex. 46.  Apart from adding the newer products (and moving ▮▮▮▮▮▮▮, the proposed

13   amendments to the '833 contentions relate to these computer and electrical signals, which

14   followed from newly-discovered information about the software and electronics late in discovery.

15                      **i.    Finisar's Source Code Related Amendments**

16         Nistica did not produce any source code until December 2014, mere days before the

17   parties' agreed date for Finisar to serve its amended contentions.  Exs. 8, 47.  This production

18   included some older snapshots of the source code and did not include ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Declaration of

20   Benjamin F. Goldberg ("Goldberg Decl.") ¶¶ 3, 7; Ex. 35 at 66:25-67:25 (Da Silva Dep. Tr.).

21   Finisar requested the full breadth of the source code, including in a January 26, 2015 letter, in

22   which Finisar requested, "any software used in the Nistica Accused Products that has not already

23   been produced."  Ex. 20.  But it was only on May 28, 2015, that Nistica finally produced a copy

24   ─────────────────────

25   [8] In addition, Finisar's Exhibit B Part 2 adds additional detail about the ▮▮▮▮▮▮▮▮▮▮
     ▮▮▮▮▮▮▮▮▮▮.  The fact that the ▮▮▮▮▮▮▮▮▮▮▮▮▮ satisfies

26   claim element 1c was included in the December Contentions. Ex. 83 at 14-17.  Finisar has added
     more detail and evidence about the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 78 (PHOTOP000096).  Finisar served its subpoena on
     ▮▮▮▮ on January 23, 2015.

28

1   of ███████████.  *See* Goldberg Decl. ¶ 7; Ex. 49.

2         Review of Nistica's source code was not straightforward.  *See* Goldberg Decl. ¶¶ 3-4.   It

3   became clear that ████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████

6   *See* Goldberg Decl. ¶ 5; Ex. 35 at 71:17-72:10; 84:2-12. ██████████████████████

7   ███████████████████████████████████████████  *See* Goldberg Decl. ¶ 8.[9]

8         Given these difficulties, Finisar requested that Nistica produce da Silva's emails on

9   January 13, 2015.  Ex. 50.  In addition, Finisar requested his deposition in March 2015.  Ex. 51.

10  But the bulk of da Silva's emails were not produced until March 16, 2015 (when Nistica

11  produced over 11,000 emails), and his deposition did not go forward until June 25.  Lahav Decl.

12  ¶ 6; Ex. 35 at 1 (Da Silva Dep. Tr.).  Despite being requested in March, Nistica only offered da

13  Silva for deposition on May 15, which Finisar accepted right away (he was also eventually

14  designated as Nistica's 30(b)(6) witness on source code topics).  Exs. 52-54.  However, on May

15  13, 2015—just two days before the deposition—Nistica for the first time produced dozens of new

16  source code directories and hundreds of new source code files were added to the source code

17  computer, forcing the deposition to be delayed.  *See* Goldberg Decl. ¶ 6; Ex. 55.  Then, Nistica

18  produced even more source code on May 28.  *See* Goldberg Decl. ¶ 7; Ex. 49.  As a result, the

19  deposition of da Silva and Nistica's 30(b)(6) deposition on source code topics had to be

20  postponed.  Da Silva's deposition did not go forward until June 25, the day before the close of

21  fact discovery. Ex. 35 at 1 (Da Silva Dep. Tr.).

22

23  ---

    [9] In fact, after obtaining da Silva's testimony, it became clear that initially, because it was
24  practically impossible for Finisar to determine which source code directory corresponded to
    which Nistica product, Finisar spent significant amount of time analyzing code that ███████
25  ██████████████████████████████████████████████████████████
26  ██████████████████████████████████████████████████████████
    ██. Da Silva testified that the ██████████████████████████████████
27  ██████████████████████████████████████████████████████
28

1    Finisar first learned a number of important facts relating to the software and ultimately the

2    types of electronic signals controlled by the software used in the accused devices as a result of

3    the production of ██████████ on May 28 and from da Silva's deposition on June 25 that it

4    could not have learned from simply inspecting the code.  For example, until Finisar obtained da

5    Silva's lengthy explanation of Nistica's source code ████████████████████████

6    ████████████████████████████████████████████████████

7    ████████████████████, *See* Goldberg Decl. ¶ 8; Ex. 35 (Da Silva Dep. Tr. at 70:15-

8    85:10, 101:17-113:1).  In addition, Finisar learned for the first time that certain ████████

9    ████████████████████████████ was not actually implemented in the

10   ████████████████████████).  *See* Goldberg ¶ 15; Ex. 35 (Da Silva

11   Dep. Tr. at 246:23-25).  Similarly, Finisar learned for the first time that ████████████

12   ████████████████████████████████████████████

13   ████████████████████████████████████████████████

14   ████████████████.  *See* Goldberg Decl. ¶ 13; Ex. 35 (da Silva Dep. Tr. at 128:8-

15   129:1).  Da Silva clarified that ████████████████████████████████

16   ████████████████████ *See* Goldberg Decl. ¶ 13; Ex. 35 (Da

17   Silva Dep. Tr. at 128:1-7).  Again, Finisar did not know that ████████████████

18   ████████████████████████████████████████

19   ████████████████.  *See* Goldberg Decl. ¶ 14.  Thus, Finisar's proposed amendments

20   incorporate this address this newly-acquired information, by removing citation to ████████

21   ████████████████████████████████████████████████.

22   *See e.g.,* Ex. 5 at 148-149, 151-152, 155-156; Ex. 6 at 117-118.

23           As the Court no doubt recalls, after da Silva's deposition, Nistica attempted to frustrate

24

25   ------------------------------------------

26   [10] As noted above, the ████████████████████████████████████

27   Finisar's December '833 contentions contained evidence of both ██████████████████████████████████████████████████████

28

1   Finisar's source code review by improperly attempting to limit inspections to the fact discovery

2   period, Ex. 56, and by objecting to Finisar's request for source code tools, which necessitated a

3   meritorious motion to compel.  *See* Dkt. No. 233.  Thus, those tools were only made available to

4   Finisar beginning on July 13.  *Id.*

5          **ii.     Finisar's Processor and Electronics Amendments**

6          In Finisar's December Contentions, it identified the ███████████           in the accused

7   linecards as meeting the "processor" limitation of the '833 claims.  Exs. 82, 83.  This ███████r

8   was the only component ██████████████████████████████████████████.

9   Exs. 57-59.  As it turns out, ████████████████████████████████████

10  ████████████████████.  *Id.*  Nevertheless, Finisar did identify source code in

11  the December Contentions that ████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ████████████████████████  Thus, Nistica was on notice that

14  ███████████ was implicated.

15         Finisar first learned that it had identified ████████████ during the May 21, 2015,

16  deposition of Nistica's Director of Hardware, Michael Pepsin.  Ex. 60 at 139:8-11; 158:18 -159:3

17  (Pepsin Dep. Tr.).  Like da Silva, Pepsin's deposition was requested in March 2015, but only

18  went forward at the end of May.  Ex. 51; Ex. 60 at 1.  Consequently, Finisar's proposed

19  contentions seek to remove references to the ████████████████████████

20  ████████.

21         Finisar also seeks to add additional hardware evidence ████████████████

22  ████████████.  *See* Ex. 2 at 82-83, 95-96, 106-107; *see also* Ex. 3 at 76-78, 88-

23  90, 99-101.  Doing so any earlier was impossible without ████████████████

24  ████████████████████████████  In addition, Nistica

25  did not produce electrical schematics of the accused products until February and March of this

26  year, and even then, most of those documents were largely illegible.  *See, e.g.*, Ex. 62.  Nistica

27  was forced to reproduce clear native versions of many of the previously illegibly produced

28  schematics during Pepsin's deposition because Pepsin—like Finisar's counsel—was unable to

1    read large parts the previously produced versions.  *See e.g.,* Ex. 60 at 63:1-64:4, 70:6-73:16,

2    74:23-75:6, 88:2-22, 93:6-17; 107:22-108:1 (Pepsin Dep. Tr.).  Thus, the first time Finisar was

3    able to reliably interpret electrical schematics was during Pepsin's deposition on May 21, 2015.

4       **D.      Finisar's Willfulness Amendments**

5              Until May 11, 2015, Nistica withheld central facts relevant to Finisar's willfulness case

6    that were solely within Nistica's possession since before this litigation began.  Specifically, on

7    May 11, Nistica served its Second Supplemental Response to Finisar's Interrogatory No. 3,

8    which was first served on October 22, 2013, disclosing a number of new facts regarding Nistica's

9    awareness of the patents in suit.  Ex. 63; Ex. 16 at 3, 9. In that response, Nistica acknowledged

10   that: ████████████████████████████████████████████████

11   ███████████████████████████████████████████████

12   ████████████████████████████████████████████████

13   ███████████████████████████████████████████████

14   ███████████████████████████████████████████████

15   ████████████████████████████████████████████████

16              The timing of this supplement was not accidental.  The responses were long overdue, but

17   they were served just two days before the May 13 deposition of Dr. Strasser to ensure that Finisar

18   had little opportunity to investigate the relevant facts before the deposition.  In fact, Finisar had

19   earlier deposed Dr. Strasser for two days, in November 2014, but when asked about awareness of

20   the patents, ████████████████████████████████████████████

21   ████████████████████████.  Further evidence that this disclosure was intended to

22   frustrate Finisar's discovery efforts is the fact that Nistica's counsel refused to provide the Bates

23   number for ██████████████████████ in the interrogatory response, and ignored three

24   emails from Finisar's counsel requesting the document.  Exs. 64-65. ████████████

25   ████████████████████████████████████████████████

26   ███████████████████████████████████████████

27   ██████████████████████████████████████████

28   ████████████████████████████████████████████

---



1
2
3
4
5
6
7
8
9
10 . As a result, Finisar is still

11 waiting to complete taking testimony on willfulness issues. Indeed, on July 22, 2015, Finisar

12 requested that Nistica make the 30(b)(6) witness available for the Court-ordered one-hour

13 deposition on Topic 34. Ex. 76. Yet, a week later, as of the filing of this motion, Nistica has not

14 provided any availability for the witness.

15 **III.    LEGAL STANDARD**

16         Amendments to infringement contentions "may be made only by order of the Court upon

17 a timely showing of good cause." Pat. L.R. 3-6. "[R]ecent discovery of nonpublic information

18 about the Accused Instrumentality which was not discovered, despite diligent efforts, before the

19 service of the Infringement Contentions," may show good cause. *Id.* "[A] two-step analysis is

20 required to determine if good cause exists: first, the court must determine whether the moving

21 party was diligent in amending its contentions; second the court must determine whether the non-

22 moving party would suffer undue prejudice if the motion to amend were granted." *DCG Sys. v.*

23 *Checkpoint Techs., LLC*, Case No. 11-cv-03792 PSG, 2012 WL 1309161, at *3 (N.D. Cal. Apr.

24 16, 2012). "[T]he diligence required for a showing of good cause has two subparts: (1) diligence

25 in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis

26 for amendment has been discovered." *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-cv-02226

27 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013). Even if the plaintiff has not been diligent,

28 a court may find good cause to grant leave to amend if there would be no undue prejudice to the

1   non-moving party.  *See Apple Inc. v. Samsung Elecs. Co*., Case No. 12-cv-00630 LHK, 2012

2   U.S. Dist. LEXIS 163739, at *14 (N.D. Cal. Nov. 15, 2012).

3           "The rules are designed to require parties to crystallize their theories of the case early in

4   the litigation and to adhere to those theories once they have been disclosed . . . ."  *LG Elecs. Inc.*

5   *v. Q–Lity Computer Inc*., 211 F.R.D. 360 (N.D. Cal. 2002) (quotes omitted).  However, "the rule

6   is not a straitjacket into which litigants are locked from the moment their contentions are served."

7   *Comcast Cable Commc'ns Corp., LLC v. Finisar Corp*., No. C 06-04206 WHA, 2007 WL

8   716131, at *2 (N.D. Cal. Mar. 2, 2007).  "The expectation that a patentee would have a precise

9   sense of its infringement theory at the outset is unrealistic where the patentee may not have been

10  able to get access to the necessary information because it is hidden from view (for example,

11  source code)."  *Fitness Anywhere LLC v. Woss Enterprises LLC*, Case No. 14-cv-01725-BLF,

12  2015 U.S. Dist. LEXIS 707709, at *3 (N.D. Cal. June 1, 2015) (citing Peter S. Menell et al.,

13  Federal Judicial Center, Patent Case Management Judicial Guide 4-14 (2009)) (quotes omitted).

14  **IV.     ARGUMENT**

15          Finisar has good cause to amend its Infringement Contentions, set forth in its Proposed

16  Second Amended Infringement Contentions because Finisar diligently pursued the relevant

17  discovery and diligently moved to amend its contentions after recently discovering non-public

18  information.  Importantly, Nistica will not suffer any undue prejudice.

19          **A.      Finisar Diligently Sought the Relevant Discovery**

20          Finisar diligently sought the information providing the basis for its proposed amendments.

21  As shown below, the delays in discovery of relevant facts is due to Nistica's failure to timely

22  produce relevant documents and witnesses for deposition.

23                  **i.      Finisar Diligently Pursued the Facts About the Newly-Added Product
                            Numbers**

24          As outlined above, Finisar was diligent in seeking the bases for adding the new product

25  numbers because it relentlessly pursued information about the identity, structure, and operation of

26  Nistica's products.  The critical question is whether Finisar could have discovered the new

27  information earlier had it acted with the requisite diligence.  *Apple*, 2012 U.S. Dist. LEXIS

28

1  163739, at *14.  The answer is clearly, no.  From October through the close of fact discovery in

2  June, Finisar sent at least one communication a month—most months more than one—to follow

3  up on discovery deficiencies with respect to the technical details of Nistica's products.  *See supra*

4  Section II.B.  Ultimately, Finisar made a motion to compel any remaining unproduced technical

5  documents.  Dkt. No. 225.

6       For the five of the six product numbers Finisar seeks to add to its contentions, the relevant

7  information from which Finisar was able to have a firm basis to believe that they infringe the

8  relevant patents came to light in May 2015 or later.  *See supra* Section II.B.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23       For the sixth product number,          , Finisar diligently followed up with Nistica

24  regarding technical documents for it, since Finisar became aware of the product number.  As

25  noted above, Finisar first learned about the          product number when it was reviewing

26  Nistica's February 24, 2015, and in preparation for the March 11, 2015, deposition of Nistica's

27  CIO, Dr. Wagener.  *See supra* Section II.B.ii.  After some discussion about this part number

28  during the deposition, Finisar's counsel requested documents about this product on the record and

1   followed up in writing.  Ex. 36 at 246:20-7. (Wagener Dep. Tr. at 101:3-20); Ex. 24.  Finisar has

2   still not received any technical documentation despite Nistica's promise on April 1, 2015 to do

3   so.  *See* Ex. 69 ("Nistica will now produce the NSP for ██████ and will supplement its

4   interrogatory responses as necessary.").  On July 6, 2015, Nistica's counsel represented that,

5   "Nistica has conducted a reasonable search and produced all NSPs and BOMs for these other

6   product numbers to the extent that such documents exist."  Ex. 37.  In view of that representation,

7   the fact that such a product had been sold (*see supra* Section II.B.ii), and the fact that discovery

8   having closed without such production, Finisar moved to compel.  Dkt. No. 225.

9
10

           **ii.**     **Finisar Diligently Pursued the Facts Relevant to the '833 Patent—the Electrical, Electronic, and Software Aspects of Nistica's Linecards.**

11        All of the facts providing the basis for Finisar's '833 amendments were elicited in May or

12   June of this year despite Finisar's diligent pursuit of the relevant facts, including requesting

13   depositions in March.  Indeed, it was only during the depositions of three key witnesses in May

14   and June—Nistica's Director of Hardware, Michael Pepsin, Nistica's Vice President of

15   Engineering, Ronen Simovitch, and Nistica's Senior Software Engineer, James da Silva—that

16   Finisar learned important information relevant to the '833 patent that was in part more detailed

17   and in part contrary to its previous understanding.  *See supra* Section II.C.  Courts in this district

18   have held on analogous facts that a party has shown diligence when it (a) timely pursues

19   deposition discovery; (b) was delayed in taking the relevant depositions; and (c) learned facts

20   contrary to its prior understanding.  *Nalco Co. v. Turner Designs, Inc.,* No. 13-cv-02727, 2014

21   U.S. Dist. LEXIS 110979, at *5-6 (N.D. Cal. August 11, 2014).

22        Importantly, Finisar ***could not*** have appreciated which source code corresponded to which

23   product—and consequently which electrical signals the relevant Nistica products were using—

24   without the late production of Nistica's source code "trunk" and the deposition of Nistica's

25   Senior Software Engineer.  *See* Goldberg Decl. ¶¶ 7-10; *see also supra* Section II.C.i.  After

26   Finisar reviewed Nistica's source code for the first time it (1) asked for production of emails from

27   the main author of the relevant code; (2) asked for a full production of Nistica's source code; and

28   (3) sought the deposition of the main author of the relevant code.  *See id.*  But Nistica did not

1   provide this discovery until March, May, and June 2015, respectively.  *See* Goldberg Decl. ¶¶ 6-

2   7; *see also supra* Section II.C.i. The majority of Finisar's proposed █████████████████

3   ████████████████████████████████████████████████████████████████ stem

4   from finally being able to identify the appropriate source code following the da Silva deposition

5   in June.  *See* Goldberg Decl. ¶¶ 8, 12-15; *see also supra* Section II.C.i.  Thus, Finisar diligently

6   pursued these facts.

7            Similarly, since Finisar diligently pursued the deposition of Pepsin, the discovery during

8   his deposition that Finisar had identified the incorrect processor in its December Contentions,

9   was also result of Finisar's diligence.  *See Nalco Co. v. Turner Designs, Inc.,* No. 13-cv-02727,

10  2014 U.S. Dist. LEXIS 110979, at *5-6.

11           Furthermore, Finisar's analysis of Nistica's electrical schematics was effectively impeded

12  until the Pepsin deposition on May 21, 2015.  *See supra* Section II.C.ii.  Since Finisar's addition

13  of electrical schematics as additional hardware evidence of the claimed "user interface" was

14  made possible by (1) the newly-discovered source code information; (2) the newly-discovered

15  processor information; and (3) the newly-produced legible electrical schematics, Finisar's

16  discovery of that information was diligent as well.  *See supra* Section II.C.  *See ProconGPS, Inc.*

17  *v. Skypatrol, LLC,* No. 11-cv-3975, 2013 WL 1788049□at *1 (N.D. Cal, Apr. 26, 2013) (finding

18  diligence where Plaintiff sough to add more detail to its infringement charts largely based on

19  recently produced discovery and recent deposition testimony).

20           Finally, Finisar acted diligently with respect to its discovery of the placement of

21  ████████████████████████████████████████████████████████████. *See supra* Section

22  II.C.  Specifically, Finisar identified this error a few weeks ago, when it was working to revise

23  the '833 contentions charts for service on Nistica.  Lahav Decl. ¶¶ 3-4.  Finisar brought the issue

24  to Nistica's attention promptly after its discovery when it served the proposed charts on Nistica

25  on July 20 and thus acted diligently as soon as it discovered the error.  *See Apple Inc. v. Samsung*

26  *Elecs. Co.*, No. 12-cv-630, 2012 U.S. Dist. LEXIS 163739 at *22-23 (N.D. Cal. Nov. 15, 2012).

27  Before its preparation of these second amended charts, Finisar had no reason to suspect that the

28  charts contained errors.  *Cf. id.* at *23-34 ("After Samsung informed Apple that the first set of

claims was missing from their infringement contentions, Apple was put on notice to investigate any other omissions in their claims charts.").

### iii.   Finisar Diligently Pursued the Facts Relevant to its Willfulness Allegations

Finisar has diligently sought information concerning the facts relevant to willfulness from the earliest days of this case.  Finisar served its Interrogatory No. 3 seeking information on Nistica's first awareness of the patents in suit October 22, 2013.  *See supra* Section II.D. Similarly on June 19, 2014, Finisar served its first 30(b)(6) on Nistica seeking, among other things, information concerning "Nistica's communications with third parties regarding the Patents-in-suit."  *See supra id.* (Topic 34).  But Nistica withheld the central facts relevant to Finisar's willfulness case that were solely within Nistica's possession since before this litigation began until May 11, 2015.  *Id.* Moreover, Nistica played games by designating multiple corporate witnesses for Topic No. 34 who were unprepared to address the relevant facts, Dkt. No. 244, and by intentionally delaying providing the bates number ███████████████████████████ ██████████████████████████████████████████████████████████████████████ █████████████████████████.  Finisar has pursued the relevant facts only to be actively obstructed by Nistica.  *Id.*   Thus, Nistica can hardly complain about diligence.

### B.   Finisar Diligently Moved to Amend Its Contentions

Finisar has been diligent since it discovered the various bases for its proposed amendments.  The bases for all of the proposed amendments became apparent on or about April 30, 2015 or later.  *See supra* Sections II.B-II.D.  Thus, all of the proposed amendments were brought to Nistica's and now the Court's attention within three months (and for most bases, much shorter).  A three-month delay between learning the basis for a proposed amendment and filing for leave to amend does not establish a lack of diligence.  *Radware Ltd. v. F5 Networks, Inc.*, No. C-13-2024, 2014 U.S. Dist. LEXIS 103215, at *11-12 (N.D. Cal. Jul. 18, 2014).  This is especially so in this case where the parties were in the middle of an unusually intense deposition schedule that entailed the taking of 37 depositions in just 44 business days.  *See supra* Section II. In addition, the parties had four discovery disputes that required the parties' attention and Court

1    intervention during the same period, and the parties additionally had to prepare letter briefs to the

2    Court on the selection of a special master.  Dkt Nos. 217, 220, 223, 225, 246, 247.  Finisar was

3    certainly diligent in view of the level of activity in the case in the relevant period.  Finally, as

4    shown above, a significant part of Finisar's proposed contentions rely on source code analysis

5    that was only made possible after the da Silva deposition on June 25 and after certain source code

6    analysis tools were installed—per the Court's Order—on July 13, 2015.  Dkt No. 233.  Thus,

7    these aspects of the contentions were only truly made possible within the last several weeks.

8
         **C.     Nistica Will Not Be Prejudiced by Finisar's Proposed Amendments to Its**
9              **Infringement Contentions**

10          Nistica will not suffer undue prejudice by any of the proposed amendments.  Indeed,

11   when the parties conferred on July 23, Nistica did not raise any prejudice it would suffer.  Since

12   all of the proposed additions to Finisar's contentions came from information belatedly provided

13   by Nistica, there is no additional discovery required by Nistica.

14          **i.     Nistica Will Not Suffer Undue Prejudice from the Addition of New**
              **Product Numbers**

15          Nistica will suffer no prejudice because the infringement theory against the newly-added

16   product numbers is identical in nearly all cases to the theory in the December Contentions.

17          With respect to the ███████████████████████████████████████████

18   ██████████—the infringement theory for the '599 and '980 patents is identical to the theory for

19   the rest of the ████████ products.  Ex. 1.  Critically, by referring to the ████████ of products,

20   the December Contentions already made clear that the relevant contentions applied to all

21   ████████ products, including these.  Ex. 79 at 4 ("Finisar asserts that claims 14 and 24 of the

22   '599 patent are infringed by the Nistica Accused Optical Devices with the following product

23   numbers: ████████████████████████████████████████████████

24   ████████████████████████████████████████████

25   ████████████████████████████████████████████

26   ████████████████████████████████████████████

27   ████████████████████████████████████████

28

1    Nistica's interrogatory responses further confirm that there are no relevant differences for

2    the asserted patents within the ▮▮▮▮▮ family.  For example, Nistica acknowledges ▮▮▮

3    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In

6    addition, Nistica's noninfringement arguments do not differ at all among the various products in

7    the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    Similarly, with respect to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which were included in the December

11   Contentions.  *See* Exs. 3, 83.  As Todd Swanson testified, ▮▮▮▮▮▮▮▮

12   ▮▮▮▮▮▮▮▮▮▮▮[14] (i.e., Ex. 40 at 142:17-24 (Apr. 29, 2015

13   Swanson Dep. Tr.). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20   ▮▮▮▮▮▮▮

21   Also, the infringement analysis for ▮▮▮▮▮▮▮▮▮▮▮▮

22   ▮▮▮▮▮▮▮▮▮▮▮. In relevant part, the products share the same

23   optics and electronics configurations.  *See e.g.,* Ex. 3 at 5, 7, 20, 22, 39 41.  The only relevant

24

25   12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28

1    difference between ████████████████████████████████████████.

2    *See id.* at 17-18, 19, 36, 38, 54, 56, 68-70, 84-85, 107-108.  As discussed below, the source code

3    citations merely fill in detail; thus Nistica will suffer no prejudice due to those additions.

        **ii.    Nistica Will Not Suffer Undue Prejudice from the Addition of Facts Relevant to the '833 Patent.**

6          Nistica will not suffer any prejudice resulting from Finisar's amended contentions for the

7    '833 patent.  As an initial matter, the addition of facts supporting the electrical and software

8    aspects of the '833 patent contentions largely provide additional support to the theories of

9    infringement previously being asserted by Finisar, in its December Contentions.

10   Nistica will not suffer any prejudice from the addition of source code citations to Finisar's

11   infringement charts.  In nearly every respect, Finisar's supplemental source code citations do not

12   constitute new theories of infringement; they merely supplement the claim charts with

13   information that was learned after Nistica's May 13 and 28 productions of source code and the

14   subsequent June 25 deposition of da Silva.  *See supra* Section II.C.  Likewise, the electrical

15   schematics that are now being cited by Finisar—which were produced after Finisar's December

16   Contentions—support theories of infringement against Nistica's line cards that were previously

17   accused of infringement.  In addition, Finisar cited some source code in its December

18   Contentions that runs on the ████████████████.  *See supra* Section II.C.  Thus, although

19   Finisar called out the incorrect processor by name in certain places, since Finisar pointed to code

20   that runs on the correct processor, and since Finisar pointed to the correct processor at least in

21   claim 18 of the MEMs chart ████████████████████████████

22   Nistica clearly knew since December that ████████████████ was implicated by

23   Finisar's contentions.  Similarly, although Finisar identified source code relevant to ████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████████.  Thus, Nistica was on notice of the

26   programmatic-based user interface theory as well.

27         Similarly, Nistica has known since Finisar served its December contentions that Finisar

28   intended to assert the '833 patent against the ████████████████████  And because

1   Nistica knew that ████████████████████████████████████████

2   ████████ was inadvertently included in the wrong chart since Finisar served its December

3   Contentions.  While Finisar acknowledges that it made an honest mistake, there was no

4   gamesmanship involved and the mistake was rectified as soon as Finisar became aware of it.

5   Lahav Decl. ¶ 3-4.  Courts in this district have permitted a party to amend its contentions when

6   the movant made an honest mistake or when the request to amend did not appear to be motivated

7   by gamesmanship.  *See Apple*, 2012 U.S. Dist. LEXIS 163739, at *24-25.

8          To the extent that Nistica does claims undue prejudice with respect to the amendments of

9   the '833 patent contentions, it is of Nistica's own making.  Nistica provided piecemeal and late

10  discovery, including producing illegible schematics, producing incomplete source code, and

11  delaying depositions until late in discovery that made it prohibitively difficult for Finisar to

12  amend its contentions earlier. *See supra* Section II.

13              **iii.    Nistica Will Not Suffer Undue Prejudice from the Addition of Facts**
                          **Relevant to Finisar's Willfulness Allegations**
14

15         Nistica will not suffer any prejudice from the addition of facts related to Finisar's

16  allegations of willful infringement.  There is no change in Finisar's theory; rather, Finisar merely

    proposes to supplement its contentions with facts that Finisar first learned from Nistica in its
17
    latest interrogatory response to regarding knowledge of Finisar's patents, information that Nistica
18
    had not disclosed to Finisar until serving its Second Supplemental Interrogatory Responses to
19
    Interrogatory No. 3.  Ex. 63.  This amendment will come as no surprise to Nistica, who has
20
    known at least since Finisar first served its Preliminary Infringement Contentions on December
21
    23, 2013, where Finisar initially asserted that Nistica's infringement was willful.  Ex. 77.  Nistica
22
    has all the facts necessary to defend against this claim in its possession and will require no new
23
    discovery Finisar's amendment were granted.
24
           Finally, trial is not scheduled until February 2016 (and may be pushed back to March
25
    2016).  Although Nistica will not need any additional discovery if Finisar's amendments were
26
    granted, to the extent the Court finds that Nistica needs any additional discovery—which it does
27
    not— there is plenty of time between now and trial to conduct limited discovery on these issues.
28

Dated:  July 29, 2015                                  Respectfully submitted,

                                                       /s/ *Tigran Vardanian*
                                                       Tigran Vardanian

                                                       David C. Radulescu, Ph.D. (*pro hac vice*)
                                                       david@radulescullp.com
                                                       Tigran Vardanian (*pro hac vice*)
                                                       tigran@radulescullp.com
                                                       Etai Lahav (*pro hac vice*)
                                                       etai@radulescullp.com
                                                       Robin M. Davis (*pro hac vice*)
                                                       robin@radulescullp.com
                                                       Daniel Kesack (*pro hac vice*)
                                                       daniel@radulescullp.com
                                                       RADULESCU LLP
                                                       The Empire State Building
                                                       350 Fifth Avenue, Suite 6910
                                                       New York, NY 10118
                                                       Telephone: (646) 502-5950
                                                       Facsimile: (646) 502-5959

                                                       Christopher J. Cox (151650)
                                                       chris.cox@weil.com
                                                       WEIL GOTSHAL & MANGES LLP
                                                       201 Redwood Shores Parkway
                                                       Redwood Shores, CA 94065
                                                       Telephone: (650) 802-3029
                                                       Facsimile: (650) 802-3100

                                                       **Attorneys for Plaintiff**
                                                       **FINISAR CORPORATION**