1  CHRISTOPHER J. COX (BAR NO. 151650)
   Email: chris.cox@weil.com
2  WEIL, GOTSHAL & MANGES LLP
   201 Redwood Shores Parkway
3  Redwood Shores, CA 94065
   Telephone: (650) 802-3029
4  Facsimile: (650) 802-3100

5
   DAVID C. RADULESCU, PH.D. (*pro hac vice*)
6  Email: david@radulescullp.com
   TIGRAN VARDANIAN (*pro hac vice*)
7  Email: tigran@radulescullp.com
   ETAI LAHAV (*pro hac vice*)
8  Email: etai@radulescullp.com
9  ROBIN M. DAVIS (*pro hac vice*)
   Email: robin@radulescullp.com
10 DANIEL KESACK (*pro hac vice*)
   Email: daniel@radulescullp.com
11 RADULESCU LLP
   The Empire State Building
12 350 Fifth Avenue, Suite 6910
13 Telephone: (646) 502-5950
   Facsimile: (646) 502-5959
14
   *Attorneys for Plaintiff*
15 *FINISAR CORPORATION*

16

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>NISTICA INC., a Delaware corporation,<br><br>Defendant. | No. 5:13-cv-03345-BLF<br><br>**PLAINTIFF FINISAR CORPORATION'S REPLY IN SUPPORT OF ITS SECOND MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS**<br><br>**REDACTED PUBLIC VERSION OF DOCUMENT SUBJECT TO FINISAR'S MOTION TO SEAL**<br><br>Date: September 3, 2015<br>Time: 9:00 a.m.<br>Place: San Francisco Courthouse<br>      Courtroom F<br>Judge: Hon. Jacqueline Scott Corley |

**TABLE OF CONTENTS**

I.    Introduction ...........................................................................................................................1

II.   Argument ...............................................................................................................................1

    A.   Finisar Has Good Cause for Its Amendments to the '833 Contentions ...........................1

        i.    Processor Amendment.................................................................................................1

        ii.   Source Code Amendments .........................................................................................5

        iii.  Other Amendments.....................................................................................................9

    B.   Finisar Has Good Cause to Add the Additional Products.............................................10

    C.   Finisar Has Good Cause to Amend its Willfulness Contentions ..................................12

    D.   Finisar Has Always Accused Nistica's Line Cards of Infringing the '687, '740, '599 and '980 Patents........................................................................................................14

III.  Nistica Improperly Moves the Court to Continue the Date for Serving Rebuttal Expert Reports.................................................................................................................................15

IV.   Conclusion...........................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*,
  2007 WL 716131 (N.D. Cal. Mar. 2, 2007) ................................................................................1

*Fitness Anywhere LLC v. Woss Enterprises LLC*,
  2015 U.S. Dist. LEXIS 707709 (N.D. Cal. June 1, 2015) ..........................................................1

*Google, Inc. v. Netlist Inc.*,
  2010 WL 1838693 (N.D. Cal. May 5, 2010) .............................................................................7

*Sandoval v. Cnty. of Sonoma*,
  2015 WL 163544 (N.D. Cal. Jan. 12, 2015) ..............................................................................1

**Rules**

L.R. 3-4(a) .........................................................................................................................................7

L.R. 6 ........................................................................................................................................1, 15

L.R. 7-3(a) .........................................................................................................................................1

Fed. R. Civ. P. 30(b)(6) ....................................................................................................................7

**I.      Introduction**

Nistica's belated Opposition[1] is filled with much rhetoric and sharp language[2] but fundamentally ignores the relevant facts. Finisar diligently pursued the relevant facts in the face of Nistica's intransigent and often misleading approach to discovery. Infringement contentions are not intended to be "a straitjacket into which litigants are locked." *Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, No. C 06-04206 WHA, 2007 WL 716131, at *2 (N.D. Cal. Mar. 2, 2007). This is especially so when the plaintiff is not able "to get access to the necessary information because it is hidden from view (for example, source code)." *Fitness Anywhere LLC v. Woss Enterprises LLC*, Case No. 14-cv-01725-BLF, 2015 U.S. Dist. LEXIS 707709, at *3 (N.D. Cal. June 1, 2015). Finisar methodically sought, assimilated, interpreted, and synthesized the discovery provided by Nistica as it was provided—in most cases relevant to this Motion not until the last two months of discovery. Finisar absorbed the new information as quickly as possible (in the midst of a busy deposition schedule, post-discovery motion practice, and analyzing newly-produced source code) and moved expeditiously to amend its contentions. Perhaps most importantly, Nistica will suffer no prejudice from Finisar's amendments because they seek to clarify and provide detail on theories that were disclosed long ago—a point that Nistica barely challenges. Thus, the Court should grant Finisar's Motion.

**II.     Argument**

   **A.     Finisar Has Good Cause for Its Amendments to the '833 Contentions**

          **i.      Processor Amendment**

---

[1] Nistica's opposition brief was filed a day late. Under L.R. 7-3(a), Nistica's Opposition was due on Wednesday, August 13, but Nistica filed it on Thursday, August 14. Nistica did not request a stipulated extension from Finisar or move the Court for any such extension as required by L.R. 6. Further, Nistica provides no excuse or explanation for its delayed filing. Thus, it is within the Court's discretion to not consider Nistica's late-filed opposition. *Sandoval v. Cnty. of Sonoma*, No. 11-CV-05817-TEH, 2015 WL 163544, at *3 (N.D. Cal. Jan. 12, 2015) (refusing to consider evidence filed one day late). Given the many other procedural defects in Nistica's Opposition—including the failure to meet and confer on two embedded cross motions (*see infra* Sections II.D and III) and its failure to follow L.R. 6-3 (*see infra* Section III)—and Nistica's history of violating the rules of this Court (*see, e.g.,* Ex. 84 (7/21/14 Hearing Tr.) at 32:25-35:25), Finisar asks the Court to disregard Nistica's late-filed Opposition to Finisar's Motion.

[2] Nistica baselessly accuses Finisar of misrepresenting cases, Opp. at 1, n.1, yet is unable to provide a single such example in Finisar's briefing of the present motion.

---

FINISAR'S REPLY IN SUPPORT OF ITS SECOND MOTION FOR LEAVE TO AMEND           1

1  The asserted claims of the '833 patent require, in relevant part, "a processor for
2  processing a channel monitor signal from the channel monitor, and providing the feedback
3  processor signal to the equalization filter." Nistica has always known that there is ▮
4  ▮
5  ▮ Indeed,
6  Nistica admits that ▮
7  ▮
8  ▮ Opp. at 8. This Motion should not be decided based on a game of
9  "gotcha." Instead, the Court should weigh Finisar's diligence (as demonstrated in its Opening
10 Brief and below) against the utter lack of prejudice to Nistica from the processor amendment.
11    Nistica's Opposition ignores the fact that, although Finisar pointed to the ▮
12 ▮ in its contentions, it also put Nistica on notice that its theory was based on ▮
13 ▮ Nistica does not dispute that for the "processor" limitation, Finisar
14 identified source code in the December Contentions that runs on ▮ for the "processor"
15 limitation. Ex.[3] 82 at 36-40; Ex. 83 at 17-18. Nor does Nistica dispute that Finisar's contentions
16 cited a figure that shows ▮ Ex. 82 at 58. Indeed, as
17 Nistica points out, in the discussion of the "processor" limitation of Finisar's contentions, there
18 is explicit reference to both the ▮ Ex. 82
19 at 37; Opp. at 9. Finisar's December Contentions also cited the Zynq ("main FPGA") in the
20 following ▮

24 ▮ And as Nistica repeatedly emphasized in its Opposition, the documents cited in
25 Finisar's December Contentions mention ▮ in several places. Opp. at 8-10. Thus,
26

---

27 [3] References to "Ex." in this brief identify numbered exhibits to the First Declaration of Etai
   Lahav submitted with Finisar's Opening Brief (Exs. 1-83) or the Second Declaration of Etai
28 Lahav submitted herewith (Exs. 84-99).

1 | Nistica can hardly complain that it was not on notice of a ■■■.

2 |     Indeed, as recently as June 8, 2015, when Nistica served its non-infringement contentions,
3 | it was clear that Nistica formulated its non-infringement positions in view of the ■■■. For
4 | example, Nistica states that, ■■■
5 | ■■■
6 | ■■■
7 | Ex. 61 at 76. In order to make this statement, Nistica must have considered both the ■■■
8 | ■■■
9 | ■■■
10 | ■■■ by virtue of reviewing the
11 | cited source code in Finisar's December Contentions and staked out its non-infringement
12 | positions with that code and functionality in mind:
13 | ■■■
14 | ■■■
15 | ■■■
16 | Ex. 61 at 76.[4] Moreover, in its June contentions, Nistica contended that every limitation of
17 | asserted claims 1 and 18 is missing from the accused products. *Id.* at 67-90. Thus, Nistica's
18 | argument that it would be prejudiced if the amendment were allowed —including by having to
19 | rework its non-infringement theories— is demonstrably false.
20 |     Finisar diligently reviewed Nistica's productions as they were produced, most of them
21 | with great delay.[5] In April this Court held that, "Nistica's delayed production of highly technical
22 | documents changed the landscape of the litigation, and provided good cause for Finisar to amend
23 | its contentions [in December 2014] to include additional technical detail about Nistica's

---

[4] ■■■

[footnote continues] After missing its initial deadlines to produce required technical information concerning the accused products, the court ordered new production deadlines in April and May 2014. (Dkt. Nos. 60, 93), but Nistica continued to produce large volumes of its technical documents through May 2015.

1  products." See Dkt. No. 204 at 6-7. As demonstrated in Finisar's Opening Brief, Nistica's
2  behavior of delayed productions and disclosure—including of witnesses—continued well into
3  2015. Finisar did not sit idly by as Nistica made late production after production of technical
4  documents. Finisar did what it could to assimilate the relevant information as it came in.
5       Nistica makes much of its production of schematics.[6] However, upon inspection, the
6  actual documents belie much of its arguments. Nistica claims to have produced electrical
7  schematics for ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ by May 28, 2014. Opp. at 8; Korell Decl.
8  ¶ 18. As an initial matter, it is undisputed that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
9  ▬▬▬▬ Ex. 70 at NIST01532143 ▬▬▬▬▬▬▬▬▬▬▬▬▬ So the idea that its
10 schematic was produced then is nonsensical. Moreover, the six schematics produced in that time
11 frame for ▬▬▬▬▬▬▬▬▬ line cards contain so many document errors, that they
12 appeared as junk documents and could not be relied upon. See e.g., Ex. 85.[7] Nistica did not
13 produce any other schematics for these products until March 2015. Korell Decl. ¶ 18. But these
14 were largely illegible. For example, the schematic produced at NIST001303336 was determined
15 by Finisar's counsel to be the best representative among the March schematics and was marked
16 as Exhibit 8 to the Pepsin deposition, but the witness could not effectively testify about it. Ex.
17 86; Ex. 87 at 90:7-17; 93:6-14 (Pepsin Dep. Tr.) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
18 ▬▬▬▬ Nistica first produced legible ▬▬▬▬▬▬ at the Pepsin deposition on May 21,
19 2015. Ex. 87 at 63:12-18; 107:22-108:1(Pepsin Dep. Tr.).
20      For the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ , Nistica admits that it did not
21 produce a single electrical schematic before March 2015. Opp. at 8; Korell Decl. ¶ 20. But much

---

[6] Nistica neglects to inform the Court that its May 2014 schematics were buried among 574,755 pages of documents, the September 2014 schematics were buried in among 103,564 pages of documents; and the March 2015 schematics were buried among 299,300 pages of documents. Second Lahav Decl. ¶¶ 2-4. These documents were not easily identifiable by keyword searching. For example, the word "schematic" returns 6,800 documents in Nistica's production. Second Lahav Decl. ¶ 5.
[7] Ex. 85 is representative of five of the six schematics produced in May 2014. The last schematic, Ex. 88, is a slight improvement over the others, but only contains a barely legible block diagram, with the rest of the 92-page document unusable. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ex. 87 at 225:1-5 (Pepsin Dep. Tr.).

---

FINISAR'S REPLY IN SUPPORT OF ITS SECOND MOTION FOR LEAVE TO AMEND      4

1 like the March ▮▮ schematics, these documents were largely illegible. And like the ▮▮
2 schematics Finisar's counsel marked what was determined to be the best representative of the
3 relevant schematics at the Pepsin deposition, but the witness could not effectively testify. *See*
4 *e.g.* Exs. 89, 90; Ex. 87 at 70:6-71:21; 74:23-75:3 (Pepsin Dep. Tr.). Nistica first produced
5 legible ▮▮ schematics at the Pepsin deposition. Ex. 87 at 106:24-107:12 (Pepsin Dep. Tr.).[8]

6     Incredibly, Nistica argues that counsel for Finisar could have just asked Dr. Strasser,
7 "Nistica's 30(b)(6) witness on design, components and functionality of Nistica's products,"
8 during his November 20-21 deposition about Nistica's processors. Opp. at 10. In fact, Finisar
9 did ask those questions ▮▮
10 ▮▮
11 ▮▮
12 ▮▮
13 ▮▮
14 Ex. 95 at 527:15-528:5 (Strasser Nov. 20, 2014 Dep. Tr.). Indeed, when asked during his
15 deposition in May to ▮▮
16 ▮▮
17 ▮▮ Ex. 91 at 741-744 (Strasser May 13, 2015 Dep. Tr.); Ex. 92 (Strasser Ex. 26).
18     In sum, Finisar seeks to clarify that ▮▮
19 ▮▮ was included in Finisar's December contentions as described above,
20 this clarification does not amount to a change in theory. And since Nistica's non-infringement
21 contentions already ▮▮ into account, it will not suffer any undue prejudice.

22     **ii.**    **Source Code Amendments**
23     Nistica's argument regarding the addition of source code citations to the contentions is

24

---

25
26 [8] Nistica suggests that the illegible schematics become legible when printed on 11x17 paper. Opp at 10. Not so. Finisar actually printed the relevant schematics ahead of the Pepsin deposition on both 8.5 x 11 and 11 x 17 paper and determined otherwise. *See* Ex. 87 Pepsin Dep.
27 71:25-72:6 ▮▮
28 ▮▮

1  replete with misrepresentations. Finisar diligently pursued source code discovery, including the
2  deposition of Nistica's source code engineer, and once that finally took place in—a day before
3  fact discovery close *due to Nistica's delay*—Finisar was finally able to appreciate the
4  organization of Nistica's code and fill in source code details. Critically—and Nistica makes no
5  showing otherwise—the source code does not change any theory, but rather provides the detail
6  underlying the relevant operation of Nisitca's processor and its management of the OCM
7  functionality.

8  At the outset of this case, it was not clear that source code was strictly necessary evidence
9  to prove infringement. The relevant infringing functionality might have been proven through
10 other technical documents. However, Finisar was in no position to assess whether this was the
11 case until it had a meaningful production of Nistica's technical documents, which did not occur
12 until October 2014. Dkt. No. 204 at 6. As Finisar's counsel was beginning to realize the possible
13 necessity of source code evidence, it received an email from Nistica's counsel in late October
14 2014 stating that certain source code was made available for inspection in Palo Alto but
15 simultaneously raising the issue about the lack of a negotiated protective order regarding, *inter*
16 *alia*, source code. Korrell Decl. Ex. 15 at 3 ("I have attached is a revised draft of the protective
17 order, which adds source code protections to the previous draft of the protective order."). Thus,
18 Nistica's suggestion that the source code was "produced" in October 2014 is disingenuous at
19 best. Indeed, after Nistica ultimately agreed to produce its source code in its counsel's New York
20 office, it still refused to allow inspection before the stipulated Protective Order was finalized.
21 Korrell Decl. Ex. 17 at 7 ("We will also make the source code available in our New York office.
22 There are still a few issues to resolve."). Ultimately, Nistica did not allow Finisar to inspect its
23 code until mid-December 2014. Korrell Decl. Ex. 17 at 1.[9]

24 There is no dispute that Finisar reviewed the code as soon as it was finally made available
25 in December. Yet, Nistica inexplicably argues that the delay between the July 2013 filing of this

---

[9] Indeed, nearly an extra month of delay in the source code production was caused by Nistica when it sought to renegotiate a number of agreed provisions in the draft protective order. Korrell Decl. Ex. 17 at 3-6.

lawsuit and December 2014—when Nistica first produced source code—should count against Finisar's diligence.[10] But this Court has already found that Finisar met the good cause standard for its December Contentions, which cited source code for the first time, in view of Nistica's dilatory production of technical documents. Dkt. No. 204 at 6-7.

As explained it its Opening Brief, Finisar diligently pursued source code discovery once it was made available, including inspections on multiple days in December 2014 and January 2015. Goldberg Decl. ¶¶ 3-4. Finisar followed those inspections with a request for emails from Nistica's software engineer, James da Silva, shortly after the Court's December 12, 2014 instructions on email discovery. Dkt. No. 134; Ex. 50. The bulk of da Silva's email was produced on March 16, 2015, and Finisar requested his deposition on March 24, 2015. Lahav Decl. ¶6; Ex. 51. When Nistica offered May 15 for da Silva's deposition, Finisar accepted right away. Exs. 52-53. Thus, Nistica's accusation that Finisar rejected the May 15 date is plainly false. Opp. at 16.[11] It was only when Nistica produced more source code on May 13—two days before da Silva's deposition—that Finisar was forced by Nistica to reschedule so it could have adequate time to review the May 13 code production. Ex. Korrell Decl. Ex. 25. Then, Nistica produced even more source code on May 28. *See* Goldberg Decl. ¶ 7; Ex. 49. As a result, the deposition of da Silva and Nistica's 30(b)(6) deposition on source code topics had to be further postponed. Da Silva's deposition was taken on June 25, the day before fact discovery closed, due to Nistica's repeated late code productions.[12]

---

[10] Nistica conveniently ignores its obligation to have produced its source code along with its initial invalidity contentions under Patent L.R. 3-4(a).

[11] In a bizarre move, Nistica accuses Finisar of claiming that Nistica did not designate da Silva for any FRCP 30(b)(6) topics before his scheduled deposition on May 15. Opp at 16, n. 10. Finisar made no such claim. To the extent there could be any confusion by Finisar's statements, it is immediately alleviated by the relevant correspondence submitted by Finisar showing Nistica's offer of the May 15 date for the da Silva deposition on April 15, Finisar's acceptance on April 21, and the 30(b)(6) designation on May 3. Exs. 52-54.

[12] Nistica relies on the *Google, Inc. v. Netlist Inc.* case in an attempt to excuse its behavior and blame Finisar for not moving to compel da Silva's deposition. Case No. C08-cv-4144 SBA, 2010 WL 1838693 (N.D. Cal. May 5, 2010). But the *Google* case involved a patentee attempting to add six new patent claims to the case at the close of fact discovery. *Id.* at *3. Here, Finisar is not seeking to add claims or change its theories, rather to add more detail and clarify its contentions. Moreover, it is not clear when Nistica suggests Finisar should have moved the Court. The code was produced in December, Finisar asked for da Silva's e-mail in January,

---

FINISAR'S REPLY IN SUPPORT OF ITS SECOND MOTION FOR LEAVE TO AMEND　　　7

1  Also explained in Finisar's Opening Brief is the importance of the information learned as
2  a result of the ████████████████████████████████████████
3  ████████████████████████████████████████. Opp. at 13-14.[13] However, Nistica's
4  proof falls short. Nistica shows comparisons between code produced in May 2015 in a ███
5  ████████████████████████████████████████
6  ████████████████████████████████████████
7  ████████████████████████████ Of course, Nistica cannot perform such a
8  comparison because that folder did not exist in the December production.[14]
9  Moreover, Nistica's source code comparison in Bennet Decl. Ex. A only highlights how
10 the source code production in December was misleading. For example, Nistica shows that a ██
11 ████████████████████████████████████████
12 ████████████████████████ Bennett Decl. Ex. A at 23. As
13 da Silva testified, "████████████████████████████████████
14 ████████████████████████████████████████
15 ██████████████████. Op. Br. at 5. But █████████████████
16 ██████████████████. Ex. 93, Wagener Dep. Tr. at 59:20-22.
17 Thus, in this example we confusingly have code for a █████████████████
18 ████████████████████████████████ This is precisely the
19 confusion that required the production of the trunk code and da Silva's deposition to clarify the

---

received it in March, asked for the deposition in March, was offered a date in May, and accepted it only to be forced to cancel it by Nistica's last minute production of new source code, *twice*. Finisar proceeded methodically and appropriately in face of these late disclosures.

[13] Putting aside the issue that Nistica did not produce any code until December 2014, despite the claims it was available in October 2014 (see discussed above), ████████████████████
████████████████████████████ See Bennett Decl. Exhibit A. Thus, this code could not have been on the computer in October 2014.

[14] Nistica misrepresents the comments of Finisar's counsel about the source code during the meet and confer about this motion. Opp. at 15. During that conference, Mr. Lahav did not agree that all of the code cited in the contentions was produced in 2014. Second Lahav Decl. ¶ 7. Instead, Mr. Lahav stated that although it may be true that there is code cited in the contentions that was present on the computer in December 2014, the justification for first citing such code at this juncture is what was learned from da Silva about the organization of the code and how it related to each product. *Id.*

code organization.[15] The problem was not how the code itself functioned, but rather how the code that was produced (in the manner that it was) actually related to the products.[16]

Finisar's citation to source code provides further detail and evidence to the theories already set forth in December but does not change them. As noted above, the code supplies the detail underlying the relevant functionalities. Nistica does not show otherwise. Instead, Nistica claims that Finisar changed its theory because Finisar deleted "every previous source code citation" and inserted "completely new citations to source code files." Opp. at 17. But when considering the manner of Nistica's code production, under Nistica's view of the world this is not true at all. For example, Finisar ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████ Ex. 83 at 10; Ex. 3 at 33; Ex. 6 at 44. Thus, this is not a deletion. Since Finisar has not changed its theory—and, as discussed above, Nistica had already analyzed the source code in connection with its non-infringement contentions—Nistica will not suffer prejudice from the addition of these details.[17]

    iii.    **Other Amendments**[18]

Although not explicitly addressed in the Opposition Brief, Nistica refers the Court to a table in the Korrell Declaration that purports to list the ways in which Finisar "globally changed its infringement theories." Opp. at 17; Korrell Decl. ¶ 35. Those allegations are mostly addressed above, but there are two more that warrant additional comment.

Finisar has not changed its theory on the channel monitor. Nistica claims that for the LCOS line cards, the December contentions alleged that ███████████████████████████████

---

[15] ███████████████████████████████████████████████████████████████████████████ This is the reason that the spreadsheet that purported to associate accused products with corresponding source code directories, Opp. at 14, was of limited utility.

[17] Nistica complains that Finisar filed a different set of contentions on July 29 than it shared with Nistica on July 20 and July 23. Opp. at 18. As explained in the Opening Brief, Finisar disclosed its proposed contentions on July 20, and then, in response to Nistica's request, amended the claim charts for the '833 on July 23 to provide more detail on the source code. Op. Br. at 4. There were no differences between the July 23 and July 29 claim charts.

[18] ███████████████████████████████████████████████████████████████████████████

---

FINISAR'S REPLY IN SUPPORT OF ITS SECOND MOTION FOR LEAVE TO AMEND    9

1  █████████████████████████████████. Korrell Decl. ¶ 35. Nistica is
2  intentionally confusing the issues. As can be seen in Finisar's contentions, Finisar's theory has
3  always focused on ██████████████████████████████. See Ex. 83 at
4  15-17; see also Dkt. No. 89-4 at 11. ██████████████████████████
5  ████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████
9  ██████████████████████████████████████
10     With respect to the user interface allegations, as explained in Finisar's Opening Brief,
11 Finisar disclosed ████████████████████████████████████
12 █████████████████████████. Op. Br. at 13. During the da Silva deposition,
13 Finisar learned for the first time that the ████████████████████████
14 ████████████████████████████████████████████████████
15 ██████████████████████ Id. Thus, Finisar seeks to incorporate this newly-
16 acquired information into its contentions. For all the reasons that Finisar was diligent in seeking
17 source code evidence, Finisar was diligent in seeking testimony from da Silva ████████
18 ███████. And since Nistica was on notice of the █████████ (which it does not contest in
19 its Opposition), Nistica suffers no undue prejudice.
20     **B.  Finisar Has Good Cause to Add the Additional Products**
21     As set out in its Opening Brief, Finisar was diligent with respect to the discovery of
22 information relevant to the several products it seeks to add to its contentions. Op. Br. at 5-10; 17-
23 19. Importantly, the ████████████████████████████████

---

[19] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

1. ▇▇▇▇
2. ▇▇▇▇. Ex. 1 at 4; see also Op. Br. at 22-23.
3. Indeed, this Court has already held that Finisar has good cause to add substantially similar
4. products, so long as it gave notice in prior contentions of its intentions to do so. Dkt. No. 204 at
5. 8. In the December Contentions, Finisar used the exact same language that the Court approved in
6. its April Order, to notify Nistica that it was accusing substantially similar products. Ex. 79 at 4.
7. Nistica does not contend (nor can it) that ▇▇▇▇
8. ▇▇▇▇
9. ▇▇▇ Thus, there is good cause to add these products.
10. In a similar vein, the ▇▇▇▇
11. ▇▇▇▇
12. ▇▇▇▇
13. ▇▇ ▇▇▇▇
14. ▇▇▇▇
15. ▇▇▇▇
16. ▇▇▇▇ Robinson Decl. ¶¶ 6-7.[21] Nistica does not claim that this added
17. feature affects the infringement analysis because it does not. And despite Nistica's protestations
18. of the characterization of the ▇▇▇▇
19. ▇▇▇▇
20. ▇▇▇▇
21. ▇▇▇▇.
22. Dkt. No. 204 at 8. There is no reason to depart from that holding.
23. With respect to the final product, the ▇▇▇▇ Nistica's sole
24. _____
25. ▇▇▇▇
26. [21] It is worth noting that Mr. Robinson testified that his role at the company since March 2013
27. has essentially been limited to "collect[ing] data" from the company's databases. Ex. 99 at
16:11-14; 27:17-28:3; 35:23-39:21. Thus, his declaration regarding engineering efforts invested
in the Minkowski-based Bolgheri line card is not consistent with his testimony under oath. Id. at
28. 54:5-11.

1 | argument is that Finisar was not diligent because it waited from ▮▮▮
2 | ▮▮▮
3 | ▮▮▮. Opp. at 21. But Nistica ignores the facts laid out in Finisar's Opening Brief: ▮▮▮
4 | ▮▮▮
5 | ▮▮▮
6 | ▮▮▮
7 | ▮▮▮
8 | ▮▮▮
9 | ▮▮▮. Opening Br. at 10. This demonstrates Finisar's
10 | diligence in learning the facts. Thus, Finisar's diligence in filing this motion in July after
11 | learning the key facts in May and June is supported by this Court's holding that amending
12 | contentions two months after receiving technical information is diligent. Dkt. No. 204 at 6.
13 |       Nistica's claimed prejudice—to the extent there is any—is not undue. The limited
14 | discovery required on these new products—production of a few technical documents and
15 | supplementation of a few interrogatory responses will not take any meaningful time or effort.[22]
16 | The substantive arguments about these products are the same; as a result, Finisar's expert reports
17 | addressed these products and Nistica's should as well. No change to the schedule is required.

### C.   Finisar Has Good Cause to Amend its Willfulness Contentions

Finisar's amendments to its willfulness contentions are the product of its diligence, which continued through Nistica's Court-ordered 30(b)(6) deposition **on August 11, 2015** on willfulness issues. ▮▮▮
▮▮▮
▮▮▮. Opp. at 23. But Nistica conveniently ignores that Finisar disclosed this theory in its December Contentions. Ex. 79 at 8. And the new facts added for the '740, '687, '980, and '599 patents, were only learned in May 2015 or later. *See* Op. Br. at 15-16, 25.

---

[22] In its Opening Brief, Finisar renewed its motion to compel technical documents and information that the Court denied without prejudice to renewal in the event Finisar is able to demonstrate good cause to amend its contentions. Dkt. No. 244 at 17. Nistica did not oppose this request.

Nistica does not deny that it waited until On May 11, 2015 to provide a substantive response to an interrogatory served in **October 2013** to provide information that was years old. *Id.* at 15. More importantly for the '599 patent, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



With respect to Nistica's knowledge of the '740 patent, it was not until the May 2015 and the subsequent deposition of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Ex. 93 at 205:11-208:25 (Wagener Dep. Tr.).

With respect to the '687 patent, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Opp. at 24. Instead Nistica wants this Court to hold that a two month delay in filing this Motion when the parties were engaged in almost daily depositions (and sometimes more than one deposition per day), is not sufficient diligence. But as stated above, this Court has already found that a two-month delay is not lack of diligence. Dkt. No. 204 at 6. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Finally, Nistica cannot claim prejudice when the entire universe of documents, facts, and

---

[23] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

evidence is and was always within its control.

**D.     Finisar Has Always Accused Nistica's Line Cards of Infringing the '687, '740, '599 and '980 Patents**

Nistica incorrectly claims Finisar did not accuse ███████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

Importantly, Finisar has explicitly accused each of the ███████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████ The following table summarizes the relevant contentions showing the line cards are clearly accused:[25]

| Module | Line card | Patents |
|--------|-----------|---------|
| ███ | ███ | ███ |
| ███ | ███ | ███ |
| ███ | ███ | ███ |
| ███ | ███ | ███ |

Thus, Nistica's feigned surprise at the list of accused products in Dr. Hall report is disingenuous.

Finally, Nistica's requested relief in its opposition is improper. If Nistica believes Dr. Hall's expert report includes more products that were accused in Finisar's contentions (which it

---

[25] Ex. 79 at 2-4; Ex. 1 at 4; Ex. 15 at 112:2-7; 119:12-120:3; 121:7-11 (Simovitch Dep. Tr.); Ex. 98 at 3.

does not), Nistica's remedy is a motion to strike, not a request for clarification in the context of Finisar's Motion. Indeed, contrary to the Court's explicit admonishment, Nistica has failed to even meet and confer on this requested relief. Dkt. No. 181 at 8. To the extent the Court is inclined to issue any clarification, it should clarify for Nistica that Finisar's contentions mean what they say: line cards carrying an accused WSS are accused as well.

### III. Nistica Improperly Moves the Court to Continue the Date for Serving Rebuttal Expert Reports

Nistica improperly moved the Court for an extension to file its rebuttal expert reports. Opp. at 24. At the outset—and contrary to this Court's regular practice and explicit instructions in this case—Nistica did not seek a telephonic meet and confer on this issue. Second Lahav Decl. ¶ 6; Dkt. No. 181 at 8 ("[T]he Court admonishes both parties that, far from mere suggestions, the procedures set forth in the Court's Standing Order are mandatory requirements. To that end, when a dispute arises the parties must engage in a good faith meet and confer process via telephone or in person."). For this reasons alone the motion should be denied. Nistica also failed to meet many of the requirements of Local Rule 6-3—Nistica did not (i) describe the efforts it made to obtain a stipulation to the time change, (ii) disclose all previous time modifications in the case, whether by stipulation or Court order; and (iii) describe the effect the requested time modification would have on the schedule for the case. L.R. 6-3(a)(2), (5), (6).

On the merits, the extension Nistica seeks is unwarranted, and is merely designed to delay the schedule and the trial. The fact that Nistica did not properly confer on this motion confirms Nistica's apparent desire to create uncertainty in the schedule instead of engaging in a constructive discussion with Finisar. Importantly, as detailed in Finisar's Opening Brief and above, there are no surprises for Nistica in Finisar's proposed amended contentions; Finisar has not changed its theories. Importantly, Nistica knows the exact scope of what to respond to in its rebuttal reports—the scope of Finisar's opening reports. Nistica should not be rewarded with an extension, when Finisar's motion was necessitated by Nistica's delayed production of critical documents and key technical witnesses.

### IV. Conclusion

For the foregoing reasons, the Court should grant Finisar's Motion in its entirety.

| | | |
|---|---|---|
| 1 | Dated: August 19, 2015 | Respectfully submitted, |
| 2 | | /s/ *Tigran Vardanian* |
| 3 | | |
| 4 | | David C. Radulescu (*pro hac vice*) |
| | | david@radulescullp.com |
| 5 | | Tigran Vardanian (*pro hac vice*) |
| | | tigran@radulescullp.com |
| 6 | | Etai Lahav (*pro hac vice*) |
| | | etai@radulescullp.com |
| 7 | | Robin M. Davis (*pro hac vice*) |
| | | robin@radulescullp.com |
| 8 | | RADULESCU LLP |
| 9 | | 136 Madison Avenue, 6th Floor |
| | | New York, NY 10016 |
| 10 | | Telephone: (646) 502-5950 |
| | | Facsimile: (646) 502-5959 |
| 11 | | |
| 12 | | Christopher J. Cox (151650) |
| | | chris.cox@weil.com |
| 13 | | WEIL GOTSHAL & MANGES LLP |
| | | 201 Redwood Shores Parkway |
| 14 | | Redwood Shores, CA 94065 |
| | | Telephone: (650) 802-3029 |
| 15 | | Facsimile: (650) 802-3100 |
| 16 | | **Attorneys for Plaintiff** |
| 17 | | **FINISAR CORPORATION** |

FINISAR'S REPLY IN SUPPORT OF ITS SECOND MOTION FOR LEAVE TO AMEND    16