ROBERT F. KRAMER (Bar No. 181706)
Email: robert.kramer@dentons.com
JENNIFER D. BENNETT (Bar No. 235196)
Email: jennifer.bennett@dentons.com
RUSSELL TONKOVICH (Bar No. 233280)
Email: russell.tonkovich@dentons.com
C. GIDEON KORRELL (Bar No. 284890)
Email: gideon.korrell@dentons.com
DENTONS US LLP
1530 Page Mill Road, Suite 200
Palo Alto, CA 94304-1125
Telephone: (650) 798-0300
Facsimile: (650) 798-0310

SHAILENDRA MAHESHWARI (*Pro Hac Vice*)
Email: shailendra.maheshwari@dentons.com
DENTONS US LLP
1301 K Street, NW
Suite 600, East Tower
Washington, D.C. 20005-3364
Telephone: (202) 408-6400
Facsimile: (202) 408-6399

JOEL N. BOCK (*Pro Hac Vice*)
Email: joel.bock@dentons.com
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768 6700
Facsimile: (212) 768 6800

Attorneys for Defendant
NISTICA, INC.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NISTICA, INC., a Delaware corporation,<br><br>Defendant. | Case No. 5:13-cv-03345-BLF-JSC<br><br>**DEFENDANT NISTICA, INC.'S MOTION TO STRIKE PORTIONS OF FINISAR'S HALL AND GOLDBERG EXPERT REPORTS**<br><br>==REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED==<br><br>Date: January 7, 2016<br>Time: 9 a.m.<br>Place: San Jose Courthouse, Courtroom 3 - 5th Floor<br>Judge: Hon. Beth L. Freeman |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 2

II.   STATEMENT OF FACTS ................................................................................................. 2

III.   LEGAL STANDARD ........................................................................................................ 3

IV.   ARGUMENT ..................................................................................................................... 3

    A.   Expert Opinions Relating to Amendments to Finisar's Infringement Contentions Already Rejected by this Court Should Be Stricken ................................................ 3

        1.   New Infringement Theories for '833 Patent Should Be Stricken ................ 3

        2.   Accused Product ▮▮▮▮▮ Should be Stricken ....................................... 5

    B.   Infringement Theories Not Disclosed in Finisar's Contentions Should be Struck .. 5

        1.   The Hall Report Presents New Theories of Indirect Infringement Which Should Be Stricken for all Patents ............................................................... 5

        2.   The Hall Report's Newly Presented Theories Relating to 35 U.S.C. §271(f) Should be Stricken for all Patents .................................................. 6

        3.   The Hall Report's New Theories of Infringement for "Spatial Separating Means" of Claim 1 of the '980 Patent Should Be Stricken ........................... 6

        4.   The Hall Report's Newly Presented Theory of Infringement for Claim 14 of the '599 Patent Should be Stricken ......................................................... 8

        5.   The Hall Report's Newly Presented Theories Relating to Claims 30 and 32 of the '687 Patent Should Be Stricken ......................................................... 9

        6.   The Hall Report's Newly Presented Theories of Infringement for Claim 1 of the '740 Patent Should Be Stricken ....................................................... 10

    C.   New Accused Products in the Hall Report Should Be Stricken ............................ 11

VI.   CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Wowza Media Sys.*,
  Case No. 11-cv-02243-JST, 2014 WL 709865 (N.D. Cal. Feb. 23, 2014) ............................. 2, 3

*Avocent Redmond Corp. v. Rose Elec.*,
  No. C06–1711RSL, 2012 WL 4903278 (W.D. Wash. July 6, 2012) ......................................... 3

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l*,
  No. C 03–1431 SBA, 2006 U.S. Dist. LEXIS 90856, at (N.D. Cal. May 15,
  2006) ........................................................................................................................................ 3

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  131 S.Ct. 2060 (2011) .............................................................................................................. 5

*Mediatek Inc. v. Freescale Semiconductor, Inc.*,
  11-cv-5341 YGR, 2014 WL 2854773 (N.D. Cal. June 20, 2014) .................................... 3, 4, 5

*O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*,
  467 F.3d 1355 (Fed. Cir. 2006) ................................................................................................ 3

*Oracle Am. v. Google, Inc.*,
  2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) ...................................................................... 11

**Statutes**

35 U.S.C. § 271(a) ........................................................................................................................ 6

35 U.S.C. § 271(b) ........................................................................................................................ 6

35 U.S.C. § 271(c) .................................................................................................................... 5, 6

35 U.S.C. § 271(f) ..................................................................................................................... 5, 6

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on January 7, 2016 at 9 a.m., or as soon as counsel may be heard, in Courtroom 3 of the United States District Court for the Northern District of California, located at 280 South 1st Street, in San Jose, California. Defendant Nistica, Inc. ("Nistica"), by and through its counsel, shall and hereby does move for an order striking from Plaintiff Finisar Corporation's expert reports of Dr. Katherine Hall ("the Hall Report") and Dr. Benjamin Goldberg ("the Goldberg Report") any uses of, reliance on, and reference to theories of infringement already explicitly rejected by this Court when the Court denied Finisar's motion to amend its Infringement Contentions and other newly presented theories of infringement not previously disclosed in Finisar's Infringement Contentions. Nistica's motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Hall Report, the Goldberg Report, the Declaration of Russell Tonkovich (hereinafter "Decl."), and exhibits thereof, the Declaration of Thomas Bennett (hereinafter "Bennett Decl."), and the complete files and records of this action, any oral arguments the Court permits, and any further information that may be properly presented to the Court at or before the time this motion is deemed submitted by the Court.

## I. INTRODUCTION

On July 29, 2015, Finisar served its infringement expert reports of Dr. Hall and Dr. Goldberg on infringement ("Hall and Goldberg Reports"). On the same day, Finisar filed a motion to substantively amend its Patent L.R. Infringement Contentions.[1] On September 8, 2015, Judge Corley denied Finisar's motion as to all of Finisar's proposed amended theories of infringement for the '833 patent and Finisar's request to add Nistica's ████████ as an additional accused product. (D.I. 272) Nistica thereafter requested that Finisar drop from its Hall and Goldberg reports these infringement theories that Magistrate Judge Corley ruled Finisar cannot add to the case via amended Infringement Contentions. Finisar refused. Nistica thus moves to strike those infringement theories from Finisar's Hall and Goldberg reports, as well as certain additional new theories that Finisar put into these reports, but never previously disclosed in its Infringement Contentions.  Nistica thus requests that the following be stricken from the Hall and Goldberg Reports: 1) all theories and opinions that ████████ in Nistica's accused products meet the "processor" claim limitations of the '833 patent; 2) all theories and opinions that Finisar raised in its July 29, 2015 proposed amended infringement contentions that were not in its operative December 19, 2014 infringement contentions, except theories that Magistrate Corley specifically ordered that Finisar could use; 3) all theories and opinions relating to or relying on source code not explicitly cited in the December 19, 2014 infringement contentions; and 4) all theories and opinions that were not previously disclosed by Finisar.

## II. STATEMENT OF FACTS

Finisar's infringement contentions were served on December 19, 2014 ("Infringement Contentions "), which the Court accepted on April 29, 2015. (D.I. 204.) On July 29, 2015, more than a month *after* the close of fact discovery, Finisar filed a Second Motion for Leave to Amend its Infringement Contentions to change its theories with regard to the '833 patent and to add the NA0010011 product.  (D.I. 250.) For the '833 patent, Finisar sought to change the hardware (*i.e.*, processor) and source code on which it relies to show infringement.  The Court denied Finisar's proposed amendments to the '833 patent and to add the ████ due to Finisar's lack of

---

[1] This was more than a month after the close of fact discovery on June 26, 2015 (D.I. 214).

diligence and the prejudice to Nistica. (D.I. 272 at 9-14, 21-22.) Despite the Court's Order denying Finisar's motion to assert these new theories, Finisar refuses to withdraw these theories from the Hall and Goldberg Reports.  (*Id.*)  In addition, Finisar's Hall and Goldberg Reports included new infringement theories and additional accused products that were not disclosed in Finisar's Infringement Contentions. Nistica requests all opinions relating to these new theories be stricken.

### III.   LEGAL STANDARD

"The purpose of [Infringement Contentions] is 'to further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases.'" *Adobe Sys. Inc. v. Wowza Media Sys.*, Case No. 11-cv-02243-JST, 2014 WL 709865, at *13 (N.D. Cal. Feb. 23, 2014)(citations omitted). "The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l,* No. C 03–1431 SBA, 2006 U.S. Dist. LEXIS 90856, at * 12 (N.D. Cal. May 15, 2006); *accord O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366 & n.12 (Fed. Cir. 2006). "Once served, the infringement contentions constitute the universe of infringement theories." *Adobe,* 2014 WL 709865, at *13.  Where Courts have denied motions to amend infringement contentions presenting  new infringement theories,  reference to such proposed new theories in expert reports have been stricken. *Mediatek Inc. v. Freescale Semiconductor, Inc.*, 11-cv-5341 YGR, 2014 WL 2854773, at *3-4 (N.D. Cal. June 20, 2014); *see also Avocent Redmond Corp. v. Rose Elec.*, No. C06–1711RSL, 2012 WL 4903278, at *3 (W.D. Wash. July 6, 2012).

### IV.   ARGUMENT

**A.   Expert Opinions Relating to Amendments to Finisar's Infringement Contentions Already Rejected by this Court Should Be Stricken**

**1.   New Infringement Theories for '833 Patent Should Be Stricken**

The Court should strike the theories in the Hall and Goldberg Reports that Judge Corley ruled cannot be added into the case via amendment to Finisar's infringement contentions. *Mediatek,* 2014 WL 2854773, at *3-4. Nistica built its entire defensive case around Finisar's infringement theories stated in its Infringement Contentions. In Finisar's July 29 motion, Finisar sought to change its infringement theories by *inter alia* (1) changing its theory that the

1  "processor" limitations of the '833 Patent is met in the accused products by a ▓▓▓▓
2  ▓▓▓▓ rather than a ▓▓▓▓▓▓ and (2) changing nearly all of the source code it relies
3  upon to prove infringement for nearly every limitation in claims 1, 2 and 18 of the '833 patent.
4  (D.I. 250.) The Court denied these proposed amendments to Finisar's Infringement Contentions
5  finding a lack of diligence and prejudice to Nistica. (D.I. 272 at 7-14.) With regard to "processor"
6  amendments, the Court acknowledged that Finisar had all of the information it needed since
7  October 2014 to accuse the ▓▓▓▓▓▓ (*Id*. at 9:28-12:2.) The Court held that "Finisar
8  cannot change the processor now." (*Id*. at 11:22-23.) The Court also found "[t]here is even greater
9  prejudice here, where the motion to amend is filed after the close of fact discovery and after
10  Nistica has long relied on Finisar's naming the ▓▓▓▓▓▓ for the duration of the
11  litigation." (*Id*. at 11:26-28.) Specifically, accusing a different processor substantially changes
12  Finisar's infringement theories, changes the non-infringement analyses (as each of these
13  processors perform different functions and run different software), and changes the scope of the
14  claims thereby affecting Nistica's invalidity theories. Nistica respectfully requests that the Court
15  strike all opinions relating to the ▓▓▓▓▓▓ in the '833 portion of the Hall Report, including,
16  but not limited to, Ex. 4, Ch. 4, ¶¶29-32; Ch. 5, ¶¶31-33.  (See Bennett Decl., ¶10.)

17  Similarly, with regard to the rejected source code amendments, the Court explained that
18  Finisar "had access to Nistica's source code since October 2014," "had at its disposal the data it
19  needed to make the amendments it now requests," and that Finisar's proposed amendments to the
20  source code citations would prejudice Nistica. (*Id*. at 9:4-26.) Finisar's deletion of previous
21  source code citations and its addition of completely new source code citations means Finisar is
22  changing its infringement theory to accuse different functionality. As the Court found, the
23  addition of such new theories of infringement based on new source code is prejudicial to Nistica,
24  which had prepared its case based on Finisar's Infringement Contentions. The Hall and Goldberg
25  Reports still include these new, but impermissible, infringement theories for the '833 patent that
26  were expressly denied by Judge Corley. (D.I. 272); Bennett Decl. at ¶¶2-11. The Court should
27  strike these theories from the Hall and Goldberg reports, including, but not limited to, Ex. 4, Ch.4,
28  ¶¶ 4, 7-12, 14, 16-17, 23-33, 35-48, 50-56; Ch. 5, ¶¶ 4, 9-13, 15-16, 18-19, 24, 27-29, 31-44, 46-

Case 5:13-cv-03345-BLF   Document 291-3   Filed 10/06/15   Page 8 of 15

51; and Ex. 5, ¶¶10-43, 45-46, 49-62, 65, 68-69, 71-76, 81-82, 84-85, 104, 106, 110-129, 131, 135-213.  *See, e.g., Mediatek,* 2014 WL 2854773, at *3-4 (striking opinions from expert reports that had previously been rejected by the court in a motion to amend infringement contentions).

    **2.**    **Accused Product ▉▉▉▉ Should be Stricken**

Finisar has refused to drop ▉▉▉▉ from the Hall Report even though the Court denied Finisar's motion for leave to amend to add the ▉▉▉▉ as an accused product in its Infringement Contentions.  (D.I. 272 at 22.) The Court denied Finisar's motion because it would "unduly prejudice Nistica," given it would involve a different infringement analysis than the line cards already accused. *Id.* The ▉▉▉▉ products should be stricken from the Hall Report.  *See, e.g., Mediatek,* 2014 WL 2854773, at *3-4.

    **B.**    **Infringement Theories Not Disclosed in Finisar's Contentions Should be Struck**

        **1.**    **The Hall Report Presents New Theories of Indirect Infringement Which Should Be Stricken for all Patents**

The Hall Report ambushes Nistica with new theories of indirect infringement that are not in Finisar's Infringement Contentions. Specifically, the Hall Report puts forth a new theory of indirect infringement alleging that Nistica contributes to and induces **Fujikura Ltd.** ("Fujikura") and **Fujikura Optics of Vietnam Ltd.** ("FOV"), foreign companies with no presence or activity in the U.S., to directly infringe the patents-in-suit.  (Decl., ¶12; Ex. 4, Ch. 2, ¶¶84-96; Ch. 3, ¶¶85-97; Ch. 4, ¶¶57-70; Ch. 5, ¶¶52-64; Ch. 6, ¶¶54-66; Ch. 7, ¶¶68-82.) The Hall Report also alleges that Nistica sends "components" to Fujikura and /or FOV overseas, directs them to build the devices, and then ship the accused devices. (*Id*.) However, Finisar's Infringement Contentions do not even mention Fujikura or FOV or identify them as a direct infringer as required under the Patent L. R. (Decl., ¶13-14; Ex. 6, pp. 1-6.) Moreover, Finisar's Infringement Contentions do not identify the "components" allegedly shipped to Fujikura or FOV and do not allege that the "components" lack substantial non-infringing uses, which is required to prove contributory infringement. (*Id.*); P.L.R. 3-1(d); 35 U.S.C. § 271(c). Finisar's Infringement Contentions also do not allege any facts or theories about how Nistica allegedly meets the intent requirement for indirect infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2067-68 (2011). Given this new theory

- 5 -

NISTICA'S MOT. TO STRIKE
FINISAR'S EXPERT REPORTS
CASE NO. 5:13-CV-03345-BLF-JSC

of indirect infringement has never been asserted until the Hall Report; any reference to, or reliance on, this theory should be stricken, including, but not limited to, Ex. 4, Ch. 2, ¶¶84-96; Ch. 3, ¶¶85-97; Ch. 4, ¶¶57-70; Ch. 5, ¶¶52-64; Ch. 6, ¶¶54-66; Ch. 7, ¶¶68-82.

### 2. The Hall Report's Newly Presented Theories Relating to 35 U.S.C. §271(f) Should be Stricken for all Patents

The Hall Report presents entirely new theories of infringement under 35 U.S.C. § 271(f). (Decl., ¶15-19.) The Hall Report alleges that Nistica infringes under § 271(f) by shipping components of accused products to Fujikura, in Japan, or FOV, in Vietnam, for assembly. (*Id*.) But Finisar's Infringement Contentions **do not lay out a theory of infringement under § 271(f)**. (Decl., ¶¶15-19, Ex. 6.) Rather, Finisar's Infringement Contentions state, for each patent: "Based upon presently known information, Finisar contends that at least [asserted claim(s)] of the [Asserted Patent] have been infringed by Nistica under 35 U.S.C. 271(a)-(c) and (f)." (*Id*. at 1-2.) Finisar's Infringement Contentions (which do not mention Fujikura or FOV), do not lay out the theory described in the Hall Report that components are combined by Fujikura or FOV outside of the U.S. in a manner that would infringe the patent if that combination occurred within the U.S. and do not allege or state which components are supplied and to whom, as is required. *See* 35 U.S.C. § 271(f) (Decl., ¶18.)  Any opinions relating to these untimely allegations for § 271(f) in the Hall Report should be stricken, including, but not limited to, Ex. 4, Ch. 2, ¶¶92-96; Ch. 3, ¶¶93-97; Ch. 4, ¶¶65-70; Ch. 5, ¶¶60-64; Ch. 6, ¶¶62-66; and Ch. 7, ¶¶78-82.

### 3. The Hall Report's New Theories of Infringement for "Spatial Separating Means" of Claim 1 of the '980 Patent Should Be Stricken

The Hall Report asserts a new theory of infringement for the limitation "spatial separating means for simultaneously separating at least a first and second group of light from said series of optical signals" of claim 1. (Decl., ¶20; Ex. 4, Ch. 3, ¶¶21-28, 30-34, 36-40, 42-47, 50-56, 58-60.) Finisar's Infringement Contentions allege that the ▮▮▮▮▮ is the structure of the "spatial separating means." (Decl., ¶20; Ex. 6, Ex. F, pp. 25-38.) Then, Finisar's Infringement Contentions allege that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as shown in the diagram below from Finisar's Infringement Contentions.

███████████████████

(Decl., ¶20; Ex. 6, Ex. F, p. 30.) (emphasis added). Nistica understood that Finisar was alleging that the "first and second group of light" ███████████████████ ███████████████████ To avoid confusion, Nistica even specifically asked Finisar on January 5. 2015 what it was accusing of being the "first and second group of light." (Decl., ¶24; Ex. 7 at 2.) Finisar's response, which stated that "Finisar's Amended Infringement Contentions for the '980 patent clearly identify ███████████████████ ███████████████████ confirmed that the "first and second group of light" are ███████████████████ as shown in Finisar's Infringement Contentions. (Ex. 6, Ex. F, p. 30.)

Nistica relied on Finisar's representation that it was accusing ███████████████████ ███████████████████ of being the "first and second group of light." For example, Nistica's non-infringement interrogatory responses explicitly state that this was Nistica's understanding.

███████████████████
███████████████████
███████████████████
        *       *       *       *
███████████████████
███████████████████
███████████████████

(Decl., ¶26; Ex. 9 at 112, 115.) (emphasis added). Knowing that Nistica was relying on this understanding in preparing its case, Finisar never stated that Nistica's understanding was incorrect.

However, Finisar radically changed its infringement theory during expert discovery. The Hall Report no longer asserts that the ███████████████████ are the "first and a second group of light" as stated in Finisar's Infringement Contentions. Rather, the Hall Report alleges that the ███████████████████ is the first group and the

- 7 -

NISTICA'S MOT. TO STRIKE
FINISAR'S EXPERT REPORTS
CASE NO. 5:13-CV-03345-BLF-JSC

1    ████████████████████████████████████████ a second group of light.  (Ex. 4, Ch.

2    3, ¶¶25, 27; *see also* Ch. 3, ¶21-28; *see also* Decl., ¶27).) This drastic change in Finisar's

3    infringement theory severely prejudices Nistica because the "first and second group" affects nearly

4    every limitation in claim 1 of the '980 patent. (Decl., ¶22.) Nistica's defenses of non-infringement

5    and invalidity need to be completely reassessed if Finisar is permitted to assert an entirely new

6    infringement theory. This is exactly the type of "shifting sands" approach that the P.L.R. have

7    sought to prevent. The Court should strike all opinions relating to these new theories, including,

8    but not limited to, Ex. 4, Ch. 3, ¶¶ 21-28, 30-34, 36-40, 42-47, 50-56, 58-60.

        **4.   The Hall Report's Newly Presented Theory of Infringement for Claim 14 of the '599 Patent Should be Stricken**

10         The Hall Report improperly presents a new theory of infringement for claim 14 of the '599

11   patent, which reads "wherein the optical intensity profile of each of the elongated spatially

12   separated wavelength signals has an aspect ratio of approximately 35:1 in the plane of the spatial

13   manipulation element." (Decl., ¶¶28-33; Ex. 4, Ch. 2, ¶¶37-46.) The only citation in Finisar's

14   Infringement Contention for this limitation is a ████████████████████████████████████████

15   (Decl., ¶28; Ex. 6 at Ex. E at 28-30.)[2] As Dr. Hall admits, ████████████████████████████████

16   ████████████████████████████████ (Decl., ¶28; Ex. 4, Ch. 2, ¶44). But, the Hall Report now

17   abandons the theory that the "aspect ratio" is based on a monochromatic beam. The Hall Report

18   now advances a different theory that this claim limitation is met by a modulated beam.

19         *First*, Dr. Hall opines that modulated light (*i.e.*, light at a particular data rate and

20   modulation format), and not monochromatic light, meets this claim limitation. This is a significant

21   change. Unlike the size of a monochromatic beam, which is an intrinsic property of the optical

22   system design and does not change, the size of a modulated beam is unpredictable and can vary

23   greatly depending on a number of different factors including the modulation format and data rate

24   of the signal. (Decl., ¶29.)  Because Finisar raised this new theory of infringement for the first time

25   in the Hall Report, in the midst of expert discovery, Nistica was unable to analyze this theory and

26   formulate its defenses.  *Second*, whereas the ████████████ was the only evidence used in Finisar's

27   Infringement Contentions,  Dr. Hall's expert report completely abandons the use of ████, stating,

---

[2] Zemax is a file that can be used to create models of how light behaves in the accused products.

"Note that ***I did not use the*** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 4, Ch. 2, ¶44.) ***Third***, the Hall report presents a new infringement theory based on a modulated 25 GHz channel. (Decl., ¶30, Ex. 4, Ch. 2, ¶41.) Finisar's Infringement Contentions rely exclusively on a monochromatic beam (which is not a 25 GHz channel). (Decl., ¶31; Ex. 6, at Ex. E at 28-30.) Because Finisar's Infringement Contentions never mention a 25 GHz channel, Nistica had no reason to take discovery or analyze infringement in relation to a 25 GHz channel format. ***Fourth***, the Hall Report uses a new methodology of calculating an aspect ratio not previously disclosed. Her new methodology assumes that a 25 GHz channel will have 20 GHz of usable bandwidth: (Decl., ¶ 32; Ex. 4, Ch. 2, ¶41.) Next, the Hall report calculates a "frequency resolution." (Decl., ¶32; Ex. 4, Ch. 2, ¶ 42.) Neither this calculation, the underlying assumptions, or the frequency resolution number were disclosed in Finisar's Infringement Contentions. (Decl., ¶32; Ex. 6, Ex. E, pp. 28-30.) Furthermore, this "frequency resolution" is not found in any Nistica documents and is simply hypothesized by Dr. Hall; there is no way Nistica could have known this methodology that would be Finisar's theory of infringement. (Decl., ¶33.)

Nistica is severely prejudiced by Finisar's abandonment of its theory of relying on ▮▮▮ to show the "aspect ratio" of a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Hall Report changes every aspect of its infringement theory from Finisar's Infringement Contentions . Nistica was entitled to, and did, rely on Finisar's Infringement Contentions in formulating its defenses and is prejudiced by the Hall Report. Thus, opinions relating to this new infringement theory for claim 14 should be stricken from the Hall Report, including, but not limited to, Ex. 4, Ch. 2, ¶¶37-46.

### 5. The Hall Report's Newly Presented Theories Relating to Claims 30 and 32 of the '687 Patent Should Be Stricken

The Hall Report improperly asserts several new theories of infringement for claims 30 and 32 that were not disclosed in Finisar's Infringement Contentions as to the "switching algorithm" limitations. (Decl., ¶¶34-37.) ***First***, the theories in the Hall Report rely upon entirely new source code to identify the alleged "switching algorithm" in claims 30 and 32. (Decl., ¶35; Ex. 4, Ch. 6,

¶¶42-43, 52; Ex. 6, Ex. A, pp. 156-166, 202-211.) In the '687 patent, Dr. Hall's reliance on new source code for the "switching algorithm" is a change in infringement theory, which accuses different software functionality of meeting the "switching algorithm" of claims 30 and 32. Given the Court has already decided Finisar cannot amend its Infringement Contention to add new source code, the Court should strike all opinions and theories relating to, or referencing this source code, including, but not limited to, Ch. 6, ¶¶42-43 and 52 of the Hall Report and ¶¶ 95, 102-116, 166-67, 176-192, and 198-202 of the Goldberg Report upon which Dr. Hall relies for her new theories. Nistica further requests that the Court strike all paragraphs of the Goldberg Report identifying functionality in source code not cited anywhere in Finisar's Infringement Contentions. (Decl., ¶¶8-9.) **Second**, with regard to the limitation "the spatial light modulator is programmable" in claim 30, the Hall Report alleges for the first time that the alleged spatial light modulator, the DMD, is "programmable" because "objects described as ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" (Decl., ¶37; Ex. 4, Ch. 6, ¶36.) However, Finisar's Infringement Contentions do not state any theory based on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Decl., ¶37; Ex. 6, Ex. A, pp. 120-166.) Additionally, the Hall Report puts forth a new theory of infringement involving sending commands over the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ which is not disclosed anywhere in Finisar's Infringement Contentions . (Decl., ¶37; Ex. 4, Ch. 6, ¶¶36, 48, 42; Ex. 6, Ex. A, pp. 120-66.) The Court should strike all of these newly presented theories, including, but not limited to, Hall Rpt., Ch. 6, ¶¶35-48, 52 and Goldberg Report ¶¶95, 102-116, 166-67, 176-192, and 198-202.

### 6. The Hall Report's Newly Presented Theories of Infringement for Claim 1 of the '740 Patent Should Be Stricken

The Hall Report presents new theories of infringement for claim 1 of the '740 patent for the limitation "being programmable to perform separate optical functions on …optical function are different." (Decl., ¶¶38-41; Ex. 4, Ch. 7, ¶¶42-44, 49.) **First**, the Hall Report details a new infringement theory as to how the "spatial light modulator" is allegedly "programmable." (Decl., ¶39; Ex. 4, Ch. 7, ¶¶ 42-44.) The Hall Report alleges that the "spatial light modulator" is

"programmable" based on the *software* functionality described ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.*) However, Finisar's Infringement Contentions do not cite ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ or otherwise indicate any infringement theory based on any specific software functionality. (Decl., ¶39; Ex. 6, Ex. C, pp. 281-326.)  ***Second***, the Hall Report presents new infringement theories based on the allegation that "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" (Decl., ¶40; Ex. 4, Ch. 7, ¶49.)  This concept of the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ was never disclosed by Finisar.  (Decl., ¶40; Ex. 6, Ex. C, pp. 281-326.)  These newly presented theories should be stricken from the Hall Report, including, but not limited to, Ex. 4, Ch. 7, ¶¶ 42-44, 49.

### C.  New Accused Products in the Hall Report Should Be Stricken

Expert reports cannot be used to accuse newly identified products of infringement. *See, e.g.,* L.P.R. 3-1; *Oracle Am.*, 2011 WL 4479305, *2-3 (N.D. Cal. Sept. 26, 2011). The Patent Local Rules require "specific identification of particular accused products" and do "not tolerate broad categorical identifications" or "mere representative examples." *Id.* at 2. While Finisar did list certain line cards by their part numbers as accused products for the '833 patent, Finisar's Infringement Contentions for the '687, '740, '599 and '980 patents never identified the same Nistica's line cards ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ as infringing these patents. (Decl., ¶41.)  Rather, in Appendix H, the last pages of the 1,000 page Hall Report, Finisar states that Nistica's line cards-- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ -- allegedly infringe the '687, '740, '599, and '980 patents.  (Decl., ¶42-44; Ex. 4, Appendix H.) Nistica is prejudiced by the addition of these new accused line card products, which are not accused in Finisar's Infringement Contentions and have different software and hardware than the other accused products. Therefore, the Court should strike these as accused products for the '687, '740, '599, and '980 patents. *See, e.g., ASUS,* 2014 WL 1463609, *6; *Oracle,* 2011 WL 4479305, *2-3.

### VI.  CONCLUSION

Nistica respectfully requests that the Court strike the opinions and theories presented in the Hall and Goldberg Reports for the reasons stated herein.

1

2  Dated: October 6, 2015                          DENTONS US LLP

3

4                                                  By: s/ *Robert Kramer*
                                                       Robert Kramer
5
                                                   Attorneys for Defendant
6                                                  NISTICA, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28