**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FINISAR CORPORATION,<br><br>           Plaintiff,<br><br>    v.<br><br>NISTICA, INC.,<br><br>           Defendant. | Case No.  13-cv-03345-BLF<br><br> UNDERSEAL<br>**ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT**<br><br>[Re:  ECF 323, 328] |

Plaintiff Finisar Corp. brings this lawsuit against its competitor Nistica, Inc., alleging infringement of U.S. Patent Nos. 6,956,687 (the "'687 Patent"), 7,092,599 (the "'599 Patent"), 7,126,740 (the "'740 Patent"), and 7,397,980 (the "'980 Patent").[1]  Compl., ECF 1.  Nistica counterclaimed, seeking declaratory judgment that the asserted patents are invalid and not infringed.  Fourth Am. Answer & Countercl., ECF 180.

By Order dated August 28, 2015, the Court appointed Robert B. Morrill, Esq. as Special Master for the parties' summary judgment motions.  ECF 265.  The Special Master filed his Report and Recommendation regarding the parties' summary judgment motions on February 8, 2016.  ECF 461.  Both parties filed objections to the Report and Recommendation.  ECF 444-4, 445-4.  Having reviewed the Special Master's report pursuant to Fed. R. Civ. P. 53(f), for the reasons stated herein and at the hearing on March 10, 2016, the Court (1) OVERRULES IN PART AND SUSTAINS IN PART Finisar's Objections and (2) DENIES Nistica's Objection.  As a

---

[1] Finisar is no longer pursuing allegations that Nistica infringed U.S. Patent Nos. 6,430,328 and 7,123,833.  Joint Pretrial Statement 1 n.1, ECF 471-4.

1  result, the Court GRANTS IN PART AND DENIES IN PART Finisar's motion for summary

2  judgment and GRANTS IN PART AND DENIES IN PART Nistica's motions for summary

3  judgment.

4  **I.    BACKGROUND**

5      **A.    The Asserted Patents**

6      The technology claimed in the asserted patents relates to switching and networking

7  equipment for fiber optic transmission.

8      U.S. Patent No. 6,956,687 (the "'687 Patent") is entitled "Optical Blocking Filter Having

9  an Array of Micro-Mirrors," and discloses an optical device that uses a multi-element spatial light

10  modulator (SLM) comprising multiple Micro-Electro-Mechanical Systems (MEMs) micromirrors,

11  or an array of micromirrors, to steer an optical beam. '687 Patent at 10:63-65, 11:4-6, 12:45-65.

12      U.S. Patent No. 7,092,599 (the "'599 Patent") is entitled "Wavelength Manipulation

13  System and Method," and describes an optical device that uses a multi-element phase SLM, driven

14  to create grating-like phase shift patterns, to steer an optical beam using diffraction. '599 Patent at

15  5:16-24.

16      U.S. Patent No. 7,126,740 (the "'740 Patent") is entitled "Multifunctional Optical Device

17  Having a Spatial Light Modulator With An Array of Micro-Mirrors," and describes an optical

18  device that uses one multi-element SLM comprising multiple MEMs micromirrors, or arrays of

19  micromirrors, to realize a reconfigurable multifunctional device. '740 Patent at 2:49-3:14.

20      U.S. Patent No. 7,397,980 (the "'980 Patent") is entitled "Dual-Source Optical Wavelength

21  Processor," and discloses an optical device that uses one multi-element liquid crystal-based SLM

22  to simultaneously and independently perform optical functions on multiple input signals. '980

23  Patent at 2:52-57, 9:50-10:3, 17:50-18:15.

24      **B.    Procedural History**

25      The Court held a *Markman* hearing on July 21, 2014, and construed ten terms in its Order

26  Construing Claims issued on October 1, 2014. ECF 123. On November 24, 2015, the Court issued

27  its Order Denying Plaintiff's Motion to Strike Portions of Defendant's Motion for Summary

28  Judgment. ECF 336. On December 1, 2015, the Court issued its Order Granting in Part and

Denying in Part Motions to Strike Portions of Expert Reports. ECF 344, 367. On February 10, 2016, the Special Master issued his Report and Recommendation on the parties' motions for summary judgment. ECF 437-4, 461. On March 10, 2016, the Court held a hearing on the parties' objections to the Special Master's Report and Recommendation. ECF 465.

## II.    LEGAL STANDARD

### A.    Report and Recommendation

Fed. R. Civ. P. 53 sets forth the standard of review for a district court in reviewing findings of fact and conclusions of law recommended by a Special Master. The Court may "adopt or affirm, modify, wholly or partly reject or reverse, or resubmit [the Report and Recommendation] to the [Special Master] with instructions." Fed. R. Civ. P. 53(f)(1). The Special Master's rulings on procedural matters may only be set aside for an abuse of discretion. Fed. R. Civ. P. 53(f)(5). All objections to findings of fact and conclusions of law recommended by the Special Master are reviewed *de novo*. Fed. R. Civ. P. 53(f)(3)-(4). Otherwise, any findings of fact or legal conclusions that are not objected to must be clearly erroneous to be overturned. Fed. R. Civ. P. 72(b). Finally, any argument not raised before the Special Master is deemed waived. *World Triathoalon Corp. v. Dunbar*, 539 F. Supp. 2d 1270, 1278 n.13 (D. Haw. 2008) (citing *Convolve, Inc. Compaq Computer Corp.*, Case No. 00-cv-5141-GBD-JCF, 2004 WL 1944834, at *1 (S.D.N.Y. Sept. 1, 2004)).

### B.    Summary Judgment

The Federal Circuit has held repeatedly that "summary judgment is as appropriate in a patent case as any other case." *See, e.g., Avia Group Int'l, v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988); *Mark I Marketing Corp. v. R.R. Donnelly & Sons Co.*, 55 F.3d 285, 289 (Fed. Cir. 1995). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A genuine dispute exists if sufficient evidence is presented so that a reasonable fact finder could decide the issue in the nonmoving party's favor. Id. However, an asserted issue of

United States District Court
Northern District of California

material fact is not "genuine," in the sense of Rule 56, if a reasonable jury could only resolve the question for the moving party. *Id.* The evidence proffered by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Id.* at 255. In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party. *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 729 (9th Cir. 2013).

## III. DISCUSSION

In reviewing the recommendations of the Special Master, the Court lauds the Special Master for exemplary work in understanding the technology at issue, resolving a myriad of objections, and determining complex and hotly contested issues. This Court's review of the Report and Recommendation is made under the exacting standard for granting summary judgment set forth by the Supreme Court and Federal Circuit. To the extent that this Court has determined that the recommended grant of summary judgment on a particular issue must be reversed, the parties are advised that in each case it was a close call for the Court and this ruling should not be interpreted as indicative of how the issue may be decided at trial. This Court merely determines that a reasonable jury *could* rule in favor of the non-movant, and nothing more.

The Special Master ruled on 18 different issues and a number of subissues regarding claims construction and prosecution disclaimer. The Special Master also ruled on 28 evidentiary objections. Finisar challenges seven of those rulings and a number of the evidentiary rulings, and Nistica challenges one.

The Court has reviewed the non-objected to portions of the Report and Recommendation for clear error, and having found none, adopts them. The Court turns to addressing the parties' objections, starting with Finisar's objections and then moving to Nistica's objection.

## IV. FINISAR'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

Finisar raises eight objections[2] to the Special Master's Report and Recommendation. It

---

[2] Finisar filed an exhibit which lists over fifty objections it has to the Special Master's Report and Recommendation. Exh. 10 to Finisar's Obj., ECF 446-11. Pursuant to the Civil Local Rules, all objections must be contained within Finisar's brief. Accordingly, the Court STRIKES Exhibit 10 for failing to comply with the Civil Local Rules.

4

objects to the Special Master's recommendation (1) denying summary judgment of infringement of claim 24 of the '599 Patent; (2) granting summary judgment of non-infringement of claims 1, 12, and 14 of the '980 Patent; (3) granting summary judgment of invalidity due to lack of written description with respect to claim 32 of the '687 Patent; (4) granting summary judgment of anticipation of claims 1, 25, and 29 of the '740 Patent; (5) denying summary judgment of non-obviousness with respect to the '599 and '740 Patents; (6) granting summary judgment of non-infringement of claim 14 of the '599 Patent; (7) granting summary judgment of no willfulness; and (8) sustaining Nistica's evidentiary objection and overruling Finisar's evidentiary objections.

Each objection will be addressed below. In addressing the objections, the Court first summarizes the Special Master's ruling, next describes the parties' corresponding objections or arguments, then sets forth the applicable legal standard, and finally, provides its analysis of the disputed issue.

### A. Infringement of Claim 24 of the '599 Patent

#### 1. The Special Master's Ruling

Finisar moves for summary judgment that claim 24 of the '599 Patent is literally infringed by the '599 accused products. Finisar's Mot. for SJ 1, ECF 322-4. Claim 24 of the '599 Patent provides:

> 24. A wavelength selective manipulation device comprising:
>
> a [sic] at least a first optical input port for inputting an optical signal including a plurality of wavelength channels;
>
> polarisation alignment element for aligning the polarisation state of said optical signal;
>
> a wavelength dispersion element for angularly dispersing the wavelength channels of said optical signal into angularly dispersed wavelength signals;
>
> an optical power element for focussing the angularly dispersed wavelength signals into a series of elongated spatially separated wavelength signals; and
>
> a spatial manipulation element for selectively spatially manipulating the characteristics of said spatially separated wavelength bands to produce spatially manipulated wavelength bands.

The Special Master recommends denying Finisar's motion for three reasons. First, he construed "focusing" to mean "to make clearer and more defined." With this construction of "focusing," the Special Master found a genuine issue of material fact existed as to whether the '599 accused products literally infringe claim 24 of the '599 Patent. R&R at 9-10, ECF 461-4. Second, after declining to construe "angularly dispersed wavelength signals," the Special Master determined a disputed issue of fact existed over whether "angularly dispersed wavelength signals" are focused "into a series of elongated spatially separated wavelength signals" in the '599 accused products. *Id*. at 10-11. Finally, the Special Master found that there was a disclaimer of claim scope during the prosecution of the '599 Patent. *Id*. at 11. According to the Special Master, the "applicant disclaimed any interpretation of 'wavelength signals' in which light in the switching (port) axis is not collimated, and recommends that the Court reference the disclaimer as part of its claim construction." *Id*. at 15. As a result, the Special Master found a disputed issue of material fact existed over whether the '599 accused products literally infringe claim 24 of the '599 Patent. *Id*. Given the presence of these disputed issues of material fact, the Special Master recommended denying Nistica's motion for summary judgment. *Id*.

### 2. The Parties' Contentions

Finisar argues the Special Master improperly construed "focusing" in violation of the Patent Local Rules. Finisar's Obj. at 3, 9 ECF 444-4. Finisar also argues that the Special Master incorrectly resolved the parties' dispute over "focusing the angularly dispersed wavelength signals into a series of elongated spatially separated wavelength signals" was met by the '599 accused products. *Id*. at 9-10. Finally, Finisar claims the Special Master improperly found prosecution disclaimer by narrowly focusing on certain sections of the prosecution history and overlooking other sections. *Id*. at 4-8. Nistica responds the Special Master correctly construed "focusing," resolved the parties' dispute over "into a series of elongated spatially separated wavelength signals," and found prosecution disclaimer. Nistica's Opp. at 1-9, ECF 455-4.

### 3. Legal Standard

#### a. Claim Construction

The purpose of claim construction is to "determin[e] the meaning and scope of the patent

claims asserted to be infringed." *O2 Micro Int'l Ltd. V. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (internal quotation marks and citations omitted). "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, --- F.3d ---, 2015 WL 766661, at *3 (Fed. Cir. Feb. 29, 2016) (quoting *O2 Micro*, 521 F.3d at 1362). "[T]he court, not the jury, must resolve that dispute" because "the ultimate question of construction [is] a legal question." *Id*. (internal quotations omitted). "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro*, 521 F.3d at 1361.

### b. Prosecution Disclaimer

With respect to prosecution disclaimer, the Federal Circuit has stated that "'all express representations made by or on behalf of the applicant to the examiner to induce a patent grant' limit the interpretation of the claims 'so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance.'" *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1368 (Fed. Cir. 2001) (citations omitted). However, the disclaimer must be clear. In *Pacing Tech., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015), the Federal Circuit said:

> The standards for finding lexicography and disavowal are "exacting." [Citation omitted.] . . . Similarly, disavowal requires that "the specification [or prosecution history] make [ ] clear that the invention does not include a particular feature." [Citation omitted.]

### 4. Analysis

Contrary to local rules well known to the parties, they bring forward new claim construction disputes at summary judgment. The Northern District of California has expended significant resources and effort to create Local Patent Rules that allow patent cases to be litigated in an efficient and orderly manner. These rules expressly set out a process for claim construction. Much like the circumstances confronting the Court in *Apple, Inc. v. Samsung*, this Court is faced with conduct in violation of its local rules. As the Court explained in that case:

United States District Court
Northern District of California

> In accordance with [the local patent] rules, the parties made their selections at claim construction as to "the terms whose construction will be most significant to the resolution of the case. This requirement forces parties to identify potential case-dispositive terms at an early stage and also forces parties to help manage the scope of patent cases. The Court painstakingly adjudged the parties' claim construction disputes during the claim construction phase based on their in-depth technology tutorials and voluminous submissions of intrinsic and extrinsic evidence. *The local rules and this Court did not set out a particular process for resolving claim construction disputes only to let the parties make additional arguments at the summary judgment phase untethered to those carefully structured rules.*

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*, Case No. 12-cv-00630-LHK, 2014 WL 252045, at *3-4 (N.D. Cal. Jan 21, 2014) (emphasis added); *see also Fujifilm Corp. v. Motorola Mobility LLC*, Case No. 12-cv-03587-WHO, 2015 WL 757575, at *5 (N.D. Cal. Feb. 20, 2015). Moreover, the trial court is "give[n] broad deference to [its] application of local procedural rules in view of the trial court's need to control the parties and flow of litigation before it." *SanDisk v. Memorex Products, Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005). In *Sandisk*, the Federal Circuit affirmed the district court's refusal to entertain claim construction arguments made "after relevant cut-off dates under [the Northern District of California's Patent Local Rules] and the trial court's scheduling order." *Id*.

Although the Federal Circuit has not harmonized its decision in *O2 Micro* with *Sandisk*, the Court notes that *O2 Micro* was limited to the issue of claim construction disputes being submitted to the jury. The pending claim construction dispute before the Court is not being submitted to the jury but rather is part of a motion for summary judgment. As a result, the Court finds Nistica's claim construction arguments are untimely but will consider them as "part of the infringement analysis, not part of the claim construction." *Apple*, 2014 WL 252045, at *4. In evaluating infringement, the Court considers the claim constructions put forth by the non-moving party. This is consistent with the standard on summary judgment insofar as the non-moving party has not been afforded adequate opportunity to offer alternative constructions. The Court further notes that the parties obtained the Court's claim construction order on October 1, 2014, ECF 123, and neither party has ever sought leave of Court to submit additional claims for construction.

Thus, the Court SUSTAINS Finisar's first objection regarding the Special Master's

construction of the term "focusing" and OVERRULES Finisar's second objection regarding the Special Master's refusal to construe the term "into a series of elongated spatially separated wavelength signals." The Court will not engage in construing new claim terms at summary judgment. Although Finisar objected to the Special Master's handling of these two claims construction issues, it did not argue that the Special Master's ultimate conclusion denying summary judgment is wrong. Thus, while the Court SUSTAINS Finisar's objection to the Special Master's construction of focusing and OVERRULES Finisar's objection to the Special Master's discussion of "into a series of elongated spatially separated wavelength signals," the Court still DENIES Finisar's motion for summary judgment of infringement because a factual dispute exists as to whether the '599 accused products meet the limitations of claim 24.

Finally, the Court advises the parties to meet and confer to resolve any claim construction disputes that may exist as trial approaches. The Court ORDERS the parties to file, by April 12, 2016 at 12 pm, a joint submission informing the Court what, if any, claim construction disputes exist and what efforts have been undertaken to resolve them. If there are still outstanding claim construction issues, the Court may require all counsel of record to participate in meet and confer sessions in person at the courthouse in the days between the pretrial conference and trial.

Turning to the prosecution disclaimer issue, the Court agrees with Finisar and finds that there was not a "clear and unmistakable" disclaimer of claim scope. On September 15, 2005, the patent office rejected certain pending claims as obvious over U.S. Patent No. 6,766,081 (the "'081 Patent") and allowed certain claims, including claim 21 (issued claim 24). Exh. 7 to Bennett Decl. II at FinNIS 00001124, ECF 357-9. In response, the applicant filed a reply on February 3, 2006. That reply stated, *inter alia*,

> STATUS OF THE APPLICATION
> Claims 1 to 21 are the claims of record in the application. Claims 1 to 6, 8, 10, and 14 to 18 have been rejected. Claims 7, 9, 11, 12 and 19 are objected to. Claims 13 and 21 have been allowed. Applicants have added new claims 22-25 that are directed to further aspects of the present invention.
>
> AMENDMENTS TO THE CLAIMS
> The Applicants have amended the claims to improve clarity and reduce the small probability of confusion for the skilled artisan. *None of these amendments*

9

*have been made for reasons of patentability.*

Exh. 10 to Davis Decl. at FinNIST00496411, ECF 323-13 (emphasis added). The Applicants then proceeded to distinguish their invention from the '081 Patent. *Id*. at FinNIST00496411-15. As part of this discussion, the Applicants amended claim 1 to include the term "spatially separated wavelength signals" instead of "spatially separated wavelength bands." *Id*. at FinNIST00496417. Although issued claim 24 had previously been deemed allowable, the Applicants also amended that claim and changed "spatially separated wavelengths bands" to "spatially separated wavelength signals." *Id*. at FinNIST00496420.

The Court finds that Applicants' remarks regarding claim 1 do not apply to claim 24. "Arguments made during prosecution regarding the meaning of a claim term are relevant to the interpretation of that term in every claim of the patent absent a clear indication to the contrary." *Southwall Tech. Ind. V. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995). Here, the prosecution history reveals clear indications that the arguments regarding claim 1 did not apply to issued claim 24 for two reasons. First, issued claim 24 had been deemed allowable. Prosecution disclaimer occurs when an applicant, in an attempt to obtain allowable claims, chooses to give up subject matter. Here, the Applicants had no reason to disclaim any subject matter with respect to claim 24. Second, while the Applicants amended one term of issued claim 24, the Applicants clearly indicated that "[n]one of these amendments have been made for reasons of patentability." As a result, in looking at the prosecution history as a whole, the Court finds that the Applicants did not disclaim any subject matter with respect to claim 24. Thus, the Court adopts the Special Master's recommendation to deny summary judgment of infringement and declines to adopt the findings regarding claims construction and prosecution disclaimer.

**B.  Infringement of Claims 1, 12, and 14 of the '980 Patent**

1.  The Special Master's Ruling

Nistica moves for summary judgment of noninfringement of the asserted claims of the '980 Patent on the basis that the accused products do not meet the "spatial separating means" limitation of the '980 Patent. The Special Master recommends granting Nistica's motion for summary judgment of noninfringement of claims 1, 12, and 14 of the '980 Patent. R&R at 38-44,

ECF 461-4.

Pertinent to Finisar's objection, the Special Master noted Dr. Goossen explained that "optical signals received by the '980 Accused Products ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ *Id*. at 42 (citing Goossen Decl. I at ¶¶ 292-93, ECF 328-25). The Special Master then noted Finisar's infringement theory was that "█ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ *Id*. at 43 (citing Hall Report at ¶ 27, ECF 338-2). After analyzing the evidence supporting Finisar's argument, the Special Master concluded Dr. Hall's expert report did not "explain the reasons or basis for her opinion, [and instead] references three sources without explaining how they support her conclusion." *Id*. The Special Master also found Dr. Hall's declaration to be "equally conclusory." *Id*.

Since Finisar's arguments lacked support, the Special Master found Finisar had not offered any evidence to show the accused products meet the "simultaneously spatially separating" limitation. Without any evidence, the Special Mater determined that no genuine dispute of material fact existed and granted Nistica's motion for summary judgment of noninfringement of claims 1, 12, and 14 of the '980 Patent.

2. The Parties' Contentions

Finisar objects to the Report and Recommendation's finding it has not offered evidence that the accused products meet the claim limitation "simultaneously spatially separating." Finisar's Obj. at 10-14, ECF 444-4. First, Finisar argues that the Special Master ignored the agreed upon construction of "simultaneously" ("at the same time") and implicitly required the lights to be "coordinated in time," "synchronized," or "not from the different optical sources." *Id*. at 10-12. Second, Finisar claims the Special Master resolved a material factual dispute where the parties' experts disagreed about whether the accused products meet the "simultaneously spatially separating" limitation. *Id*. at 12. In Finisar's view, a factual dispute existed as to whether the

evidence cited by Dr. Hall supported its infringement theory. *Id.* at 13-14.

Nistica counters that the Special Master applied the parties' agreed upon claim construction that "simultaneously" means "at the same time." Nistica's Opp. at 9, ECF 455-4. According to Nistica, Finisar is simply portraying every disagreement about how the accused products work as a claim construction issue. *Id.* Next, Nistica argues that the Special Master appropriately analyzed the evidence. *Id.* at 11. Nistica claims that Dr. Hall's conclusory opinions cannot create a disputed issue of material fact and are therefore, insufficient to defeat summary judgment. *Id.*

### 3. Legal Standard for Infringement

35 U.S.C. § 271 provides "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." An infringement determination is a two-step process in which a court must first "determine the scope and meaning" of the asserted patent claims and then compare the "properly construed claims . . . to the allegedly infringing device." *Cybor Corp. v. Fas Techs.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). "Literal infringement requires that each and every limitation set forth in a claim appear in an accused product." *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004). "[A]n accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

### 4. Analysis

The Court finds that there are genuine issues of material fact as to whether the accused products meet the claim limitation "simultaneously spatially separating." The Court credits Dr. Hall with relying on evidence to support her opinions. Dr. Hall opined that "████████████████ ████████████████████████████████████████████████ ████████████████ Hall Report ¶ 27, ECF 338-2. As support for her opinion, Dr. Hall references

two different Nistica documents and deposition testimony given by Dr. Strasser. *Id.* (citing

NIST01528296 at NIST01528339; NIST00090386 at NIST00090396; and Strasser Dep. at 296:3-

6). T█████████████████████████████████████████████████████████████████

██████████████████████████████████. *See, e.g.* NIST01528296 at

NIST01528339. ██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Thus, Dr.

Hall has provided support for her opinion. With Dr. Hall's opinion, there is now a genuine issue

of material fact created by the conflict between the experts over whether the accused products

meet the claim limitation "simultaneously spatially separating" and summary judgment is not

appropriate. Accordingly, the Court SUSTAINS Finisar's objection and DENIES Nistica's

motion for summary judgment of noninfringement of claims 1, 12, and 14 of the '980 Patent.[4]

### C. Invalidity of Claim 32 of the '687 Patent for Lack of Written Description

#### 1. The Special Master's Ruling

Nistica moves for summary judgment that claim 32 of the '687 Patent is invalid for lack of

written description and the Special Master recommends granting Nistica's motion. R&R at 57,

ECF 461-4. According to the Special Master, the limitation "wherein scattered light from a

dropped signal is directed onto the micromirror device to reflect away from the return path" in

---

[3] Finisar argues that the Special Master's comment that the documents do not disclose anything about the timing of the optical signals means he implicitly adopted a claim construction requiring the lights to be "coordinated in time" or "synchronized." The Court disagrees with Finisar and interprets the Special Master's "timing" comment to refer to whether the lights go through the walk-off crystal "at the same *time*." One reasonable inference from the documents is that the lights are going through the walk-off crystal at the same time. However, given that this is a picture and not an animation or video, it may be that the lights are drawn going through the walk-off crystal at the same time in the picture, but in reality, they do not. As such, the documents do not definitively indicate one way or the other, the timing of the lights that go through the walk-off crystal.
[4] The Court adopts the Special Master's ruling that summary judgment should be denied based on whether the walk-off crystal in the '980 accused products creates spatial separation and meets the limitation in the claim. R&R at 42, ECF 461-4.

13

claim 32 does not have proper written description. *Id*. at 60. In doing so, the Special Master determined that Dr. Hall, Finisar's expert, was mistaken in her opinion that the '687 Patent provided written description for the scattered light limitation. *Id*. at 57-60. He concluded that, contrary to Dr. Hall's opinion, if the specification provided support for the scatted limitation at column 12, lines 454-65, "it would likely have used some other term other than 'signal light,' such as 'blocked' or 'deleted' channels." *Id*. at 59. After discounting Dr. Hall's opinion, the Special Master recommended granting summary judgment that claim 32 is invalid for lack of written description because Finisar had not come forward with evidence that rebuts Nistica's evidence and would allow a reasonable fact finder to find that there was adequate written description. *Id*.

### 2. The Parties' Contentions

Finisar asserts that the Special Master improperly resolved a factual dispute at summary judgment. Finisar's Obj. at 14-15, ECF 444-4. It claims that while Dr. Goossen opined that there was not adequate written description, Dr. Hall disagreed. *Id*. at 15. As a result, Finisar contends that the Special Master usurped the role of the jury, by improperly weighing the evidence and finding Dr. Hall was "mistaken." *Id*. Nistica argues that the Special Master applied the appropriate standard and analysis to determine that based on Dr. Hall's incorrect opinion, no reasonable fact finder could find written description support for the disputed limitation. Nistica Opp. at 14, ECF 455-4.

### 3. Legal Standard for Written Description

A patent must contain a written description of the invention under 35 U.S.C. § 112(a). "[T]he function of the description requirement is to ensure that the inventor had possession, as of the filing date of the application relied on, of the specific subject matter later claimed by him." *Moba, B. V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed. Cir. 2003); *see also Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) ("[T]he hallmark of written description is disclosure."). Whether a claim complies with the written description requirement is a question of fact. *Boston Scientific Corp. v. Johnson & Johnson Inc.*, 647 F.3d 1353, 1366 (Fed. Cir. 2011) ("Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for

14

the non-moving party.") (quoting *PowerOasis, Inc. v T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008)).

### 4. Analysis

Drawing all reasonable inferences in favor of Finisar as the non-movant, the Court finds that there are genuine issues of material fact regarding whether the specification provides written description support for the scattered light limitation. Dr. Hall opined that the written description requirement is met by column 12, lines 45-65 of the '687 Patent. That section states:

> In the operation of the blocking filter 600, the micro-mirrors 84 of the spatial light modulator 30 are tilted to a first position to delete a desired optical channel(s) from the WDM input signal 12 by directing the deleted channels away from the return path 94 and the first optical path 92, as indicated by arrow 610. The micro-mirrors 84 of the spatial light modulator 30 are tilted to a second position to reflect the through optical channels 14 of the input signal 12 through the lens 608 to the mirror 606 which then reflects the through channel(s) back along the return path 94 to provide the output signal 48 at optical fiber 50. While the blocked or deleted channels are directed along the optical path 610, some scattered light of the blocked optical channels propagate along the first optical path 92. This edge scattering from the micro-mirrors limits the extinction of the blocked channel that can be achieved.
>
> By properly choosing the angle of incidence of the signal light onto the spatial light modulator, the coherent scattering from the blocked channel mirrors can be directed away from the return path 94 and provide the highest blocked channel extinction.

According to Dr. Hall, from the preceding text, "it is apparent that light incident on the spatial light modulator should be directed to reflect away from the return path." Hall II Decl. ¶ 353, ECF 353 (citing '687 Patent at 12:61-65) ("By properly choosing the angle of incidence of the signal light onto the spatial light modulator, the coherent scattering from the blocked channel mirrors can be directed away from the return path 94 and provide the highest blocked channel extinction."). She explains it would have been clear to a skilled artisan that "angle of incidence" appearing at column 12, lines 61-65 "refers to the angle of mirrors receiving the blocked channel on its second "bounce" at the spatial light modulator—not the first." *Id.* She also opines that Figure 24 in combination with the preceding section of the patent also provides adequate written description. Finisar does not dispute that Nistica has provided evidence from Dr. Goossen that

15

disagrees with Dr. Hall's opinion.  Finisar's Opp. to SJ at 18, ECF 360-4 ("[T]he parties' experts disagree as to whether one of ordinary skill in the art would understand the '687 Patent to teach [the scattered light limitation].").

Dr. Hall's opinion raises a genuine issue of material fact on whether the specification provides written description for the scattered light limitation.  She opined that the specification explains that light should be directed to reflect away from the return path and supported her opinion by pointing to specific sections of the '687 Patent.  While Nistica questions Dr. Hall's assessment, her opinion "at least raises a genuine issue of material fact regarding [whether adequate written description exists]."  *Vasudevan Software, Inc. v. Microstrategy, Inc.*, 782 F.3d 671, 683 (Fed. Cir. 2015) (reversing summary judgment that claims lacked written description and noting "[a]s a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case.") (citing *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir. 1996)); *see also Scriptpro, LLC v. Innovation Assocs., Inc.*, 762 F.3d 1355, 1359-61 (Fed. Cir. 2014) (reversing summary judgment of invalidity for lack of written description and noting that an expert's testimony that the specification provided written description raised a fact issue).  The Court is not prepared to find that Dr. Hall is wrong as a matter of law.  This is a matter properly left to the jury to decide.  Accordingly, the Court SUSTAINS Finisar's objection and DENIES Nistica's motion for summary judgment that claim 32 of the '687 Patent is invalid for lack of written description.

**D.    Invalidity of the '740 Patent Due to Anticipation by U.S. Patent No. 6,798,941**

1.  Special Master's Ruling

Nistica moved for summary judgment that the asserted claims of the '740 Patent are anticipated by U.S. Patent No. 6,798,941 (the "'941 Patent").  The Special Master found Finisar had not come forward with sufficient evidence for a reasonable fact finder to find that the following limitations are not disclosed in the '941 Patent: (1) "spreading each of the first and second optical input signals into respective optical bands or channels on separate portions of a spatial light modulator having an array of micromirrors" and (2) "overall optical function."

2.  The Parties' Contentions

16

Finisar argues that the Special Master improperly resolved factual disputes in Nistica's favor, even though Nistica was the moving party. Finisar's Obj. at 16-17, ECF 444-4. For example, Finisar argues that in the face of competing expert declaration, the Special Master incorrectly credited Dr. Goossen's declaration over Dr. Hall's declaration. *Id.* Finisar also argues that Nistica's briefing did not fairly set forth its position regarding the invalidity of the '740 Patent. *Id.* Finisar claims the Special Master only focused on two claim limitations of the '740 Patent instead of analyzing every claim limitation. *Id.* Nistica responds that the Special Master did not credit Dr. Goossen's declaration over Dr. Hall's declaration but instead found that Dr. Hall's claim construction was contrary to the claim language. Nistica's Opp. at 14-16, ECF 455-4. Moreover, Nistica argues the Special Master addressed only two claim limitations of the '740 Patent because Finisar's briefing only mentioned those two claim limitations. *Id.*

### 3. Legal Standard

To establish anticipation of a claim, the challenger must prove by clear and convincing evidence that a prior art patent discloses "every limitation of the claimed invention either explicitly or implicitly" and demonstrate that "no genuine issue exists as to any material fact" underlying such proof. *Eli Lilly and Co. v. Barr Labs., Inc.,* 251 F.3d 955, 962, 970 (Fed. Cir. 2001). "But disclosure of each element is not quite enough — this court has long held that '[a]nticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim.'" *Finisar Corp. v. The DirecTV Group, Inc.,* 523 F.3d 1323, 1334 (Fed. Cir. 2008). In order for expert testimony to demonstrate anticipation, it must "identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference." *Schumer v. Laboratory Computer Systems, Inc.* 308 F.3d 1304, 1315 (Fed. Cir. 2002).

### 4. Analysis

The Court finds Nistica, as the moving party, has not carried its burden to show the '941 Patent anticipates the '740 Patent. First, the Court notes that Nistica's entire discussion of this issue in its motion for summary judgment is as follows:

> Claims 1, 25, and 29 are invalid as anticipated by U.S. Patent No. 6, 798, 941 ("'941 patent"). Goossen Decl. ¶¶ 384-402. In deposition, the inventors admit that the basic elements of the asserted claims were known in the art. *Id.* ¶388. Nistica meets its burden of demonstrating by clear and convincing evidence, as set forth in the Goossen Declaration, that the '941 patent discloses each and every limitation of claims 1, 25, and 29 rendering these claims invalid. *Id.*

Nistica's Mot. for SJ at 16, ECF 325-4. This briefing is not sufficient to support summary judgment of anticipation. It is not the Court's obligation to dig through Dr. Goossen's declaration to determine whether or not the '941 Patent anticipates the '740 Patent.[5] *See Albrechtsen v. Bd. Of Regents of Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) ("Courts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material. Judges are not like pigs, hunting for truffles buried in the record."). Moreover, by burying its anticipation argument in an expert declaration, Nistica avoids the page limits set forth in the Civil Local Rules and deprives Finisar, who must argue against Nistica's position within the page limits, a fair opportunity to respond. As a result, the Court finds Nistica, as the moving party, has not met its initial burden of coming forward with evidence to support its anticipation argument. Accordingly, the Court SUSTAINS Finisar's objection and DENIES Nistica's motion for summary judgment that the '740 Patent is anticipated by the '941 Patent.

### E. Obviousness of the '599 and '740 Patents

#### 1. The Special Master's Ruling

Finisar moves for summary judgment that none of the asserted patents is obvious based on prior art combinations advanced by Nistica. The Special Master recommends denying Finisar's motion with respect to the '599 and '740 Patents. R&R at 21, ECF 461-4. The Special Master

---

[5] Nevertheless, the Court has reviewed both Dr. Hall's and Dr. Goossen's declarations, and the Court finds that genuine issues of material fact are created by the expert's disagreement about what is disclosed in the '941 Patent.

found that Dr. Goossen presented sufficient evidence regarding how a skilled artisan "at the time of the invention would have selected and combined prior art elements to render the claimed inventions obvious sufficient to raise genuine issues of material fact on its allegations that the asserted claims of the '740 and '599 Patents are invalid as obvious." *Id*. at 20-21.

### 2. The Parties' Contentions

Finisar objects to the Report and Recommendation's finding that there were genuine issues of material fact as to whether the '599 and '740 Patents are obvious. Finisar's Obj. at 17, ECF 444-4. According to Finisar, Dr. Goossen's expert report used the same formulaic analysis for the '980, '687, '833, '740, and '599 Patents. *Id*. While the Special Master recommended granting summary judgment that the '980, '687, and '833 Patents are not obvious on the basis that Dr. Goossen's failed to explain his opinion, Finisar contends that the Special Master did not explain why he found a difference between those patents and the explanations provided for the '599 and '740 Patents. *Id*. at 17-18. Nistica responds that the Special Master reviewed Dr. Goossen's expert report and determined there was sufficient evidence for Dr. Goossen's obviousness opinions with respect to the '599 and '740 Patents. Nistica's Opp. at 16-17, ECF 454-4.

### 3. Legal Standard

Under Fed. R. Civ. P. 26(a)(2)(B), an expert opinion must set forth "a complete statement of all opinions the witness will express and the bases and reasons for them." In other words, "the expert report[] must contain some discussion of [the expert's] reasoning and thought process that le[d] to [the] ultimate opinion." *Elder v. Tanner*, 205 F.R.D. 190, 194 (E.D. Tx. 2001).

### 4. Analysis

On March 14, 2016, the Court issued its Order on the parties' *Daubert* motions. In that order, the Court explained Dr. Goossen provided sufficient explanations for his obviousness opinions regarding the '740 and '599 Patents. As an example, the Court described Dr. Goossen's opinion that U.S. Patent Nos. 6,798,941 and 6,236,123 render the asserted claims of the '740 Patent obvious. Order Re: Daubert Motions at 10, ECF 466. Dr. Goossen explained why a skilled artisan would have selected and been motivated to combine the two prior art references. *Id*. Finisar appears to recognize this as in its *Daubert* motion, conceded that in a "few instances" Dr.

Goossen discussed combinations of elements and motivation to combine them. Finisar's Daubert Mot. 4 n.6, ECF 375-4. Accordingly, the Court OVERRULES Finisar's objection and DENIES Finisar's motion for summary judgment that the asserted claims of the '740 and '599 Patents are not obvious based on the prior art combinations advanced by Nistica.

### F. Non-Infringement of Claim 14 of the '599 Patent

#### 1. The Special Master's Ruling

Nistica moves for summary judgment that it does not infringe claim 14 of the '599 Patent, which the Special Master recommends granting. R&R at 28-35, ECF 461-4. First, the Special Master found prosecution disclaimer applies to claim 14, because it depends on claim 1 of the '599 Patent for the reasons explained *supra* IV.A.1. The Special Master also determined Dr. Hall did not timely disclose her opinion that because "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" *Id*. at 32-33. Since her opinion was untimely, the Special Master did not consider it and concluded that Finisar has not brought forth any evidence to dispute Dr. Goossen's opinion that the '599 Accused Products █████████████████████████████████ Without any evidence, the Special Master found that there was no disputed issue of fact as to this limitation and recommended that Nistica's motion for summary judgment be granted.

#### 2. The Parties' Contentions

Finisar raises five objections to the Special Master's recommendation that Nistica's motion for summary judgment be granted. First, Finisar argues that prosecution disclaimer does not apply to claim 1, on which claim 14 depends. Finisar's Obj. at 18, ECF 444-4. Second, Finisar claims that the Special Master improperly adopted Nistica's claim construction and credited Nistica's factual evidence to find the accused products did not meet the "in the focal plane" limitation of claim 1. *Id*. Third, Finisar argues the Special Master incorrectly sustained Nistica's objection to Paragraph 54 of Dr. Hall's declaration. *Id*. at 18-19. Fourth, Finisar objects to the Special Master's rejection of Dr. Hall's opinions regarding the "in the focal plane" limitation as

conclusory. Finally, Finisar argues the Special Master improperly resolved a factual dispute by crediting Dr. Goossen's declaration over Dr. Hall's declaration. *Id*. at 19.

Nistica responds that during prosecution of the '599 Patent, Finisar disclaimed any interpretation of "wavelength signals" in which "light in the switching (port) axis is not collimated." Nistica's Opp. at 17, ECF 455-4. Second, Nistica claims the Special Master did not adopt Nistica's claim construction but rather found Finisar was proposing a new and not credible construction of "optical intensity profile in the focal plane." *Id*. Third, Nistica argues that the Special Master correctly determined that Dr. Hall's opinions in paragraph 54 were not timely disclosed. *Id*. at 18. Fourth, Nistica claims the Special Master disregarded Dr. Hall's opinions because her opinions were "directly contrary to the actual language of claim 14." *Id*. at 18-19. Finally, Nistica argues that the Special Master correctly determined that Dr. Hall's opinions were conclusory. *Id*. at 19.

### 3. Legal Standard

Rule 26(a)(2) governs discovery and the duty to disclose expert testimony. Each party's expert disclose must include the identity of any expert witness and be accompanied by a written report containing, *inter alia*, a complete statement of all opinions the witness will express and the basis and reasons for them, the facts or data considered by the witness in forming them, and any exhibits that will be used to summarize or support them. Fed. R. Civ. P. 26(a)(2)(B). A party must provide its expert witness disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). If the expert is using evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)," the disclosure of this evidence must be within 30 days after the other party's disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii).

### 4. Analysis

Since the parties' dispute over whether the '599 accused products meet the claim limitation that an elongated optical intensity profile is located "in the focal plane" of the optical power element is dispositive, the Court addresses only that dispute. The first question is whether claim 14 of the '599 requires an elongated optical intensity profile "in the focal plane" of the optical

power element.  The disputed limitation of claim 14 of the '599 reads:

> an optical power element for focussing in the dimension of the angular dispersion said angularly dispersed wavelength signals such that said wavelength signals have an elongated optical intensity profile in the focal plane of said optical power element so as to form elongated spatially separated wavelength signals; and

Found in Claim 1 (on which Claim 14 depends) of '599 Patent.

Finisar claims that Nistica is belatedly construing "in the focal plane" as requiring light to travel to the straight line focal plane of the optical power element.  Finisar's Opp. to SJ at 3, ECF 360-4.  Finisar argues this construction is also improper because it reads out the embodiment depicted at Figure 11 of the '599 Patent.[6]  *Id.* at 3-4.  Nistica responds that Dr. Goossen applied the plain meaning of "in the focal plane" and that Finisar is inventing a non-existence claim construction issue.

The Court agrees with Nistica and finds that it is neither belatedly nor improperly construing the term "in the focal plane."  Generally, when the Court is faced with competing expert declarations, a genuine issue of material fact is created that is not resolvable at summary judgment.  However, in order for an expert declaration to create a genuine issue of material fact, opinions must be supported with more than conclusory statements.  Here, Dr. Hall asserts:

> I understand that Dr. Goossen claims in his Declaration that the phrase "in the focal plane of said optical power element" in element (c) of the '599 Patent requires that there be signals in the straight line focal plane of the optical power element.  *See* Goossen Declaration at ¶¶140-173.  However, it is my opinion that "in the focal plane of said optical power element" as it is used in the '599 Patent does not require light to reach the straight line focal point of the optical power element as it is used in the '599 Patent.

---

[6] In objecting to the Report and Recommendation, Finisar argues that the Special Master "ignore[d] Finisar's evidence and argument Nistica's position would read embodiment*s* out of the claim."  Finisar's Obj. at 18, ECF 444-4 (emphasis added).  Finisar's statement contains multiple inaccuracies.  First, Finisar has never argued that Nistica's position reads multiple embodiments out of the claim but only the single embodiment depicted at Figure 11.  Finisar's Opp. to SJ at 3, ECF 360-4.  Second, while the Special Master disagreed with Finisar's arguments, he did not ignore them.  R&R at 30 n.11 (acknowledging that "Finisar in its Opposition argues that Nistica's position would improperly read an embodiment…").  While this latest example of hyperbole happens to be from Finisar, both sides have engaged in this conduct.  "Such hyperbole not only falls well short of helpful advocacy; it threatens one's hard-earned credibility."  *U.S. v. Lanni*, 951 F.2d 440, 443 (1st Cir. 1991).

Hall Decl. ¶ 50, ECF 360-8.  According to Dr. Hall, Dr. Goossen required signals to be in the straight line focal plane of the optical power element.  She supports this statement by citing 33 paragraphs of Dr. Goossen's declaration.  These 33 paragraphs span 18 pages, cite numerous exhibits, contain charts, and data from Zemax.  Yet, nowhere in these 33 paragraphs did Finisar or Dr. Hall identify where Dr. Goossen purportedly required signals to be in the straight line focal plane of the optical power element.  The Court has scoured these paragraphs and also fails to see where Dr. Goossen made such a representation.  As a result, Dr. Hall's opinion, at best, is conclusory and lacks support.  Accordingly, Dr. Hall's unsupported opinion cannot create a genuine issue of material fact, and without Dr. Hall's opinion, Finisar lacks any evidence to dispute Dr. Goossen's ███████████████████████████████████████████████

███████████████████████████[7]

Given the Court's ruling on the first issue, Finisar must show that the '599 accused products have an elongated optical intensity profile in the focal plane of the optical power element.  Thus, the second issue is whether Finisar may proceed with its argument that the '599 accused products "h███████████████████████████████████████████████

███████████████  This theory of infringement is predicated on Dr. Hall's opinions at paragraph 54 of her declaration.  Finisar concedes that paragraph 54 was not disclosed in Dr. Hall's expert report but argues that it is a rebuttal opinion and was disclosed at her deposition. Response to Special Master's Question at 16 (citing Hall Dep. Tr. at 166:14-167:1, ECF 359-7).  Finisar also claims that Dr. Hall was not required to submit a written report containing these new opinions because the Court's scheduling order "limited the parties to the exchange of only opening and rebuttal reports."  Finisar's Obj. at 19 n.17, ECF 444-4.

---

[7] The Court also disagrees with Finisar that Dr. Goossen's opinion reads an embodiment out of the specification.  As Finisar concedes in opposing Nistica's motion for summary judgment, Dr. Goossen's position does not exclude the embodiment disclosed in Figure 11 of the '599 Patent. Finisar's Opp. to SJ at 3 n.3, ECF 360-4 ("Nistica may argue that its construction of the 'in the focal plane' limitation does not read out Figure 11 because the turning prism, which causes reflection of the optical signals, simply changes the position of the focal plane of the optical power element. However, if this is Nistica's position, then the '599 Accused Devices still infringe claim 14.").  Finisar cannot have it both ways – Dr. Goossen's position either excludes Figure 11 or it does not, and as Finisar's argument indicates, Dr. Goossen's opinion does not actually exclude Figure 11.

Rule 26(a)(2)(D)(ii) requires a party to disclose rebuttal evidence in a *written* report within 30 days after the other party's disclosure. Both parties agree that Dr. Hall did not provide a written report in compliance with the Federal Rules. Finisar's attempt to avoid its disclosure obligations is not well-taken. Rule 26(a)(2)(D) provides a court order may set "the times and [] sequence" of disclosures. However, when the court's scheduling order is silent about rebuttal reports, Rule 26(a)(2)(D)(ii) applies by default.[8] *See, e.g., Larson v.Wis. Cent. Ltd.*, No. 10-cv-446, 2012 WL 3683479, at *4 (E.D. Wis. Feb. 3, 2012) (holding that since the Court made no provision for serving rebuttal reports, Rule 26(a)(2)(D)(ii) applies); *McAtee v. Buca Rest., Inc.*, Case No. 10-cv-1090-SEB-DKL, 2011 WL 4861867, at *1 (S.D. Ind. Oct. 13, 2011) (same). Since no court order or stipulation addressed the rebuttal expert disclosure deadline, Rule 26(a)(2)(D)(ii) applies, and Finisar was required to disclose Dr. Hall's opinion at paragraph 54 in a written report and within 30 days of the disclosure of Dr. Goossen's opinion. The Court finds Finisar's failure to comply with its disclosure obligations is not substantially justified or harmless. Thus, the Court STRIKES Dr. Hall's new opinions at paragraph 54 under Fed. R. Civ. P. 37(c)(1).

Since Finisar cannot rely on Dr. Hall's theory of infringement contained in paragraph 54, the third issue is whether Dr. Hall may proceed with yet another alternative theory of infringement contained in her declaration at paragraph 56. The briefing with respect to Dr. Hall's paragraph 56 infringement theory leaves much to be desired. In opposing Nistica's motion for summary judgment, Finisar's full reference to the paragraph 56 infringement theory is the following statement:



---

United States District Court
Northern District of California

[8] Finisar relies on *Oracle Am., Inc. v. Google, Inc.*, Case No. 10-cv-03561-WHA, 2011 WL 5572835, at *2-3 (N.D. Cal. Nov. 15, 2011) for the proposition that "reply expert reports from opening report experts permissible where included in the Case Management Order."). In that case, the parties agreed to exchange reply report "within seven calendar days" instead of the 30 days provided for by Rule 26(a)(2)(D)(ii). Since that case schedule explicitly addressed the timing of reply reports, it controlled over Rule 26(a)(2)(D)(ii). That case does not address what happens when the Court's scheduling order is silent about reply reports.

at ¶¶ 53-57.

Finisar's Opp. to SJ at 3 n.6, ECF 360-4. In its reply brief to its motion for summary judgment, Nistica did not address paragraph 56. In objecting to the Special Master's findings, Finisar argues he improperly weighed the evidence and rejected her paragraph 56 opinions as conclusory. Finisar's Obj. at 19, ECF 444-4. Nistica responded by arguing the Special Master determined that Dr. Hall's paragraph 56 theory directly contradicts the language of claim 14.

After thoroughly reviewing Dr. Goossen's declarations at ECF 326 and ECF 384-27 and Dr. Hall's declaration at ECF 360-8, the Court agrees with Nistica. The Court is fully cognizant of Finisar's concern that the Special Master improperly weighed evidence and at the outset, the Court notes it is not weighing the competing expert declarations, but rather determining whether, if fully credited, the expert's theory fails as a matter of law. For purposes of the following analysis, the Court fully credits the relevant portions of Dr. Hall's declaration at ECF 360-8.

Claim 1, on which claim 14 depends, of the '599 Patent reads:

> 1. A wavelength selective manipulation device comprising:
> at least a first optical input port for inputting an optical signal including a plurality of wavelength channels;
>
> a first wavelength dispersion element for angularly dispersing the wavelength channels of said optical signal into angularly dispersed wavelength signals;
>
> an optical power element for focussing in the dimension of the angular dispersion said angularly dispersed wavelength signals such that said wavelength signals have an elongated optical intensity profile in the focal plane of said optical power element so as to form elongated spatially separated wavelength signals; and
>
> a spatial manipulation element for selectively spatially manipulating the characteristics of said elongated spatially separated wavelength signals to produce spatially manipulated wavelength signals.

The Court's analysis focuses on the following limitations of claim 1:

> an optical power element for focussing in the dimension of the angular dispersion said angularly dispersed wavelength signals such that said wavelength signals have an elongated optical intensity profile in the focal plane of said optical power element so as to form elongated spatially separated wavelength signals;

a spatial manipulation element for selectively spatially manipulating the characteristics of said elongated spatially separated wavelength signals to produce spatially manipulated wavelength signals.

The first limitation of claim 1, which the parties refer to as element (c), requires, *inter alia*, "wavelength signals hav[ing] an elongated optical intensity profile in the focal plane…so as to form elongated spatially separated wavelength signals." The second limitation of claim 2, which the parties refer to as element (d), requires, *inter alia*, "a spatial manipulation element…for manipulating…said elongated spatially separated wavelength signals…." Thus, element (c) and element (d) together require the wavelength signals to travel to the focal plane so as to form elongated spatially separated wavelength signals *and then* a spatial manipulation element selectively spatially manipulates the elongated spatially separated wavelength signals that had been formed in the focal plane.

The Court now turns to Dr. Hall's opinion at paragraph 56 regarding how the accused devices work. ██████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████ ████
████████████████████ However, element (d) of claim 1 requires the LCOS to "selectively spatially manipulate" the elongated spatially separated wavelength signals, which according to the claim language had already been formed in the focal plane. In other words, the claim language requires the light to reach the focal plane *before* reaching the LCOS. As a result, even fully crediting Dr. Hall's analysis, the accused products cannot infringe claim 1 and Finisar's infringement theory fails as a matter of law. Accordingly, the Court OVERRULES Finisar's objection and GRANTS Nistica's motion for summary judgment of noninfringement of claim 24 of the '599 Patent.

## G. Willful Infringement

### 1. Special Master's Ruling

Nistica moves for summary judgment on Finisar's allegations of willful infringement.

Nistica's Mot. for SJ at 24-25, ECF 325-4.  The Special Master recommends granting Nistica's motion on the basis that Nistica has objectively reasonable defenses to each claim of infringement.  R&R at 66-67, ECF 461-4.

### 2.  The Parties' Contentions

Finisar argues that the Special Master's recommendation is based on the fact that he found every asserted claim invalid, not infringed, or subject to prosecution disclaimer.  Finisar's Obj. at 20, ECF 444-4.  According to Finisar, if the Court determines that there are triable issues of fact with respect to infringement, then Nistica cannot be granted summary judgment of no willfulness. *Id*.  Nistica argues that the Special Master properly found that it did not willfully infringe the asserted patents.  Nistica's Opp. at 20, ECF 455-4.  Moreover, Nistica argues that even if the Court found triable issues of fact with respect to infringement, the Court can still determine that Nistica's defenses were reasonable and grant summary judgment of no willfulness.

### 3.  Legal Standard

Under current law, to establish willful infringement, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed.Cir.2007). An accused infringer is not objectively reckless where it "relies on a reasonable defense to a charge of infringement." *Spine Sol'ns, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010). The Federal Circuit has explained that the threshold determination of objective recklessness essentially distills to "whether a defense or noninfringement theory [is] 'reasonable.'" *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1006 (Fed. Cir. 2012) (citations omitted). The objectiveness prong "should always be decided as a matter of law by the judge." *Id.* at 1008.  "If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk…was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007).

As the parties note, the Supreme Court granted certiorari in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371 (Fed. Cir. 2014) cert. granted, No. 14-1513, 2015 WL 3883472 (U.S.

Oct. 19, 2015) and *Stryker Corp. v. Zimmer, Inc.*, 782 F.3d 649 (Fed. Cir. 2015) cert. granted, No. 14-1520, 2015 WL 3883499 (U.S. Oct. 19, 2015) to consider "whether the Federal Circuit erred by applying a rigid, two-part test for enhancing patent infringement damages under 35 U.S.C. § 284, that is the same as the rigid, two-part test this Court rejected last term in *Octane Fitness, LLC v. ICON Health & Fitness*, Inc. for imposing attorney fees under the similarly-worded 35 U.S.C. § 285." These cases have been argued and await decision.

           4.   Analysis

The Special Master's grant of summary judgment was based on the findings that were primarily in favor of Nistica's positions. Having determined that several of those rulings must be reversed, the Court must consider the state of the case going forward. Even as to issues on which this Court disagreed with the Special Master's rulings, strong evidence of noninfringement or invalidity was offered by Nistica. As previously noted, reversal was a close call and based solely on the high burden placed on a moving party at summary judgment.

Following and applying *Seagate*, district courts have varied on their willingness to decide the first prong of the willful infringement test. For example, in *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-CV-03972-LHK, 2012 WL 4497966, at *39 (N.D. Cal. Sept. 28, 2012), the Court denied summary judgment of no willfulness, determining that consideration of the objective prong of *Seagate* should be determined by the Court after the jury resolved factual issues. On the contrary, the Federal Circuit in *Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc.*, 674 F.3d 1365, 1377-78 (Fed. Cir. 2012) reversed the district court's grant of summary judgment of noninfringement but upheld the court's grant of summary judgment of willfulness.

That being said, Finisar's argument that the motion for summary judgment should be denied without prejudice pending the Supreme Court's decision in *Halo and Stryker* is the prudent course. No benefit can be had from this Court applying the two-part *Seagate* test for willful infringement moments before the Supreme Court determines whether *Seagate* has continuing validity. *See, e.g.*, *O1 Communique Lab., Inc. v. Citrix Sys., Inc.*, --- F. Supp. 3d ---, Case No. 1:06-cv-253, 2015 WL 9268913, at *12-13 (N.D. Ohio Dec. 21, 2015) (denying without prejudice motion for summary judgment of no willful infringement because of the uncertainty in the law,

1    and in the interest of efficiency and judicial economy).

2        Thus, the Court effectively defers its ruling by denying Nistica's motion for summary

3    judgment on the issue of willfulness without prejudice.

4        **H.    Special Master's Evidentiary Rulings**

5            1.   Special Master's Ruling

6        Finisar raises several evidentiary objections.  The Special Master recommended overruling

7    many and sustaining a few of Finisar's objections.  Meanwhile, Nistica objected to paragraph 54

8    of Dr. Hall's declaration, which the Special Master sustained.

9            2.   Finisar's Objection

10       Finisar's objection to the Special Master's ruling regarding paragraph 54 of Dr. Hall's

11   declaration is the only objection included in its brief.  Finisar's Obj. at 18-19, ECF 444-4.

12   Finisar's remaining objections are attached as Exhibit 9.  Exh. 9 to Finisar's Obj., ECF 446-10.

13           3.   Legal Standard

14       Civil L.R. 7 provides that "any evidentiary and procedural objections…must be contained

15   within the brief or memorandum."

16           4.   Analysis

17       The Court has discussed Dr. Hall's paragraph 54 *supra* IV.F.  For all remaining objections,

18   Finisar has not complied with the Civil Local Rules.  Finisar did not include its objections in its

19   brief.  Accordingly, the Court OVERRULES Finisar's objection to the Special Master's ruling on

20   Dr. Hall's paragraph 54, STRIKES Exhibit 9 for violating the Civil Local Rules, and finds Finisar

21   has waived all remaining evidentiary objections.

22   **V.    NISTICA'S OBJECTION TO THE REPORT AND RECOMMENDATION**

23       Nistica raises only one objection the Special Master's Report and Recommendation.  It

24   seeks to have the Court clarify its construction of the claim term "spatially separating at least a

25   first and a second group of light."  Nistica's Obj. at 10, ECF 445-4.  As explained, the Court will

26   not engage in additional claim construction at summary judgment.  Accordingly, the Court

27   OVERRULES Nistica's objection.

28

## VI.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The Court ADOPTS IN PART AND REVERSES IN PART the Special Master's Recommendations based on the following rulings:

    a. Finisar's objection regarding claim 24 of the '599 Patent is SUSTAINED IN PART AND OVERRULED IN PART.

    b. Finisar's objection regarding the '980 Patent is SUSTAINED.

    c. Finisar's objection regarding claim 32 of the '687 Patent is SUSTAINED.

    d. Finisar's objection regarding claims 1, 25, and 29 of the '740 Patent is SUSTAINED.

    e. Finisar's objection regarding the '599 and '740 Patents is OVERRULED.

    f. Finisar's objection regarding claim 14 of the '599 Patent is OVERRULED.

    g. Finisar's objection regarding willfulness is SUSTAINED.

    h. Finisar's objection regarding evidentiary objections is OVERRULED.

    i. Nistica's objection regarding the '980 Patent is OVERRULED.

2. For the portions of the Special Master's Report and Recommendation that have not been objected to, the Court has reviewed them for clear error, and having found none, ADOPTS them.

3. In summary, the Court rules as follows with respect to Finisar's motion for summary judgment:

    a. Finisar's motion that Nistica literally infringes claim 24 of the '599 Patent be DENIED;

    b. Finisar's motion that no patent-in-suit is obvious based on prior art combinations advanced by Nistica is GRANTED as to the asserted claims of the '687, '833 and '980 Patents and DENIED as to the asserted claims of the '740 and '599 Patents;

    c. Finisar's motion that Nistica's Eighteenth through Twentieth Affirmative Defenses (license/implied license, estoppel, release) do not bar enforcement of

the patents-in-suit IS DENIED AS MOOT;

d.  Finisar's motion that Nistica's Twenty-First Affirmative Defense (unclean hands) does not bar enforcement of the patents-in-suit is GRANTED;

e.  Finisar's motion that Nistica's Twenty-Second Affirmative Defense (laches) does not bar enforcement of the patents-in-suit is DENIED AS MOOT; and

f.  Finisar's motion that Nistica's Twenty-Third Affirmative Defense (equitable estoppel) does not bar enforcement of the patents-in-suit is GRANTED.

4.  In summary, the Court rules as follows with respect to Nistica's motion for summary judgment:

a.  Nistica's motion that it does not infringe claim 14 of Finisar's '599 Patent is GRANTED;

b.  Nistica's motion that claim 24 of Finisar's '599 Patent is invalid is DENIED;

c.  Nistica's motion that it does not infringe claims 1, 12 and 14 of Finisar's '980 Patent is DENIED;

d.  Nistica's motion that it does not infringe claims 1 and 18 of Finisar's '833 Patent is GRANTED;

e.  Nistica's motion that claims 1, 25 and 29 of Finisar's '740 Patent are invalid is DENIED;

f.  Nistica's motion that it does not infringe claim 32 of Finisar's '687 Patent is DENIED;

g.  Nistica's motion that claim 32 of Finisar's '687 Patent is invalid for lack of written description and enablement is DENIED;

h.  Nistica's motion that it does not infringe Finisar's '328 Patent is GRANTED as to claim 34 only;

i.  Nistica's motion that Finisar has no evidence of direct infringement by accused products manufactured, shipped and delivered abroad is DENIED;

j.  Nistica's motion that there is no indirect infringement and infringement under § 271 (f) relating to Fujikura, Ltd. and Fujikura Optics of Vietnam, Ltd. is GRANTED;

k. Nistica's motion that there is no indirect infringement because there is no evidence that Fujikura or FOV directly infringe the asserted patents is DENIED AS MOOT; and

l. Nistica's motion that Finisar cannot prove willful infringement is DENIED.

**IT IS SO ORDERED.**

Dated: April 4, 2016

BETH LABSON FREEMAN
United States District Judg